**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THEODORE PEARLMAN, MARC TELL, JULIA GALLO, ANDREW KOPLIK and DOROTHY RABSEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CABLEVISION SYSTEMS CORPORATION,<br><br>Defendant. | Case No. 10-4992<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs Theodore Pearlman, Marc Tell, Julia Gallo, Andrew Koplik and Dorothy Rabsey (collectively "Plaintiffs"), by and through their attorneys, Law Office of Todd J. Krouner, Sarraf Gentile LLP and Shalov Stone Bonner & Rocco LLP, on behalf of themselves and all others similarly situated (collectively the "Class"), hereby complain of defendant Cablevision Systems Corporation ("Cablevision") and allege upon information and belief as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs bring this action as a class action on behalf of all Cablevision service subscribers who were affected by a recent two-week outage of certain service.  This action seeks recovery of monies paid to Cablevision in consideration of cable television programming and damages for Cablevision's failure to provide programming in violation of its contractual obligation to its customers.  Additionally, Cablevision advertised that it offered programming which it failed to provide to its customers.

2.      Plaintiffs submit this Amended Complaint in contemplation of consolidating this matter with the matter captioned Gallo, *et al*. v. Cablevision Systems Corp., Civ. Action No. 10-8125, filed on October 26, 2010, in the District Court for the Southern District of New York.

## INTRODUCTION

**A.      Cablevision's Negotiating Strategy Caused a Material and Substantial Detriment to its Customers**

3.      As a result of a contract dispute with the News Corporation ("News Corp."), Cablevision failed to provide its customers with certain programming and networks from October 16, 2010 through October 30, 2010, including without limitation WNYW a/k/a Fox 5, WWOR a/k/a the My9 Channel, WTXF a/k/a Fox 29, Fox Business, National Geographic Wild and Fox Deportes (collectively, the "Fox Channels").

4.      As reported in the October 24, 2010 edition of the New York Times:

> The News Corporation's Fox and local stations in the New York metropolitan area have been blacked out for more than a week in three million homes served by Cablevision.  The negotiators have dug in their heels; the two sides have not spoken to each other since Thursday afternoon. . . .  Cablevision says it wants the government to intervene . . . Cablevision executives say privately that they believe the F.C.C. has the authority to require the News Corporation to put its stations back on the cable system . . . .
>
> Cablevision has tried to encourage any action that would bring in an outside force, like an arbitrator or mediator, while restoring the News Corporation's channels to its customers. . . .
>
> Cablevision customers remain mired in the middle.  Last week, their set-top boxes were turned automatically to Channel 1999, where a message on a loop blamed the News Corporation for trying to "extort unreasonable and unfair fee increases."

Brian Stelter and Bill Carter, Fox-Cablevision Dispute May Obstruct Customers' View of World Series, N.Y. Times, October 24, 2010, at A1.

5.      This lawsuit seeks restitution for Cablevision's approximately three million customers, who were deprived of the Fox Channels, and its important and popular programming.

Despite depriving its customers of Fox programming, Cablevision refused to provide any rebate to its customers, who pay an average of approximately $150 per month.

**B.      Cablevision's Customers' Loss of Service**

6.      From October 16, 2010 through October 30, 2010, Cablevision's customers suffered a substantial and material disruption and reduction in the broadcast and programming service that they receive from Cablevision, in terms of both content and duration.

7.      In terms of political, sports and entertainment programming, the service interruption came at an important time.

8.      The Fox Channels include one of the four major television networks in the United States.  It produces and broadcasts important and popular television content, including without limitation:

- New York Giants football;

- Major League Baseball World Series;

- Major League Baseball National League Championship Series;

- National Football League Super Bowl XLV

- Glee;

- House;

- American Idol;

- Hell's Kitchen;

- The Simpsons;

- Family Guy;

- The Wendy Williams Show;

- Dr. Oz;

- Good Day New York; and

- Fox 5 News.

9.      The Fox Channels also provide a distinctive viewpoint in the political speech arena, of which Cablevision's customers were deprived just days before a critical national mid-term election.  Indeed, according to Nielsen Ratings, Fox News was the most watched network on election night.  The Wall Street Journal, November 8, 2010, at A16.

