UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Cablevision Consumer Litigation<br><br>This document relates to:<br><br>All Actions | Master File No. 10-CV-4992 (JS) (AKT) |

**Consolidated Amended Complaint**

Plaintiffs Sean Ahearn, Eric Bohm, John Brett, Angelo Brucchieri, William G. Canfield, Ralph Dudley, Arthur Finkel, Salvatore A. Gandolfo, Tina Green, Andrew Koplik, David Menoni, Theodore Pearlman, Vincent Pezzuti, Dorothy Rabsey, Martin Jay Siegel, Stanley J. Somer and Marc Tell (collectively "Plaintiffs"), by and through their counsel, on behalf of themselves and all others similarly situated (collectively the "Class"), hereby complain of defendants Cablevision Systems Corporation and CSC Holdings, LLC (collectively referred to herein as "Cablevision") and allege upon information and belief as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action as a class action on behalf of all Cablevision service subscribers, all of whom were affected by a recent two-week interruption in certain service. This action seeks recovery of monies paid to Cablevision in consideration of cable television programming and damages for Cablevision's failure to provide programming in violation of its contractual obligation to its customers. Additionally, Cablevision advertised that it offered programming which it failed to provide to its customers.

2. Plaintiffs submit this Consolidated Amended Complaint pursuant to the Court's Memorandum & Order dated February 1, 2011.

3. From October 16, 2010 to October 30, 2010, Cablevision failed to provide its customers with certain programming and networks, including without limitation WNYW a/k/a Fox 5, WWOR a/k/a the My9 Channel, WTXF a/k/a Fox 29, Fox Business Network, National Geographic Wild and Fox Deportes (collectively, the "Fox Channels").

4. This lawsuit seeks restitution for Cablevision's approximately three million customers, who were deprived of the Fox Channels, and its important and popular programming. Despite depriving its customers of the Fox Channels programming, Cablevision has failed to provide any rebate or pro rata refund to its customers, who pay an average of approximately $150 per month.

5. From October 16, 2010 through October 30, 2010, Cablevision's customers suffered a service interruption of the Fox Channels programming.

6. On October 30, 2010, Cablevision restored the Fox Channels programming to its customers.

7. During the service interruption, instead of seeing their favorite programming when turning on their televisions, customers were greeted by Cablevision's annoying and self-serving loop, whining about News Corp.'s supposed failure to negotiate in good faith and encouraging customers to call News Corp. to complain about any service interruption.

## JURISDICTION

8.   Jurisdiction is proper pursuant to the Class Action Fairness Act of 2005. 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

9.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Cablevision resides, as defined in 28 U.S.C. § 1391(c), in the Eastern District of New York.

## PARTIES

**A.   Plaintiffs, Class Members and Subclasses**

10.   At all relevant times during the period embracing the complained of conduct alleged herein, Plaintiffs were all Cablevision customers.

11.   Plaintiffs John Brett, William G. Canfield, Arthur Finkel, Salvatore A. Gandolfo, Theodore Pearlman, Stanley J. Somer and Marc Tell are citizens of the State of New York.

12.   Plaintiffs Eric Bohm, Angelo Brucchieri, Ralph Dudley, Tina Gerson, Andrew Koplik, Vincent Pezzuti and Martin Jay Siegel are citizens of New Jersey.

13.   Plaintiffs Sean Ahearn, David Menoni and Dorothy Rabsey are citizens of Connecticut.

14.   The Class consists of all Cablevision customers as of October 16, 2010, the date of Cablevision's blackout of the Fox Channels.

15.   In addition to Plaintiffs and the Class, there are three subclasses in this matter:

    (a)    The "New York Subclass" consists of all Cablevision customers as of October 16, 2010, residing in the State of New York, including plaintiffs John Brett William G. Canfield, Arthur Finkel, Salvatore A. Gandolfo, Theodore Pearlman, Stanley J. Somer, and Marc Tell;

    (b)    The "New Jersey Subclass" consists of all Cablevision customers as of October 16, 2010, residing in the State of New Jersey, including plaintiffs Eric Bohm, Angelo Brucchieri, Ralph Dudley, Tina Gerson, Andrew Koplik, Vincent Pezzuti, and Martin Jay Siegel; and

    (c)    The "Connecticut Subclass" consists of all Cablevision customers as of October 16, 2010, residing in the State of Connecticut, including plaintiffs Sean Ahearn, David Menoni and Dorothy Rabsey.

