**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
**In re Cablevision Consumer Litigation**     :     Master File No.
                                              :     10-CV-4992 (JS) (AKT)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
This Document Relates to:                     :     **ECF CASE**
                                              :     **Electronically Filed**
                                              :
All Actions                                   :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

WILLKIE FARR & GALLAGHER LLP

Thomas H. Golden
787 Seventh Avenue
New York, New York  10019
Phone:  (212) 728-8000
Fax:  (212) 728-8111

*Attorneys for Defendants Cablevision Systems Corporation and CSC Holdings, LLC*

# TABLE OF CONTENTS

Table Of Authorities ............................................................................................................. iii

Preliminary Statement .............................................................................................................1

Factual And Regulatory Background.......................................................................................2

    A.  Regulatory Background. ................................................................................................3

    B.  Cablevision's Terms Of Service. ..................................................................................5

    C.  The Fox Withdrawal. ....................................................................................................6

Argument .................................................................................................................................8

  I.   The Complaint Fails To State Any Viable Cause Of Action..............................................8

    A.  The Terms Of Service Disprove Plaintiffs' Breach Of Contract Claim. ......................9

        1.  The Terms Of Service Do Not Obligate Cablevision To Provide The Fox
            (Or Any Other Particular) Channels. ..................................................................9

        2.  The Terms Of Service Do Not Require A Refund For The Temporary
            Unavailability Of The Fox (Or Any Other Discrete) Channels.............................10

    B.  The Terms Of Service Preclude Plaintiffs' Implied Covenant Claim. ........................13

        1.  The Implied Covenant Is Inapplicable Because The Terms Of Service
            Explicitly Allow Cablevision To Remove Channels Without Liability. ...............13

        2.  The Implied Covenant Does Not Allow Plaintiffs To Sue On
            Cablevision's Negotiating Strategy Towards News Corp. ...................................15

        3.  Plaintiffs' "Concealment" Claim Fails To State A Breach Of The Implied
            Covenant Of Good Faith And Fair Dealing...........................................................16

    C.  The Existence Of The Terms Of Service Precludes Plaintiffs' Claim For
       Unjust Enrichment As A Matter Of Law.....................................................................17

    D.  Plaintiffs' "Consumer Fraud" Claims Fail As A Matter Of Law. ...............................17

        1.  Plaintiffs Fail To Plead Fraud With Particularity. .................................................18

        2.  Plaintiffs Plead No Injury-Causing Deception By Cablevision.............................19

            i.   Plaintiffs' "False Advertising" Theory Fails Because They Do Not
               Identify Any Advertisement Run By Cablevision During The Relevant
               Period. ..........................................................................................................20

ii.   Cablevision's Collection Of Fees Consistent With The Terms Of
Service Cannot Form The Basis For A Consumer Fraud Claim. ....................22

II.   Cablevision Should Not Be Enjoined From Signing Future Contracts Without
Arbitration Provisions. .......................................................................................................23

Conclusion .............................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**  **Pages**

*ABF Freight Sys., Inc. v. NLRB,*
    510 U.S. 317 (1994) ........................................................................................23

*Advanced Global Tech., LLC v. XM Satellite Radio, Inc.,*
    No. 07-3654, 2007 WL 3196208 (S.D.N.Y. Oct. 29, 2007) ................................24

*American Movie Classics Co. v. Time Warner Entm't, L.P.,*
    No. 603625/03, 2005 WL 3487852 (N.Y. Sup. Ct. July 8, 2005) ......................11

*Arcand v. Brother Int'l Corp.,*
    673 F. Supp. 2d 282 (D.N.J. 2009) ...................................................................22

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) .......................................................................................8

*Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.,*
    No. 08-1958, 2010 WL 1882316 (D. Conn. May 10, 2010) ....................18, 19, 20

*Barcella Transp. Servs., Inc. v. Rightway Logistics, LLC,*
    No. 08-1487, 2009 WL 322871 (D. Conn. Feb. 10, 2009) ................................14

*Bartello v. Option One Mortg. Corp.,*
    L-1577-06, 2009 WL 137229 (N.J. Super. Ct. App. Div. Jan. 22, 2009) ......13, 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...........................................................................................8

*Bonnieview Homeowners Ass'n v. Woodmont Builders, LLC,*
    655 F. Supp. 2d 473 (D.N.J. 2009) ...................................................................14

*Broder v. Cablevision Sys. Corp.,*
    329 F. Supp. 2d 551 (S.D.N.Y. 2004) ...............................................................15

*Broder v. Cablevision Sys. Corp.,*
    418 F.3d 187 (2d Cir. 2005) ...........................................................................9, 10

*Chestnut v. Wells Fargo Bank, N.A.,*
    No. 10-4244, 2011 WL 838914 (E.D.N.Y. March 2, 2011) ...............................17

*City of New York v. Smokes-Spirits.Com, Inc.,*
    911 N.E.2d 834 (N.Y. 2009) .............................................................................20

*Condit v. Dunne,*
    317 F. Supp. 2d 344 (S.D.N.Y. 2004) ..........................................................6, 8, 21

**Cases**                                                                      **Pages**

*DePasquale v. Allstate Ins. Co.*,
   179 F. Supp. 2d 51 (E.D.N.Y. 2002) ...................................................................21

*eBay, Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006)...........................................................................................24

*Gabriele v. Sanzaro*,
   No. 10-38, 2010 WL 2860730 (D.Conn. July 19, 2010) ...................................20

*Hassler v. Sovereign Bank*,
   644 F. Supp. 2d 509 (D.N.J. 2009) ....................................................................22

*ICD Holdings S.A. v. Frankel*,
   976 F. Supp. 234 (S.D.N.Y. 1997) ................................................................13, 14

*Jatras v. Bank of America Corp.*,
   No. 09-3107, 2010 WL 5418912 (D.N.J. Dec. 23, 2010)...............................18, 19

*Lawrence v. Richman Grp. Of Conn., LLC*,
   No. 3:03CV850, 2004 WL 2377140 (D. Conn. Sept. 30, 2004) .........................13

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005).................................................................20

*Lind v. New Hope Prop., LLC*,
   No. 09-3757, 2010 WL 1493003 (D.N.J. Apr. 13, 2010).....................................19

*Maier-Schule GMC, Inc. v. General Motors Corp.*,
   850 F. Supp. 1095 (W.D.N.Y. 1994) ..................................................................23

*Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*,
   No. 09-0196, 2011 WL 94169 (N.D.N.Y. Jan. 11, 2011)....................................15

*Ozbakir v. Scotti*,
   No. 09-6460, 2011 WL 477039 (W.D.N.Y. Feb. 10, 2011) ................................18

*Paul v. Bank of Am. Corp.*,
   No. 09-1932, 2011 WL 684083 (E.D.N.Y. Feb. 16, 2011) ........................8, 9, 13

*Peavy  v. Henderson*,
   No. 98-2669, 2000 WL 1240053 (E.D.N.Y. Aug. 28, 2000) ..............................24

*Pelman v. McDonald's Corp.*,
   237 F. Supp. 2d 512 (S.D.N.Y. 2003).............................................................21, 22

*In re Pfizer, Inc. Sec. Litig.*,
   538 F. Supp. 2d 621 (S.D.N.Y. 2008).....................................................................2

**Cases**                                                                                                    **Pages**

*Porter v. Property Damage Control Group, Inc.*,
    No. 03-5792, 2007 WL 2907403 (E.D.N.Y. Sept. 28, 2007) ................................................18

