# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Cablevision Consumer Litigation | Master File No. 10-CV-4992 (JS) (AKT) |
| This document relates to: | ECF Case<br>Electronically Filed |
| All Actions | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS CABLEVISION SYSTEMS CORP. AND CSC HOLDINGS LLC'S
## MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

SHALOV STONE BONNER & ROCCO LLP
Ralph M. Stone
Susan M. Davies
260 Madison Ave., 17th Floor
New York, NY  10016
Tel. (212) 239-4340
Fax (212) 239-4310

LAW OFFICES OF TODD J. KROUNER
Todd J. Krouner
Scott J. Koplik
Diana M. Carlino
93 North Greeley Avenue
Chappaqua, NY  10514
Tel. (914) 238-5800
Fax (914) 238-5820

CHITWOOD HARLEY HARNES LLP
Gregory E. Keller
Carol S. Shahmoon
185 Great Neck Road, Suite 340
Great Neck, NY 11021
Tel. (516) 773-6090

*Co-Lead Counsel for Plaintiffs*

April 22, 2011

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. iii

Introduction ........................................................................................................... 1

The Complaint ....................................................................................................... 3

    A. Parties ........................................................................................................ 3

    B. Cablevision Discontinued Carriage Of Fox Channels
       In October 2010 ........................................................................................ 3

    C. The Claims ................................................................................................. 5

Argument ............................................................................................................... 5

    I. The Complaint States Viable Claims ..................................................... 5

        A. Plaintiffs State A Claim For Breach Of Contract
           Pursuant To Cablevision's Terms Of Service ...................................... 6

           1. Paragraph 4 Of The Terms Of Service Requires Cablevision
              To Refund Customers For Service Changes Because
              Cablevision Failed To Transmit The Fox Channels ................................... 6

           2. Paragraph 17 Of The Terms Of Service Does Not Exculpate
              Cablevision From Liability Under Paragraph 4
              For A Disruption Of Service ....................................................................... 7

           3. A *Force Majeure* Excuse Is Not Available To Cablevision
              To Avoid Its Obligation To Provide Refunds To Its Subscribers .............. 11

              a. Force Majeure Cannot Override A Duty To Refund .......................... 12

              b. Failure To Obtain The Rights To The Fox Channels
                 Is Not *Force Majeure* ......................................................................... 13

           B. Plaintiffs Adequately Allege Breach Of An Implied
             Covenant Of Good Faith And Fair Dealing ........................................ 15

           1. Plaintiffs Are Entitled To Plead A Breach Of Implied Covenant
              In The Alternative To Their Breach Of Contract Claim ........................... 16

           2. Plaintiffs' Claim Does Not Depend On Cablevision's
              Negotiating Strategy .................................................................................. 17

i

3.   Cablevision Failed To Disclose
The Imminent Removal Of Fox Channels ..................................................17

C.   Plaintiffs Adequately Allege Unjust Enrichment ..................................................18

D.   Plaintiffs Adequately Allege
Statutory Consumer Protection Claims....................................................................19

1.   Fed. R. Civ. P. 9(b) Does Not Apply Consumer Protection Claims..........20

2.   Even If The Heightened Pleading Standard Of Rule 9(b) Applies,
Plaintiffs' Complaint Properly Pleads Injury-Causing Deception
With Particularity .....................................................................................21

a.   Fox Channels Remained In The Service Plans
But Were Not Provided...................................................................22

b.   Cablevision Retained Fees Billed In Advance
For Undelivered Services...................................................................24

II.  Plaintiffs State A Claim For Injunctive Relief...........................................................24

Conclusion ............................................................................................................................25

# TABLE OF AUTHORITIES

*Cases*

*407 East 61st  Garage, Inc. v. Savoy Fifth Avenue Corp.*
23 N.Y. 2d 275 (1968) .................................................................................12

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*
98 N.Y. 2d 144 (2002) ........................................................................... 15-16

*ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.*
390 F. Supp. 2d 212 (E.D.N.Y. 2005) ...........................................................18

*Ahlstrom Machinery Inc. v. Associated Airfreight Inc.*
675 N.Y.S. 2d 161 (App. Div. 1998) ...............................................13, 14, 15

*In the Matter of the Arbitration Between Allstate Ins. Co. and Stolarz*
81 N.Y. 2d 219 (1993) ...................................................................................6

*Arcand v. Brother Int'l Corp.*
673 F. Supp. 2d 282 (D.N.J. 2009) ...............................................................24

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009) ...................................................................................5

*Aviamax Aviation Ltd. v. Bombadier Aerospace Corp.*
2010 WL 1882316 (D. Conn. May 10, 2010) ................................................21

*Benvenuto v. Rodriguez*
279 A.D. 162 (1st Dep't 1951)
*app. denied* 109 N.Y.S.2d 360 (App. Div. 1952) ..........................................10

*Bombay Realty Corp. v. Magna Carta, Inc.*
100 N.Y. 2d 124, 760 N.Y.S. 2d 734 (2003) .................................................10

*In re Calpine Corp.*
2007 WL 432678 (S.D.N.Y. Nov. 21, 2007) .................................................10

*Cheshire Mortgage Serv., Inc. v. Montes*
223 Conn. 80 (1992) .....................................................................................19

*Concord Village Mgmt. Co. v. Rubin*
101 Misc. 2d 625 (Dist. Ct. Suff. Cnty. 1979) ..............................................13

*Conntect, Inc. v. Turbotect, Ltd.*
1998 WL 91067 (D. Conn. Feb. 23, 1998) ..............................................19, 20

*Corsello v. Verizon New York, Inc.*
77 A.D. 3d 344, 908 N.Y.S. 2d 57 (App. Div. 2010) ...............................24, 25

*Cox v. Sears Roebuck & Co.*
138 N.J. 2, 647 A. 2d 454 (1994)..................................................................20, 22

*De La Concha of Hartford v. Aetna Life Ins.*
269 Conn. 424 (2004) ..................................................................................16

*Elow v. Svenningsen*
58 A.D. 3d 674, 873 N.Y.S. 2d 319 (App. Div. 2009) ...............................24-25

*Goldman v. Abbott Laboratories, Inc*
2001 WL 1558281 (N.D. Ill. Dec. 5, 2001)...................................................20

*Goldsmith v. Camden County Surrogate's Office*
408 N.J. Super. 376 (Super. Ct. App. Div. 2009) .........................................18

*Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.*
300 Conn. 254 (2011) ..................................................................................11

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*
296 Conn. 315 (2010) ..................................................................................22

*Hershmans Recycling, Inc. v. American Disposal Services of Mo., Inc.*
2003 WL 283813 (Conn. Super. Jan. 28, 2003) ...........................................12

*Jaccarino Const. v. Bethel Planning & Zoning Com'n*
2010 WL 3025823 (Conn. Super. June 1, 2010) ...........................................10

*Jatras v. Bank of America Corp.*
2010 WL 1882316 (D. Conn. May 10, 2010)................................................21

*Kel Kim Corp. v. Central Markets, Inc.*
70 N.Y. 2d 900 (1987) ......................................................................12, 14, 45

*Lee v. Bankers Trust Co.*
166 F. 3d 540 (2d Cir. 1999)...........................................................................6

*Leider v. Ralfe*
387 F. Supp. 2d 283 (S.D.N.Y. 2005)...........................................................23

*Lind v. New Hope Prop., LLC*
2010 WL 1493003 (D.N.J. Apr. 13, 2010) ...............................................21-22

*Macalloy Corp. v. Metallurg, Inc.*
284 A.D. 2d 227 (App. Div. 2001) ...............................................................14

*Maurizio v. Goldsmith*
230 F. 3d 518 (2d Cir. 2000)........................................................................19

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*
  85 N.Y. 2d 20 (1995) ...............................................................................................19, 22

*Ozbakir v. Scotti*
  2011 WL 477039 (W.D.N.Y. Feb. 10, 2011) ..................................................................21

*Pacifico v. Pacifico*
  920 A. 2d 73 (N.J. 2007)...............................................................................................11

*Paul v. Bank of America Corp.*
  2011 WL 684083 (E.D.N.Y. Feb. 16, 2011).....................................................................6

