UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
**In re Cablevision Consumer Litigation**     :   Master File No.
                                              :   10-CV-4992 (JS) (AKT)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :   **ECF CASE**
This Document Relates to:                     :   **Electronically Filed**
                                              :
All Actions                                   :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT


WILLKIE FARR & GALLAGHER LLP

Thomas H. Golden
787 Seventh Avenue
New York, New York  10019
Phone:  (212) 728-8000
Fax:  (212) 728-8111

*Attorneys for Defendants Cablevision Systems Corporation and CSC Holdings, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.   PLAINTIFFS' OPPOSITION CONFIRMS THEY HAVE NO CONTRACT
     CLAIM. ...........................................................................................................................1

     A.   Plaintiffs Ignore And Mischaracterize Key Provisions In The Terms
          Of Service ............................................................................................................1

     B.   The "Force Majeure" Cases On Which Plaintiffs Rely Are All
          Distinguishable. ...................................................................................................3

II.  PLAINTIFFS' IMPLIED COVENANT CLAIM CANNOT STAND ON ITS
     OWN. ...............................................................................................................................5

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS. ...............................................6

IV.  PLAINTIFFS' DECEPTIVE PRACTICES CLAIMS FAIL. .............................................7

V.   PLAINTIFFS ARE NOT ENTITLED TO THE INJUNCTION THEY SEEK. ...............10

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Ahlstrom Machinery Inc. v. Associated Airfreight Inc.*,
  675 N.Y.S.2d 161 (App. Div. 1998) ................................................................................. 4, 5

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009) ....................................................................................... 7

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ........................................................................................................... 8

*Atlantis Info. Tech. v. CA, Inc.*,
  485 F. Supp. 2d 224 (E.D.N.Y. 2007) .................................................................................. 5

*Barker v. Time Warner Cable, Inc.*,
  2011 WL 1447552 (N.Y. App. Div. Apr. 12, 2011) ............................................................. 6

*Chestnut v. Wells Fargo Bank, N.A.*,
  No. 10-4244, 2011 WL 838914 (E.D.N.Y. Mar. 2, 2011) .................................................... 6

*Concord Village Management Co. v. Rubin*,
  421 N.Y.S.2d 811 (Dist. Ct. 1979) ....................................................................................... 3

*Horowitz v. Am. Int'l Group*,
  No. 09-7312, 2010 WL 3825737 (S.D.N.Y. Sept. 30, 2010) ............................................... 5

*Kel Kim Corp. v. Central Markets, Inc.*,
  70 N.Y.2d 900 (1987) ....................................................................................................... 4, 5

*In re Lipper Holdings, LLC*,
  766 N.Y.S.2d 561 (App. Div. 2003) ..................................................................................... 4

*Ludl Elec. Prods., Ltd. v. Wells Fargo*,
  775 N.Y.S.2d 59 (App. Div. 2004) ....................................................................................... 9

*Macalloy Corp. v. Metallurg, Inc.*,
  728 N.Y.S.2d 14 (App. Div. 2001) ....................................................................................... 4

*Mid Louisiana Gas Co. v. F.E.R.C.*,
  780 F.2d 1238 (5th Cir. 1986) .............................................................................................. 3

*Paul v. Bank of Am. Corp.*,
  No. 09-1932, 2011 WL 684083 (E.D.N.Y. Feb. 16, 2011) .............................................. 1, 2

*Rexnord Holdings, Inc. v. Bidermann*,
  21 F.3d 522 (2d Cir. 1994) ................................................................................................... 5

*Rombach v. Chang*,
    No. 00-0958, 2002 WL 1396986 (E.D.N.Y. June 7, 2002) .................................................7

*Small v. Lorillard Tobacco Co.*,
    679 N.Y.S.2d 593 (App. Div. 1998) ...................................................................................8

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ..................................................................................................9

*Tepper v. Cablevision Sys. Corp.*,
    No. 11132/02 (N.Y. Sup. Ct. March 11, 2004) ...................................................................2

*Toledano & Pinto (America) v. Anasae Corp.*,
    83 N.Y.S.2d 612 (Sup. Ct. 1948) ........................................................................................3

*In re Toshiba Am. HD DVD Marketing & Sales Practices & Litig.*,
    No. 08-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) .................................................8, 9

*Woods v. Maytag Co.*,
    No. 10-0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ................................................8

**Treatises**

30 Williston on Contracts § 77:31 (4th ed. 2010) ............................................................................4

Plaintiffs' Opposition to Cablevision's motion to dismiss the Consolidated Amended Complaint confirms that they have not plausibly pleaded any causes of action.

