UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Cablevision Consumer Litigation<br><br>This document relates to:<br><br>All Actions | Master File No. 10-CV-4992 (JS) (AKT) |

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Ralph M. Stone
(rstone@lawssb.com)
Patrick L. Rocco
(procco@lawssb.com)
Susan M. Davies
(sdavies@lawssb.com)
STONE BONNER & ROCCO LLP
260 Madison Avenue, 17th Floor
New York, NY 10016
Tel. (212) 239-4340
Fax (212) 239-4310

Todd J. Krouner
(tkrouner@krounerlaw.com)
Scott J. Koplik
(skoplik@krounerlaw.com)
Diana M. Carlino
(dcarlino@krounerlaw.com)
LAW OFFICES OF TODD J. KROUNER
93 North Greeley Avenue
Chappaqua, NY 10514
Tel. (914) 238-5800
Fax (914) 238-5820

Gregory E. Keller
(gkeller@chitwoodlaw.com)
Carol S. Shahmoon
(cshahmoon@chitwoodlaw.com)
CHITWOOD HARLEY HARNES LLP
1350 Broadway, Suite 908
New York, NY 10018
Tel. (917) 595-4600

*Co-Lead Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................. 1

THE COMPLAINT ................................................................................................................ 3

    A. Parties............................................................................................................................ 3

    B. Cablevision Discontinued Carriage of Fox Channels in October 2010 .................. 3

    C. The Claims .................................................................................................................. 5

ARGUMENT........................................................................................................................... 5

    A. The Proposed Class Satisfies Rule 23(a) .................................................................. 6

        1. Numerosity.............................................................................................................. 6

        2. Commonality .......................................................................................................... 7

        3. Typicality ................................................................................................................ 8

        4. Adequacy ................................................................................................................ 9

    B. The Proposed Class Satisfies Rule 23(a) ................................................................ 10

CONCLUSION..................................................................................................................... 13

## **TABLE OF AUTHORITIES**

### **Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................. 10

*In re American Int'l. Group, Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012) ................................................................................. 5, 10

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) ............................................................................. 11

*In re Checking Account Overdraft Litig.*,
   ___ F. Supp. 2d ___, 2012 WL 3265093 (S.D. Fla. Aug. 10, 2012) .............................. 9

*Comer v. Cisneros*,
   37 F.3d 775 (2d Cir. 1994) ......................................................................................... 6

*Cordes & Co. Fin. Services v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ............................................................................. 5, 9, 11

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992) .................................................................................. 5, 9

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008) ..................................................................... 5-6, 8, 11

*Emilio v. Robison Oil Corp.*,
   63 A.D.3d 667 (2d Dep't 2009) ................................................................................. 6

*General Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982) ................................................................................................... 7

*Gray v. Hearst Communications, Inc.*,
   444 Fed. Appx. 698 (4th Cir. 2011) ....................................................................... 2, 7

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) ............................................................................. 11

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ....................................................................................... 7

*In re Nassau Cnty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) .................................................................................... 10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   ___ F.3d ___, 2012 WL 3854431 (2d Cir. Sept. 6, 2012) .......................................... 9

*Parker v. Time Warner Entertainment Co.*,
    331 F.3d 13 (2d Cir. 2003) ....................................................................................... 12

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ..................................................................................... 6, 8

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ............................................................................ 2, 6, 8

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................................ 7

**Statutes and Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**Other Authorities**

6 Newberg on Class Actions § 18:27 (4th ed. 2002) ......................................................... 11

Restatement (Second) of Contracts §211 ....................................................................... 6, 8

Pursuant to Rule 23, Fed. R. Civ. P., Plaintiffs respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Class Certification. For the reasons set forth below, Plaintiffs respectfully request that the Court grant the motion and certify the Class in this case.

## INTRODUCTION

As a result of a contractual dispute between Cablevision Systems Corp. and CSC Holdings, LLC (together, "Cablevision"), on the one hand, and News Corp., on the other hand, Cablevision interrupted service to subscribers of certain News Corp. television channels (the "Fox Channels") for two weeks in October 2010. These were not trivial channels, but instead were channels that delivered some of the most popular programming of that month.

Cablevision's Terms of Service require its customers to pay for cable television services in advance. The Terms of Service further provide in Paragraph 4 ("Paragraph 4") that Cablevision will "in any event" provide a pro rata credit to subscribers for any "known programming or service interruption in excess of 24 consecutive hours." Cablevision has not complied with this contractual term, and this lawsuit followed.

