UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In re Cablevision Consumer Litigation

This Document Relates To:

All Actions

Case No. 10-cv-04992 (JS) (AKT)

ECF Case
Electronically Filed

**PLAINTIFFS' REDACTED REPLY BRIEF IN FURTHER
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I.      Plaintiffs Are Entitled to Credits Under Paragraph 4 of the
          Terms of Service................................................................................................... 2

          A.      Cablevision Did Not Make A Programming "Change In Accordance
                with Applicable Law" and Thus Cannot Rely on Paragraph 17 .......... 2

          B.      The Express Terms Of Paragraph 4 Indicate That A "Program
                Interruption" Includes The Failure To Deliver Promised
                Programming......................................................................................... 5

          C.      Cablevision Has Cited No Material Extrinsic Evidence to Permit An
                Interpretation In Its Favor .................................................................... 6

          D.      Cablevision's Asserted Defenses Of Waiver And Notice Have
                No Merit ................................................................................................ 6

    II.     "Pro Rata Credits" Are Calculated The Same Way For All Subscribers ....... 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*ALJ Capital I, L.P. v. David J. Joseph Co.*,
48 A.D.3d 208 (N.Y. App. Div. 2008) .................................................................................. 7

*Auto. Ins. Co. of Harford, v. Asko Appliances, Inc.*,
No. 09-CV-5017 (JS)(AKT), 2011 WL 4434156 (E.D.N.Y. Sept. 21, 2011) ......................... 4

*Baum v. County of Rockland*,
337 F. Supp. 2d 454 (S.D.N.Y. 2004) .................................................................................... 5

*Birdsong Estates Homeowners Ass'n, Inc. v. D.P.S. Southwestern Corp.*,
101 A.D. 3d 1735 (N.Y. App. Div. 2012) .............................................................................. 6

*Bronx Sav. Bank v. Weigandt*,
1 N.Y. 2d at 545, 551-52 (1956) ............................................................................................ 6

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
100 N.Y. 2d 525 (2003) .......................................................................................................... 9

*Environmental Safety and Control Corp. v. Bd. Of Educ., Camden Cent. Sch. Dist.*,
179 A.D.2d 1012 (N.Y. App. Div. 1992) .............................................................................. 7

*Jenoure v. Body Solutions Plus, LLC*,
29 Misc.3d 84 (N.Y. Sup. 2010) ............................................................................................ 9

*La Reunion Francaise, S.A. v. Halbart*,
1998 WL 1750128 (E.D.N.Y. Sept. 28, 1998) ...................................................................... 5

*Laish, Ltd. v. Jafora- Tabori, Ltd.*,
2006 WL 270250 (E.D.N.Y. Feb. 1, 2006) ............................................................................ 8

*McDowell Research Corp. v. Tactical Support Equipment, Inc.*,
2009 WL 2901594 (W.D.N.Y. Sept. 4, 2009) ........................................................................ 8

*Padberg v. Dish Network, LLC*,
No. 11-CV-04035, 2012 WL 2120765 (W.D. Mo. June 11, 2012) ....................................... 5

*Record Club of Am., Inc. v. United Artists Records, Inc.*,
890 F.2d 1264 (2d Cir. 1989) ................................................................................................. 6

*Salzverg v. Brooke*,
37 Misc. 3d 1221(A) (N.Y. Sup. 2012) ................................................................................. 7

*Starke v. UPS, Inc.*,
  No. 10-CV-1225, 2012 WL 4370114 (E.D.N.Y. Sept. 24, 2012) ................................. 9

*Stedman Energy, Inc. v. Lenape Resources Corp.*,
  175 A.D.2d 646 (N.Y. App. Div., 4th Dept. 1991) .................................................... 8

*TNT USA Inc. v DHL Express (USA), Inc.*,
  No. 09-CV-0481(JS)(ARL), 2012 WL 601452 ..................................................... 5, 7

**Statutes**

47 U.S.C. § 543(d) .................................................................................................. 11

C.G.S.A. §16-331k .................................................................................................. 4

**Regulations**

16 N.Y.C.R.R. § 890.61(1) ...................................................................................... 6

N.J.A.C. 14:18-3.17(b) ............................................................................................ 4