10.     Glee, a Fox program, is consistently among the highest rated shows on television. For example, the September 28, 2010 broadcast brought in 13.3 million viewers and among viewers aged 18-49, the show ranks third in the Nielsen Ratings for primetime television.  The show's musical recordings are a smash crossover success in the music industry.  As reported in the current issue of Rolling Stone Magazine, the show has placed 75 singles on the "Hot 100" music charts, surpassing the Beatles previous record of seventy-one.  "In the News," Rolling Stone Magazine, October 28, 2010, at 19.

11.     At a time when many football fans are unable to afford to attend New York Giants football games, Cablevision customers were unable to watch Giants games, which are carried on Fox, in their homes.

12.     Cablevision customers who are Philadelphia Phillies baseball fans were unable to watch their team compete in the National League Championship Series, which was carried on Fox.

13.     On October 30, 2010, the parties reached an agreement and Cablevision restored Fox programming to its customers, after a tumultuous two weeks in which Cablevision's customers were literally left in the dark.

4

14.     During the blackout, instead of seeing their favorite programming when turning on their televisions, customers were greeted by Cablevision's annoying and self-serving loop, whining about News Corp.'s supposed failure to negotiate in good faith.  "A New (Cable) Deal for America," Harvard Crimson, Nov. 2, 2010 (available at http://www.thecrimson.com/article/2010/11/2/content-cablevision-online-cable/) ("Cablevision, at one point, ran an inflammatory message on loop, encouraging customers to call FOX and complain.").

## JURISDICTION

15.     Jurisdiction is proper pursuant to the Class Action Fairness Act of 2005.  28 U.S.C. § 1332.  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Cablevision resides, as defined in 28 U.S.C. § 1391(c), in the Eastern District of New York.

## PARTIES

**A.     Plaintiffs, Class Members and Subclasses**

17.     Plaintiffs are all Cablevision customers.

18.     Theodore Pearlman, Marc Tell and Julia Gallo are citizens of the State of New York.

19.     Andrew Koplik is a citizen of New Jersey.

20.     Dorothy Rabsey is a citizen of Connecticut.

21.     The Class consists of all Cablevision customers as of October 16, 2010, the date of Cablevision's blackout of the Fox Channels.

22.     In addition to Plaintiffs and the Class, there are three subclasses in this matter:

(a)     The "New York Subclass" consists of all Cablevision customers as of October 16, 2010, residing in the State of New York, including lead plaintiffs Theodore Pearlman, Marc Tell and Julia Gallo;

(b)     The "New Jersey Subclass" consists of all Cablevision customers as of October 16, 2010, residing in the State of New Jersey, including lead plaintiff Andrew Koplik; and

(c)     The "Connecticut Subclass" consists of all Cablevision customers as of October 16, 2010, residing in the State of Connecticut, including lead plaintiff Dorothy Rabsey.

**B.      Cablevision**

23.     Cablevision is a corporation created and existing under the laws of the State of Delaware, with headquarters located at 1111 Stewart Avenue, Bethpage, New York 11714.

24.     Cablevision is the cable television and internet service arm of an international media conglomerate, with revenues in excess of $4 billion annually, which produces and distributes media content to hundreds of millions of consumers worldwide.

25.     According to Cablevision, it operates the nation's largest cable cluster, including more than five million households and businesses in the New York and Philadelphia metropolitan broadcasting areas.  In certain locations, Cablevision is the only available provider of cable services.

26.     In addition to the News 12 and MSG Varsity television networks, which Cablevision owns and operates, its subsidiary Rainbow Media Holdings ("Rainbow") owns and operates television networks AMC, IFC, Sundance Channel and WEtv and IFC Entertainment, a film production company.

27.     James Dolan is president and chief executive officer of Cablevision, executive chairman of Madison Square Garden, Inc., and the former chief executive officer of Rainbow.

28.     His father, Charles Dolan, is the founder and chairman of Cablevision, and sits on the board of directors of Madison Square Garden.

## BACKGROUND FACTS

29.     Prior to October 16, 2010, the Class members each individually contracted with Cablevision to receive cable television programming from Cablevision, including the Fox Channels.

30.     Cablevision advertised and/or otherwise represented that it carried the Fox Channels on its Optimum cable television service.  Even during the blackout, Cablevision continued to advertise falsely that it carried the Fox Channels.

31.     Based upon those representations, the Class members entered into contracts with Cablevision for cable television.

32.     On or about October 15, 2010, Cablevision's agreement with News Corp., pursuant to which Cablevision carried the Fox Channels, expired.

33.     According to News Corp., Cablevision rejected numerous proposals to enter into a new agreement, including proposals on the same terms and conditions of other cable providers in the New York metropolitan market.