**B.**    **Cablevision**

16.    Cablevision Systems Corp. is a corporation created and existing under the laws of the State of Delaware, with its headquarters located at 1111 Stewart Avenue, Bethpage, New York 11714. It provides telecommunications and entertainment services. Cablevision Systems Corp. had revenues in excess of $7 billion in 2010. According to Cablevision Systems Corp., it operates the nation's largest cable cluster, including more than five million households and businesses in the New York and Philadelphia metropolitan broadcasting areas. In certain locations, it is the only available provider of cable services.

17.    Defendant CSC Holdings, LLC is a corporation organized under the laws of Delaware and registered to do business in the State of New York, with its principal office located at 1111 Stewart Avenue, Bethpage, New York 11714. Defendant CSC Holdings, LLC is a subsidiary of Cablevision Systems Corp. and it owns and controls Cablevision Systems Corp.'s cable television operating subsidiaries. Defendant

4

Cablevision Systems Corp. indirectly owns all of those cable television subsidiaries and controls what programming they provide.

18. In addition to the News 12 and MSG Varsity television networks, which Cablevision owns and operates, its subsidiary Rainbow Media Holdings ("Rainbow") owns and operates television networks AMC, IFC, Sundance Channel and WEtv and IFC Entertainment, a film production company.

## BACKGROUND FACTS

19. Prior to October 16, 2010, the Class members each individually contracted with Cablevision to receive cable television programming from Cablevision, including the Fox Channels.

20. Cablevision advertised and/or otherwise promoted that it carried the Fox Channels on its cable television services. Even during the service interruption, during which it failed to deliver the Fox Channels to its customers, Cablevision continued to advertise falsely that it carried the Fox Channels.

21. On or about October 15, 2010, Cablevision's agreement with News Corp., pursuant to which Cablevision carried the Fox Channels, expired.

22. According to News Corp., Cablevision rejected numerous proposals to enter into a new agreement, including proposals on the same terms and conditions of other cable providers in the New York metropolitan market.

23. Pursuant to its own terms of service, Cablevision recognizes the obligation to give each customer a credit for each "known program or service interruption in excess of 24 consecutive hours…" See Agreement for iO TV, ¶ 4 (available at http://www.optimum.net/Terms/iO).

5

24. Cablevision's failure to deliver the Fox Channels to its customers in October 2010 constituted a service interruption in excess of 24 hours.

25. While Cablevision's terms of service disavow liability for disruptions of "service resulting in part or entirely from circumstances beyond Cablevision's reasonable control," id., this service interruption was a reasonably foreseeable consequence of Cablevision's decisions as to the timing and implementation of its negotiating strategy with News Corp., which was entirely within the company's control.

26. On October 16, 2010, Cablevision sent an e-mail message to its subscribers to inform them that they would be cut-off from viewing the Fox Channels, channels and programming that the subscribers had paid Cablevision to deliver. The e-mail message provided no avenue for relief or compensation to subscribers, but instead directed Cablevision customers to lodge complaints with News Corp. Cablevision asked its customers for "help" in putting pressure on News Corp., and also told them to call News Corp. demanding that they "keep [customers] out of the negotiation."

27. As of October 16, 2010, and for two weeks thereafter, Cablevision did not provide the cable services that its customers had paid for and were entitled to receive under their contract with Cablevision, because the customers were cut-off from the Fox Channels. Yet, Cablevision has not provided adequate compensation to its customers for the significant service interruption.

28. On October 29, 2010, News Corp. announced that it had resolved certain contractual issues with the Dish Network.

29. The next day, October 30, 2010, on the eve of the New York Jets vs. Green Bay Packers NFL football game then-to be aired on a Fox Channel, Cablevision promptly came to terms with News Corp., and restored the Fox Channels programming.

30. Thus, Cablevision demonstrated that the service disruption was not caused by circumstances reasonably beyond its control.