*Rexnord Holdings, Inc. v. Biderman*,
    21 F.3d 522 (2d Cir. 1994).......................................................................................................13

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).....................................................................................................18

*Sands v. Ticketmaster-New York, Inc.*,
    207 A.D.2d 687 (N.Y. App. Div. 1994) ..................................................................................22

*Shaw Group Inc. v. Triplefine Int'l Corp.*,
    332 F.3d 115 (2d Cir. 2003).....................................................................................................11

*Shepley v. New Coleman Holdings, Inc.*,
    174 F.3d 65 (2d Cir. 1999).......................................................................................................12

*Tepper v. Cablevisions Sys. Corp.*,
    797 N.Y.S.2d 131 (N.Y. App. Div. 2005) ..........................................................................9, 10

*Tepper v. Cablevisions Sys. Corp.*,
    No. 11132/02 (N.Y. Sup. Ct. Mar. 11, 2004) ...................................................................10, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................................................5

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006).....................................................................................................16

*Time Warner Entm't Co. v. FCC*,
    56 F.3d 151 (D.C. Cir. 1995).....................................................................................................3

*UBS Asset Mgmt. (New York) Inc. v. Wood Gundy Corp.*,
    914 F.Supp. 66 (S.D.N.Y. 1996).......................................................................................17, 19

*Verrastro v. Middlesex Ins. Co.*,
    540 A.2d 693 (Conn. 1988) .....................................................................................................14

*Wade v. Kessler Inst.*,
    798 A.2d 1251 (N.J. 2002).......................................................................................................14

*Wells Fargo Bank NW., N.A. v. Sundowner Alexandria, LLC*,
    No. 09-7213, 2010 WL 3238948 (S.D.N.Y. Aug. 16, 2010)...................................................16

*Wilson v. Dalene*,
    699 F.Supp.2d 534 (E.D.N.Y. 2010) .......................................................................................19

| Cases | Pages |
|---|---|

*Woods v. Maytag Co.*,
    No. 10-0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) .....................................18, 20, 21

**Statutes**

47 U.S.C. § 325 ...............................................................................................................3, 6, 23

47 U.S.C. § 543 ..................................................................................................................3, 4

47 U.S.C. § 556(c) ................................................................................................................4

Conn. Gen. Stat. Ann. § 16-331w .........................................................................................5

Conn. Gen. Stat. Ann. § 42-110a ........................................................................................18

N.J. Stat. Ann. § 48:5A-11a .................................................................................................5

N.J. Stat. Ann. § 56:8-1 ......................................................................................................18

New York GBL § 349 ..................................................................................17, 18, 19, 20, 21, 22

New York GBL § 350 ........................................................................................17, 18, 20

**Regulations**

47 CFR § 76.65 ................................................................................................................3, 15

Conn Agencies Regs. § 16-333e-1(a)(1) ..............................................................................5

N.J. Admin. Code § 14:18-1.2 ..............................................................................................5

N.J. Admin. Code § 14:18-3-5(b)(2) .....................................................................................5

N.Y. Comp. Code R. & Regs. tit 16 § 890.61 ......................................................................4

N.Y. Comp. Code R. & Regs. tit 16 § 890.65 ......................................................................4

**Administrative Materials**

*In re Altrio Commc'ns Inc. v. Adelphia Commc'ns Corp.*,
    17 FCC Rcd. 22955 (2002) .............................................................................................4

*ATC Broadband LLC v. Gray Television Licensee, Inc.*,
    24 FCC Rcd. 1645 (2009) .........................................................................................15, 16

**Administrative Materials**                                                    **Pages**

*In re Implementation of Cable Act Reform Provisions of the*
  *Telecommunications Act of 1996,*
  11 FCC Rcd. 5937 (1996) ........................................................................4

*In re Implementation of Sections of the Cable Television Consumer*
  *Protection and Competition Act of 1992: Rate Regulation,*
  *Sixth Order on Reconsideration*
  10 FCC Rcd. 1226 (1994)........................................................................4

*Notice of Proposed Rulemaking: In the Matter of Amendment of the*
  *Commission's Rules Related to Retransmission Consent,*
  MB Docket No. 10-71, FCC 11-31 (Mar. 3, 2011) ...........................................23

Defendants Cablevision Systems Corporation ("Cablevision Systems") and CSC Holdings, LLC ("CSC" and, together with Cablevision Systems, "Cablevision) respectfully submit this memorandum of law in support of their motion to dismiss the Plaintiffs' Consolidated Amended Complaint (the "Complaint" or "CAC").

## PRELIMINARY STATEMENT

In the Fall of 2010, News Corporation ("News Corp."), which operates and controls various "Fox" and related television broadcast stations, and Cablevision entered into negotiations to renew Cablevision's rights to retransmit Fox programming (the "Fox Channels") across all of Cablevision's cable television systems.  After Cablevision refused to accede to News Corp.'s "take-it-or-leave-it" demands, on October 16, 2010 News Corp. pulled the plug, obligating Cablevision to remove the Fox Channels from its lineup because it no longer had the contractual right to carry them (the "Fox Withdrawal").  Within two weeks, Cablevision secured the necessary consent from News Corp., and added the Fox Channels back to its lineup.

Though the Fox Withdrawal was an act of News Corp., not Cablevision, and was taken by News Corp. *despite* numerous reasonable proposals by Cablevision, including an offer to submit to binding arbitration, Plaintiffs nevertheless instituted this putative class action against Cablevision.  In it, Plaintiffs demand a refund of subscription fees as a result of the Fox Withdrawal based on allegations of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and consumer fraud.  None of the claims has merit:

- *First*, the Complaint fails to state a viable claim for breach of contract because the express terms of the operative agreement, which allow Cablevision to remove channels from its lineup without liability, rebut the argument that Cablevision was obligated to retransmit the Fox Channels or to provide a refund for the period in which those channels were not part of Cablevision's lineup.

- *Second*, those same contractual provisions also compel dismissal of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, because that cause of action does not allow a party to create rights that do not exist in the

contract.  Plaintiffs' implied covenant claim fails for the independent reason that the Complaint does not allege any facts to support a finding that Cablevision acted with bad faith towards subscribers or with an intent to harm them.

- *Third*, Plaintiffs' claim for unjust enrichment cannot proceed where, as here, there is a valid and binding contract between the parties.

- *Fourth*, Plaintiffs' claims for consumer fraud are deficient because the Complaint fails to allege any fraudulent act, let alone with the degree of particularity required by Rule 9(b).  In addition, Plaintiffs fail to allege any facts (as opposed to insufficient legal conclusions) that Cablevision engaged in any deceptive acts or that any such acts caused them injury.

- *Finally*, Plaintiffs' request that the Court award permanent injunctive relief tying Cablevision's hands in its future negotiations with program content providers who are not before the Court goes far beyond this Court's authority, is in conflict with the FCC's position on the matter, and would be highly inequitable.

## FACTUAL AND REGULATORY BACKGROUND[1]

Plaintiffs allege they are subscribers to Cablevision's cable television services.  (CAC ¶ 1.)  They purport to bring this action on behalf of all of Cablevision's cable television subscribers in New York, New Jersey, and Connecticut as of October 16, 2010 (the "putative class").  (*Id.* ¶ 34.)  Plaintiffs seek a refund of a portion of each putative class member's cable bill as a result of the Fox Withdrawal.  (*Id.* ¶ 1.)