*Payne v. Fujifilm U.S.A., Inc.*
  2007 WL 4591281 (D.N.J. Dec. 28, 2007)......................................................................20

*Porter v. Property Damage Control Group., Inc.*
  2007 WL 2907403 (E.D.N.Y. Sept. 28, 2007) ................................................................20

*Ramirez v. STi Prepaid LLC*
  644 F. Supp. 2d 496 (D.N.J. 2009) ...............................................................................22

*RM 14 FK Corp. v. Bank One Trust Co., N.A.*
  37 A.D. 3d 272 (App. Div. 2007) ..................................................................................11

*In re Saranac Central School District*
  253 A.D. 2d 566 (App. Div. 1998) ................................................................................11

*Schirmer v. Souza*
  126 Conn. App. 759 (App. Ct. 2011)..............................................................................18

*Seitz v. Mark-O-Lite Sign Contractors, Inc.*
  210 N.J. Super. 646 (Super 1986)..................................................................................12

*Sorenson v. Bridge Capital Corp.*
  52 A.D. 3d 265 (App. Div. 2008) ..................................................................................16

*State of New Jersey v. Hudson Furniture Co.*
  398 A. 2d 900 (N.J. App. Div. 1979)..............................................................................20

*Strategic Alliance Partners, LLC v. Dress Barn, Inc.*
  386 F. Supp. 2d 312 (S.D.N.Y. 2005).............................................................................18

*Tepper v. Cablevision Sys. Corp.*
  No. 11132/02, slip op. (N.Y. Sup. Ct., Westchester Cnty. Mar. 11, 2004),
  *aff'd* 797 N.Y.S. 2d 131 (App. Div. 2005) ...................................................................10

*Toledano & Pinto (America) v. Anasae Corp.*
  83 N.Y.S. 2d 612 (Sup. Ct. 1948)..................................................................................13

*UBS Asset Mgmt. (New York) Inc. v. Wood Gundy Corp.*
914 F. Supp. 66 (S.D.N.Y. 1996) ................................................................... 17

*United Equities Co. v. First Nat'l City Bank*
383 N.Y.S. 2d 6 (App. Div. 1979) *aff'd* 41 N.Y. 2d 1032 (1977) ...................... 12

*Uribe v. Merchants Bank of New York*
91 N.Y. 2d 336 (1998) .................................................................................... 11

*Van-Go Transport Co., Inc. v. New York City Board of Ed.*
53 F. Supp. 2d 278 (E.D.N.Y. 1999) ............................................................... 11

*Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co., Inc.*
30 N.Y. 2d 34 (1972) ...................................................................................... 15

*Waldman v. New Chapter, Inc.*
714 F. Supp. 2d 398 (E.D.N.Y. 2010) ............................................................. 22

*Welsbach Electric Corp. v. MasTec North America, Inc.*
7 N.Y. 3d 624 (2006) ........................................................................................ 6

*Wilson v. Amerada Hess Corp.*
168 N.J. 236 (2001) ........................................................................................ 16

*Woods v. Maytag Co.*
2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) .................................................... 20

## Rules & Codes

Fed. R. Civ. P. 8(d)(2) ............................................................................ 16-17, 18

Fed. R. Civ. P. 9(b) ............................................................................ 2, 17, 20, 21

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 5

Fed. R. Civ. P. 15 .............................................................................................. 24

Conn. Gen. Stat. § 42-110(a), *et seq.* ............................................................... 19

N.J.S.A. § 56:8-2 ............................................................................................... 19

N.Y. Gen. Bus. Law § 349 .................................................................. 19, 20, 23, 24

N.Y. Gen. Bus. Law § 350 .................................................................................. 23

## Other Authorities

30 *Williston on Contracts* § 77:31 (4th ed. 2010) ............................................... 14

Plaintiffs respectfully submit this memorandum of law in opposition to the Motion to
Dismiss the Consolidated Amended Complaint filed by defendants Cablevision Systems Corp
and CSC Holdings LLC (referred to collectively herein as "Cablevision").[1]

## INTRODUCTION

As a result of a contractual dispute between Cablevision and News Corp., Cablevision
stopped carrying certain News Corp. television channels (the "Fox Channels") for two weeks in
October 2010.  These were not trivial channels, but instead were channels that delivered some of
the most popular programming of the month.  For sports fans and television viewers generally,
those were two big weeks.

Cablevision's Terms of Service require its customers to pay for cable television services
in advance.  The Terms of Service further provide in Paragraph 4 ("Paragraph 4") that
Cablevision will "in any event" provide a pro-rata credit to subscribers for any "known
programming or service interruption in excess of 24 consecutive hours."  Yet, Cablevision now
argues in its motion to dismiss that it has no obligation to provide a credit to its customers for the
undisputed interruption of programming and services related to its dispute with News Corp.

Plaintiffs are Cablevision subscribers who have brought claims on a class action basis
against Cablevision for its failure to provide any compensation to them for the material
interruption in its delivery of the Fox Channels.  The Consolidated Amended Complaint (the
"Complaint" and cited herein as "Compl.") asserts claims for breach of contract, equitable claims
based on the inherent unfairness of Cablevision's retention of full subscriber fees when a
material portion of its service was interrupted and when it was not paying News Corp. for
channels that made up the basic calculus of subscriber fees, and state consumer protection law

---

[1]  Defendants' Memorandum of Law in Support of their Motion to Dismiss is cited herein as "Def. Br."

claims for classes in Connecticut, New Jersey and New York, the primary jurisdictions in which Cablevision operates.

Simply stated, and as adequately pled in the Complaint, Cablevision cannot avoid providing credits to its customers when it fails to provide services.  Not even Paragraph 17 of Cablevision's Terms of Service, on which Cablevision now heavily relies, allows it to simply interrupt delivery of any, or all, channels from its television service without providing a credit to customers.  Paragraph 17 of that contract of adhesion provides that programming is "subject to change in accordance with applicable law," but it does not negate or trump Cablevision's refund obligations under Paragraph 4.  Moreover, Cablevision's packages included the Fox Channels in October 2010, and they included the Fox Channels in September and November.  There was no "change" in the underlying programming that Cablevision committed to provide its customers and for which they were billed in advance.  There was simply a two-week programming or service interruption, for which Cablevision paid nothing to News Corp. but as to which it pocketed customer fees driven by the expectation of delivery of the Fox Channels.

Nor can Cablevision avoid its obligation to provide credits by claiming that it was unable to deliver the Fox Channels due to a *force majeure* event.  Under basic contract law principles, the failure to reach terms with News Corp. was not a *force majeure* event, and even if Cablevision could somehow claim *force majeure*, that would not relieve it of its obligation to provide credits for undelivered services.

Finally, the allegations in this case also involve a deceptive, unfair and unconscionable course of conduct directed at consumers in connection with their cable subscriptions, in violation of state consumer protection statutes.  These claims do not "sound in fraud" and thus are not subject to the heightened pleading standards of Rule 9(b), Fed. R. Civ. P.  Even if they were,

they are sufficiently detailed to place Cablevision on notice of what this suit is about.  As plaintiffs have more than adequately alleged in the Complaint, Cablevision's conduct has been grossly unfair to its subscribers.   The motion to dismiss should be denied in its entirety.