*First*, Plaintiffs ignore the plain meaning of Cablevision's Terms of Service, which make clear that Cablevision does not guarantee any particular channel lineup and is not obligated to provide refunds for program interruptions that are not entirely within its control. Plaintiffs' reliance on inapposite *force majeure* cases involving entirely different contractual provisions cannot salvage their claim. *Second*, Plaintiffs fail to rebut Cablevision's showing that their cause of action for breach of the implied covenant of good faith and fair dealing cannot stand independent of their breach of contract claim or enlarge their contractual rights. *Third*, Plaintiffs fail to reconcile their unjust enrichment claim – which is available only in the absence of a binding contract – with their concession that the Terms of Service constitute such a contract. *Fourth*, Plaintiffs' Opposition reveals that they are not aware of any deceptive act by Cablevision, but rather hope that through discovery they might stumble upon a communication they can characterize as actionable. That admission compels dismissal of their deceptive practices claims, as does Plaintiffs' inability to show that subscribers suffered any injury from Cablevision's supposed failure to echo media reports of the looming Fox Withdrawal. *Fifth*, Plaintiffs fail to explain how the injunctive relief they request is within the Court's authority, is in the best interests of the subscribers on whose behalf Plaintiffs purport to sue, or would address their supposed injury.

## I.  **PLAINTIFFS' OPPOSITION CONFIRMS THEY HAVE NO CONTRACT CLAIM.**

### A.  **Plaintiffs Ignore And Mischaracterize Key Provisions In The Terms Of Service.**

No provision of the Terms of Service obligates Cablevision to include any specific channel in its lineup. Plaintiffs' Opposition implicitly concedes this "fatal flaw" in their Complaint by failing "to identify the specific contractual provision or provisions . . . allegedly

breached by defendant." *Paul v. Bank of Am. Corp.*, No. 09-1932, 2011 WL 684083, at *5 (E.D.N.Y. Feb. 16, 2011). That alone compels dismissal of their contract claim.

Nor do Plaintiffs effectively rebut Cablevision's showing that the Terms of Service expressly negate any obligation to offer specific channels by providing that all programming is subject to change. (*See* Golden Decl. Ex. B ¶ 17.) Plaintiffs make the tortured argument that the Fox Withdrawal was not a "change" but rather an "interruption" because Cablevision was eventually able to secure the contractual rights from News Corp. to resume carrying the Fox stations. In doing so, Plaintiffs appear to concede that they would have had no claim to a refund if the Fox Withdrawal was permanent, and that their complaint rests solely (and illogically) on Cablevision's success in regaining contractual rights to carry the Fox channels.[1]

Plaintiffs also argue that the Fox Withdrawal could not have been a "change" under the Terms of Service because Cablevision did not give its customers advance notice of it. But nothing in the Terms of Service conditions the permissibility of a program change on Cablevision giving such notice.

Finally, Plaintiffs argue that the Fox Withdrawal was not a change "in accordance with applicable law" under the Terms of Service because "[t]he 'unlawfulness' of retransmitting the Fox Channels resulted solely from Cablevision's failure to pay or otherwise reach an agreement with News Corp." (Opp'n at 8.) In making this argument, Plaintiffs admit that Cablevision lacked the legal ability to carry the Fox Channels during the Fox Withdrawal. That

---

[1] Plaintiffs do not dispute that *Tepper v. Cablevision Sys. Corp.*, No. 11132/02, slip op. at 9 (N.Y. Sup. Ct. March 11, 2004), *aff'd*, 797 N.Y.S.2d 131 (App. Div. 2005), held that Cablevision has no contractual obligation to carry any particular programming, a fact that is fatal to Plaintiffs' contract claims. (*See* Opp'n at 10.) Rather, they merely confuse the issue by citing the *Tepper* court's discussion of *section 349* claims to bolster Plaintiffs' *breach of contract* claims. (*See id.* at 10-11.) Plaintiffs never explain why the former is relevant to the latter.

concession is fatal to their breach of contract claim, because Paragraph 4 of the Terms of Service unambiguously states that Cablevision is not liable for interruptions arising from circumstances that were at least in part beyond Cablevision's "reasonable control." (Golden Decl. Ex. B ¶ 4.)[2]

### B. The "Force Majeure" Cases On Which Plaintiffs Rely Are All Distinguishable.

Plaintiffs attempt to evade the import of Paragraph 4 by characterizing it as a "force majeure" clause, which they claim is inoperative here because such a clause "cannot relieve Cablevision of its obligation to refund subscribers," and because the alleged interruption "resulted from circumstances *entirely within Cablevision's control*." (Opp'n at 12 (emphasis in original).) Neither argument is persuasive.