Plaintiffs are Cablevision subscribers who have brought claims on a class action basis against Cablevision for its failure to provide any compensation to them for the material interruption in its delivery of the Fox Channels. The Second Consolidated Amended Complaint [Docket Entry 54 (dated April 16, 2012)] (the "Complaint," cited herein as "Compl.") asserts a single claim on behalf of the Class for breach of contract.

This case is a textbook example of one that can and should be certified as a class action under Rule 23. Since all plaintiffs suffered identically as a result of the service interruption, all plaintiffs have identical claims. Cablevision's defenses, suggested in the first instance in their

1

partially denied motion to dismiss, such as that Paragraph 4 does not require any pro rata refund, are legal defenses applicable to all class members. Likewise, Cablevision's reliance on Paragraph 17 of Cablevision's Terms of Service, which Cablevision contends allows it to simply delete any, and perhaps all, channels from its television service without providing a credit to customers, is a common defense highlighting the wisdom of class treatment in this case.

Now, however, is not the time to weigh the merits of these defenses. Instead, class certification avoids these ultimate merits determinations, and the Court should simply focus on whether there are in fact common questions in this case and whether they predominate such that class action treatment is a superior method of adjudicating this matter. Irrefutably, this single action is far superior to tens of thousands or even millions of individual cases.

At issue is simply Cablevision's unfulfilled contractual obligation to provide each customer with a pro rata service interruption credit. That contractual obligation, set forth in a uniform service agreement, a contract of adhesion that Cablevision wrote and which applies to each member of the class, is the sole liability question in dispute. In short, class certification is warranted since "'claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.'" *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004). Certifying the class will enable the Court to determine whether Cablevision breached its standard uniform contract and thus "resolve in one stroke an issue that is central to the validity of the class members' breach of contract claims." *Gray v. Hearst Communications, Inc.*, 444 Fed. Appx. 698, 702 (4th Cir. 2011).

Plaintiffs respectfully submit that the motion for class certification should be granted.

## THE COMPLAINT

**A.  Parties**

Cablevision provides telecommunications and entertainment services in the tri-state area of New York, New Jersey and Connecticut.  Compl. ¶¶ 10-13.  The plaintiffs are customers of Cablevision in these states.  Id.  Prior to October 16, 2010, each of the plaintiffs, and members of the Class they seek to represent, contracted with Cablevision to receive cable television programming from Cablevision, including WNYW a/k/a Fox 5, WWOR a/k/a the My9 Channel, WTXF a/k/a Fox 29, Fox Business Network, National Geographic Wild, and Fox Deportes (collectively, the "Fox Channels").  Compl. ¶ 17.[1]

**B.  Cablevision Discontinued Carriage of Fox Channels in October 2010**

Cablevision's Terms of Service provide that subscribers are billed monthly in advance for services to be received.  Cablevision's Terms of Service also provide that Cablevision is obligated to give each customer a credit for each "known program or service interruption in excess of 24 consecutive hours…"  Compl. ¶ 20.

For a two-week period, from October 16, 2010 through October 30, 2010, Cablevision failed to provide its customers with the Fox Channels.  Compl. ¶ 24.  On or about October 15, 2010, Cablevision's agreement with News Corp., pursuant to which Cablevision carried the Fox Channels, expired.  Compl. ¶ 18.  According to News Corp., Cablevision rejected numerous proposals to enter into a new agreement, including proposals on the same terms and conditions of other cable providers in the New York metropolitan market.  Compl. ¶ 19.  This interruption of the Fox Channels was a reasonably foreseeable consequence of the expiration of the

---

[2] Cablevision customers pay an average of approximately $150 per month to Cablevision for cable television services.  Compl. ¶ 4.

3

Cablevision-News Corp. contract on October 15, 2011, especially given Cablevision's negotiating strategy with News Corp. as to the new contract.  Compl. ¶ 22.

On October 16, 2010, Cablevision sent an e-mail message to its subscribers to inform them that they would be cut-off from viewing the Fox Channels, channels and programming that the subscribers had paid Cablevision to deliver.  The e-mail message provided no avenue for relief or compensation to subscribers, but instead directed Cablevision customers to lodge complaints with News Corp.  Cablevision asked on the one hand that its customers "help" by putting pressure on News Corp.  On the other hand, Cablevision demanded that News Corp. "keep [customers] out of the negotiation."  Compl. ¶ 23.  During the interruption of Fox Channels programming, Cablevision replaced the Fox Channels with a self-serving loop asserting that News Corp. failed to negotiate in good faith and encouraging customers to call News Corp. to complain about any service interruption.  Compl. ¶ 7.