16 N.Y.C.R.R. § 890.80(a)(3)(i); § 890.80(c)(4); § 890.80(c)(5) ............................ 4

# INTRODUCTION

Cablevision asserts that under Paragraph 17 of the Terms of Service it *could have* deleted the Fox Channels from its channel lineups "in accordance with applicable law." But nowhere in its 54-paragraph factual statement does it assert any facts to show that the Fox Channels Interruption was a "program change in accordance with applicable law." To the contrary, Cablevision does not dispute that the Fox Channels were included in Plaintiffs' subscriber packages, or that the channel lineup, filed as Exhibit G, was in effect throughout October, 2010.

Because Cablevision has offered no facts to show that the Fox Channels were either deleted from the channel lineup, or then added back "in accordance with applicable law," Paragraph 17 is irrelevant. It could never make that factual assertion, because applicable law required it to provide 30-day advance notice of such a change, which it did not do.

Equally irrelevant is Cablevision's claim that it intended to limit Paragraph 4 to unstated "mechanical" or "technical" causes. The unambiguous language of Paragraph 4 does not mention such a limit and requires credits not only for a service interruption, but also for a program interruption. It permits Cablevision to "at its discretion, in lieu of the credit provide alternative programming during any program interruption," which makes no sense if Paragraph 4 were limited to technical outages of all channels. Cablevision cannot now rewrite Paragraph 4.

Cablevision's "ambiguous contract" theory is another iteration of the same theme. Having imposed a contract of adhesion, Cablevision now improperly asks the Court to look outside its four corners to find an ambiguity and incorporate an unstated limitation. Unfortunately for Cablevision, what it could have done is not a basis for the Court to ignore the undisputed material facts of what it actually did:

> 1. It created a contract obligating it to credit subscriber fees for a program interruption;

1

2. For two weeks in October 2010, it did not deliver the Fox Channels, included in channel line-ups;
3. It has not shown that the Fox Channels were deleted from, or added back to, the channel line-ups in accordance with applicable law; and
4. It did not provide alternative programming, despite its full knowledge of the interruption.

Under Paragraph 4, Cablevision must, therefore, provide subscribers a "pro rata credit."

Cablevision cannot avoid crediting all subscribers, even those who never watch Fox Channels, because the credit, like the subscriber fee itself, is not based on whether the subscriber uses the service or a particular channel. Nor does the notice clause contained in Paragraph 4 permit Cablevision to discriminate among subscribers and pay credits only to those who complain about a universal interruption of which Cablevision was always aware. Cablevision admits that the prompt notification clause was intended only to ensure that it knew of the interruption, not to require a purposeless demand. In any event, the filing of this class action lawsuit provided notice. Finally, the "voluntary payment" doctrine is inapplicable, because the contract calls for credits, presupposing that subscribers performed their side of the bargain by paying their bills.

## ARGUMENT

I. **Plaintiffs Are Entitled to Credits Under Paragraph 4 of the Terms of Service**

   A. **Cablevision Did Not Make A Programming "Change In Accordance with Applicable Law" and Thus Cannot Rely on Paragraph 17**

Cablevision argues that it had no "duty" to provide the Fox Channels, re-hashing its motion to dismiss argument that the Terms of Service do not mandate it to provide "any specific list of channels to its subscribers." Def. Mem. at 8.[1] This Court disagreed, reasoning:

---

[1] References to "Def. Mem." are to the Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment dated January 31, 2013. References to "12-3-12 Shahmoon Decl. Ex. __" are to the exhibits of the Declaration of Carol S. Shahmoon filed on Dec. 3, 2012 along with Plaintiffs' Motion for Partial Summary

2

> Paragraph 17 does not foreclose Plaintiff's claim because it can be fairly read as relieving Cablevision of providing particular content only in the event of a change in applicable law – not, as Cablevision would have it, any time for any reason. **If Cablevision's reading of the Terms of Service is correct, then it has not really promised to provide anything and the contract is arguably illusory.** More to the point, Cablevision's reading of Paragraph 17 would arguably render Paragraph 4 meaningless. Taken to its logical conclusion, Cablevision's position that it was not required to provide particular channels would mean that it was not obligated to provide any channels and would render useless its promise to refund customers for service outages. It is well settled that contracts should be interpreted in a way that avoids rendering any of their provisions superfluous.