34.     Cablevision thereafter took the untenable position of failing on the one hand to provide its customers with Fox programming, while on the other hand refusing to make restitution to all of its customers for this substantial and material interruption of service.

35.     Pursuant to its own terms of service, Cablevision had promised to give each customer a credit for each "known program or service interruption in excess of 24 consecutive hours. . ."  See Agreement for iO TV, ¶ 4 (available at http://www.optimum.net/Terms/iO).

36.    While Cablevision's terms of service disavow liability for disruptions of "service resulting in part or entirely from circumstances beyond Cablevision's reasonable control," id., this blackout was a reasonably foreseeable consequence of Cablevision's decisions as to the timing and implementation of its negotiating strategy, which was entirely within the company's control.

37.    On October 29, 2010, News Corp. announced that it had resolved its contractual issues with the Dish Network.

38.    The next day, October 30, 2010, on the eve of the New York Jets vs. Green Bay Packers NFL football game then-to be aired on Fox, Cablevision came to terms with News Corp., and restored Fox programming.

39.    The temporal proximity of Cablevision's agreement with News Corp., the Dish Network agreement and the airing of the NFL football game demonstrate that the issues relevant to Cablevision's dispute with News Corp. were at all times within Cablevision's reasonable control.

40.    On October 27, 2010, before game one of the World Series on FOX, Cablevision sent an e-mail to its customers, in which it offered a $10 credit to those customers who paid $9.95 to watch the World Series on MLB.com or MLB.tv.  Those customers, of course, were relegated to watching on their small computer screens, instead of on their larger television screens.

41.    However, upon clicking the link to take advantage of Cablevision's offer, customers were directed to a site encouraging them to send correspondence to News Corp. supporting Cablevision's negotiating position.

8

42.     To date, Cablevision has refused to offer any other refund or credit to the class as a whole.  However, notwithstanding that all Cablevision customers are similarly situated with respect to the Fox outage caused by Cablevision, it has offered only some of its most favored customers credits on a discriminatory basis and in varying amounts of up to $480, when they have contacted Cablevision or complained about the two week interruption in Fox Television programming.

43.     On October 16, 2010, one Cablevision customer detailed his experience with Cablevision's customer service, in which he ultimately received a $40 credit:

> I spent over 30 minutes on hold, however once I was a[b]le to speak to a representative in the disconnect department, I was a[b]le to receive a $40.00 credit. This is far from enough of a compensation to deal with this [b]izarre nonsense, however if 3 million ca[b]levision customers called to disconnect and received a $40.00 credit each, Ca[b]levision and its competitors would get the message to settle these disputes [b]efore they happen.

See "3 Million Cablevision Customers Affected in Fox 5 and My9 Blackout," (available at   http://www.examiner.com/us-headlines-in-national/3-million-cablevision-customers-affected-fox-5-and-my9-blackout).

44.     For certain customers who have called to disconnect their service because of the Fox programming interruption, Cablevision has been far more generous, and has offered credit up to $480, or $20 per month for up to two years.  "Fox/Cablevision Stalemate Continues," (available at http://www.multichannel.com/article/458874-Fox_Cablevision_Stalemate_Continues.php).

45.     One customer has published the four step process, by which customers can receive the $480 rebate:

> i.     Call Cablevision at this number 1-800-918-2581, which takes you directly to the customer retention department.

    ii.    Tell the representative you wish to cancel your cable service because of the ongoing dispute with Fox and your loss of local and cable channels.

    iii.    When they argue with you about why you should stay, tell them you are tired of being put in the middle of these disputes and forced to pay for programming you are not getting.

    iv.    They may offer a $20 credit for just 12 months.  Tell them that is not long enough and if the representative won't do any better, hang up and call back.

"Cablevision Customers: Get $20 Off Your Monthly Bill for 2 Years," (available at http://stopthecap.com/2010/10/28/cablevision-customers-get-20-off-your-monthly-bill-for-2-years/).

46.    Shockingly, on the heels of the Fox Television blackout, in an apparent effort to pass along the cost of its deal with News Corp., Cablevision announced it was raising its monthly rates.  "Cablevision Rate Increase Irks Subscribers," <u>Montville Patch</u>, November 10, 2010 (available at http://montville.patch.com/articles/cablevision-rate-increase-antagonizes-citizens).