31. On October 27, 2010, before game one of the World Series on FOX, Cablevision sent an e-mail to its customers, in which it offered a $10 credit to each of those customers who paid an additional fee of $9.95 so that they could watch the World Series on MLB.com or MLB.tv. Those customers who were technically equipped to do this, of course, were relegated to watching on their small computer screens, instead of on their larger television screens. However, upon clicking the link to Cablevision's offer, customers were directed to a site encouraging them to send correspondence to News Corp. supporting Cablevision.

32. To date, Cablevision has refused to offer any other refund or credit to the class as a whole. Customers who contacted Cablevision by telephone to complain about the service interruption are subject to a confusing process that requires the customer to remain on hold for inordinate periods of time.

33. Shortly after the conclusion of the Fox Channel service interruption, Cablevision announced that it was raising its monthly rates.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this class action pursuant to Rule 23, Fed. R. Civ. P., on behalf of themselves and all other similarly situated customers who contracted with Cablevision prior to October 16, 2010, to receive cable television service on or after

7

October 16, 2010, including the New York Subclass, the Connecticut Subclass and the New Jersey Subclass.

35. Excluded from the Class and each Subclass are Cablevision's officers, directors, legal representatives, heirs, successors, and assigns; and any judicial officer assigned to this case and his or her immediate family.

36. Plaintiffs are members of the Class that they seek to represent.

37. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs sustained material and substantial damages as a result of Cablevision's interruption of service.

38. Plaintiffs have no interests antagonistic to those of the Class, and Cablevision has no defenses unique to Plaintiffs.

39. The members of the Class and each Subclass are so numerous that joinder of all members would be impracticable. Based upon information proffered by Cablevision, there are approximately three million Class members. Class members can be easily identified from Cablevision's records.

40. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual class members, including without limitation:

    (a) whether Cablevision breached its agreements with the Class members;

    (b) whether Cablevision has been unjustly enriched at the Class members' expense;

8

  (c) whether Cablevision engaged in unfair, deceptive and/or fraudulent practices in violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.;

  (d) whether Cablevision engaged in unfair, deceptive and/or fraudulent practices in violation the New York General Business Law § 349, et seq.;

  (e) whether Cablevision engaged in unfair, deceptive and/or fraudulent practices in violation the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq.;

  (f) the damages to which the Class members are entitled for Cablevision's substantial and material interruption of service; and

  (g) whether Cablevision should be enjoined from employing its negotiating strategies at the expense of its customers in the future.

41. All common questions are able to be resolved through the same factual occurrence as specifically and/or generally alleged herein.

42. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and each Subclass.

43. Plaintiffs have retained attorneys experienced in class and complex litigation.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because:

  (a) it is economically impractical for members of the Class to prosecute individual actions;

      (b)    the Class is readily ascertainable and identifiable; and

      (c)    prosecution as a class action will eliminate the possibility of repetitious litigation.

45.    A class action will provide an orderly and expeditious administration of the claims of the Class. Economies of time, effort and expense will be fostered and uniformity of decisions will be ensured.

46.    Plaintiffs do not anticipate any undue difficulty in the management of this litigation.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

47.    Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

48.    Pursuant to its uniform form of contract maintained with each Class member, Cablevision is required to (a) provide the Fox Channels to each of the Class members; and (b) give each of the Class members a credit on account of any interruption of service.

49.    Cablevision failed to (a) carry the Fox Channels; or (b) provide any credit to the Class members for the material two-week interruption of service in the delivery of the Fox Channels. As a result, Cablevision has breached its contract with its customers.

50.    The Class members have suffered damages as a result of Cablevision's breach of contract.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

51.    Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

52. The aforementioned contracts contain an implied covenant of good faith and fair dealing, pursuant to which Cablevision is obliged to forego any acts that would destroy or injure Plaintiffs' rights, and the rights of class members, to receive the fruits of their contracts.

53. Cablevision chose to become embroiled in a dispute with Fox that led to the destruction of Plaintiffs' rights, and the rights of class members, to receive the fruits of their contracts with Cablevision.

54. Cablevision acted intentionally and in bad faith to frustrate the benefits owed to Plaintiffs and Class members under the terms of the aforementioned contracts.