Cablevision Systems is a telecommunications and entertainment company headquartered in Bethpage, New York.  (*Id.* ¶ 16.)  Its subsidiary CSC is alleged to own and operate Cablevision's cable television operating subsidiaries.  (*Id.* ¶ 17.)  Cablevision is alleged to operate the nation's largest cable television cluster, providing programming to approximately three million customers in New York, New Jersey, and Connecticut.  (*Id.* ¶¶ 4, 15.)

---

[1]    Cablevision vehemently disputes many of the Complaint's allegations.  Nonetheless, and solely for purposes of this motion, Cablevision will treat those allegations as true to the extent they are well pled.  In addition, Cablevision relies here on materials cited or incorporated in the Complaint, and other materials of which the Court can take judicial notice.  *See In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d 621, 627 (S.D.N.Y. 2008).  The Complaint is attached as Ex. A to the Declaration of Thomas H. Golden, dated March 18, 2011 ("Golden Decl.").

A.      **Regulatory Background.**

The cable television industry is heavily regulated at both the federal and state

levels.  On the federal level, the Communications Act of 1934, as amended by the Cable

Television Consumer Protection and Competition Act of 1992 (the "Communications Act" and

"Cable Act," respectively), specifically prohibits cable providers like Cablevision from

"retransmit[ting] the signal of a broadcasting station, or any part thereof, except . . . with the

express authority of the originating station."  47 U.S.C. § 325(b)(1).  Cognizant of the

importance of retransmission rights in the cable television industry, the Federal Communications

Commission (the "FCC") has promulgated regulations requiring that both television broadcast

stations and cable providers "negotiate in good faith the terms and conditions of retransmission

consent agreements."  47 CFR § 76.65(a).  FCC regulations further delineate those actions or

practices that would violate this good faith requirement.  *See id.* § 76.65(b).  Such actions include

"[r]efusal by a Negotiating Entity to put forth more than a single, unilateral proposal."  *Id.* §

76.65(b)(iv).

Federal law also expressly delineates the circumstances under which cable

operators are subject to refund requirements.  Among other things, Section 623 of the

Communications Act, 47 U.S.C. § 543(a)(1), provides that "[n]o Federal agency or State, may

regulate the rates for the provision of cable service except to the extent provided under this

section and section 532."[2]  In enacting the federal cable law provisions set forth in Title VI of the

Communications Act, Congress expressly directed that "any provision of law of any State . . . or

franchising authority . . . which is inconsistent with this chapter shall be deemed to be preempted

---

[2]     *See also Time Warner Entm't Co. v. FCC*, 56 F.3d 151, 188 (D.C. Cir. 1995) (Cable Act prohibits "states, and
local governments from regulating rates other than as provided in the statute.").

and superseded." 47 U.S.C. § 556(c). Section 623 of the Act delegates responsibility to the FCC

to establish, oversee, and enforce rate regulation rules applicable to cable operators. *See*

*generally* 47 U.S.C. § 543. That provision allows cable rates to be regulated or otherwise acted

upon where a cable operator is not subject to effective competition.[3] Where, by contrast, a cable

operator is subject to effective competition, government authority to regulate cable rates or order

refunds is fully extinguished.[4]

Cablevision is subject to further regulatory oversight by the various states in

which it operates, including regulations addressing the circumstances under which credits are

owed to customers. For example, New York law requires cable television companies to "provide

credit to subscribers affected by any *service outage* in excess of four continuous hours." N.Y.

Comp. Codes R. & Regs. tit. 16 § 890.65 (emphasis added). A "service outage" is defined as "a

loss of picture or sound on *all* basic channels or on *all* channels provided on any other service

tier or on one or more premium channels occurring during normal operating conditions which is

not caused by the subscriber's television receiver or the subscriber." *Id.* § 890.61(m) (emphasis

added). New York law does not require a refund for a "service interruption," which is defined as

the "loss of picture or sound of one or more cable *channels*." *Id.* § 890.61(1) (emphasis added).

---

[3]    The Cable Act "makes clear that regulation of 'the rates for the provision of cable service' is governed exclusively by the federal statute and [FCC] regulations" and "specifically preempts" any state and local regulation inconsistent with the comprehensive federal rate regulation scheme enacted by Congress. *In re Implementation of Sections of the Cable Television Consumer Protection and Competition Act of 1992: Rate Regulation, Sixth Order on Reconsideration*, 10 FCC Rcd. 1226, 1265 ¶ 112 (1994).

[4]    *See, e.g.*, *In re Implementation of Cable Act Reform Provisions of the Telecommunications Act of 1996*, 11 FCC Rcd. 5937, 5949 ¶ 29 (1996) (noting that where an operator becomes subject to deregulation under the Cable Act, "the LFA shall not prohibit the operator from taking a rate increase and shall not order the operator to make any refunds"); *In re Altrio Commc'ns, Inc. v. Adelphia Commc'ns Corp., Complaint Regarding Rate Uniformity and Predatory Pricing*, 17 FCC Rcd. 22955, 22958 ¶ 6 n.22 (2002) (holding "all rate regulation-related rules . . . cease to apply" when deregulation takes effect) (quotations omitted).

Similarly, under New Jersey's cable regulations, credits or rebates are required only for "outages," which are defined as: "[T]he total loss of audio or visual portion of any *level* of cable television service *for which the cable television company imposes a separate charge* and which affects the cable television company's distribution plant." N.J. Admin. Code § 14:18-1.2; *see also* N.J. Stat. Ann. § 48:5A-11a (emphasis added). A rebate is not required, however, where the outage was due to factors beyond the cable provider's reasonable control and "service is restored within six hours after the restoration of service becomes possible." N.J. Admin. Code § 14:18-3-5(b)(2). New Jersey law does not require rebates for an interruption that does not rise to the level of an "outage" (such as an interruption of a particular channel).

Connecticut law similarly provides that subscribers shall receive a credit or refund for a "service outage for more than twenty-four continuous hours." Conn. Gen. Stat. Ann. § 16-331w. Under the applicable regulations, only a "total loss of [cable] service on all channels" constitutes a "qualifying outage" that may be eligible for refunds or credits. Conn. Agencies Regs. § 16-333e-1(a)(1).

**B.      Cablevision's Terms of Service.**

Cablevision memorializes the uniform terms and conditions governing its relationship with its subscribers in its "Agreement for iO TV" (the "Terms of Service").[5] Not surprisingly, the Terms of Service mirror the regulatory environment in which Cablevision operates. For example, Paragraph 17 of the Terms of Service provides that "[a]ll programming, program services, program packages, number of channels, channel allocations, *broadcast channels* . . . and other Services are subject to change in accordance with applicable law."

---

[5]      *See* Golden Decl. Ex. B. The Terms of Service are quoted, in part, in the Complaint at paragraph 23. Consequently, the Court may consider them in their entirety on Cablevision's motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

(Golden Decl. Ex. B ¶ 17 (emphasis added).)  Recognizing, among other things, that "applicable law" – including 47 U.S.C. § 325(b)(1) – does not permit Cablevision to retransmit a broadcast station's channels without its consent, Paragraph 17 of the Terms of Service provides Cablevision the necessary flexibility to add or remove channels at any time (without any corresponding additional charge or credit).