## THE COMPLAINT

### A.   Parties

Cablevision provides telecommunications and entertainment services in the tri-state area of New York, New Jersey and Connecticut.  *Compl. ¶¶ 16-17.*  The plaintiffs are customers of Cablevision in these states.  *Compl. ¶¶ 10-14.*  Prior to October 16, 2010, each of the plaintiffs, and members of the Class they seek to represent, contracted with Cablevision to receive cable television programming from Cablevision, including the Fox Channels: WNYW a/k/a Fox 5, WWOR a/k/a the My9 Channel, WTXF a/k/a Fox 29, Fox Business Network, National Geographic Wild and Fox Deportes.  *Compl. ¶ 19.*[2]

### B.   Cablevision Discontinued Carriage of Fox Channels in October 2010

Cablevision's Terms of Service provide that subscribers are billed monthly in advance for services to be received.  *Golden Decl. Ex. B, ¶1.*  Cablevision's Terms of Service also provide that Cablevision is obligated to give each customer a credit for each "known program or service interruption in excess of 24 consecutive hours…"  *Compl.  ¶23; Golden Decl. Ex. B, ¶4.*

For a two-week period, from October 16, 2010 through October 30, 2010, Cablevision failed to provide its customers with the Fox Channels.  *Compl.  ¶27.*  On or about October 15, 2010, Cablevision's agreement with News Corp., pursuant to which Cablevision carried the Fox Channels, expired.  According to News Corp., Cablevision rejected numerous proposals to enter into a new agreement, including proposals on the same terms and conditions of other cable

---

[2] Cablevision customers pay an average of approximately $150 per month to Cablevision for cable television services.  *Compl. ¶ 4.*

providers in the New York metropolitan market. *Compl. ¶¶ 3, 21-24.* This interruption of the Fox Channels was a reasonably foreseeable consequence of the expiration of Cablevision-News Corp. contract on October 15, 2011, especially given Cablevision's negotiating strategy with News Corp. as to the new contract. *Compl. ¶25.*

On October 16, 2010, after the contract had expired, Cablevision sent an e-mail message to its subscribers to inform them that they would be cut-off from viewing the Fox Channels, which the subscribers had prepaid Cablevision to deliver. The e-mail message provided no avenue for relief or compensation to subscribers, but instead directed Cablevision customers to lodge complaints with News Corp. Cablevision asked on the one hand that its customers "help" by putting pressure on News Corp.. On the other hand, Cablevision demanded that News Corp.."keep [customers] out of the negotiation." *Compl. ¶26.* During the interruption of Fox Channels programming, Cablevision replaced the Fox Channels with a self-serving loop asserting that News Corp. failed to negotiate in good faith, and encouraging customers to call News Corp. to complain about any service interruption. *Compl. ¶7.*

On October 29, 2010, News Corp. announced that it had resolved certain contractual issues with the Dish Network, a satellite television provider. *Compl. ¶28.* The next day, October 30, 2010, on the eve of the New York Jets vs. Green Bay Packers NFL football game then-to be aired on a Fox Channel, Cablevision promptly came to terms with News Corp., and restored the Fox Channels programming. *Compl. ¶29.*

To date, Cablevision has refused provide a credit to the class – consumers who prepaid for its services but did not receive those services. *Compl. ¶32.*

C.     **The Claims**

The Complaint asserts claims for breach of contract (*Compl. ¶¶47-50*), breach of the implied covenant of good faith and fair dealing (*Compl. ¶¶51-56*); unjust enrichment (*Compl. ¶¶57-61*); violations of the consumer protection laws of New York (*Compl. ¶¶62-71*) New Jersey (*Compl. ¶¶72-82*) and Connecticut (*Compl. ¶¶83-90*); and, for permanent injunctive relief (*Compl. ¶¶91-97*) because of Cablevision's (a) failure to provide the channels to its subscribers that Cablevision set forth in its channel lineup (*Compl. ¶¶ 55(a)*), (b) failure to disclose that its right to provide the Fox Channels in its channel line-up would expire on October 15, 2010 (*Compl. ¶¶55(b)*), and (c) failure to provide a credit to Plaintiffs or Class members for the interruption in the Fox Channels (*Compl. ¶¶55(c), 66, 79, 87*).[3]

## ARGUMENT

I.     **THE COMPLAINT STATES VIABLE CLAIMS**

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a court must accept as true all of the allegations contained in the complaint," *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), although the Court is not bound to accept legal conclusions. *Id*. To survive the motion, the complaint must state a claim that is "plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To make this determination, the Court engages in "a context-specific task" that requires it "to draw on its judicial experience and common sense." *Id*. at 1950. A complaint may be dismissed only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

---

[3] Defendants' recitation of the facts involves a discussion of many regulations under federal and state law. *Def. Br. at 2-5*. Defendants do not make any argument for dismissal based on a regulatory scheme, and it appears to be a red herring requiring no further response. In any event, the public record is replete with reports that regulators were powerless during the Cablevision-News Corp. imbroglio.

would entitle him to relief." *Paul v. Bank of Am. Corp.*, No. 09-CV-1932, 2011 WL684083, at

*2 (E.D.N.Y. Feb. 16, 2011) (citations omitted).

Plaintiffs have adequately pleaded facts supporting each of their claims.

**A.    Plaintiffs State A Claim For Breach of Contract Pursuant to Cablevision's Terms of Service**

Pursuant to Cablevision's Terms of Service, Cablevision is expressly obligated to provide

its customers with a pro-rata credit for interruptions in services or programming.  Plaintiffs

experienced a service or programming interruption when Cablevision failed to provide the Fox

Channels to its subscribers for two weeks in October 2010.  Despite its obligation, Cablevision

has not provided Plaintiffs or the Class a credit as required by its Terms of Service, and thus has

breached its contract.[4]

**1.    Paragraph 4 of the Terms of Service Requires Cablevision to Refund Customers For Service Charges Because Cablevision Failed to Transmit The Fox Channels**

Cablevision admits that its relationship with its customers is governed by a contract -- its

Terms of Service.  *Def. Br. at 9.*   Under the Terms of Service, customers are billed for their

cable service in advance, and pro-rata credits are to be provided for a program or service

interruption of more than 24 hours.  *Def. Br. at 6.*  The relevant language of the contract in

Paragraph 4, is as follows:

> **Disruption of Service**.   In no event shall Cablevision be
> liable for any failure or interruption of program
> transmissions or service resulting in part or entirely from
> circumstances beyond Cablevision's reasonable control.

---

[4] New York choice of law rules apply in this case, because a "federal court sitting in diversity applies the choice of law rules of the forum state." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999).  The Terms of Service has a clause adopting New York law, *Golden Decl. Ex. B, ¶ 32*, and New York choice of law principles would enforce that selection, because New York is the state in which Defendants do business, and thus, bears a reasonable relationship to the parties.  *Weisbach Electric Corp. v. MasTec North America, Inc.*, 7 N.Y.3d 624, 629 (2006) ("courts will enforce a choice of law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction").  Also, even if that clause were not enforced, there is no material difference among New York, Connecticut, and New Jersey as to the applicable contract principles, and thus, no choice of law analysis is necessary. *In the Matter of the Arbitration Between Allstate Ins. Co. and Stolarz*, 81 N.Y.2d 219, 225 (1993).

> Subject to applicable law, credit will be given for qualifying outages. In any event, if there is a known program or service interruption in excess of 24 consecutive hours (or in excess of such lesser time period pursuant to state law), Cablevision, upon prompt notification of such failure or interruption from Subscriber, will either provide Subscriber with a pro-rata credit relating to such failure or interruption or, at its discretion, in lieu of the credit provide alternative programming during any program interruption. Cablevision shall not be liable for any incidental or consequential damages.

*Golden Decl. Ex. B, at ¶ 4.*

Plaintiffs have alleged that prior to October 16, 2010, they each contracted with Cablevision to receive cable television programming including the Fox Channels *(Compl. ¶ 19),* and that between October 16 and October 29, 2010, the provision of the Fox Channels to customers was interrupted *(Compl. ¶¶ 26-29).* Cablevision sent an email message to its customers on October 16, 2010 providing notice of the interruption. *Compl. ¶ 26; Golden Decl.. Exs. D, E.* Accordingly, Paragraph 4 entitled customers to a pro-rata credit for their monthly cable charges that customers were required to pay in advance pursuant to the Terms of Service. *Golden Decl. Ex. B, at ¶ 1.* Nevertheless, Cablevision has not provided any credit. Thus, Plaintiffs have alleged a valid claim for breach of contract. *Compl. ¶ 32.*

### 2. Paragraph 17 of the Terms of Service Does Not Exculpate Cablevision From Liability Under Paragraph 4 for a Disruption of Service

Cablevision argues that it "is not obligated to provide any particular channels," and contends that it therefore need not provide any credit for the interruption of the Fox Channels in October, 2010. *Def. Br. at 10.* According to Cablevision, customers purchase services that are undefined and illusory. In essence, because subscribers pay in advance, Cablevision contends that it may eliminate contracted-for services retroactively. Not only does Cablevision's

description of its customer arrangement offend common sense notions of fairness, it has no support in the language of the Terms of Service.