First, Plaintiffs erroneously read *Toledano & Pinto (America) v. Anasae Corp.*, 83 N.Y.S.2d 612 (Sup. Ct. 1948) as precluding a service provider from immunizing itself from any refund obligation. *Toledano* announced no such rule. Rather, the refund obligation in *Toledano* arose solely from the defendant's express contractual undertaking. *See id.* at 613 ("we . . . will return to you the amount of your check of $26,880.00"). The Terms of Service impose no such obligation on Cablevision.[3]

Plaintiffs further argue that Paragraph 4's limitation on liability does not apply because Cablevision's inability to retransmit the Fox Channels was based on mere financial

---

[2]   As shown in Cablevision's opening brief, its construction of the Terms of Service is consistent with the applicable regulatory scheme. (*See* Def. Mem. at 3-6.) Plaintiffs dismissal of that scheme as a "red herring" (Opp'n at 5 n.3) ignores the "hornbook principle" that, in construing a contract, a court "must read the contract in light of the then existing regulatory framework." *Mid Louisiana Gas Co. v. F.E.R.C.*, 780 F.2d 1238, 1243 (5th Cir. 1986).

[3]   Plaintiffs' reliance on *Concord Village Management Co. v. Rubin*, 421 N.Y.S.2d 811 (Dist. Ct. 1979) is similarly misplaced. In that case, a tenant entered into an apartment lease that included an implied warranty of habitability that was breached by the landlord. *Id.* at 812. Here, plaintiffs contracted to receive a tier of cable television services – not individual channels – which Cablevision provided. Cablevision had no obligation (implied or otherwise) to provide individual channels, a fact made clear by Paragraph 17 of the Terms of Service. (*See* Golden Decl. Ex. B ¶ 17.) As such, Cablevision performed its obligations under the contract.

3

impracticality,[4] which, they incorrectly argue, does not excuse performance here.[5] But Cablevision does not rely on the doctrine of impracticability or impossibility; it relies on "the specific language included in the clause itself," which governs here. 30 Williston on Contracts § 77:31 (4th ed. 2010). The "specific language" in Paragraph 4 states that Cablevision is not liable for interruptions "resulting in part or entirely from circumstances beyond Cablevision's reasonable control." (Golden Decl. Ex. B. ¶ 4 (emphases added).) Plaintiffs cannot plausibly claim that News Corp. played no role in the Fox Withdrawal, or that acceding to unreasonable demands was within Cablevision's "reasonable" control. The Terms of Service therefore preclude liability for the Fox Withdrawal.

Plaintiffs also mischaracterize the holdings in *Kel Kim Corp. v. Central Markets, Inc.*, 70 N.Y.2d 900 (1987) and *Ahlstrom Machinery Inc. v. Associated Airfreight Inc.*, 675 N.Y.S.2d 161 (App. Div. 1998) as rendering Paragraph 4 inapplicable in the absence of a "specific liability exclusion." (Opp'n at 15.) First, *Kel Kim* does not provide, as Plaintiffs suggest, a blanket rule that clauses like that found in Paragraph 4 are not sufficiently specific to insulate a service provider from liability. Rather, it holds that where a clause listing specific events that excuse performance is followed by the phrase "or other similar causes beyond the control of such party," the "similar causes" are "confined to things of the same kind or nature as the particular matters mentioned." *Kel Kim*, 70 N.Y.2d at 903. That is not the case here. And in

---

[4] On Plaintiffs' theory, Cablevision should have accepted News Corp.'s demands no matter how outrageous. The implications of Plaintiffs' position should be readily apparent – content providers would demand more money from Cablevision, which would lead to higher rates for subscribers. The Terms of Service "should not be interpreted to produce a result that is absurd [or] commercially unreasonable." *In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (App. Div. 2003). Plaintiffs' construction also ignores Paragraph 4's "reasonable control" language.