On October 29, 2010, News Corp. announced that it had resolved certain contractual issues with the Dish Network, a satellite television provider.  Compl. ¶ 25.  The next day, October 30, 2010, on the eve of the New York Jets vs. Green Bay Packers NFL football game then-to-be aired on a Fox Channel, Cablevision promptly came to terms with News Corp., and restored the Fox Channels programming.[2]  Compl. ¶ 26.

To date, Cablevision has refused provide a credit to the Class – consumers who prepaid for its services but did not receive those services.  Compl. ¶¶ 24, 29.

---

[2] In addition to missing the October 17, 2010, New York Giants vs. Detroit Lions NFL football game, Cablevision customers were deprived of watching Fox's MLB Playoff coverage, including all six National League Championship Series games, and two World Series games.  On October 27, 2010, before game one of the World Series on FOX, Cablevision offered a $10 credit to each of those customers who paid an additional fee of $9.95 so that they could watch the World Series on MLB.com or MLB.tv.  Compl. ¶ 28.

4

**C.     The Claims**

The Complaint asserts a single claim for breach of contract (Compl. ¶¶ 44-47).

**ARGUMENT**

Courts routinely recognize the benefits of class actions in the consumer law context. Rule 23 requires plaintiffs to demonstrate compliance with the requirements of Rules 23(a) and 23(b). *In re American Int'l. Group, Inc. Sec. Litig.*, 689 F.3d 229, 237-38 (2d Cir. 2012); *Cordes & Co. Fin. Services v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). The cost of pursuing a multiplicity of individual actions against well-financed adversaries precludes individual actions from being a feasible alternative to class certification. *See, e.g.*, *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 290 (2d Cir. 1992) ("Individual adjudication of each claim would take many years, and would drastically increase the legal expenses for all of the parties.").

In seeking class certification, plaintiffs must satisfy the four prerequisites of Rule 23(a), Fed. R. Civ. P., and at least one of the subsections of Rule 23(b). *American Int'l. Group*, 689 F.3d at 238.

This action presents a classic example of a fine Rule 23 action. The principal issue in dispute here is the interpretation of Cablevision's uniform service agreement applicable across the class and whether the class of Cablevision customers are entitled to a pro rata credit under that agreement as a result of the service interruption that occurred in October 2010. In other words, this breach of contract case comes down the interpretation of a single uniform contract. As this and many other courts have stated: "An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment."

5

*Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (collecting cases); *Steinberg*, 224 F.R.D. at 74 ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."); *Emilio v. Robison Oil Corp.*, 63 A.D.3d 667, 668 (2d Dep't 2009) ("class actions are uniformly certified in breach of contract actions").

The broad judicial support for the certification of breach of contract claims is grounded in the fact that a uniform agreement must be interpreted uniformly. As the Restatement states:

> §211. STANDARDIZED AGREEMENTS
>
> . . . .
>
> (2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing….

Restatement (Second) of Contracts §211. Because Cablevision's service agreement is the same for each member of the class and where the Court's interpretation of that agreement must treat all members of the class alike, there is no question here that whether Cablevision is required to provide rebates to its customers is perfectly suited for class treatment.

**A.    THE PROPOSED CLASS SATISFIES RULE 23(a)**

To qualify for class certification, Plaintiffs must first establish four elements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. *See* Fed. R. Civ. P. 23(a).

**1.    Numerosity**

Cablevision cannot contest that the "'class is so numerous that joinder of all members is impracticable.'" *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994). According to Cablevision's own annual report for the year ended December 31, 2010, the Company had over 3 million basic video and roughly 2.9 million digital video customers in the New York

6

metropolitan area. *See* Form 10-K, dated Feb. 16, 2011 (available at

http://www.sec.gov/Archives/edgar/data/784681/000114036111010213/form10k.htm). It is not

anticipated that numerosity will be challenged.

### 2. Commonality[3]

To establish commonality, Plaintiffs must prove the existence of an issue of fact or law common to all class members. As the Supreme Court recently explained "even a single" common question of either fact or law will suffice to satisfy the commonality requirement of Rule 23(a)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (We quite agree that for purposes of Rule 23(a)(2) '"[e]ven a single [common] question'" will do) (internal quotation omitted). Moreover, an issue is common if it promises "one stroke" resolution of a question that is central to all class member claims. *Id.* at 2551.