Order on Motion to Dismiss [ECF Doc. # 52], at 8 (citations omitted) (emphasis added).

The Terms of Service governs the purchase of cable packages, each comprised of a channel lineup that included the Fox Channels. Pl. SOF ¶4; 12-3-12 Shahmoon Decl. Ex. G (channel lineup). Cablevision does not assert that the lineup listing the Fox Channels was not in effect in October 2010 and cites the lineup in its opposing factual statement. Def. SOF ¶¶ 4, 28.

Cablevision argues that Paragraph 17 gave it the right to change the channel lineup "in accordance with applicable law," which it asserts are "regulations governing channel changes." Def. Mem. at 8.[2] But Cablevision never contends or asserts facts showing that it actually changed the lineup (to delete and then add back the Fox Channels) or that it did so "in accordance with law." *See* Pl. Resp. at ¶¶ 14-20. Thus, Cablevision has not presented any factual dispute implicating Paragraph 17 or precluding summary judgment. *Auto. Ins. Co. of Harford, v. Asko Appliances, Inc.*, No. 09-CV-5017 (JS)(AKT), 2011 WL 4434156, at *2 (E.D.N.Y. Sept.

---

Judgment [ECF Dec. #80-3]. References to "3-1-13 Shahmoon Decl. Ex. __" are to the exhibits of the Declaration of Carol S. Shahmoon filed herewith. References to "Pl. SOF" are to Plaintiffs' Local Rule 56.1 Statement of Material Facts (ECF Doc. #81-1) filed on December 3, 2012. References to "Def. SOF" are to Defendants' Opposing Local Rule 56.1 Statement dated January 31, 2013. References to "Pl. Resp." are to Plaintiffs' Response to Cablevision's Opposing Local Rule 56.1 Statement filed herewith. Defendants Cablevision Systems Corp. and CSC Holdings LLC are referred to collectively herein as "Cablevision."

[2] Cablevision disagrees with the Court's Order that Paragraph 17 is implicated only when there is a change in law. Def. Mem. at 9, n.5. Cablevision argues that Paragraph 17 provides that "when Cablevision exercises that right [to change channel lineups], it must do so 'in accordance with applicable law.'" *Id.*; Def. Mem. at 8 ("applicable law" language is "merely a commitment to comply with the state law requirements that are triggered by such changes"). Plaintiffs assume *arguendo* Cablevision's interpretation, which still provides no defense.

3

21, 2011) (non-moving party must "come forward with specific facts to demonstrate that the evidence is such that a reasonable jury could return a verdict for the non-moving party").

Cablevision does not contend that its failure to retransmit and/or distribute the Fox Channels in October 2010 (the "Fox Channels Interruption") was a "program ... change in accordance with applicable law" because it cannot.[3] A "change in accordance with applicable law" would have required, *inter alia*, 30-day advance notice to subscribers and regulators of the purported channel deletions on October 16, 2010, as well as notice of the purported channel additions on October 30, 2010, and Cablevision fails to assert facts showing compliance with these requirements. *See* 16 N.Y.C.R.R. § 890.80(a)(3)(i); § 890.80(c)(4); § 890.80(c)(5) (30-day advance notice to NY regulators and 30-day advance written notice of "network change on customer bill or mailing and on-screen"); N.J.A.C. 14:18-3.17(b) (30-day advance notice to NJ regulators and to subscribers); C.G.S.A. §16-331k (30-day advance notice to CT regulators and to subscribers); *see generally* Pl. Resp. ¶¶ 14-19.[4] ▮▮▮▮▮▮▮▮▮▮

---

[3] Contrary to Cablevision's view, Plaintiffs do not assert that the Fox Channels Interruption was an "interruption" simply because it lasted two-weeks (Def. Mem. at 9), but rather because the Fox Channels were in the lineup and not deleted in accordance with law, a fact ascertainable at the date of the interruption, not in hindsight.