## <u>CLASS ACTION ALLEGATIONS</u>

47.    Plaintiffs bring this class action pursuant to Rule 23, Fed. R. Civ. P., on behalf of themselves and all other similarly situated customers who contracted with Cablevision prior to October 16, 2010, to receive cable television service on or after October 16, 2010, including the New York Subclass, the Connecticut Subclass and the New Jersey Subclass.

48.    Excluded from the Class and each Subclass are Cablevision's officers, directors, legal representatives, heirs, successors, and assigns; and any judicial officer assigned to this case and his or her immediate family.

49.    Plaintiffs are members of the Class that they seek to represent.

50.    Plaintiffs claims are typical of the claims of the Class because Plaintiffs sustained material and substantial damages as a result of Cablevision's interruption of service.

51.     Plaintiffs have no interests antagonistic to those of the Class, and Cablevision has no defenses unique to Plaintiffs.

52.     The members of the Class and each Subclass are so numerous that joinder of all members would be impracticable.  Based upon information proffered by Cablevision, there are approximately three million Class members.

53.     There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual class members, including without limitation: (i) whether Cablevision breached its agreements with the Class members; (ii) whether Cablevision has been unjustly enriched at the Class members' expense; (iii) whether Cablevision engaged in unfair, deceptive and/or fraudulent practices in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., the New York General Business Law § 349, et seq., the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq.; (iv) the damages to which the Class members are entitled for Cablevision's substantial and material interruption of service; and (v) whether Cablevision should be enjoined from employing its negotiating strategies at the expense of its customers in the future.

54.     All common questions are able to be resolved through the same factual occurrence as specifically and/or generally alleged herein.

55.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and each Subclass.

56.     Plaintiffs have retained attorneys experienced in class and complex litigation.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because (i) it is economically impractical for members of the

Class to prosecute individual actions; (ii) the Class is readily definable; and (iii) prosecution as a class action will eliminate the possibility of repetitious litigation.

58.     A class action will provide an orderly and expeditious administration of the claims of the Class.  Economies of time, effort and expense will be fostered and uniformity of decisions will be ensured.

59.     Plaintiffs do not anticipate any undue difficulty in the management of this litigation.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

60.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "59" with the same force and effect as if set forth more fully herein.

61.     Pursuant to its uniform form of contract maintained with each Class member, Cablevision is required to (i) provide the Fox Channels to each of the Class members; and (ii) give each of the Class members a credit on account of any interruption of service.

62.     Cablevision failed to (i) carry the Fox Channels; or (ii) provide any credit to the Class members for the substantial and material interruption of service related to the Fox Channels.  As a result, Cablevision has breached its contract with its customers.

63.     The Class members have suffered damages as a result of Cablevision's breach of contract.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Unjust Enrichment)

64.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "63" with the same force and effect as if set forth more fully herein.

65.     The Class members paid Cablevision with the reasonable expectation that they would receive full, uninterrupted service, including the Fox Channels.

66.     Cablevision knew, or reasonably should have known, that it would not be able to provide such service to the Class members.

67.     Cablevision, nonetheless, accepted the Class members' payments without making restitution for the substantial and material interruption of service concerning the Fox Channels.

68.     Each of the Class members has suffered damages as a result of Cablevision's conduct.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Consumer Fraud – New York Subclass)

69.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "68" with the same force and effect as if set forth more fully herein.

70.     Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

71.     Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

72.     Cablevision failed to advise the New York Subclass members that it would cease providing the Fox Channels.

73.     Cablevision, nonetheless, extracted payment in full for monthly service in accordance with its contracts with each of the New York Subclass members.

74.     Based upon Cablevision's actions, the New York Subclass members each paid Cablevision's monthly fee, in contemplation of receiving the Fox Channels' programming

75.     Cablevision's actions were consumer-oriented, directed towards the New York Subclass members.

76.     Cablevision's actions were materially misleading.

77.     Each of the New York Subclass members has suffered damages as a result of Cablevision's conduct.

78.     Cablevision's actions violate New York's General Business Law §§ 349 and 350, and constitute deception, false promise, misrepresentation, concealment, suppression, and omission of material fact in its advertising.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Consumer Fraud – New Jersey Subclass)**

79.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "78" with the same force and effect as if set forth more fully herein.

80.     Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

81.     Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

82.     Cablevision failed to timely advise the New Jersey Subclass members that it would cease providing the Fox Channels.