55. Cablevision breached their implied covenants by:

    (a) failing to provide the channels to its subscribers that Cablevision advertised in its channel lineup;

    (b) concealing the facts that Cablevision knew there was a distinct likelihood that it could not offer the channels it advertised in its channel lineup;

    (c) failing to provide a general rebate or credit to Plaintiffs and Class members for programming outages in excess of twenty-four (24) hours, despite a duty to do so; and

    (d) failing to negotiate in good faith with certain third-parties in connection with the continuation of certain channels, the service of which has since been disrupted, despite multiple proposals being received from those third-parties to resolve the underlying dispute.

56. Each of the Class members has suffered damages as a result of Cablevision's conduct.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Unjust Enrichment)**

57. Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

58. The Class members paid Cablevision with the reasonable expectation that they would receive full, uninterrupted service, including the Fox Channels programming.

59. Cablevision knew, or reasonably should have known, that it would not be able to provide such service to the Class members.

60. Cablevision, nonetheless, accepted the Class members' payments without making restitution for the substantial and material interruption of service concerning the Fox Channels.

61. Each of the Class members has suffered damages as a result of Cablevision's conduct.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Consumer Fraud – New York Subclass)**

62. Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

63. Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

64. Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

65. Cablevision failed to advise the New York Subclass members that it would cease providing the Fox Channels programming.

66. Cablevision, nonetheless, extracted payment in full in advance and without providing a refund for monthly service from each of the New York Subclass members.

67. Based upon Cablevision's actions, the New York Subclass members each paid Cablevision's monthly fee, in contemplation of receiving the Fox Channels' programming.

68. Cablevision's actions were consumer-oriented, directed towards the New York Subclass members.

69. Cablevision's actions were materially misleading.

70. Each of the New York Subclass members has suffered damages as a result of Cablevision's conduct.

71. Cablevision's actions violate New York's General Business Law §§ 349 and 350, and constitute deception, false promise, misrepresentation, concealment, suppression, and omission of material facts in its advertising.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Consumer Fraud – New Jersey Subclass)**

72. Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

73. Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

74. Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

75. The services offered by Cablevision are "merchandise" as defined in N.J.S.A. 56:8-1(c).

13

76. The members of the New Jersey Subclass are "persons" entitled to seek the protections afforded by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

77. Cablevision offers its services to the general public at large.

78. Cablevision failed to timely advise the New Jersey Subclass members that it would cease providing the Fox Channels programming.

79. Cablevision, nonetheless, accepted payment in full in advance and without providing a refund for monthly service from each of the New Jersey Subclass members.

80. Based upon Cablevision's actions, the New Jersey Subclass members each paid the monthly fee.

81. Accordingly, Cablevision engaged in conduct prohibited by the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

82. The New Jersey Subclass members have suffered an ascertainable loss, as a result of Cablevision's conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION
**(Consumer Fraud – Connecticut Subclass)**

83. Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

84. Cablevision knew, or reasonably should have known, that it would be unable to provide the Fox Channels to its customers.

85. Cablevision advertised and represented that it carried the Fox Channels and certain programming only available on those stations.

86. Cablevision failed to timely advise the Connecticut Subclass members that it would cease providing the Fox Channels programming.

14

87. Cablevision, nonetheless, extracted payment in full in advance and without providing a refund for monthly service from each of the Connecticut Subclass members.

88. Based upon Cablevision's actions, the Connecticut Subclass members each paid the monthly fee.

89. Cablevision has engaged in unlawful, immoral, unethical and/or otherwise unfair conduct, prohibited by the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq.

90. The Connecticut Subclass members have suffered a substantial injury as a result of paying for services that they never received.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Permanent Injunctive Relief)

91. Plaintiffs repeat, reiterate and reallege each and every allegation set forth above with the same force and effect as if set forth fully herein.

92. Cablevision's contract with News Corp. to carry the Fox Channels expired on October 15, 2010, at 11:59 p.m. (the "Deadline").

93. Cablevision played a game of chicken with News Corp. at the expense of Cablevision's customers, and failed to engage in constructive negotiations with News Corp. prior to the expiration of the Deadline.

94. After the expiration of the Deadline, Cablevision requested that News Corp. enter into binding arbitration with it to resolve their contractual differences. The tardiness of Cablevision's efforts and its belated sense of urgency is of scant comfort to its customers, who are deprived of the Fox Channels.