Similarly, Paragraph 4 of the Terms of Service, dealing with service disruptions, closely tracks the state laws described above which mandate subscriber refunds only in those circumstances where the entire tier or bundle of channels for which a customer pays becomes unavailable: "Subject to applicable law, credit will be given for qualifying *outages*."  (*Id.* ¶ 4 (emphasis added).)  As noted above, in New York, New Jersey, and Connecticut, "outage" is a statutorily defined term meaning the loss of an entire tier of programming for which a fee is charged.  While the Terms of Service allow that pro-rata credits may be given for a "program or service interruption," they expressly state that "[i]n no event shall Cablevision be liable for any failure or interruption of program transmissions or service resulting in part or entirely from circumstances beyond Cablevision's reasonable control."  (*Id.* ¶ 4.)

**C.    The Fox Withdrawal.**

In 2009, Cablevision and News Corp. signed a one-year agreement allowing Cablevision to rebroadcast the Fox Channels.[6]  In advance of the October 16, 2010 expiration of that agreement, Cablevision sought to renew its retransmission rights.  (*See* CAC ¶ 21.)[7]

---

[6]    *See generally* Golden Decl. Ex. C, Shira Ovide, *News Corp. and Cablevision Square Off Over Show Fees*, Wall St. J. (Sept. 20, 2010), at B9.  On a motion to dismiss, the Court may take judicial notice of news reports (provided, as is the case here, that such statements are not being offered for the truth of their contents).  *See Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004).

[7]    *See also* Golden Decl. Ex. D, 10/16/2010 E-mail from Cablevision to Customers, *Customer Alert Concerning Your Fox Programming* ("Oct. 16 E-mail").  The Oct. 16 E-mail is referenced in the Complaint at paragraph 26.

Cablevision subsequently reported to subscribers that, in the ensuing negotiations, News Corp. demanded that Cablevision pay a fee of $150 million a year – a demand that represented an increase of $80 million from the prior year's fee. (*See* Golden Decl. Ex. D; CAC ¶ 26.) News Corp.'s demand was more than Cablevision paid for the other major network broadcasters – CBS, NBC, ABC, and Univision – *combined.* (*See* Golden Decl. Ex. D.) Cablevision offered counter-proposals but, even as the October 16 midnight deadline approached, News Corp. rejected each one. (*Id.*)

As early as September 20, 2010, news reports highlighted the dispute between Cablevision and News Corp. over retransmission fees for the Fox Channels. (*See, e.g.*, Golden Decl. Ex. C.) Indeed, by that time News Corp. had begun running advertisements directed to Cablevision's customers warning them that they might lose those channels if News Corp. and Cablevision did not agree on a new deal. (*Id.*) Cablevision continued to negotiate the retransmission rights with News Corp. and sought to retain the Fox programming pending the conclusion of those negotiations (even proposing to submit to binding arbitration), but News Corp. would not budge. (*See* Golden Decl. Ex. D.)

At midnight on October 16, 2010, Cablevision's retransmission rights expired, and News Corp. imposed the Fox Withdrawal on Cablevision by mandating the removal of the Fox Channels from its lineup. (*See* CAC ¶ 26; Golden Decl. Ex. D.) Early that morning, Cablevision sent e-mail messages to its subscribers detailing the reasons for the loss of the Fox Channels. (*See* CAC ¶ 26; *see also* Golden Decl. Ex. D.)[8] Cablevision noted the unreasonable fees demanded by News Corp. and explained that, even though Cablevision wanted to keep the

---

[8]   Cablevision also sent an email to its Connecticut subscribers noting that access to two Fox broadcast stations would "continue to be available." *See* Golden Decl. Ex. E, 10/16/10 E-mail from Cablevision to Customers, *CT Residents Will Continue to View Fox Programming.*

Fox Channels on the air during the pending negotiations process, News Corp. insisted that Cablevision take the channels off the air.  (*See* Golden Decl. Ex. D.)

On October 30, 2010, Cablevision and News Corp. reached terms on a mutually acceptable retransmission consent agreement, and Cablevision promptly added the Fox Channels back to its lineup.  (*See* CAC ¶ 29.)

## ARGUMENT

## I.    THE COMPLAINT FAILS TO STATE ANY VIABLE CAUSE OF ACTION.

Plaintiffs' claims cannot survive a Rule 12(b)(6) motion to dismiss unless their Complaint alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although this Court "must accept as true all of the allegations contained in a complaint," that tenet "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Thus, a complaint that tenders "naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Paul v. Bank of Am. Corp.*, No. 09-1932, 2011 WL 684083, at *2 (E.D.N.Y. Feb. 16, 2011) (internal quotations and original alterations omitted).

Just as the Court is not obligated to accept ill-pled allegations on a Rule 12(b)(6) motion, its analysis is not strictly limited to the Complaint's allegations.  First, the Court can consider facts of which it can take judicial notice, including the fact that certain information was made available to the public in media reports. *See Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004).  In addition, the Court can consider the contents of materials incorporated by reference in the Complaint, such as the e-mails from Cablevision to its subscribers on which Plaintiffs rely. *See Paul*, 2011 WL 684083, at *2.  And where, as here, the Complaint "relies on the terms of Cablevision's customer agreement," the Court "need not accept [Plaintiffs']

description of those terms, but may look to the agreement itself." *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

In light of these principles, the Complaint should be dismissed with prejudice.[9]

**A.      The Terms Of Service Disprove Plaintiffs' Breach Of Contract Claim.**

Plaintiffs recognize that the Terms of Service constitute a binding contract, and allege that Cablevision breached it in two ways. First, Plaintiffs allege that Cablevision failed to "provide the Fox Channels to each [member of the putative class]." (CAC ¶¶ 48-49.)  Second, Plaintiffs allege that Cablevision failed to "give each [member of the putative class] a credit on account of" the Fox Withdrawal. (*See id.*)  Neither allegation states a claim for a breach of the Terms of Service as a matter of law, because, as New York's Appellate Division has held, they explicitly relieve Cablevision of the obligation to carry particular programming. *Tepper v. Cablevision Sys. Corp.*, 797 N.Y.S.2d 131 (N.Y. App. Div. 2005), *aff'g* No. 11132/02, slip op. at 9 (N.Y. Sup. Ct. Mar. 11, 2004).[10]

1.      The Terms Of Service Do Not Obligate Cablevision To Provide The Fox (Or Any Other Particular) Channels.

Plaintiffs do not, and cannot, identify any provision of the Terms of Service that required Cablevision to provide the Fox Channels to subscribers for any particular period of time. (*See* CAC ¶¶ 47-50.)  That failure alone compels dismissal of this aspect of Plaintiffs' breach of contract claim. *See Paul*, 2011 WL 684083, at *5 ("In a fatal flaw, [Plaintiffs']

---

[9]     Plaintiffs' claims also potentially implicate, and are precluded by, the robust regulatory regime crafted by Congress and administered by the FCC regarding rates charged by cable television companies and rebate obligations.  Cablevision reserves the right to brief that issue at a later date should it become necessary and appropriate to do so.

[10]     A copy of the New York Supreme Court's decision in *Tepper* is annexed to the Golden Decl. at Ex. F.

complaint fails to identify the specific contractual provision or provisions . . . allegedly breached by defendants and, as a result, the claims must be dismissed.").