Cablevision's interpretation relies on Paragraph 17 of the Terms of Service, which states as follows:

> **Programming**.  All programming, program services, program packages, number of channels, channel allocations, broadcast channels, interactive services, e-mail, data offerings and other Services are subject to change in accordance with applicable law.

*Golden Decl. Ex. B, at ¶ 17*.  Cablevision argues that because it was not permitted by News Corp. to retransmit the Fox Channels after its contract with News Corp. had expired, Cablevision was entitled to delete the Fox Channels from customer service packages "in accordance with applicable law."  *Def. Br. at 10*.  Cablevision further argues that its right to delete any and all channels excuses it from its refund obligation, because "the deletion of a single channel cannot constitute an 'interruption' triggering refund liability."  *Def. Br. at 11*.

The interruption in the delivery of the Fox Channels was neither a "deletion" nor a "change in accordance with applicable law."  The "unlawfulness" of retransmitting the Fox Channels resulted solely from Cablevision's failure to pay or otherwise reach an agreement with News Corp., not from any impediment beyond its control.  Moreover, Cablevision did not "delete" the Fox Channels from its offered cable television service packages pursuant to Paragraph 17.  It never notified its customers that it was making a "change" to the channels that it was providing under its customer plans, and in fact, never made a change.  Following the two-week interruption, it provided the same services and programs that it was providing before the interruption.  There was no "change" in programming, as Cablevision contends, but instead an interruption in the Fox Channels.

But even if Cablevision were correct that it was entitled to delete (and in fact did "delete") the Fox Channels pursuant to Paragraph 17, that Paragraph does not exculpate Cablevision from liability under Paragraph 4 of the Terms of Service.  There are no fewer than three clauses that set forth the limits on Cablevision's liability to its subscribers.[5]  If Cablevision intended to limit its liability as a result of deleting any of its services, it could have done so explicitly in its Terms of Service.  It failed to do so, however.  Paragraph 17 does not address liability; nor does it state any limitation on the applicability of Paragraph 4.

Moreover, Cablevision's reading of Paragraph 17 to allow service reductions without a corresponding credit for amounts already billed is particularly inappropriate in light of the breadth of Paragraph 17, which covers not only programming, but also email and data services. The notion that Cablevision can interrupt all such services without advance notice and without returning the advanced fees relating to those services cannot be a fair reading of the Terms of Service, given that under Paragraph 4 a customer is entitled to a refund if those same services were interrupted for only 24 hours.

Cablevision's argument also does not fit with other provisions of the Terms of Service. For example, Paragraph 18, which bears a striking resemblance to Paragraph 17 provides:  "All rates are subject to change in accordance with applicable law."  *Golden Decl. Ex. B, at ¶ 18*. Cablevision could not argue persuasively on the basis of the language in ¶ 18 that it has the right to change rates retroactively and without advance notice.  By the same token, Cablevision cannot change services retroactively without providing a credit for amounts already billed.

Cablevision's interpretation of Paragraph 17 is inconsistent with Paragraph 4 itself, which appears to give Cablevision, in the event of a "programming interruption," the option to

---

[5] Golden Decl. Ex. B., at ¶ 4 ("Cablevision shall not be liable for any incidental or consequential damages"); ¶ 23 ("Limitation of Liability"); ¶ 27 ("Cablevision shall not be liable for…").

substitute for the interrupted programming instead of providing a credit.[6]  The option stated in

Paragraph 4 would have no meaning if Paragraph 17 gives Cablevision the right to simply delete

entire channels.  Contract law requires that "all parts of a contract must be read in harmony to

determine its meaning."  *Bombay Realty Corp. v. Magna Carta, Inc*., 100 N.Y.2d 124, 127, 760

N.Y.S.2d 734, 736 (2003).[7]

   Cablevision can find no support for its contract arguments from *Tepper v. Cablevision*

*Sys. Corp*., No. 11132/02, slip op. at 9 (N.Y. Sup. Ct. Mar. 11, 2004), *aff'd* 797 N.Y.S.2d 131

(N.Y. App. Div. 2005).  In that case, subscribers brought suit when Cablevision lost its rights to

broadcast Yankee games via its MSG network.  In dismissing the claims, the court held that

Cablevision had not made a promise to televise a particular show, Yankee games, indefinitely.

*Id*.  That court's decision, however, does not provide a basis for construing the Terms of Service

to allow Cablevision to interrupt programming without advance notice and without crediting

amounts already billed.

   If anything, Plaintiffs' construction of the Terms of Service is supported by *Tepper*.  *Id.*

There, the Court found it important that Cablevision gave notice to its subscribers that it would

not broadcast 2002 Yankees games, *before the season started*, allowing subscribers to cancel or

downgrade their service packages.  *Id*.  Also, Cablevision offered subscribers a rebate in excess

of $30 million dollars for the loss of Yankee programming.  *Id*. at 4.  In this case, unlike *Tepper*,

---

[6]The "alternative programming" clause is not applicable to this case, because there is no dispute that Cablevision did
not provide *any* programming – let alone substitute programming – during the Fox Channels interruption, but
instead replaced the Fox Channels with a self-serving loop encouraging customers to complain to News Corp.
*Compl.* ¶ 7.
[7]*See also In re Calpine Corp*., No. Civ. 07-8493, 2007 WL 4326738, at *8 (S.D.N.Y. Nov. 21, 2007) ("A court
should avoid construing a contractual provision in a manner that renders contractual language meaningless or
superfluous"); *Benvenuto v. Rodriguez*, 279 A.D. 162, 163 (App. Div. 1951) , *app. denied*, 109 N.Y.S.2d 360 (1952)
(concluding that contract clause that defendant argued gave either party the right to abandon the contract at any time
prior to its consummation was contrary to rules of contract construction, because it would render meaningless other
clauses that triggered a cancellation right for buyer only if defendant-seller breached certain representations);
*Jaccarino Constr. v. Bethel Planning & Zoning Comm'n*, No. DBDCV0940101695, 2010 WL 3025823, at *7
(Conn. Super. June 1, 2010).

Plaintiffs were not given (a) notice of the pending interruption, or (b) the opportunity to cancel their subscriptions in advance of the Fox Channels interruption.  Additionally, they were not offered rebates for the service interruption.

Because the Terms of Service unambiguously entitle customers to a credit for interrupted programming or services, the Court has no reason to inquire further into intent.[8]  If there were an ambiguity, however, Cablevision could not escape liability on the basis of its preferred interpretation of the Terms of Service.  Well-settled contract law principle states that ambiguities are to be construed against the drafter, particularly if they relate to an exclusionary clause.[9]  Cablevision drafted the Terms of Service, and regardless of its intent, Cablevision cannot avail itself of a liability exemption that it failed to include.

### 3.  A *Force Majeure* Excuse Is Not Available To Cablevision To Avoid Its Obligation To Provide  Refunds To Its Subscribers

In addition to arguing that Paragraph 17 provides immunity from the obligations of Paragraph 4, Cablevision also argues that the *force majeure* clause contained in Paragraph 4 itself is applicable.  That clause states that "[i]n no event shall Cablevision be liable for any failure or interruption of program transmissions or service resulting in part or entirely from