[5] *Macalloy Corp. v. Metallurg, Inc.*, 728 N.Y.S.2d 14, 14-15 (App. Div. 2001), on which plaintiffs rely for this point, holds that "financial hardship is not grounds for avoiding performance" under the doctrine of impossibility. *Id.* (citing *407 East 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 296 N.Y.S.2d 338 (App. Div. 1968)). Cablevision does not invoke that doctrine here.

4

*Ahlstrom*, the court recognized that the *force majeure* clause (which excused delays but not total nonperformance) might have been applicable had the defendant not completely withdrawn from the contract. *See Ahlstrom*, 675 N.Y.S.2d at 162.[6]

## II. PLAINTIFFS' IMPLIED COVENANT CLAIM CANNOT STAND ON ITS OWN.

Invoking a litigant's right to plead in the alternative, Plaintiffs seek to hedge their claim that Cablevision breached the actual Terms of Service by also asserting a separate claim for breach of the implied covenant of good faith fair dealing. But none of the state laws Plaintiffs invoke recognizes such a cause of action separate and apart from a breach of contract claim, or allows the implied covenant of good faith and fair dealing to create contractual rights that do not otherwise exist. A claim for breach of the implied covenant of good faith and fair dealing cannot "stand on its own as an alternative grounds for recovery," because "there is no independent claim for the breach of the covenant of good faith and fair dealing . . . [it] is not an insurance policy to cover instances where there is no breach of contract." *Horowitz v. Am. Int'l Group*, No. 09-7312, 2010 WL 3825737, at *9 (S.D.N.Y. Sept. 30, 2010). Rather, as shown in Cablevision's Opening Brief, the implied covenant of good faith and fair dealing serves only to prevent a party "from engaging in conduct that will deprive the other party of the benefits of their agreement." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994).[7]

Plaintiffs' Opposition reveals that their implied covenant claim drifts far beyond these moorings. It reduces to the allegation that, even if the Terms of Service gave Cablevision

---

[6] Relying on *Kel Kim* and *Ahlstrom*, plaintiffs assert that *force majeure* clauses are "intended to protect a promisor from liability only for breaches arising from unanticipated contingencies." (Opp'n at 14.) But it is the doctrine of "impossibility" that protects against "unanticipated contingencies," not *force majeure*. See *Kel Kim*, 70 N.Y.2d at 902 ("impossibility must be produced by an unanticipated event"); *Ahlstrom*, 675 N.Y.S.2d at 162 (same).

[7] To the extent Plaintiff's implied covenant claim merely restates their breach of contract claim, it should be dismissed as duplicative of that claim. *See Atlantis Info. Tech. v. CA, Inc.*, 485 F. Supp. 2d 224, 230 (E.D.N.Y. 2007) (dismissing, on a Rule 12(b)(6) motion, an implied covenant claim that rested on the same allegations as the breach of contract claim).

5

the right to drop the Fox channels, the implied covenant of good faith and fair dealing obligated it to disclose their imminent removal. But if Cablevision had the right to remove particular channels from its lineup, then Plaintiffs cannot show that the supposed failure to warn subscribers in advance that it would be exercising that right deprived them of any of the benefits of the contract.

### III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.

Plaintiffs do not dispute the black-letter principle that an unjust enrichment claim is not available where a valid contract exists between the parties, or that there is a valid contract here. Those concessions preclude Plaintiffs' unjust enrichment claim. *See Chestnut v. Wells Fargo Bank, N.A.*, No. 10-4244, 2011 WL 838914, at *3 (E.D.N.Y. Mar. 2, 2011) (Seybert, J.) (dismissing unjust enrichment claim on a Rule 12(b)(6) motion where "an express contract indisputably governs the parties' dispute"). To the extent Plaintiffs contend that they could pursue an unjust enrichment claim in the event the Court concludes that the conduct at issue did not constitute a breach of the Terms of Service, they are wrong as a matter of law. *See Barker v. Time Warner Cable, Inc.*, 2011 WL 1447552, at *1 (N.Y. App. Div. Apr. 12, 2011) (affirming dismissal of a breach of contract claim because there was no breach, and affirming dismissal of the unjust enrichment claim give the existence of that unbreached contract).