There is no question here that Cablevision's service agreement is the central factual and legal issue. The meaning of that agreement and the resolution of whether Cablevision breached its agreement to provide a credit to its customers based on the agreement's terms offers a "one stroke" resolution of the entire case. *See Gray*, 444 Fed. Appx. at 702 (affirming certification since the class action can "resolve in one stroke an issue that is central to the validity of the class members' breach of contract claims"). Likewise, most of Cablevision's affirmative defenses

---

[3] Commonality and typicality are sometimes addressed together because they "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). As the Supreme Court explained:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982).

present common legal issues across the class or otherwise are Cablevision-centric. *See* Answer [Docket Entry 55] at 8-10 (defenses such as complaint fails to state a claim, defendant did not breach contract, preemption, dispute arises from matters beyond Cablevison's control, damages resulted from intervening events, and statute of limitations).

### 3. Typicality

To establish typicality, Plaintiffs must prove that claims are "'based on the same legal theory and arise from the same practice or course of conduct as the other class members.'" *Dupler*, 249 F.R.D. at 38 (E.D.N.Y. 2008) *quoting In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998). "The typicality requirement is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation." *Steinberg*, 224 F.R.D. at 72 (E.D.N.Y. 2004). However, the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification. This requirement is readily met when "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, every member of the class: (1) was subject to the same services agreement with Cablevision; (2) experienced the same service interruption; and, (3) failed to receive their contractually required rebates as per the terms of said agreement. As such, the claims of the proposed class representatives are identical to those of the members of the Class.

In light of the uniform contract terms and the contractually required rebates in the event of a service interruption, each class member's individual expectations, understanding, preferences or unique television watching habits are completely irrelevant. *See* Restatement (Second) of Contracts §211(2) (form agreements must be interpreted as "treating alike all those

8

similarly situated, without regard to their knowledge or understanding of the standard terms of the writing."); *In re Checking Account Overdraft Litig.*, ___ F. Supp. 2d ___, 2012 WL 3265093 at *10 (S.D. Fla. Aug. 10, 2012) ("Contrary to Comerica's contention that this claim requires consideration of the expectations, understandings, or preferences of each individual class member, (Opposition, at 46), the claim is amenable to common proof based on its uniform contract and the standardized contractual provisions in the Deposit Agreement."). Rather, the terms of the contract control and the members of the class are entitled to the rebates they bargained for.

Defendants have suggested that they will contend that every plaintiff suffered damages in a different amount, depending upon how often they were at home and what channels they watch. Even assuming this contention had merit, which it does not, any variation among class members in terms of damages or credit amount owed would not defeat class certification. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, ___ F.3d ___, 2012 WL 3854431 at *14 (2d Cir. Sept. 6, 2012) (variations in damages does not defeat class certification).

The typicality element is readily satisfied.

**4.     Adequacy**

To establish adequacy Plaintiffs must prove that: (1) the proposed class representative has interests in common with, and not antagonistic to, the class' interest; and (2) plaintiff's counsel is qualified, experienced, and generally able to conduct the litigation. *Cordes & Co.*, 502 F.3d at 99 ; *Drexel*, 960 F.2d at 291.

Here, the proposed class representative's interests are co-extensive with those of the class members. Their claims arise from the same contract terms as all other members of the Class, the same service disruption that affected all other members of the Class, and the same failure by

Cablevision to provide contractually required credits to them. *See* discussion of commonality and typicality, above.

This Court has already satisfied itself as to the adequacy of Co-Lead Counsel, in connection with the contested motions for appointment of class counsel at the beginning of the case. The Court has already reviewed the background of counsel and expressed no reservations or concerns about the experience of any of the proposed lead counsel. *See* Memorandum and Order [Docket Entry 25 (dated February 1, 2011)]. Indeed, Co-Lead Counsel have extensive experience litigating these types of class claims in this and other federal and state courts, *see* Firm Resumes (attached hereto), and Co-Lead Counsel have demonstrated their commitment to the case through their successful resistance of an omnibus motion to dismiss and the active litigation of this case.

**B.     THE PROPOSED CLASS SATISFIES RULE 23(b)(3)**

Rule 23(b)(3) requires that a plaintiff must demonstrate that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *American Int'l Group*, 689 F.3d at 239. Plaintiffs meet both requirements.