[4] Under these regulations, New Jersey and Connecticut permit a shorter notification period only if specifically granted by the regulators based on specified conditions. Cablevision submits no evidence that it obtained the requisite permission for a shorter period. In New York, the notice date may be later, if such later date is the first date when the provider knows of the change. ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮ Even if Cablevision had a basis to give less than 30 days' advance notice, it does not assert that it *ever* (on October 16 or later) sent the required written subscriber notices to delete or add back the Fox Channels. *Compare* 3-1-13 Shahmoon Decl. Exs. I, X (notating bills for programming changes) *with* 12-3-12 Shahmoon Decl. Ex. A (no notation regarding Fox Channels). Cablevision does not and cannot contend that advertisements, media reports and promotional emails directing customers to complain to Fox constitute the required written regulatory notice to subscribers of a lineup change (which notice must alert subscribers of the right to downgrade or terminate at no charge). *See, e.g.,* 12-3-12 Shahmoon Decl. Ex. F ("We apologize for the inconvenience caused by News Corp's actions, and we ask for your help. Call 1-877-NO-TV-TAX ... and tell News Corp to put Fox 5 and MY9 back on the air, and to keep you out of the negotiations. Thank you for your patience, your patronage and your support."); ▮▮▮▮▮▮▮▮▮▮

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Thus, Paragraph 17 is inapplicable, and the contract claim is determined solely by Paragraph 4.[5]

### B. The Express Terms Of Paragraph 4 Indicate That A "Program Interruption" Includes The Failure To Deliver Promised Programming

Cablevision asserts that there is an ambiguity in Paragraph 4, but points to no specific language susceptible of different meanings.[6] The purported "ambiguity" arises only from Cablevision's effort to re-write the contract to include a new limit -- that credits are not available unless there is a "mechanical or technical problem" -- when Paragraph 4 makes no hint of this requirement. *See La Reunion Francaise, S.A. v. Halbart*, 1998 WL 1750128, at *6 (E.D.N.Y. Sept. 28, 1998) (exclusion must be clear and specific to be enforced). The third sentence of Paragraph 4 applies to a "*program* or service interruption," and permits "alternative programming," in the event of a program interruption. Cablevision's three-page discussion of Paragraph 4 makes no mention of a "program interruption." Def. Mem. at 11-14.

Paragraph 4 by its terms does not refer to state law except in one situation -- it provides a trigger for interruptions in excess of 24 hours "or in excess of such lesser time period pursuant to state law." Furthermore, a review of state regulations bolsters Plaintiffs' position that Paragraph 4 is broader. Cablevision points to the defined term "service interruption" (Def. SOF ¶ 13), but

---

[5] *Padberg v. Dish Network, LLC*, No. 11-CV-04035, 2012 WL 2120765 (W.D. Mo. June 11, 2012), does not help Cablevision. There, Dish subscribers sued over a programming interruption resulting from a contract dispute between Dish and Fox. Dish's motion to dismiss was denied, even though its subscriber contract, unlike Cablevision's, expressly permitted a programming change *without an "applicable law" limitation*. The contract precluded liability for interruptions "in connection with the termination or suspension of Dish Network's access to all or any portion of services." *Id.* at *1-2. Relying on "good faith and fair dealing" and sustaining claims for credits, the Court reasoned that a contract under which Dish can "deliver whatever programs it chooses without regard to the program package agreed to…would of course render the contract illusory." *Id.* at *4. Cablevision's cited "good faith and fair dealing" cases involve contracts similar to Dish and unlike the one in this case.

[6] An ambiguity must be evident on the face of the agreement; extrinsic evidence cannot create an ambiguity. *Baum v. County of Rockland*, 337 F.Supp.2d 454, 466 (S.D.N.Y. 2004) ("evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the document"); *TNT USA Inc. v DHL Express (USA), Inc.*, No. 09-CV-0481(JS)(ARL), 2012 WL 601452, at *5 ("mere assertion by a party that contract language means something other than what it clearly says is not sufficient to raise a triable issue of fact") (citations omitted).