83.     Cablevision, nonetheless, demanded payment in full for monthly service in accordance with its contracts with each of the New Jersey Subclass members.

84.     Based upon Cablevision's actions, the New Jersey Subclass members each paid the monthly fee.

85.     Accordingly, Cablevision engaged in conduct prohibited by the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

86.     The New Jersey Subclass members have suffered an ascertainable loss, as a result of Cablevision's conduct.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Consumer Fraud – Connecticut Subclass)

87.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "86" with the same force and effect as if set forth more fully herein.

88.     Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

89.     Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

90.     Cablevision failed to timely advise the Connecticut Subclass members that it would cease providing the Fox Channels.

91.     Cablevision, nonetheless, demanded payment in full for monthly service in accordance with its contracts with each of the Connecticut Subclass members.

92.     Based upon Cablevision's actions, the Connecticut Subclass members each paid the monthly fee.

93.     Cablevision has engaged in unlawful, immoral, unethical and/or otherwise unfair conduct, prohibited by the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq.

94.     The Connecticut Subclass members have suffered a substantial injury as a result of Cablevision's conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Permanent Injunctive Relief)

95.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs numbered "1" through "94" with the same force and effect as if set forth more fully herein.

96.     Cablevision's contract with News Corp. to carry the Fox Channels expired on October 15, 2010, at 11:59 p.m. (the "Deadline").

97.     Cablevision played a game of chicken with News Corp. at the expense of Cablevision's customers, and failed to engage in constructive negotiations with News Corp. prior to the expiration of the Deadline.

98.     After the expiration of the Deadline, Cablevision requested that News Corp. enter into binding arbitration with it to resolve their contractual differences.  The tardiness of Cablevision's efforts and its belated sense of urgency is of scant comfort to its customers, who are deprived of the Fox Channels.

99.     There is no adequate remedy at law, including monetary damages which may compensate class members for injuries resulting from the loss of unique programming content, such as Phillies baseball fans deprived of watching a playoff game, or Giants football fans deprived of watching their team surge toward the playoffs.

100.    Given the public interest involved, the ongoing nature of the injury, and the prospect for repeated occurrences, an equitable remedy is warranted.

101.    The public interest would be served by a permanent injunction that enjoins Cablevision in the future from ignoring its contractual deadlines with content providers, and compels it to enter into a dispute resolution mechanism that insures resolution of any such disputes, in the absence of a consensual agreement, so that its customers not be deprived of programming content.

**WHEREFORE,** Plaintiffs, on their own behalf and on behalf of the Class and each Subclass seek judgment as follows:

(a)    awarding each of the Class members damages, plus interest, costs and attorneys' fees;

(b)    awarding any and all remedies available under the New York General Business Law §§ 349, 350, including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

(c)    awarding any and all remedies available under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq., including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

(d)    awarding any and all remedies available under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq., including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

(e)    entering permanent restraints, directing that any future broadcast contracts entered into by Cablevision have mandatory dispute resolution mechanisms, requiring

resolution of any contract dispute prior to the expiration of such contract;

       (f)     awarding punitive damages;

       (g)     awarding Plaintiffs attorneys' fees and costs incurred in prosecuting this action; and

       (h)     granting Plaintiffs such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable.

DATED:      November 23, 2010         Respectfully submitted,

SHALOV STONE BONNER & ROCCO LLP      LAW OFFICES OF TODD J. KROUNER

By: /s/ Ralph M. Stone            By:/s/ Todd J. Krouner
    Ralph M. Stone                  Todd J. Krouner
    (rstone@lawssb.com)           (tkrouner@krounerlaw.com)
    Lee S. Shalov                   Scott J. Koplik
    (lshalov@lawssb.com)          (skoplik@krounerlaw.com)
    Susan M. Davies               Diana M. Carlino
    (sdavies@lawssb.com)          (dcarlino@krounerlaw.com)

260 Madison Avenue, 17th Floor        93 North Greeley Avenue
New York, NY 10016               Chappaqua, NY 10514
Tel. (212) 239-4340               Tel. (914) 238-5800
Fax (212) 239-4310               Fax (914) 238-5820

SARRAF GENTILE LLP

By: /s/ Ronen Sarraf
Ronen Sarraf (ronen@sarrafgentile.com)
Joseph Gentile (joseph@sarrafgentile.com)
116 John Street, Suite 2310
New York, NY 10038
Tel. (212) 868-3610
Fax (212) 918-7967

*Attorneys for Plaintiffs*