95. There is no adequate remedy at law, including monetary damages which may compensate class members for injuries resulting from the loss of unique programming content, such as Phillies baseball fans deprived of watching a playoff game, or Giants football fans deprived of watching their team play.

96. Given the public interest involved, the ongoing nature of the injury, and the prospect for repeated occurrences, an equitable remedy is warranted.

97. The public interest would be served by a permanent injunction that enjoins Cablevision in the future from ignoring its contractual deadlines with content providers, and compels it to enter into a dispute resolution mechanism that insures resolution of any such disputes, in the absence of a consensual agreement, so that its customers will not be deprived of programming content.

**WHEREFORE,** Plaintiffs, on their own behalf and on behalf of the Class and each Subclass seek judgment as follows:

(a) awarding each of the Class members damages, plus interest, costs and attorneys' fees;

(b) awarding any and all remedies available under the New York General Business Law §§ 349, 350, including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

(c) awarding any and all remedies available under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq., including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

16

(d) awarding any and all remedies available under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), et seq., including without limitation compensatory damages, punitive damages, treble damages, injunctive relief, costs and fees;

(e) entering permanent restraints, directing that any future broadcast contracts entered into by Cablevision have mandatory dispute resolution mechanisms, requiring resolution of any contract dispute prior to the expiration of such contract;

(f) awarding punitive damages;

(g) awarding Plaintiffs attorneys' fees and costs incurred in prosecuting this action; and

(h) granting Plaintiffs such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable.

DATED: February 22, 2011                    Respectfully submitted,

SHALOV STONE BONNER & ROCCO LLP             LAW OFFICES OF TODD J. KROUNER

By: /s/ Ralph M. Stone                      By: /s/ Todd J. Krouner
    Ralph M. Stone                             Todd J. Krouner
    (rstone@lawssb.com)                         (tkrouner@krounerlaw.com)
    Lee S. Shalov                              Scott J. Koplik
    (lshalov@lawssb.com)                        (skoplik@krounerlaw.com)
    Susan M. Davies                            Diana M. Carlino
    (sdavies@lawssb.com)                        (dcarlino@krounerlaw.com)

260 Madison Avenue, 17th Floor              93 North Greeley Avenue
New York, NY 10016                          Chappaqua, NY 10514
Tel. (212) 239-4340                         Tel. (914) 238-5800
Fax (212) 239-4310                          Fax (914) 238-5820


CHITWOOD HARLEY HARNES LLP


By: /s/ Gregory E. Keller
    Gregory E. Keller
    (gkeller@chitwoodlaw.com)
    Carol S. Shahmoon
    (cshahmoon@chitwoodlaw.com)
185 Great Neck Road, Suite 340
Great Neck, NY 11021
Tel. (516) 773-6090

*Co Lead Counsel for Plaintiffs*

*Additional Plaintiffs' Counsel:*

SARRAF GENTILE LLP
Ronen Sarraf
(ronen@sarrafgentile.com)
Joseph Gentile
(joseph@sarrafgentile.com)
One Penn Plaza, Suite 2424
New York, NY 10019
Tel. (212) 868-3610

MARKS & KLEIN LLP
Justin M. Klein (justin@marksklein.com)
63 Riverside Avenue
Red Bank, NJ 07701
Tel. (732) 747-7100

BLUME GOLDFADEN
Carol L. Forte (cforte@njatty.com)
One Main Street
Chatham, NJ 07928
Tel. (973) 635-5400

STAMELL & SCHAGER LLP
Richard J. Schager, Jr. (schager@ssnyc.com)
One Liberty Paza, 35th Floor
New York, NY 10006
Tel. (212) 566-4057

LAW OFFICE OF MICHAEL C. RAKOWER PC
Michael C. Rakover (mrakower@rakowerlaw.com)
747 Third Avenue, 32nd Floor
New York, NY 10017
Tel. (212) 660-5550

BALLON STOLL BADER & NADLER PC
Irving Bizar (ibizar@ballonstoll.com)
Dwight Yellen (dyellen@ballonstoll.com)
729 Seventh Avenue, 17th Floor
New York, NY 10019
Tel. (212) 575-7900