The deficiency cannot be remedied because, as New York's Appellate Division has held, the Terms of Service explicitly state that Cablevision is *not* obligated to provide any particular channels: "All programming, program services, program packages, number of channels, channel allocations, *broadcast channels* . . . and other Services *are subject to change* in accordance with applicable law." (Golden Decl. Ex. B (emphasis added).) Thus, Paragraph 17 makes clear that Cablevision does not guarantee that any particular channel or group of channels will remain part of any package it offers to its customers. Nor could it; federal law prohibits Cablevision from retransmitting a channel without the consent of the programmer. Cablevision's ability to retransmit a particular channel or group of channels is not something it can fully control, and therefore not something it could (or does) guarantee to subscribers. And in *Tepper*, a case in which subscribers unsuccessfully sought rebates when Cablevision stopped carrying Yankees baseball games, the court relied on Paragraph 17 in holding that Cablevision had no contractual obligation to carry any particular programming. *Tepper*, slip op. at 9.

In short, any claim that Cablevision was "required" to provide certain channels is disproven by the very words of the Terms of Service. Consequently, Plaintiffs' claim that Cablevision breached its contract by not providing the Fox Channels should be dismissed. *See Broder*, 418 F.3d at 196-98 (dismissal appropriate where terms of the contract, even read in the light most favorable to the plaintiff, "unambiguously foreclose" plaintiff's claims).

2.    The Terms of Service Do Not Require A Refund For The Temporary Unavailability Of The Fox (Or Any Other Discrete) Channels.

Plaintiffs read Paragraph 4 of the Terms of Service as obligating Cablevision to provide a credit for what Plaintiffs characterize as a "two-week interruption of service in the

delivery of the Fox Channels."  (*See* CAC ¶ 23 (citing Paragraph 4 of the Terms of Service).)

But Paragraph 4 must be read in conjunction with all of the other provisions in the Terms of

Service, including Paragraph 17. *See Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115,

121 (2d Cir. 2003) ("[A] contract should be construed so as to give full meaning and effect to all

of its provisions.").  Reading those provisions together disproves Plaintiffs' theory.

   As noted above, Paragraph 17 expressly allows Cablevision to remove channels

from its program packages, and does not contemplate that Cablevision would provide subscribers

with refunds as a result of any such change.  Thus, the deletion of a single channel cannot

constitute an "interruption" triggering refund liability, lest Paragraph 17 be rendered superfluous.

*See American Movie Classics Co. v. Time Warner Entm't, L.P.*, No. 603625/03, 2005 WL

3487852, at *10 (N.Y. Sup. Ct. July 8, 2005) ("it is basic that provisions of a contract are not to

be construed as superfluous").

   A contrary interpretation would make no sense.  First, it would produce the

untenable result that Cablevision is liable for any temporary change in channel lineup, but not a

permanent change.  In that regard, the only difference between the Fox Withdrawal and a

permanent deletion of a programming service is that the Fox Channels were eventually restored

to Cablevision's lineup.  Any argument that Paragraph 4 of the Terms of Service obligates

Cablevision to provide rebates as a result of the Fox Withdrawal would therefore necessarily rest

on the theory that it became a service "interruption" when the Fox Channels were restored.

Reading the Terms of Service as imposing refund obligations for a channel that is temporarily

removed from a tier or package but not for a channel that is permanently removed would violate

the cardinal principle that "an interpretation of a contract that affords a reasonable and effective

meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *Shepley v. New Coleman Holdings, Inc.,* 174 F.3d 65, 72 (2d Cir. 1999).

Plaintiffs' construction of the Terms of Service also ignores the fact that (other than with respect to so-called "premium channels" such as HBO, which are not at issue here) Cablevision charges customers for packages or tiers of channels, and not for individual channels. In light of that model, Cablevision could not meaningfully quantify the amount of refund that would be due to any given subscriber for the loss of any particular (non-premium) channel. Thus, the provision in the Terms of Service allowing Cablevision to remove channels without liability reflects the reality of how Cablevision sells its services to customers – as packages or tiers containing numerous channels that change from time to time, rather than as individually-priced channels.

Even if the Fox Withdrawal could somehow be considered an "interruption" (which it cannot), a refund would still not be owed.  Paragraph 4 clearly states that "[i]n no event shall Cablevision be liable for any failure or interruption of program transmissions or service resulting in part or entirely from circumstances beyond Cablevision's reasonable control." (Golden Decl. Ex. B.)  Plaintiffs assert that this provision of the Terms of Service does not apply here because Cablevision's negotiating strategy was "entirely within [its] control."  (CAC ¶ 25.) This argument does not hold water.  A contract negotiation, by its very nature, means that neither side can fully control its outcome, and the pleading fiction that News Corp. played *no* role in the Fox Withdrawal should not be credited.  Indeed, the Complaint recites Cablevision's efforts to bring News Corp. to the negotiating table.  (*Id.* ¶ 7.)  Thus, the alleged "interruption" of the Fox Channels was the result of circumstances, at least in part, beyond Cablevision's control.  By the plain language of Paragraph 4 of the Terms of Service, therefore, no refund would be required

even under Plaintiffs' theory that the Fox Withdrawal was a "service interruption" as that term is used in the Terms of Service. Count One should therefore be dismissed.

**B.    The Terms Of Service Preclude Plaintiffs' Implied Covenant Claim.**

Plaintiffs allege that Cablevision breached the implied covenant of good faith and fair dealing inherent in the Terms of Service by failing to retransmit the Fox Channels, failing to provide a rebate, failing to negotiate with News Corp. in good faith, and "concealing" that the Fox Channels would not be offered. (*See* CAC ¶ 55.) The implied covenant does not create new rights; it "only precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Rexnord Holdings, Inc. v. Biderman*, 21 F.3d 522, 526 (2d Cir. 1994).

To proceed with a claim for breach of the implied covenant of good faith and fair dealing, the Complaint must allege facts demonstrating that Cablevision acted with bad faith or with the intent to harm the Plaintiffs or to deprive them of their supposed contract rights. *Paul*, 2011 WL 684083, at *6 ("the implied covenant of good faith will not be breached without some showing of intent to harm the other contracting party or a reckless disregard of it").[11]

1.    The Implied Covenant Is Inapplicable Because The Terms Of Service Explicitly Allow Cablevision To Remove Channels Without Liability.

"A claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *ICD*

---

[11]    *See also Lawrence v. Richman Grp. of Conn., LLC*, No. 3:03CV850, 2004 WL 2377140, at *6 (D. Conn. Sept. 30, 2004) (to breach the covenant under Connecticut law, the defendant must act in "bad faith," defined as actions involving "fraud or improper motive"); *Bartello v. Option One Mortg. Corp.*, L-1577-06, 2009 WL 137229, at *4 (N.J. Super. Ct. App. Div. Jan. 22, 2009) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.").

*Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997); *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002) (holding that there is "no analytical basis to include an implied covenant claim" where such claim and claim for breach of express provision "reflected one and the same alleged breach"); *see also Bacarella Transp. Servs., Inc. v. Rightway Logistics, LLC*, No. 08-1487, 2009 WL 322871, at *4 (D. Conn. Feb. 10, 2009) (plaintiff must allege "some fact, above and beyond the breach of the contract, that would permit a court to infer bad faith"). Here, Plaintiffs' implied covenant claim rests in large part on the same conduct that Plaintiffs allege in support of their flawed breach of contract claim: Cablevision's alleged failure to provide the Fox Channels, and its failure to provide rebates due to the Fox Withdrawal (neither of which it is obligated to do in any event). To the extent plaintiffs' implied covenant claim is duplicative of their breach of contract claim, it should be dismissed.