---

[8] *Uribe v. Merchants Bank of New York*, 91 N.Y.2d 336, 341-42 (1998) ("when the meaning of [a] … contract is plain and clear … [it is] entitled to [be] enforced according to its terms … [and] not to be subverted by straining to find an ambiguity which otherwise might not be though to exist"; "'tests to be applied  … are common speech … and the reasonable expectation and purpose of the ordinary business[person],' in the factual context in which terms of art and understanding are used, often also keyed to the level of business sophistication and acumen of the particular parties"; "interpretive language 'should not compel resort to a magnifying glass and lexicon'") (citations omitted); *RM 14 FK Corp. v. Bank One Trust Co., N.A.*, 37 A.D.3d 272, 274 (App. Div. 2007) ("there is no basis 'to interpret an agreement as impliedly stating something which the parties have neglected to specifically include'") (citations omitted); *Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.*, 300 Conn. 254, 260 (2011) ("[w]here the language is unambiguous, we must give the contract effect according to its terms"); *Pacifico v. Pacifico*, 920 A.2d 73,77 (N.J. 2007) ("the court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'")
[9] *Uribe*, 91 N.Y. 2d at 341; *Van-Go Transport Co., Inc. v. New York City Board of Ed.*, 53 F.Supp.2d 278, 283 (E.D.N.Y. 1999) ("ambiguities in a contract should be construed against the drafter, especially when the provision being construed would cut off a party's right to obtain any remedy"); *In re Saranac Central School District*, 253 A.D.2d 566, 567 (App. Div. 1998); *Harbour Pointe LLC*, 300 Conn. at 260 ("where the language is ambiguous, however, we must construe those ambiguities against the drafter"); *accord Pacifico*, 920 A.2d at 78 (ambiguity is construed in favor of nondrafting party).

circumstances beyond Cablevision's reasonable control." *Golden Decl. Ex. B, ¶ 4.* But Cablevision's argument is flawed because (a) the *force majeure* clause does not and cannot relieve Cablevision of its obligation to refund subscriber payments for services not provided, and (b) the Fox Channels service interruption resulted from circumstances *entirely within Cablevision's control* – it resulted from Cablevision's failure to agree to a contract with News Corp.

### a. Force Majeure Cannot Override a Duty to Refund

*Force majeure* clauses are meant to "limit damages in cases where the reasonable expectation of the parties and the performance of the contract have been frustrated by circumstances beyond the control of the parties." *United Equities Co. v. First Nat'l City Bank*, 383 N.Y.S.2d 6, 9 (App. Div. 1976), *aff'd*, 41 N.Y.2d 1032 (1977). New York's highest court has recognized that the principles of *force majeure* have the same underpinnings as the doctrine of impossibility. *Kel Kim Corp. v. Central Markets, Inc*., 70 N.Y.2d 900, 902 (1987). [10] Like the doctrine of impossibility, "contractual force majeure clauses – or clauses excusing nonperformance due to circumstances beyond the control of the parties – under common law provide a similarly narrow defense. Ordinarily, only if the *force majeure* clause specifically includes the event that actually prevents a party's performance will that party be excused." *Id*. at 902-903. [11]

---

[10] A leading case on the impossibility doctrine, which is often cited in connection with *force majeure* cases, is *407 East 61st Garage, Inc. v. Savoy Fifth Avenue Corp*., 23 N.Y.2d 275 (1968). *Savoy* underscores that "where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused." *Id*. at 281. By the same token, "[n]onperformance dictated by economic hardship is not enough to fall within a *force majeure* provision." 30 Williston on Contracts § 77:31 (4th ed. 2010).

[11] The same principles apply in Connecticut and New Jersey. *See Hershmans Recycling, Inc. v. American Disposal Services of Mo., Inc*., No. CV0104504069, 2003 WL 283813, at *3-4 (Conn. Super. Jan. 28, 2003) (denying defense based on *force majeure* relating to materials shortage which was known risk); *Seitz v. Mark-O-Lite Sign Contractors, Inc*., 210 N.J.Super. 646, 650 (Super. 1986) (*force majeure* inapplicable to protect sign company from breach for failing to perform, despite illness of its sole competent employee).

Importantly, a *force majeure* clause can relieve a promisor of liability *only* for specific performance and consequential damages, so-called "benefit of the bargain" damages.[12]   A *force majeure* does not excuse the promisor's duty to refund advance payments when the promisor fails to perform.  For example, in *Toledano & Pinto (America) v. Anasae Corp.*, 83 N.Y.S.2d 612 (Sup. Ct. 1948), a shipping agent was required to refund freight charges to the promisee for goods that were never shipped.  The Court held that the *force majeure* clause relieved defendant only of damages for non-delivery,[13] but "did not override the absolute duty to refund" advance payments.  *Id* at 614.  Thus, even if Cablevision could rely on a *force majeure* excuse (which it cannot, as explained below), it would still have to provide a credit for the interrupted Fox Channels, for which it had already billed its customers.

Paragraph 4 of the Terms of Service expressly supports this conclusion.  The sentence creating Cablevision's affirmative credit obligation, begins with the phrase: "[i]n any event."  The agreement, therefore, makes it clear that even if a *force majeure* event prevents Cablevision from performing its obligations, the subscriber is "in any event" entitled to a credit for services the subscriber paid for but did not ultimately receive.

### b.  Failure to Obtain The Rights To The Fox Channels Is Not *Force Majeure*

Cablevision is not protected from any liability by *force majeure* because it admits that the sole reason for the Fox Channels interruption was its failure to agree to the price demanded by News Corp.  *Def. Br. at 7.*  Under basic contract principles, financial impracticability is not *force*

---

[12] *Cf. Ahlstrom Machinery Inc. v. Associated Airfreight Inc.*, 675 N.Y.S.2d 161, 163 (App. Div. 1998) (where *force majeure* clause was inapplicable, court granted benefit of the bargain damages – difference in price between contract price offered by breaching promisor and price ultimately paid by promisee to another party).
[13] *Concord Village Management Co. v. Rubin*, 101 Misc.2d 625, 627-28 (Suff. Cnty. Dist. Ct. 1979) ("[e]ven if the Court were to accept a force majeure excuse of performance, that does not permit the party excused from performance to receive compensation for that which he was unable to do").

*majeure*.[14]  Cablevision could shift the risk that it would not obtain the rights to the Fox

Channels only by specifically providing that an "excusable event" included Cablevision's

unwillingness to pay the price demanded by its cable television programming providers.[15]  The

Terms of Service have no such specific liability exclusion.

The leading New York *force majeure* case, *Kel Kim Corp.*, *supra*, precludes

Cablevision's argument here.  In that case, a lessee was obligated under its lease to obtain

insurance to operate a roller skating rink, and obtained coverage for six years until its insurer

canceled.   The lessee was unable to provide replacement coverage for a period of months, due to

a "liability insurance crisis."  *Id.* at 901.  The Court rejected the lessee's declaratory judgment

action to excuse its noncompliance with the insurance provision, reasoning that broad contract

language excusing performance for circumstances "beyond the control" of a party was not

specific enough to protect the lessee.  The Court explained that for a *force majeure* clause to be

effective, it would have had to specifically provide that the lessee's "inability to procure and

maintain insurance" was an excuse for nonperformance.  *Id.* at 903.  *Accord Ahlstrom Machinery*

*Inc. v. Associated Airfreight Inc.*, 675 N.Y.S.2d 161 (App. Div. 1998) (snowstorm in winter does

not constitute *force majeure).*

*Kel Kim* and *Ahlstrom* establish that a *force majeure* clause is intended to protect a

promisor from liability only for breaches arising from unanticipated contingencies.[16]  An

eventuality that could be reasonably anticipated when the contract was created, in the absence of

a specific provision addressing that circumstance, cannot be a basis to avoid liability for breach.

---

[14] *Macalloy Corp. v. Metallurg, Inc.*, 284 A.D.2d 227, 227-28 (App. Div. 2001) (financial considerations brought about by environmental regulations do not constitute a *force majeure* event).

[15] *Kel Kim Corp.*, 70 N.Y.2d at 902-03; 30 *Williston on Contracts* § 77:31 (4th ed. 2010) ("[n]onperformance dictated by economic hardship is not enough to fall within a *force majeure* provision.")

[16] 30 *Williston on Contracts* § 77:31 (4th ed. 2010) ("An event outside of the control of a person or group might include acts of God, sudden illness, fire theft, and natural disasters or other situations *where parties cannot take actions to protect themselves from risk*") (emphasis added).

14

Like the shipper in *Ahlstrom* and the lessee in *Kel Kim*, Cablevision could reasonably anticipate the limited term of its retransmission contract with News Corp. and could reasonably anticipate that a new retransmission contract would have to be negotiated in order for Cablevision to perform on its subscriber contract.  Yet Cablevision's Terms of Service do not contain a specific exclusion addressing expiration of third party programming contracts.  As in *Ahlstrom* and *Kel Kim Corp*., without that specific liability exclusion, contract principles require Cablevision to perform or pay for its breach.