Plaintiffs' unjust enrichment claim also fails because Cablevision's retention of subscription fees in these circumstances cannot be considered unjust. As Cablevision showed in its Opening Brief, and Plaintiffs do not dispute, relevant state law imposes no refund obligations on it unless an entire tier of channels is made unavailable. Given that, Plaintiffs cannot plausibly argue that Cablevision's decision not to provide refunds was somehow "unjust." In addition, Cablevision allows subscribers to terminate their subscription at any time and only pay fees until the disconnection of their service (and "in no event" for more than 7 days). (Golden Decl. Ex. B

6

¶ 14.) Consequently, subscribers who opted to continue their subscriptions cannot argue that Cablevision acted unjustly in retaining the fees associated with those subscriptions.

## IV. PLAINTIFFS' DECEPTIVE PRACTICES CLAIMS FAIL.

In its Opening Brief, Cablevision showed that Plaintiffs' deceptive practices claims, which they characterized as "consumer fraud" and which rested on assertions of fraudulent misrepresentations and omissions, failed to satisfy Rule 9(b)'s particularity requirement. Plaintiffs now discard their fraud claims against Cablevision, noting that the consumer protection statutes under which they sue allow recovery for non-fraudulent deceptive practices. But this concession does not salvage their claims, given their failure (and inability) to plausibly allege any deception or injury.[8]

First, Plaintiffs do not and cannot allege any actual misrepresentations by Cablevision regarding the continued inclusion of the Fox Channels in its lineup. Rather, Plaintiffs merely note that "Cablevision's channel line-up, as listed on its website, included the Fox Channels." (Opp'n at 22.) But this allegation merely observes that, at some point in time, Cablevision carried the Fox Channels. It does not describe any deception. Tellingly, Plaintiffs do *not* allege that Cablevision continued to claim during the Fox Withdrawal that the Fox Channels were part of its lineup.

Indeed, Plaintiffs acknowledge that they cannot allege that Cablevision made any

---

[8] By asserting that "there is no claim for fraud in the Complaint," (Opp'n at 21), Plaintiffs necessarily concede that they have not alleged that Cablevision had any intent to deceive them. *See Rombach v. Chang*, No. 00-CV-0958, 2002 WL 1396986, at *4 (E.D.N.Y. June 7, 2002), *aff'd* 355 F.3d 164 (2d Cir. 2004) (classic allegations of fraud are "allegations of misrepresentations and omissions *made with intent*") (emphasis added). Without any allegations of intent, Count Five (which is based on the New Jersey Consumer Fraud Act) should be dismissed to the extent it is based on Cablevision's "fail[ure] to timely advise [subscribers] that it would cease providing the Fox Channels programming." (CAC ¶ 78.) *See Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009) ("omission occurs where the defendant (1) knowingly concealed (2) a material fact (3) *with the intention that the consumer rely upon the concealment.*") (emphasis added).

misrepresentation about its retransmission of the Fox Channels. They claim an exemption from the consequences of that inability because they have not yet been able to take discovery regarding Cablevision's communications to subscribers. That fact provides them with no refuge: an insufficient pleading cannot "unlock the doors of discovery . . . [and] only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Thus, "Plaintiffs cannot simultaneously assert that they were deceived by affirmative misrepresentations and that the identity of such misrepresentations is unknowable" to them without discovery. *Small v. Lorillard Tobacco Co.*, 679 N.Y.S.2d 593, 605 (App. Div. 1998). And as Cablevision argued in its Opening Brief, even in a non-fraud context, a plaintiff's failure to identify any false or deceptive communications compels dismissal of a deceptive practices claim. *See Woods v. Maytag Co.*, No. 10- 0559, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010).[9]

Recognizing their inability to plead that Cablevision made an affirmative misrepresentation to subscribers, Plaintiffs claim that it failed to notify customers of the impending Fox Withdrawal, and that subscribers were injured because they did not receive a refund. This theory is flawed for a number of reasons. Plaintiffs do not meaningfully address Cablevision's showing that subscribers could not have been "deceived" about the possibility of that withdrawal, given the widespread news coverage to that effect. Instead, Plaintiffs argue that third-party reports do not relieve Cablevision of the supposed obligation to independently inform customers of what had already been reported. Not surprisingly, Plaintiffs provide no legal support for that assertion. In fact, given that the possibility of the Fox Withdrawal was "so well

---

[9] Plaintiffs cite *Woods* for the proposition that, where a deceptive practices act claim does not sound in fraud, Rule 9(b) does not apply. But Plaintiffs ignore the fact that *Woods* dismissed such a claim under Rule 8's relaxed, notice pleading standard because the complaint failed to identify any deceptive advertisement.