Predominance turns on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006). As previously explained, actions that involve form or uniform contracts have been recognized as being well-suited for class-wide treatment. *See* discussion, above.

Not only do common issues predominate in this case, there are in fact no individual issues that must be adjudicated in order to determine Cablevision's liability. In other words, the

10

only factual and legal issues relevant to the resolution of this case is whether Cablevision is, pursuant to its own form contract, contractually obligated to provide customer rebates. Because the form agreement and service disruption was the same for all the members of the Class, the interpretation of that agreement and its resolution will necessarily resolve the case for everyone.

In this regard, it is worth noting that the determination of damages for each member of the class does not undermine the predominance of common issues. First, it is well settled that the existence of varying amounts of damages do not defeat class certification.[5] *See Cordes & Co.*, 502 F.3d at 106-07 (key question is whether injury is susceptible to common proof). Second, how damages are ultimately calculated will be based on the fact finder's yet undetermined interpretation of Cablevision's form contract and how exactly Cablevision is contractually bound to provide (or not provide) credits in the event of a service interruption. One possible result is, having been found to violate the terms of the contract, Cablevision would be required to provide credits as it is contractually required to do. The computation of those amounts would necessarily be resolved based on the terms of the contract, which are once again, uniform across the Class.

Finally, whatever the means and method of compensating each individual class member, it is a near certainty that Cablevision has the database to determine which of its customers were affected by the service interruption and which customers failed to receive a credit as a result of said interruption. Providing such class members with their contractually entitled credit is also

---

[5] "[I]ndividual damage questions do not preclude a Rule 23(b)(3) class action when the issue of liability is common to the class." 6 Newberg on Class Actions § 18:27 (4th ed. 2002); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 429 (S.D.N.Y. 2009) ("'[W]ell-established that individual questions with respect to damages will not defeat class certification….'"); *Dupler*, 249 F.R.D. at 37-38 (uniform breaches of contract); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 148-49 (S.D.N.Y. 2002) (former and current seafaring employees seeking to recover overtime wages allegedly withheld in violation of uniform individual employment contracts).

11

well within Cablevision's ability. For these reasons as well, there is no question that the class action device is superior here. *See Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 26-27 (2d Cir. 2003) (one suit is preferable and superior to many).

Cablevision has not consented to class certification. If Cablevision truly wanted this litigation swiftly and efficiently resolved, it would support rather than oppose class certification. Instead, Cablevision would seemingly prefer to have each individual customer commence and prosecute their own individual action – a cynical but all too realistic position given that few customers would go the expense and trouble of hiring a lawyer in order to seek a rebate worth far less than the cost of commencing an action.

**CONCLUSION**

For the reasons set forth above, this action should be certified as a class action pursuant to Rule 23.

DATED: October 10, 2012  Respectfully submitted,

STONE BONNER & ROCCO LLP   LAW OFFICES OF TODD J. KROUNER

By: /s/ Ralph M. Stone   By: /s/ Todd J. Krouner
    Ralph M. Stone       Todd J. Krouner
    (rstone@lawssb.com)       (tkrouner@krounerlaw.com)
    Patrick L. Rocco       Scott J. Koplik
    (procco@lawssb.com)       (skoplik@krounerlaw.com)
    Susan M. Davies       Diana M. Carlino
    (sdavies@lawssb.com)       (dcarlino@krounerlaw.com)

260 Madison Avenue, 17th Floor   93 North Greeley Avenue
New York, NY 10016   Chappaqua, NY 10514
Tel. (212) 239-4340   Tel. (914) 238-5800
Fax (212) 239-4310   Fax (914) 238-5820

CHITWOOD HARLEY HARNES LLP

By: /s/ Gregory E. Keller
    Gregory E. Keller
    (gkeller@chitwoodlaw.com)
    Carol S. Shahmoon
    (cshahmoon@chitwoodlaw.com)

1350 Broadway, Suite 908
New York, NY 10018
Tel. (917) 595-4600

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Ralph M. Stone, certify that a true and correct copy of *Plaintiffs' Motion for Class Certification* and *Plaintiffs' Memorandum of Law in Support Thereof* has been served via First Class U.S. Mail and electronic mail to the below-listed attorney in charge for Defendants on October 10, 2012, in accordance with the requirements of the Federal Rules of Civil Procedure:

Thomas H. Golden<br>
Willkie Farr & Gallagher LLP<br>
787 Seventh Avenue<br>
New York, New York 10019

                                          /s/ Ralph M. Stone

                                             Ralph M. Stone