Paragraph 4 addresses both "service" and "program" interruptions, with no limitation that those interruptions arise from technical or mechanical causes. *See* Pl. SOF ¶ 3, Pl. Resp. ¶ 13.[7]

### C. Cablevision Has Cited No Material Extrinsic Evidence to Permit An Interpretation In Its Favor

Even if the contract were ambiguous, it must be construed against its drafter. *Bronx Sav. Bank v. Weigandt*, 1 N.Y. 2d at 545, 551-52 (1956).[8] Although Cablevision seeks to introduce extrinsic evidence, it has not produced any evidence relevant to Paragraph 4. Apart from the "regulatory backdrop" and "other relevant provisions," neither of which is extrinsic factual evidence, Cablevision urges the Court to consider evidence of its unilateral actions and inquire into what subscribers "would have known." However, on a breach of contract claim, unlike the consumer misrepresentation claims dismissed by this Court, the relevant question is not what someone would have known, but how to interpret the contract's express words.[9] Those words require credits to subscribers when programming is interrupted. Thus, Cablevision's "extrinsic evidence," none of which disputes the language of the contract or channel lineup, is inadmissible and irrelevant, and purported ambiguities must be construed against Cablevision.

### D. Cablevision's Asserted Defenses Of Waiver And Notice Have No Merit

Cablevision argues that customers had to notify Cablevision of the interruption. Yet Cablevision sent emails telling subscribers that it was aware of the interruption, thanking

---

[7] Also, under 16 N.Y.C.R.R. § 890.61(1), a "service interruption" would include the Fox Channels Interruption.
[8] Cablevision does not distinguish Plaintiffs' cases holding that as drafter of a consumer adhesion contract, Cablevision must show that its interpretation is the only reasonable one. Instead, Cablevision cites cases involving bilaterally negotiated contracts, where there may be a basis to consider evidence of *mutual* intent of the parties. *See, e.g., Record Club of Am., Inc. v. United Artists Records, Inc.*, 890 F.2d 1264 (2d Cir. 1989) (licensing agreement between record club and record company); *Birdsong Estates Homeowners Ass'n, Inc. v. D.P.S. Southwestern Corp.*, 101 A.D. 3d 1735 (N.Y. App. Div. 2012) (development of residential subdivision contract).
[9] A breaching party cannot avoid liability because the other party should have known that the party would not be performing. *TNT USA Inc. v. DHL Express (USA), Inc.*, 2013 WL 601452, at *4 (email notice by shipper of final cut-off date for shipments does not preclude customer from enforcing contract rights); *id.* at *6 (parole evidence of course of conduct is irrelevant if it means court ignores contract language).

subscribers for their "patience," apologizing "for the inconvenience," and asking subscribers to "help" by placing angry phone calls to a Cablevision hotline. Those emails did not indicate that Cablevision intended to keep pre-paid subscriber fees of anyone not angry enough to demand credits due under the contract. Nor was the hotline number (or any other phone number) set up to accept subscriber "notice."[10]

It is not reasonable to interpret Paragraph 4's "notice" clause to require subscribers, already notified by Cablevision, to re-notify Cablevision of the interruption.[11] The clause does not require "demand" or an exhaustion of internal procedures but instead entails only "notice," which Cablevision admits it needs only "because Cablevision cannot know which subscribers, if any, have been affected by a failure or interruption unless a subscriber informs Cablevision." Defendants' Opposing Local Rule 56.1 Statement (Draft), July 10, 2012, [ECF Dec. #59-7], ¶ 20.[12] Cablevision cannot now argue that the clause was meant to permit it to keep pre-paid fees of some subscribers but not others, when it has notice that all are affected identically.[13]

Cablevision argues that the words "known interruption" should mean "an interruption that Cablevision knows about." Its interpretation of "known" is inconsistent with its common

---

[10] 12-3-12 Shahmoon Decl. Ex. F. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

[11] Cablevision's "notice" cases involve situations where the breaching party needs notice to decide how to cure. See ALJ Capital I, L.P. v. David J. Joseph Co., 48 A.D. 3d 208 (N.Y. App. Div. 2008) (notice required within cure period); Environmental Safety and Control Corp. v. Bd. Of Educ., Camden Cent. Sch. Dist., 179 A.D.2d 1012 (N.Y. App. Div. 1992) (asbestos contractor needs notice of breach); Salzverg v. Brooke, 37 Misc. 3d 1221(A) (N.Y. Sup. 2012) (co-op seller cannot keep $400,000 deposit, based on buyer's application for financing, when seller never provided notice of financing application, a breach that could have been cured, preventing further breach).