Nor can Plaintiffs, through the artifice of an "implied" covenant, create a right to receive the Fox Channels or a refund, given that the express provisions of the Terms of Service explicitly foreclose any such right. As the New York State Supreme Court has already held, the provision in the Terms of Service explicitly allowing Cablevision to remove channels "precludes any finding that Cablevision acted in such a manner so as to deprive plaintiffs of the right to receive benefits under their agreement" when it drops certain programming from its lineup. *Tepper v. Cablevision Sys. Corp.*, No. 11132/02, slip op. at 9 (N.Y. Sup. Ct. Mar. 11, 2004) , *aff'd*, 797 N.Y.S.2d 131 (N.Y. App. Div. 2005) (Golden Decl. Ex. F); *see also Verrastro v. Middlesex Ins. Co.*, 540 A.2d 693, 699 (Conn. 1988) (good faith and fair dealing "cannot be applied to achieve a result contrary to the clearly expressed terms of a contract"); *Bonnieview Homeowners Ass'n v. Woodmont Builders, LLC*, 655 F. Supp. 2d 473, 510 (D.N.J. 2009) (covenant of good faith and fair dealing "cannot override an express term in the contract").

Because the Terms of Service explicitly give Cablevision the right to remove channels without incurring refund obligations to subscribers, Plaintiffs cannot plausibly claim that Cablevision's adherence to those contractual provisions deprived them of the benefits of the contract.

2. **The Implied Covenant Does Not Allow Plaintiffs To Sue On Cablevision's Negotiating Strategy Towards News Corp.**

Plaintiffs fare no better with their allegation that Cablevision breach the implied covenant of good faith and fair dealing in the Terms of Service by failing to negotiate in good faith to secure the necessary contractual rights to allow it to continue transmitting the Fox Channels. (*See* CAC ¶ 55(d).) Nothing in the Terms of Service obligate Cablevision to engage in any efforts to secure rights to any particular programming, and "the covenant of good faith cannot add a substantive provision to a contract," nor can it "enlarge a party's rights." *Broder v. Cablevision Sys. Corp.*, 329 F. Supp. 2d 551, 559 (S.D.N.Y. 2004), *aff'd*, 418 F.3d 187 (2d Cir. 2005).

In addition, Plaintiffs' "allegation" of Cablevision's supposed bad faith in its negotiations with News Corp. is nothing more than an unsupported legal conclusion that falls far short of Plaintiffs' pleading obligations. *See Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, No. 09-0196, 2011 WL 94169, at *5 (N.D.N.Y. Jan. 11, 2011) (holding that "conclusory allegations of a party's failure to act in good faith alone are insufficient"). The Complaint does not allege any negotiating position taken by Cablevision with which Plaintiffs quibble, other than Cablevision's refusing to acquiesce immediately to News Corp.'s demands in order to maintain the rights to carry the Fox Channels. Such a negotiating stance hardly constitutes bad faith, and indeed would fall comfortably within the FCC's rules defining good faith in retransmission negotiations. *See* 47 CFR § 76.65(b) (listing acts or practices that violate the duty of good faith in negotiating rebroadcast agreements); *cf. ATC Broadband LLC v. Gray*

15

*Television Licensee, Inc.*, 24 FCC Rcd. 1645 (2009) (finding that broadcaster, which had abruptly cut off negotiations and refused to correspond with the cable provider, had not negotiated in bad faith).

Plaintiffs' theory fails for the additional reason that, by their own account, Cablevision's supposed bad faith would have been directed toward News Corp., not Cablevision's subscribers.  Plaintiffs' failure (and inability) to allege some action on the part of Cablevision taken with the intent to harm the parties to the contract at issue here (*i.e.*, its subscribers) is fatal to their claim for breach of the implied covenant of good faith and fair dealing in its agreement with its customers. *See, e.g., Wells Fargo Bank NW., N.A. v. Sundowner Alexandria, LLC*, No. 09-7313, 2010 WL 3238948, at *4 (S.D.N.Y. Aug. 16, 2010) (allegation of breach of implied covenant must involve bad-faith "targeted" at party to the contract).

Finally, even if Plaintiffs had standing to complain about Cablevision's negotiations with News Corp., the implied covenant of good faith and fair dealing does not eliminate a party's right to act in its own interest, even if doing so may incidentally lessen the other party's anticipated fruits of the contract. *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 408 (2d Cir. 2006).  Here, Cablevision's negotiating position with News Corp. manifestly represented Cablevision's efforts to protect its interests in keeping rates down, and was therefore entirely consistent with its good faith obligations to subscribers.

3.   Plaintiffs' "Concealment" Claim Fails To State A Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

Plaintiffs also assert that Cablevision breached the implied covenant of good faith and fair dealing by supposedly "concealing the facts" that it knew there was a "distinct likelihood" that the Fox Channels might not be offered.  (CAC ¶ 55(b).)  First, this claim sounds in fraud, and should be dismissed because Plaintiffs fail to plead the alleged concealment with

particularity.  *See UBS Asset Mgmt. (New York) Inc. v. Wood Gundy Corp.*, 914 F. Supp. 66, 71-72 (S.D.N.Y. 1996) (stating that Rule 9(b) applies to claim for "breach of an implied covenant of good faith and fair dealing" arising out of "alleged misrepresentations and omissions").  Second, Plaintiffs fail to explain how advertisements that supposedly misled them about the likelihood of the Fox Withdrawal "deprive[d]" any subscriber "of his or her benefits under the contract." *See Bartello*, 2009 WL 137229, at \*4.  Finally, Plaintiffs cannot plausibly claim that they were deceived, given that the possibility of the Fox Withdrawal was well-publicized by the media weeks in advance.

## C.   The Existence Of The Terms Of Service Precludes Plaintiffs' Claim For Unjust Enrichment As A Matter Of Law.

Plaintiffs concede that the Terms of Service constitute a valid and legally enforceable contract between Cablevision and the members of the putative class.  That concession precludes, as a matter of law, a quasi-contract claim under an unjust enrichment theory. *See Chestnut v. Wells Fargo Bank, N.A.*, No. 10-4244, 2011 WL 838914, at \*3 (E.D.N.Y. March 2, 2011) (Seybert, J.) (plaintiff failed to state a claim for unjust enrichment because "an express contract indisputably governs the parties' dispute").  The unjust enrichment claim should therefore be dismissed.

## D.   Plaintiffs' "Consumer Fraud" Claims Fail As A Matter Of Law.

The Complaint also alleges that Cablevision engaged in "consumer fraud."[12]  As shown below, Plaintiffs' failure to adequately plead the essential elements of these claims mandates their dismissal.

---

[12]   Count Four alleges that Cablevision violated New York GBL §§ 349 and 350, New York's consumer protection law. (*See* CAC ¶¶ 62-71.) Count Five alleges that Cablevision violated the New Jersey Consumer Fraud Act, N.J.

1.   <u>Plaintiffs Fail To Plead Fraud With Particularity.</u>

Though premised on three different states' laws, each of Plaintiffs' three

consumer fraud claims rests on the assertion that Cablevision misled, deceived, and defrauded its

subscribers with regard to its carriage of the Fox Channels.  (*See* CAC ¶¶ 40, 62-90.)  Because

Plaintiffs' claims sound in fraud, Rule 9(b)'s heightened pleading requirements apply.[13]  *See*

*Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (the language of Rule 9(b) is "cast in terms

of the conduct alleged, and is not limited to allegations styled or denominated as fraud or

expressed in terms of the constituent elements of a fraud cause of action"); *see also Ozbakir v.*

*Scotti*, No. 09-6460, 2011 WL 477039, at *17 (W.D.N.Y. Feb. 10, 2011) (applying Rule 9(b) to a

Section 349 claim); *Jatras v. Bank of America Corp.*, No. 09-3107, 2010 WL 5418912, at *6

(D.N.J. Dec. 23, 2010) (Rule 9(b) applies to New Jersey Consumer Fraud Act claim); *Aviamax*

*Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 08-1958, 2010 WL 1882316, at *9 (D. Conn.