Cablevision's defense that  "[a] contract negotiation, by its very terms, means that neither side can fully control its outcome, and the pleading fiction that News Corp. played *no* role in the Fox Withdrawal should not be credited," (*Def. Br. at 12*) has no support in the case law.  The very purpose of contract law is to enforce an agreed-upon allocation of risk between contracting parties.  The risk of the failed contract negotiation between Cablevision and News Corp. was clearly allocated under the Terms of Service to Cablevision and not to its subscribers.  Cablevision subscribers are not in privity with News Corp.  Their contract is with Cablevision.  Cablevision's failure to deliver under that contract is a breach, no matter what good-faith efforts Cablevision purportedly undertook to avoid it.

**B.**      **Plaintiffs Adequately Allege Breach of an Implied Covenant of Good Faith and Fair Dealing**

An implied covenant is a pledge that no party to a contract "shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (citations omitted); *see also Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*, 30 N.Y.2d 34, 45 (1972) (there exists an implied covenant of fair dealing and good faith that is implicit in all contracts).  While these rights do not imply obligations "inconsistent with other

terms of the contractual relationship," they do encompass "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Jennifer Realty*, 98 N.Y.2d at 153 (citations omitted).  Such an implied covenant is breached when "a party acts in a manner that — although not expressly forbidden by any contractual provision — would deprive the other party of receiving the benefits under their agreement." *Sorenson v Bridge Capital Corp.*, 52 A.D.3d 265, 267 (N.Y. App. Div. 2008).[17]

Cablevision breached its implied covenants by failing to provide, and then not crediting for the loss of, the Fox Channels. *Compl. ¶55(a) & (c)*.  Plaintiffs' ability to watch the Fox Channels is clearly a "fruit of the contract" with Cablevision.  *Compl. ¶52*.  Plaintiffs each were billed in advance for the full range of cable television services, which included the Fox Channels.  *Compl. ¶ 19; Golden Decl. Ex. B, ¶ 1*.  Having accepted payment for the delivery of those services, Cablevision was obligated to deliver the Fox Channels or to reimburse plaintiffs for failing to do so.  *Compl. ¶ 23*.  Cablevision's failure to provide the programming for the pre-paid services and its retention of fees paid by plaintiffs and the class for those services highlights its bad faith.  Accordingly, a valid claim for relief is pled.

## 1. Plaintiffs Are Entitled To Plead A Breach of Implied Covenant In the Alternative To Their Breach of Contract Claim

Cablevision argues that Plaintiffs' implied rights to view the Fox Channels and receive a credit if Cablevision fails to provide such programming is duplicative of explicit contractual rights and should thus be dismissed.  *Def. Br. at 13-14*.  To the extent they are duplicative, but no

---

[17] The laws of Connecticut and New Jersey are not materially different.  S*ee De La Concha of Hartford v. Aetna Life Ins.*, 269 Conn. 424, 432 (2004) (stating that "every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement") (internal citations omitted); *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 245 (2001) (reaffirming the principal that "[i]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; which means that in every contract there exists an implied covenant of good faith and fair dealing.")

16

explicit contractual provision is deemed to exist, Plaintiffs are entitled to plead alternatively.  *See* Fed. R. Civ. P. 8(d)(2).

Cablevision also argues that it is immune from liability by Paragraph 17 of the Terms of Service.  *Def. Br. at 14-15*.  This argument is unpersuasive because, as discussed in Point I(A) herein, Paragraph 17 does not address the question of a credit for a service or programming interruption or for a deletion from the channel line-up.

### 2.   Plaintiffs' Claim Does Not Depend on Cablevision's Negotiating Strategy

As a basis to avoid the implied covenant claim, Cablevision argues that it was not required to negotiate with News Corp. in "good faith," but did so in any event.  *Def. Br. at 15*. Contrary to Cablevision's contention, Plaintiffs' claim does not impose any requirement on Cablevision to negotiate in good faith with News Corp.  Regardless of the details of those negotiations, Cablevision cannot avoid liability to provide a credit to its subscribers for the Fox Channels interruption.[18]

### 3.   Cablevision Failed to Disclose the Imminent Removal of the Fox Channels

Plaintiffs allege that Cablevision failed to disclose that it knew that there was a distinct likelihood that it would not offer the Fox Channels as set forth in its channel line-up.  *Compl. ¶55(b)*.  Cablevision's response to this allegation is that it "sounds in fraud" and is thus subject to Rule 9(b) pleading standards.  *Def. Br. at 16*.[19]  As explained in Point D(1), below, the heightened pleading standard is not applicable, because these claims do not sound in fraud, but

---

[18] Plaintiffs have argued that their claim is not dependent on the details of Cablevision-News Corp. negotiation, because Cablevision is not entitled to *force majeure* relief to avoid refunding subscribers.  *See* Point I(A)(3), herein. Nonetheless, in the event that those contract negotiations are considered to be relevant to any issue in this case, the Complaint alleges that Cablevision failed to negotiate in good faith.  *Compl. ¶55(d)*.

[19] The only authority cited by Cablevision on this point is a securities fraud class action decision which held that "[w]here claims of fraud are asserted, claims alleged to arise out of such conduct are necessarily considered to sound in fraud and are subject to the pleading requirements under Rule 9(b)."  *UBS Asset Mgmt. (New York) Inc. v. Wood Gundy Corp.*, 914 F. Supp. 66, 71 (S.D.N.Y. 1996).

rather in the requirement of good faith and fair dealing to disclose the expiration of the contract with News Corp. under which the Fox Channels were provided.

## C.    Plaintiffs Adequately Allege Unjust Enrichment

Plaintiffs claim that Cablevision was unjustly enriched by charging plaintiffs for viewing the Fox Channels while failing to provide plaintiffs those channels. *Compl. ¶¶57-61.* Cablevision argues that this claim is precluded by the existence of a contract between the parties. *Def. Br. at 17.* To the extent a contract claim is precluded, however, plaintiffs may still state a valid claim for unjust enrichment. *See* Fed. R. Civ. P. 8(d)(2). In order to state a claim for unjust enrichment under New York law, "a plaintiff must show that (1) defendant was enriched, (2) the enrichment was at the plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution. *ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.*, 390 F. Supp. 2d 212, 222 (E.D.N.Y. 2005) (citations omitted). "The essence of an unjust enrichment claim rests in equitable justice. It gives the plaintiff a ... claim against the defendant who takes riches unjustly and thereby owes the plaintiff." *Strategic Alliance Partners, LLC v. Dress Barn, Inc.*, 386 F. Supp. 2d 312, 318 (S.D.N.Y. 2005).[20]

Cablevision does not and cannot deny that it billed customers who paid for channel line-ups that included the Fox Channels. Cablevision's retention of such fees at plaintiffs' expense, notwithstanding that its failure to deliver the Fox Channels, would be inequitable and constitutes unjust enrichment.

---

[20] The laws of Connecticut and New Jersey accord with New York on this issue. *See Schirmer v. Souza*, 126 Conn. App. 759, 763 (App. Ct. 2011) (stating that "[a] right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another") (internal citations omitted); *Goldsmith v. Camden County Surrogate's Office*, 408 N.J. Super. 376, 462 (Super. Ct. App. Div. 2009) (stating that "[a] cause of action for unjust enrichment requires proof that defendants received a benefit and that retention of that benefit without payment would be unjust") (internal citations omitted).

**D.      Plaintiffs Adequately Allege Statutory Consumer Protection Claims**

New York's G.B.L. § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  Scienter is not an element of the claim.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).  To plead a prima facie case, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (*citing Oswego*, 85 N.Y.2d 20).