8

covered in the media," Plaintiffs' claim that subscribers were deceived "defies logic." *In re Toshiba Am. HD DVD Marketing & Sales Practices & Litig.*, No. 08-939, 2009 WL 2940081, at *12-13 (D.N.J. Sept. 11, 2009) (dismissing deceptive practices claim under New Jersey law where the supposedly undisclosed fact was "well covered in the media").[10]

Plaintiffs' Opposition also confirms their inability to show any damages flowing from Cablevision's supposed deception. They argue that subscribers were injured because they "did not get the credit promised in the Terms of Service" for the Fox Withdrawal. (Opp'n at 23.) But Plaintiffs fail to show how that supposed injury was a consequence of Cablevision's alleged deception (which, by their account, is Cablevision's failure to warn customers of the imminence of the Fox Withdrawal). In fact, that "injury" flowed exclusively from Cablevision's adherence to the Terms of Service. Where "the conduct complained of is specifically provided for by the parties' [contract] and thus was fully disclosed, such conduct is not a deceptive business practice within the meaning of General Business Law § 349(a)." *Ludl Elec. Prods., Ltd. v. Wells Fargo*, 775 N.Y.S.2d 59, 61 (App. Div. 2004). To be sure, Plaintiffs contend that the Terms of Service in fact require a rebate, but that contractual dispute does not give rise to a deceptive practices act claim. "Although a monetary loss is a sufficient injury to satisfy the requirement under § 349, *that loss must be independent of the loss caused by the alleged breach of contract*." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (emphasis added).

---

[10] Plaintiffs also claim that the extent to which subscribers were put on notice of the possibility of the Fox Withdrawal is a factual question, but do not dispute that the Court can take judicial notice of the public statements regarding the possibility of the Fox Withdrawal, and fail to point to any factual dispute regarding those statements. Indeed, under Plaintiffs' theory, Cablevision could have avoided liability by issuing a press release warning of the possibility of the Fox Withdrawal. They offer no explanation for why independent news coverage of that possibility should not have the same effect.

9

## V.     PLAINTIFFS ARE NOT ENTITLED TO THE INJUNCTION THEY SEEK.

Cablevision's Opening Brief demonstrated the impropriety of Plaintiffs' request for a permanent injunction prohibiting Cablevision from entering into any future agreement with a broadcaster unless it contains "mandatory dispute resolution mechanisms, requiring resolution of any contract dispute prior to the expiration of such contract." (CAC, "Wherefore" Clause (e).) Plaintiffs make no effort to address Cablevision's various arguments regarding the impropriety of such relief. Instead, they merely note that New York law allows a plaintiff to seek injunctive relief, and that entitlement to injunctive relief depends on the outcome of the underlying claims. But those observations are not enough to delay dismissal of their Seventh Cause of Action, given the manifest impropriety of the requested injunction.

Indeed, the requested injunction bears no relation to Plaintiffs' causes of action. Plaintiffs have now acknowledged that they have no claim premised on the manner in which Cablevision negotiated its retransmission agreement with News Corp. (Opp'n at 17.) Rather, Cablevision's liability, according to Plaintiffs, flows from its supposed failure to give advance notice of, and provide refunds for, the Fox Withdrawal. But an injunction mandating the inclusion of arbitration provisions in Cablevision's future "broadcast contracts" would not address either grievance. Absent a change in law, broadcasters and cable operators are not obligated to do business with each other, so no contractual alternative dispute resolution mechanism could guarantee the uninterrupted continuation of their relationship when a consent agreement expires. Plaintiffs' desire to alter the regulatory scheme governing cable television in the United States should be directed at Congress, not the Court.

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in Cablevision's Opening Brief, the Consolidated Amended Complaint should be dismissed with prejudice.

10

Dated: May 13, 2011
New York, New York

WILLKIE FARR & GALLAGHER LLP

*/s/ Thomas H. Golden*

Thomas H. Golden (tgolden@willkie.com)
Terence K. McLaughlin (tmclaughlin@willkie.com)
787 Seventh Avenue
New York, New York  10019
Phone:  (212) 728-8000
Fax:  (212) 728-8111

*Attorneys for Defendants Cablevision Systems Corporation and CSC Holdings, LLC*

6577369.11