[12] At best, Cablevision's suggestion that consumers must give notice of programming interruptions of which Cablevision is fully aware points to an ambiguity in that provision. Any such ambiguity should be construed against Cablevision. See Stedman Energy, Inc. v. Lenape Resources Corp., 175 A.D. 2d 646, 647 (N.Y. App. Div., 4th Dept. 1991) (exculpation clause juxtaposed with due care clause not clear and unambiguous to enforce exculpation against non-drafter).

[13] State regulations require Cablevision to *automatically* credit subscribers affected by an outage when it knows the subscribers affected, even though Cablevision can require notice from subscribers when it "cannot determine all subscribers affected by a service outage." See N.Y.C.R.R. 890.65(c), (d). Cablevision's concept that only those who feel "aggrieved enough to seek a refund by calling Cablevision themselves" (Def. Mem. at 20) are entitled to a credit contradicts this "regulatory context" that Cablevision asserts is most relevant here. Also, its citation to consumer fraud cases is inapplicable to this case involving breach of contract.

definition – an adjective meaning "generally recognized" or "within the scope of knowledge." *See* Merriam-Webster Online dictionary (http://www.merriam-webster.com/dictionary/known). "Known," thus, indicates the type of interruption – one that is ascertainable or recognized to be true, without regard to *when* Cablevision knows about it – and would only preclude credits claimed for a purported interruption that, unlike the Fox Channels Interruption, cannot ultimately be objectively ascertained by Cablevision.

Furthermore, a promptly filed lawsuit would meet any "notice" requirement. *See, e.g., McDowell Research Corp. v. Tactical Support Equipment, Inc.,* 2009 WL 2901594, at *8 (W.D.N.Y. Sept. 4, 2009); *Laish, Ltd. v. Jafora- Tabori, Ltd.,* 2006 WL 270250, at *5 (E.D.N.Y. Feb. 1, 2006). Cablevision asserts, without any legal support, that "lawsuit as notice" is limited to U.C.C. cases, and suggests that if it had notice it might have decided to provide alternative programming. But Cablevision *already knew* of the interruption and of its right to provide alternative programming, *in its sole discretion*, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Apparently abandoning its "economic loss" and "mitigation" defenses, Cablevision does not fare any better with the "voluntary payment doctrine." Paragraph 4 contains an explicit remedy—a "pro rata credit," a return of previously paid amounts (billed in advance). Thus, a condition of Paragraph 4 is paying the cable bill.[14] The amount of the pro rata credit, dependent

---

[14] Cablevision's "voluntary payment" cases involve situations where the payment was made in exchange for some bargained-for promise or involving an otherwise fully disclosed fee. *See, e.g., Jenoure v. Body Solutions Plus, LLC,* 29 Misc. 3d 84 (N.Y. Sup. 2010)(down-payment non-refundable per contract in order to secure plastic surgery

on the interruption time period, can be ascertained only after the interruption is over, making it impossible for subscribers to withhold accurately payments due. Cablevision's theory that it is permitted to keep pre-paid fees for undelivered services until people who "care" dispute their bill cannot be a reasonable interpretation of the contract. A subscriber must perform, by paying the bill, before Cablevision is required to perform, by either delivering in full, the agreed-upon services or giving a pro rata credit. Cablevision turns contract law on its head by insisting on non-performance by its subscribers as a prerequisite to its duty to provide the pro rata credit.[15]

## II. "Pro Rata Credits" Are Calculated The Same Way For All Subscribers

Cablevision asserts that Paragraph 4 credits vary depending on subscriber "valuation" of the interrupted service[16] and that subscribers who do not value the Fox Channels are owed no credit at all. But the credit is a return of what customers paid for their packaged channel bundle during the interruption period. Cablevision's theory of "coincidence" – that the inclusion of channels in the lineup is mere coincidence to some subscribers – is irrelevant, because all subscribers must pay for the whole package at the same regional rates. Cablevision nowhere asserts that the same packages are priced differently based on individual preferences or usage.