May 10, 2010) (applying Rule 9(b) to a Connecticut Unfair Trade Practices Act claim).

Those heightened requirements obligate Plaintiff to "state with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To meet that standard, the

Complaint must, but does not, "specify the time, place, speaker, and content of the alleged

---

Stat. Ann. § 56:8-1 *et seq.*  (*See id.* ¶¶ 72-82.)  Count Six alleges that Cablevision violated the Connecticut Unfair
Trade Practices Act, Conn. Gen. Stat. Ann. § 42-110a.  (*See id.* ¶¶ 83-90.)

[13]   Cablevision recognizes that a plaintiff need not plead fraud to assert a claim under New York GBL §§ 349 and
350 and the Connecticut Unfair Trade Practices Act, in which case Rule 9(b) would not apply.  *See, e.g., Woods v.*
*Maytag Co.*, No. 10-0559, 2010 WL 4314313, at *14 (E.D.N.Y. Nov. 2, 2010).  It is doubtful, however, that
Plaintiffs would be able to recast their New Jersey consumer fraud claims to avoid Rule 9(b).  *See Jatras v. Bank of*
*America Corp.*, No. 09-3107, 2010 WL 5418912, at *6 (D.N.J. Dec. 23, 2010)) (New Jersey CFA claims in federal
court must be pled under Rule 9(b)); *but see Porter v. Property Damage Control Group, Inc.*, No. 03-5972, 2007
WL 2907403, at *3 (E.D.N.Y. Sept. 28, 2007) (complaint pleading "unconscionable practices" under New Jersey
Consumer Fraud Act subject only to Rule 8(a) and noting that every other court has applied Rule 9(b) to New Jersey
Consumer Fraud claims).  In any event, where, as here, the claims rest on a fraud theory, Rule 9(b) applies.  *See*
*Ozbakir v. Scotti*, No. 09-6460, 2011 WL 477039, at *17 (W.D.N.Y. Feb. 10, 2011); *Aviamax Aviation Ltd. v.*
*Bombardier Aerospace Corp.*, No. 08-1958, 2010 WL 1882316, at *9 (D. Conn. May 10, 2010).

misrepresentations." *UBS Asset Mgmt.*, 914 F. Supp. at 71. These heightened pleading requirements serve "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lind v. New Hope Prop., LLC*, No. 09-3757, 2010 WL 1493003, at *4 (D.N.J. Apr. 13, 2010) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)).

The Complaint does not contain a single allegation substantiating its fraud theory. It does not set forth any supposedly fraudulent statement; it does not identify any person who made a fraudulent statement; and it does not identify any time at which a fraudulent statement was made. Rather, Plaintiffs offer the hollow legal conclusions that Cablevision "knew or should have known" it would be unable to provide Fox programming and that Cablevision's unparticularized actions were "materially misleading," "unlawful," "immoral," "unethical," or "otherwise unfair." (*See* CAC ¶¶ 63, 69, 73, 84, 89.) Bare legal platitudes such as these are routinely rejected as insufficient to plead fraud under any pleading standard, much less the heightened standard of Rule 9(b). *See Wilson v. Dalene*, 699 F. Supp. 2d 534, 550 (E.D.N.Y. 2010) ("Conclusory allegations of fraud will be dismissed under Rule 9(b).").

2.    Plaintiffs Plead No Injury-Causing Deception By Cablevision.

Even if Plaintiffs were to abandon their fraud theory and instead try to assert non-fraud "deceptive practices" claims,[14] they would fail due to the absence of any specific allegations of deceptive conduct. To state such a claim under New York GBL § 349, Plaintiffs "must allege that [Cablevision] has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive

---

[14]    Because Plaintiffs have alleged misrepresentations and concealment rather than "unconscionable practices" it is doubtful they will be able to recast their New Jersey Consumer Fraud claim to avoid 9(b)'s particularity requirements. *See Jatras v. Bank of America Corp.*, No. 09-3107, 2010 WL 5418912, at *6 (D.N.J. Dec. 23, 2010).

act or practice." [15] *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009).  Similarly, to state a claim under the Connecticut Unfair Trade Practices Act, Plaintiffs "must establish both that [Cablevision] engaged in a prohibited act and that the prohibited act was the proximate cause of the harm to the [Plaintiffs]." *Aviamax Aviation Ltd.*, 2010 WL 1882316, at *9.  They must also allege how and why Cablevision's actions were immoral, unethical, or unfair, as well as why their injuries were "substantial." *Id.*

Thus, New York and Connecticut law require Plaintiffs to allege deception or some other prohibited or unlawful act on the part of Cablevision.  And even under Rule 8(a)'s liberal pleading standard, "[g]eneral references to advertisements and statements will not be sufficient" to state a claim under GBL § 349.  *Woods v. Maytag Co.*, 2010 WL 4314313, at *16; *see also Gabriele v. Sanzaro*, No. 10-38, 2010 WL 2860730, at *3 (D. Conn. July 19, 2010) (dismissing plaintiff's CUTPA claim because it did not allege "how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy").  While the Complaint asserts a number of different theories as to how Cablevision supposedly deceived its subscribers, none of them suffices.

     i.   Plaintiffs' "False Advertising" Theory Fails Because They Do Not Identify Any Advertisement Run By Cablevision During The Relevant Period.

Plaintiffs allege that Cablevision "advertised that it carried Fox Programming," and "failed to advise" (or "failed to timely advise") members of the putative class that it would

---

[15]  Count Four also contains a claim for violations of GBL § 350, New York's false advertising statute.  (*See* CAC ¶ 71.)  Plaintiffs asserting such claims must plead reliance, which means they must "point to a specific advertisement or public pronouncement . . . which was undoubtedly seen by all class members" upon which Plaintiffs relied.  *Leider v. Ralfe*, 387 F. Supp. 2d 283, 298 (S.D.N.Y. 2005) (internal quotations and alterations omitted).  Plaintiffs have not pled that they relied on *any* advertisements, let alone identified a specific one on which they supposedly relied.  Moreover, plaintiffs' claim that Cablevision failed to advertise the possibility of the Fox Withdrawal fails both because they point to nothing imposing that obligation on Cablevision, and because the possibility of the Fox Withdrawal was in fact well publicized.

cease providing Fox Channels.  (*See* CAC ¶¶ 20, 64, 74, 85.)  Presumably, Plaintiffs are attempting to assert that Cablevision advertised that it carried Fox Channels at a time when it knew that it would be losing the necessary retransmission rights.  But these conclusory allegations are wholly devoid of factual support.  The Complaint fails to identify a single advertisement run by Cablevision to that effect, let alone the manner in which any such advertisement was deceptive.  Given the absence of any such factual support, the Court should not credit Plaintiffs' conclusory allegation that Cablevision somehow deceived customers through advertisements regarding the Fox Channels.  *Woods v. Maytag Co.*, 2010 WL 4314313, at *15-16 (complaint dismissed because plaintiff "failed to provide enough factual support to plausibly support the contention that a deceptive act or practice has taken place").