Connecticut's Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110(a), *et seq*., applies to "unfair" practices, established with reference to the following considerations: (1) whether the practice violates public policy, i.e., whether 'it is within at least the penumbra of some common law, statutory, or other established concept of unfairness'; (2) whether it is immoral, unethical or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors or other business associates.  *Conntect, Inc.v. Turbotect, Ltd.*, No. 3:97CV784, 1998 WL 91067, at *6 (D. Conn. Feb. 23, 1998) (*citing Cheshire Mortgage Serv., Inc. v. Montes*, 223 Conn. 80, 105 (1992)).  A practice "may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."  *Id.*

In New Jersey, N.J.S.A. § 56:8-2 provides that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

19

The act is construed liberally. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 460 (1994). And the outlawed acts are disjunctive, thus, "a violation is complete if an unconscionable practice is proved; a deceptive or fraudulent act need not also be shown." *State of New Jersey v. Hudson Furniture Co.*, 398 A.2d 900, 902 (N.J. App. Div. 1979).

The allegations in the Complaint easily satisfy all three statutes. Cablevision's conduct is sufficiently pled as a "deceptive" practice in New York, an "unfair" practice in Connecticut, and as an "unconscionable commercial practice" in New Jersey.

### 1. Fed. R. Civ. P. 9(b) Does Not Apply Consumer Protection Claims

Defendants acknowledge that to plead a claim under the consumer protection statutes of New York and Connecticut, it is not necessary to plead fraud or to satisfy Rule 9(b) (*Def. Br. at 18, n.13*).[21] They also recognize that this Court has held, in a case involving an unconscionable practice under the New Jersey consumer protection statute relating to the failure to perform a contract, that Rule 9(b) does not apply to that claim. *Def. Br. at 18, n.13*; *Porter v. Property Damage Control Group, Inc*., No. 03-5972, 2007 WL 2907403, at *2, *12 (E.D.N.Y. Sept. 28, 2007); *Payne v. Fujifilm U.S.A., Inc.*, No. 07-385 (JAG), 2007 WL 4591281, at *10 (D.N.J. Dec. 28, 2007) (in case involving contractual unconscionability, plaintiff is not required to meet higher pleading standard); *see also Hudson Furniture Co.*, 398 A.2d at 902 (deceptive or fraudulent act need not be shown for NJCFA claim asserting unconscionable commercial practice).

---

[21] There are many cases in both states to support the conclusion that Rule 9(b) heightened pleading is not required to properly allege claims under the consumer protection statutes. *See, e.g., Woods v. Maytag Co*., No. 10-0559, 2010 WL 4314313, at *14 (E.D.N.Y. Nov. 2, 1010) ("[A]n action under [GBL] §349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a)"); *Conntect, Inc. v. Turbotect, Ltd*., No. 3:97CV784, 1998 WL 91067, at *6 n. 4 (D.Conn. Feb. 23, 1998) ("Only where common law fraud is being alleged under the guise of a CUTPA claim, must such a claim be alleged in accordance with the particularity requirements of this provision."); *Goldman v. Abbott Laboratories, Inc*., No. 01C1312, 2001 WL 1558281, at *5 (N.D. Ill. Dec. 5, 2001) ("[a]s numerous Connecticut courts have held, Rule 9(b) does not govern the pleading of CUTPA claims**").**

Nevertheless, defendants contend that "Plaintiffs' claims sound in fraud" and that Rule 9(b)'s heightened pleading standard applies (*Def. Br. at 18*).  Notably, defendants seemingly also take the opposite position when they assert that "[t]he Complaint does not contain a single allegation substantiating its fraud theory."  *Id.* at 19.

To be sure, there is no claim for fraud in the Complaint.  Rather, the consumer protection claims involve Cablevision's improper retention of amounts billed in advance for services that it did not deliver and statements that the Fox Channels were included in the package of cable television services it offered to subscribers.  In contrast, all of the cases cited by defendants involved allegations of fraud or affirmative misrepresentation.[22]  Heightened pleading, one purpose of which is "to safeguard defendants against spurious charges of immoral and fraudulent behavior,'"  (*Def. Br. at 19* (*citing Lind v. New Hope Prop., LLC*, No. 09-3757, 2010 WL 1493003, at *4 (D.N.J. Apr. 13, 2010)), is not necessary or appropriate in this case involving unfair practices, not fraud.

### 2. Even if the Heightened Pleading Standard of Rule 9(b) Applies, Plaintiffs' Complaint Properly Pleads Injury-Causing Deception With Particularity

Notwithstanding that Rule 9(b) is inapplicable, plaintiffs have in fact pled their allegations with sufficient particularity under Rule 9(b) to allow defendants to be "'on notice of the precise misconduct with which they are charged.'"  *Def. Brief at 19* (*citing Lind v. New Hope*

---

[22] For example, in *Ozbakir v. Scotti*, No. 09-6460L, 2011 WL 477039, at *3 (W.D.N.Y. Feb. 10, 2011), the claims were "that all of the defendants participated in a scheme to artificially inflate and misrepresent the value of [realty], with the aim of inducing plaintiffs to purchase the property for far more than its true market value."  Similarly, *Jatras v. Bank of America Corp.*, No. 09-3107, 2010 WL 5418912 (D.N.J.  Dec. 23, 2010), involved a lawsuit by a borrower against a lender for intentionally falsifying a home mortgage application to artificially inflate the home value, where plaintiffs alleged "obvious fraud" throughout defendants' business.  *Id.* at *2-*3.  And, *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 08-1958, 2010 WL 1882316 (D.Conn. May 10, 2010) involved a consumer protection claim coupled with a fraud claim, where the allegations were that an aviation contractor lied about the ability of its subcontractor to outfit the airplane and about its FAA certifications.  *Id.* at *1, *5.

*Prop. LLC*, No. 09-3757, 2010 WL 1493003, at *4 (D.N.J. Apr. 13, 2010).[23]  As we have already

shown, liability under the consumer protection statutes in each of the three states generally

requires a deceptive, unfair or unconscionable practice directed at consumers that causes injury.[24]

Cablevision's channel line-up, as listed on its website, included the Fox Channels.

*Compl. ¶¶ 19, 21, 26*.  Plaintiffs were billed a monthly fee in advance for services that included

the Fox Channels.  *Compl., ¶¶ 19, 67, 80, 88*.  Cablevision did not inform subscribers in advance

that the Fox Channels would be interrupted, nor did it provide subscribers an opportunity to

cancel before the interruption, but it instead first told its subscribers on the morning the

interruption began.  *Compl. ¶ 26*.  It did not credit subscribers for services it never delivered,

even though it was obligated to do so and even though the rates it charged consumers were based

on inclusion of the Fox Channels.  *Compl. ¶ 23, 32*.  Plaintiffs have suffered injury – at a

minimum in the amount of the credit they did not receive – due to Defendants' conduct.  *Compl.,*

*¶¶ 70, 82, 90*.  These allegations more than suffice to state claims under the three state consumer

protection laws cited in the Complaint and give more than adequate notice to defendants of the

nature of the claims against them.

**a.  Fox Channels Remained In The Service Plans But Were Not Provided**

Defendants argue that Plaintiffs failed to identify any advertisements by Defendants or

specify how the advertisements were deceptive.  *Def. Br. at 21*.  The Complaint alleges that

customers contracted to receive programming, including the Fox Channels, from Cablevision.

*Compl., ¶19*.  Indeed, defendants concede that the Fox Channels were part of the purchased

---

[23] "Plaintiffs 'need not…plead the 'date, place or time' of the fraud, so long as they use an alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"  *Ramirez v. STI Prepaid LLC*, 644 F.Supp.2d 496, 502 (D.N.J. 2009) (citations omitted). Plaintiffs "need only set forth sufficient factual allegations to render these claims 'plausible.'"  *Waldman v. New Chapter, Inc*, 714 F.Supp.2d 398, 406 (E.D.N.Y 2010).
[24] *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26 (1995); *Cox v. Sears Roebuck & Co*., 647 A.2d 454, 460-62 (N.J. 1994); *Harris v. Bradley Memorial Hosp. and Health Center, Inc*., 296 Conn. 315, 350 (2010).

22

channel line-up in their own submissions to the Court of e-mail messages sent to subscribers when the Fox Channels were interrupted.[25]  Their claim of ignorance as to how customers were misled or deprived of a benefit is, thus, not credible.  And at this pre-discovery stage of the litigation, defendants enjoy greater access to other statements that were made to their consumers through emails, mailings, and/or their archived website.