Cablevision quotes "hornbook law" on expectation damages – that one can "recover an amount that will put one in as good a position as one would have been in had the contract been

---

appointment); *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y. 2d 525 (2003) (contractually mandated late fee charged when party avails itself of opportunity to make a late payment). Cablevision's argument that, by performing under the contract, subscribers have agreed to entirely excuse Cablevision's non-performance is absurd. ▮

[15] Cablevision half-heartedly argues for a force majeure defense (Def. Mem. at 18), already addressed in the motion to dismiss Order. The argument fails because a contractual dispute with a provider, not listed specifically as a force majeure event, is not a valid excuse. ▮

▮ Defendants' citation to *Starke v. UPS, Inc.*, No. 10-CV-1225, 2012 WL 4370114, at *6 (E.D.N.Y. Sept. 24, 2012) adds nothing new. It involved a 23-hour delay of a UPS delivery due to a major snow storm, and the contract specifically included "act of God" in its force majeure exclusion list.

[16] Cablevision argues that credits are based on the "value" of "alternative programming"(Def. Mem. at 22), which it did not provide. This untenable theory does not support the argument that credits cannot be uniformly-calculated.

performed." Def. Mem. at 23. Paragraph 4, however, expressly precludes expectation damages and limits all customers to the same remedy – a return of what they paid for subscriber packages, the components of which Cablevision insists cannot be valued separately.[17] Reversing pre-paid charges cannot create a "windfall," because all subscribers paying the same rates receive the same credit. Cablevision chose to preclude customers from recovering based on individual expectations. Paragraph 4 does not specify a channel valuation process, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[18]. Although Plaintiffs suggest that the credit may be calculated by prorating the monthly charge for the package, Plaintiffs' motion does not seek to establish the amount of the credit, but only that, within each service tier, credits must be uniformly-calculated.



## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted in its entirety.

---

[17] *See, e.g.*, Def. SOF ¶¶ 39, 1, 4.

[18] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dated: March 1, 2013

Respectfully submitted,

STONE BONNER & ROCCO LLP

By: /s/ Ralph M. Stone
Ralph M. Stone
(rstone@lawssb.com)
Patrick L. Rocco
(procco@lawssb.com)
Susan M. Davies
(sdavies@lawssb.com)
260 Madison Avenue, 17th Floor
New York, NY 10016
Tel. (212) 239-4340
Fax (212) 239-4310

LAW OFFICE OF TODD J. KROUNER

By: /s/ Todd J. Krouner
Todd J. Krouner
(tkrouner@krounerlaw.com)
Scott J. Koplik
(skoplik@krounerlaw.com)
Diana M. Carlino
(dcarlino@krounerlaw.com)
93 North Greeley Avenue
Chappaqua, NY 10514
Tel. (914) 238-5800
Fax (914) 238-5820

CHITWOOD HARLEY HARNES LLP

BY: /s/ Carol S. Shahmoon
Gregory E. Keller
(gkeller@chitwoodlaw.com)
Carol S. Shahmoon
(cshahmoon@chitwoodlaw.com)
1350 Broadway, Suite 908
New York, NY 10018
Tel. (917) 595-4600
Fax (404) 876-4476

## CERTIFICATE OF SERVICE

I, Carol S. Shahmoon, certify that a true and correct copy of Plaintiffs' Redacted Reply Brief In Further Support Of Motion For Partial Summary Judgment has been served via First Class U.S. Mail and by electronic mail to the below-listed attorney in charge for Defendants in accordance with the requirements of the Federal Rules of Civil Procedure.

> Thomas H. Golden
> Wilkie Farr & Gallagher LLP
> 787 Seventh Avenue
> New York, New York 10019

Dated: March 1, 2013

Respectfully submitted,

CHITWOOD HARLEY HARNES LLP

By: /s/ Carol S. Shahmoon
Gregory E. Keller
(gkeller@chitwoodlaw.com)
Carol Shahmoon
(cshahmoon@chitwoodlaw.com)
1350 Broadway, Suite 908
New York, NY 10018
Tel. (917) 595-4600

*Attorneys for Lead Plaintiffs*

12