Plaintiffs compound their pleading deficiencies regarding Cablevision's supposed (but unpled) misrepresentations and omissions by failing to allege that any advertisement by Cablevision caused them actual injury.  This too is fatal to their claim, because GBL § 349 requires a plaintiff to allege that the alleged deception caused him actual injury.  *DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 58 (E.D.N.Y. 2002) (citing *Gaison v. Guardian Life Ins. Co. of America*, 725 N.E.2d 598, 603-04 (N.Y. 1999)), *aff'd*, 50 F. App'x 475 (2d Cir. 2002).

Finally, plaintiffs cannot plausibly claim that they were deceived, much less injured, by a Cablevision advertisement regarding its ability to carry the Fox Channels, given the extensive media coverage leading up to the Fox Withdrawal regarding the possibility that Cablevision would lose its retransmission rights to those channels.  The Court can take judicial notice of that reporting, *see Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004), and it prevents Plaintiffs from plausibly claiming that they were somehow deceived about Cablevision's ability to carry the Fox Channels.  *See Pelman v. McDonald's Corp.*, 237 F. Supp.

2d 512, 529 (S.D.N.Y. 2003) (claim dismissed because "plaintiffs fail to allege that the [allegedly deceptive] information . . . was solely within [defendant's] possession or that a consumer could not reasonably obtain such information").

### ii. Cablevision's Collection Of Fees Consistent With The Terms Of Service Cannot Form The Basis For A Consumer Fraud Claim.

Plaintiffs also theorize that Cablevision's collection of monthly subscriber fees from members of the putative class somehow supports their claim for consumer fraud. (*See* CAC ¶¶ 66, 79, 87.)  It does not.  There is nothing unlawful, much less deceptive, about Cablevision's collection and retention of cable subscription fees.  Cablevision was lawfully entitled to those payments, and the Terms of Service imposed no obligation to provide a refund. Cablevision's adherence to its contract with subscribers cannot constitute a deceptive practice. *See Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687, 687 (N.Y. App. Div. 1994) ("fully disclosed" business practices do not violate GBL § 349); *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 515 (D.N.J. 2009) (allegation that bank misled consumer about overdraft policy "unequivocally belied by the plain terms of the parties' Agreement").[16]

Given that the express terms of the Terms of Service provide that all channels, including the broadcast channels at issue here, are subject to change, Plaintiffs cannot plausibly claim that they were "deceived" by Cablevision's charging those fees.

---

[16]    To the extent Count Five is based on Cablevision's "fail[ure] to timely advise [subscribers] that it would cease providing the Fox Channels programming," (CAC ¶ 78), it should be dismissed for the additional reason that Plaintiffs have not pled that Cablevision acted with scienter, a necessary element of any omissions claim under the New Jersey Consumer Fraud Act. *See Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009).

## II.   CABLEVISION SHOULD NOT BE ENJOINED FROM SIGNING FUTURE CONTRACTS WITHOUT ARBITRATION PROVISIONS.

In their Seventh Cause of Action, Plaintiffs request that this Court bind Cablevision's hands in future retransmission negotiations by permanently enjoining Cablevision from entering into "any future broadcast contract" unless it has a "mandatory dispute resolution mechanism, requiring resolution of any contract dispute prior to the expiration of such contract." In doing so, Plaintiffs ask the Court to go far beyond its power and enjoin Cablevision from engaging in lawful future conduct, to the potential detriment of the very subscribers on whose behalf Plaintiffs purport to act.

First, "[w]hen Congress expressly delegates to an administrative agency the authority to make specific policy determinations, courts must give the agency's decision controlling weight." *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 324 (1994). Here, the FCC has determined that "mandatory binding dispute resolution procedures would be inconsistent with" Section 325 of the Cable Act. *Notice of Proposed Rulemaking: In the Matter of Amendment of the Commission's Rules Related to Retransmission Consent* ¶¶ 3 n.6, 18, MB Docket No. 10-71, FCC 11-31 (Mar. 3, 2011); *see also* 47 U.S.C. § 325.[17]  This Court should not use its injunctive powers to substitute for FCC rule-making.

Nor would such an injunction satisfy constitutional requirements.  "To obtain injunctive relief based on past injury the plaintiff must show a real and immediate threat that the injury will be continued or repeated." *Maier-Schule GMC, Inc. v. General Motors Corp.*, 850 F. Supp. 1095, 1101 (W.D.N.Y. 1994) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Thus, a court may not issue an injunction "against something merely feared as liable to occur at

---

[17]   The *Notice of Proposed Rulemaking* is annexed to the Golden Declaration as Exhibit G.

some indefinite time in the future." *Advanced Global Tech., LLC v. XM Satellite Radio, Inc.*, No. 07-3654, 2007 WL 3196208, at *3 (S.D.N.Y. Oct. 29, 2007) (refusing to enjoin defendant from taking action in the future that "may possibly breach" contract with plaintiff) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)).

Here, Plaintiffs do not, and cannot, contend that Cablevision's failure to have secured an arbitration agreement with News Corp. was in any way actionable, or that the possibility of its failure to secure such rights in future retransmission agreements could give rise to a claim, let alone any "immediate threat" of injury to subscribers. Plaintiffs' request for injunctive relief is therefore improper because it is based on "nothing more than unripe speculation." *Advanced Global Tech.*, 2007 WL 3196208, at *3 (refusing to enjoin defendant from taking action in the future that "may possibly breach" contract with plaintiff). It would also improperly "impose unnecessary burdens on lawful activity." *Peavy v. Henderson*, No. 98-2669, 2000 WL 1240053, at *4 (E.D.N.Y. Aug. 28, 2000) (quoting *Brooks v. Giuliani*, 84 F.3d 1454, 1467 (2d Cir. 1996)).

Such an injunction would be unwarranted for the additional reason that it would be highly inequitable and contrary to the public interest. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The injunction sought by Plaintiffs would bind Cablevision, but not the counterparties with which it would be negotiating because they are not before the Court. *See* Fed. R. Civ. P. 65(d). Consequently, it would hand to every content provider from whom Cablevision requires retransmission consent unprecedented bargaining leverage over Cablevision and its subscribers. Such a counterparty would know that Cablevision would be judicially prohibited from entering into a retransmission agreement unless it contained such a dispute resolution provision, and could condition its willingness to agree to such a provision on

24

Cablevision's acquiescence to any number of outrageous demands. Cablevision would have no choice but to accept (or lose the programming). Alternatively, a broadcaster might simply refuse to enter into an agreement containing such a dispute resolution provision; in such a case, Cablevision would be required by the injunction to stop retransmitting the broadcaster's signal even though the terms offered by the broadcaster were otherwise favorable. Such an arrangement would be catastrophic for subscribers who would either be deprived of programming content altogether or forced to bear the economic brunt of the unreasonable demands extracted from Cablevision. Either way, the result would be highly inequitable and injurious to the public interest.

## CONCLUSION

For the foregoing reasons, Cablevision respectfully requests that the Consolidated Amended Complaint be dismissed with prejudice.

Dated: March 18, 2011
New York, New York

WILLKIE FARR & GALLAGHER LLP

Thomas H. Golden (tgolden@willkie.com)
Terence K. McLaughlin (tmclaughlin@willkie.com)
787 Seventh Avenue
New York, New York 10019
Phone: (212) 728-8000
Fax: (212) 728-8111

*Attorneys for Defendants Cablevision Systems
Corporation and CSC Holdings, LLC*

25