Moreover, Cablevision's defense to the breach of contract claim – that it had the absolute right to delete channels and in fact did delete the Fox Channels – itself gives rise to a consumer protection claim.  *Def. Br. at 10.*  If Cablevision in fact had such an unrestricted right, it had the corresponding obligation to disclose that the Fox Channels would be deleted as a result of the impending contract expiration.  Its failure to do so was an unfair, deceptive, and unconscionable practice.  Cablevision's argument that it was relieved of that obligation "given the extensive media coverage leading up to" the removal of the Fox Channels (*Def. Br. at 21*) has no merit.  At best it raises an inappropriate factual allegation on a motion to dismiss, and as a legal matter, Cablevision is the party responsible for informing customers – not the media.[26]

Defendants also argue that plaintiffs failed to plead that they were injured as a result of the deceptive or unfair acts of defendants.  *Def. Br. at 21.*  This argument is without merit.  The Complaint alleges that plaintiffs were billed in advance for monthly service, were not provided the Fox Channels, and did not get the credit promised in the Terms of Service.  *Compl., ¶¶ 19, 23, 27.*  The actual injury here is acknowledged by Cablevision's own Terms of Service which

---

[25] Golden Decl. Ex. D ("We regret to inform you that News Corp. in an act of corporate greed, has pulled Fox 5 and My9 from your Cablevision channel lineup"); Golden Decl. Ex. E ("We regret to inform you that in an effort to get outrageous fees from Cablevision and you, our customer, News Corp. has pulled Fox 5 New York and My9 off of your television").

[26] Defendants also argue in a footnote that under N.Y. Gen. Bus. § 350, plaintiffs have not properly pled reliance. *Def. Br. at 20, n.15*. Plaintiffs have alleged that they purchased the cable television packages based on Cablevision advertisements of those packages.  *Compl. ¶¶ 20, 64-66.*  However, if the Court were to rule otherwise, Plaintiffs nonetheless have a valid claim under N.Y. Gen. Bus. § 349, which does not require plaintiffs to plead reliance. *Leider v. Ralfe*, 387 F. Supp.2d 283, 292 (S.D.N.Y. 2005).

23

obligate Cablevision to provide pro rata credits for exactly this type of situation. *Golden Decl. Ex. B, ¶ 4.*

     **b.  Cablevision Retained Fees Billed in Advance For Undelivered Services**

The second basis for the consumer protection claims is that Cablevision billed monthly fees in advance for the Fox Channels, but did not provide the Fox Channels for a period of two weeks.  Cablevision's defense of this claim is a mere restatement of its breach of contract defense – that it was permitted under the Terms of Service to retain the advance payments despite the disruption of service.  As explained in more detail in Point I(A), above, that argument is unpersuasive with respect to the contract claim and for the same reasons does not protect Cablevision from liability under the consumer protection statutes.[27]

Accordingly, the Complaint sufficiently alleges the facts underlying the claims of relief under the consumer protection statutes of New York, Connecticut and New Jersey.  Nonetheless, if the Court finds otherwise, Plaintiffs respectfully request leave to amend their Complaint pursuant to Fed. R. Civ. P. 15, in the interests of justice.

**II.  PLAINTFFS STATE A CLAIM FOR INJUNCTIVE RELIEF**

Under New York law, it is permissible to plead a cause of action for a permanent injunction. *See Corsello v. Verizon New York Inc.*, 77 A.D.3d 344, 368, 908 N.Y.S.2d 57, 77 (App. Div. 2010) (ruling that separate claim for injunction was proper where trial court did not dismiss G.B.L. § 349 claim); *Elow v. Svenningsen*, 58 A.D.3d 674, 675, 873 N.Y.S.2d 319, 320

---

[27] Defendants cite to *Arcand v. Brother Int'l Corp.*, 673 F.Supp.2d 282, 297 (D.N.J. 2009) for the proposition that scienter is always required element for an omissions claim under the NJCFA.  They are incorrect.  The distinction being made in the case between omissions claims and misrepresentation claims is that in the former the party must allege a duty to disclose, which can arise from the act of knowing concealment with the intention that the other party rely.  *Id.* ("Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase.").  Here, there was no doubt a duty to disclose *with advance notice* that the Fox Channels would not be provided when the News Corp. contract expired on October 15, 2010 because those channels were advertised.  In any event, the Cablevision emails to subscribers show Cablevision *knew* that its subscribers reasonably expected those channels to remain in the "Cablevision channel lineup." *Golden Decl. Ex. D*.

(App. Div. 2009) (permanent injunctive relief claim turns on whether complaint alleges the elements for an injunction).  Because the permanent injunction claim is essentially a remedy issue driven by the success of the substantive claims, it is not appropriate to dismiss it at this stage of the case.

Here, as in *Corsello*, the cause of action for injunctive relief is dependent on the common law and statutory causes of action.  Since a cause of action has been stated under those claims, then it is appropriate not to dismiss the cause of action for injunctive relief.  *Corsello*, 908 N.Y.S.2d at 77 ("[i]t may be that the claim for injunctive relief is subsumed in other causes of action, but such determination need not be made at this point").

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Complaint should be denied in its entirety.

Dated:  April 22, 2011             Respectfully submitted,
        New York, New York

SHALOV STONE BONNER & ROCCO LLP          LAW OFFICES OF TODD J. KROUNER

        /s/ Ralph M. Stone                      /s/ Todd J. Krouner
Ralph M. Stone                           Todd J. Krouner
(rstone@lawssb.com)                      (tkrouner@krounerlaw.com)
Susan M. Davies                          Scott J. Koplik
(sdavies@lawssb.com)                     (skoplik@krounerlaw.com)
260 Madison Ave., 17th Floor             Diana M. Carlino
New York, NY  10016                      (dcarlino@krounerlaw.com)
Tel. (212) 239-4340                      93 North Greeley Avenue
Fax (212) 239-4310                       Chappaqua, NY 10514
                                         Tel. (914) 238-5800
                                         Fax (914) 238-5820

CHITWOOD HARLEY HARNES LLP

       /s/ Gregory E. Keller
Gregory E. Keller
(gkeller@chitwoodlaw.com)
Carol S. Shahmoon
(cshahmoon@chitwoodlaw.com)
185 Great Neck Road, Suite 340
Great Neck, NY 11021
Tel. (516) 773-6090

*Co-Lead Counsel for Plaintiffs*


*Additional Plaintiffs' Counsel:*


SARRAF GENTILE LLP
Ronen Sarraf
(ronen@sarrafgentile.com)
Joseph Gentile
(joseph@sarrafgentile.com)
One Penn Plaza, Suite 2424
New York, NY 10019
Tel. (212) 868-3610

MARKS & KLEIN LLP
Justin M. Klein (justin@marksklein.com)
63 Riverside Avenue
Red Bank, New Jersey 07701
Tel. (732) 747-7100

BLUME GOLDFADEN
Carol L. Forte (cforte@njatty.com)
One Main Street
Chatham, NJ 07928
Tel. (973) 635-5400

STAMELL & SCHAGER LLP
Richard J. Schager, Jr. (schager@ssnyc.com)
One Liberty Plaza, 35th Floor
New York, NY 10006
Tel. (212) 566-4057

LAW OFFICE OF MICHAEL C. RAKOWER PC
Michael C. Rakower (mrakower@rakowerlaw.com)
747 Third Avenue, 32nd Floor
New York, NY 10017
Tel. (212) 660-5550

BALLON STOLL BADER & NADLER PC
Irving Bizar (ibizar@ballonstoll.com)
Dwight Yellen (dyellen@ballonstoll.com)
729 Seventh Avenue, 17th Floor
New York, NY 10019
Tel. (212) 575-7900

**CERTIFICATE OF SERVICE**

I, Ralph M. Stone, certify that a true and correct copy of *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Complaint* has been served via First Class U.S. Mail and electronic mail to the below-listed attorney in charge for Defendants on April 22, 2011, in accordance with the requirements of the Federal Rules of Civil Procedure:

Thomas H. Golden

Willkie Farr & Gallagher LLP

787 Seventh Avenue

New York, New York 10019

_____/s/ Ralph M. Stone_____