UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X


In re CABLEVISION CONSUMER LITIGATION          <u>MEMORANDUM & ORDER</u>
                                               10-CV-4992(JS)(AKT)


-------------------------------------X
APPEARANCES
For Plaintiffs:        Lee S. Shalov, Esq.
                       Ralph M. Stone, Esq.
                       Shalov Stone Bonner & Rocco LLP
                       260 Madison Avenue, 17th Floor
                       New York, NY 10016

                       Todd J. Krouner, Esq.
                       Scott Jaller Koplik, Esq.
                       Law Offices of Todd J. Krouner
                       93 North Greeley Avenue
                       Chappaqua, NY 10514

                       Gregory E. Keller, Esq.
                       Chitwood Harley Harnes LLP
                       1350 Broadway, Suite 908
                       New York, NY 10018

For Defendants:        Thomas H. Golden, Esq.
                       Wilkie Farr & Gallagher
                       787 Seventh Avenue
                       New York, NY 10019

SEYBERT, District Judge:

          This consumer class action arises out of defendants

Cablevision Systems Corp. and CSC Holdings, LLC's (collectively,

"Cablevision") failure to provide certain television programming

to its subscribers during a two-week period in 2010.  Presently

before the Court are: (1) a motion for class certification made by

all of the named plaintiffs (collectively, "Plaintiffs") (Docket

Entry 65); and (2) a motion for partial summary judgment made by plaintiffs Eric Bohm, John Brett, Arthur Finkel, Theodore Pearlman, Vincent Pezzuti, and Stanley Somer (Docket Entry 80). For the following reasons, the motion for class certification is GRANTED and the motion for partial summary judgment is DENIED WITHOUT PREJUDICE and with leave to renew after the putative class members have been provided notice and an opportunity to opt out of the suit.

BACKGROUND

I.   Factual Background

    A.   The Parties

Cablevision provides, among other things, cable television services. During the time period at issue, Cablevision had approximately three million cable television subscribers in New York, New Jersey, Connecticut, and Pennsylvania. (Cablevision's Opp. Br., Docket Entry 90, at 2.) Plaintiffs, who are residents of New York, New Jersey, and Connecticut, were Cablevision customers. (Second Consolidated Am. Compl. ("SCAC"), Docket Entry 54, ¶¶ 10-13.) Plaintiffs commenced this action on behalf of themselves and a putative class of the three million Cablevision customers, seeking contractual damages for Cablevision's failure to provide certain programming and networks owned by Fox Cable Network Services ("Fox") during a two-week

period from October 16, 2010 to October 30, 2010.  (See generally SCAC.)

B.    The Fox Channels Interruption

Prior to October 16, 2010, Plaintiffs received, along with dozens of other programming offerings provided in bundled packages of cable channels, some or all of the following Fox cable channels: WNYN ("Fox 5"), WWOR ("My9 Channel"), WTXF ("Fox 29"), Fox Business Network, National Geographic Wild, and Fox Deportes (collectively, the "Fox Channels").  (SCAC ¶¶ 3, 17; Cablevision's Opp. Br. at 4-5.)  Fox 5, Fox 29, and My9 (the "Broadcast Basic Channels") were provided to subscribers as part of Cablevision's "Broadcast Basic" package, Cablevision's smallest package consisting of roughly thirty-five channels.  (Cablevision's Opp. Br. at 4-5.)  Fox Deportes, National Geographic Wild, and Fox Business were not included in the Broadcast Basic package.  Those channels were provided to subscribers as part of Cablevision's "iO" packages, which included the Broadcast Basic Channels and hundreds of other cable channels.  (Cablevision's Opp. Br. at 5.)

On October 16, 2010, Cablevision's retransmission agreement with News Corp., Fox's parent company, expired.  (Cablevision's Opp. Br. at 6; SCAC ¶ 18.)  As a result, Cablevision lost its rights to broadcast the Fox Channels.  The channels were unavailable for distribution on Cablevision's cable systems for two-weeks until October 30, 2010, at which point Cablevision and

News Corp. reached a new retransmission agreement, allowing Cablevision to once again broadcast the Fox Channels. (Cablevision's Opp. Br. at 8; SCAC ¶ 26.)

Realizing that it and Fox might not reach a new agreement in time, Cablevision sent an e-mail to its subscribers on October 12, 2010 warning them of the possibility that it might lose its rights to broadcast the Fox Channels. (Cablevision's 56.1 Counterstmt., Docket Entry 93-1, ¶ 44, Ex. 32.) On the day the retransmission agreement expired, Cablevision e-mailed its subscribers to notify them that the Fox Channels were no longer available but that Cablevision would continue to negotiate a new retransmission agreement. (Pls.' 56.1 Stmt., Docket Entry 80-2, ¶ 6; Shahmoon Decl., Docket Entry 80-3, Ex. F; Cablevision's 56.1 Counterstmt. ¶ 47.) Cablevision also began broadcasting a similar message on the Fox Channels. (Cablevision's 56.1 Counterstmt. ¶ 47; SCAC ¶¶ 7, 23.)

Cablevision did not provide a credit to any of its subscribers for the two-week period that they were without the Fox Channels, nor did Cablevision provide alternative programming to replace the Fox Channels. In interrogatory responses served in the action, Cablevision stated:

> Cablevision is not aware of any customers who communicated complaints to it relating to a disruption in the provision of programming content on the Fox Channels between October 16, 2010 through October 30, 2010, and who

4

thereafter received a reduced charge for cable television service on their monthly invoice because of such disruption.

. . .

Cablevision did not provide alternative programming specific to the Fox Channels during the period beginning October 16, 2010 through October 30, 2010.

(See Golden Decl., Docket Entry 90-1, Ex. F at 8-9.)

C.   Cablevision's Services and the Terms of Service

With the exception of certain premium channels, Cablevision subscribers cannot order individual cable channels. (Feldman Decl., Docket Entry 90-6, ¶ 3.)   Rather, Cablevision offers its bundled packages of channels in exchange for a flat monthly fee; it does not charge its subscribers specifically for any particular channel.   (Feldman Decl. ¶ 3.)   Accordingly, Cablevision did not charge Plaintiffs specifically for any of the Fox Channels, and Plaintiffs could not order any of them individually.   (Cablevision's 56.1 Counterstmt. ¶ 39.)

Cablevision's Terms of Service, a standard form agreement drafted by Cablevision, governed the contractual relationship between Cablevision and its subscribers before and during the two-week period that the Fox Channels were unavailable. (Golden Decl. Ex. A.)   Pursuant to the Terms of Service, Cablevision billed its subscribers "monthly in advance for services to be received." (Golden Decl. Ex. A ¶ 1.)   However, the

5

precise days of each subscriber's monthly billing period vary from subscriber to subscriber.  (Cablevision's 56.1 Counterstmt ¶ 23.) In addition, subscribers of the same service package, even in the same service area, may pay different rates for the same package because of the various promotions and discounts Cablevision offers to certain subscribers.  (Cablevision's 56.1 Counterstmt. ¶ 26; Pls.' Resp. 56.1 Stmt., Docket Entry 100-1, ¶ 26.)

As discussed more fully below, Paragraphs 4 and 17 of the Terms of Services are the focus of this litigation.  Paragraph 4 of the Terms of Service governs the rights of the parties in the event of a "program or service interruption." (Golden Decl. Ex. A ¶ 4.)  Paragraph 4 provides:

> **Disruption of Service:**  In no event shall Cablevision be liable for any failure or interruption of program transmissions or service resulting in part or entirely from circumstances beyond Cablevision's reasonable control. Subject to applicable law, credit will be given for qualifying outages.  In any event, if there is a known program or service interruption in excess of 24 consecutive hours (or in excess of such lesser time period pursuant to state law), Cablevision, upon prompt notification of such failure or interruption from Subscriber, will either provide Subscriber with a pro-rata credit relating to such failure or interruption or, at its discretion, in lieu of the credit provide alternative programming during any program interruption.  Cablevision shall not be liable for any incidental or consequential damages.

(Golden Decl. Ex. A ¶ 4.)  Paragraph 17 of the Terms of Service applies to programming "changes" and states: "**Programming**:  All programming, program services, program packages, number of channels, channel allocations, broadcast channels, interactive services, e-mail, data offerings and other Services are subject to change in accordance with applicable law."  (Golden Decl. Ex. A ¶ 17.)

  D. <u>Plaintiffs' Breach of Contract Claim</u>

   Plaintiffs contend that the two-week absence of the Fox Channels was a "program or service interruption" within the meaning of Paragraph 4 of the Terms of Service.  (SCAC ¶¶ 20-21.)  Thus, they allege that Cablevision breached Paragraph 4 when it failed to give its subscribers a pro rata credit on their monthly subscriber fees or alternative programming for the two-week period that the Fox Channels were unavailable.  (SCAC ¶¶ 45-46.)  In defense, Cablevision primarily relies on Paragraph 17.  According to Cablevision, it is not liable for breach of contract because Paragraph 17 relieves it of the obligation to provide any particular programming and Paragraph 4 only applies to interruptions caused by a mechanical or technical problem. (Cablevision's Opp. Br. at 14; Cablevision's Opp. Br. to Summ. J., Docket Entry 93, at 7-17.)

II.   Procedural Background

        Plaintiffs Theodore Pearlman and Marc Tell commenced
this purported class action on October 29, 2010.  On February 1,
2011, this Court consolidated the Pearlman complaint with four
other actions brought by Cablevision subscribers alleging
virtually identical causes of action.  Pearlman v. Cablevision
Sys. Corp., No. 10-CV-4992, 2011 WL 477815 (E.D.N.Y. Feb. 1, 2011).
On February 22, 2011, Plaintiffs filed a Consolidated Amended
Complaint, asserting claims for (1) breach of contract; (2) breach
of the covenant of good faith and fair dealing; (3) unjust
enrichment; (4) consumer fraud under New York law; (5) consumer
fraud under New Jersey law; and (6) consumer fraud under
Connecticut law.  (Docket Entry 27.)

        On March 18, 2011, Cablevision moved to dismiss the
Consolidated Amended Complaint.  (Docket Entry 34.)  On March 28,
2012, the Court dismissed all claims in the Consolidated Amended
Complaint except for Plaintiffs' breach of contract claim.  See In
re Cablevision Consumer Litig., 864 F. Supp. 2d 258 (E.D.N.Y.
2012).  Cablevision made three arguments as to why the Fox Channels
interruption did not trigger a pro rata credit under Paragraph 4.
Only the first two are relevant to the pending class certification
motion.  As noted above, Cablevision argued that Paragraph 17
relieved Cablevision of providing any particular content and
therefore Cablevision could not be liable for a pro rata credit

8

related to a programming change.   The Court disagreed that
Paragraph 17 foreclosed Plaintiffs' claim that Paragraph 4
entitled them to a pro rata credit.   The Court explained:

> Paragraph 17 does not foreclose Plaintiffs'
> claim because it can be fairly read as
> relieving Cablevision of providing particular
> content only in the event of a change in
> applicable law--not, as Cablevision would have
> it, any time for any reason.   If Cablevision's
> reading of the Terms of Service is correct,
> then it has not really promised to provide
> anything and the contract is arguably illusory.
> More to the point, Cablevision's reading of
> Paragraph 17 would arguably render Paragraph 4
> meaningless. Taken to its logical conclusion,
> Cablevision's position that it was not required
> to provide particular channels would mean that
> it was not obligated to provide any channels
> and would render useless its promise to refund
> customers for service outages.

In re Cablevision Consumer Litig., 864 F. Supp. 2d at 263 (internal
citations omitted).

Cablevision's second argument, related to the first, was
that Paragraph 4 could not be interpreted to obligate Cablevision
to compensate customers for the suspension of a particular channel
because such an interpretation would render Paragraph 17
meaningless.   The Court rejected this argument as well, explaining
that "the converse is equally true:   reading Paragraph 17 in the
way Cablevision urges would render Paragraph 4 meaningless.   And
the two provisions may be reconciled by the reading of Paragraph
17 that the Court suggested above."   Id. at 264.   The Court did
note that Paragraphs 4 and 17 could be reconciled in the way

Cablevision suggested:  The Terms of Service did not require Cablevision to provide any particular channels but did require it to refund customers for "outages" as defined in state cable television regulations.  Id. at 264 n.3.  However, the Court found that Plaintiffs had stated a plausible entitlement for relief and that it would be inappropriate to resolve the ambiguity at the motion to dismiss stage.  Id.

On April 16, 2012, Plaintiffs filed a Second Consolidated Amended Complaint consistent with the Court's March 28, 2012 Order.  (Docket Entry 54.)  On October 10, 2012, Plaintiffs filed a motion for class certification.  (Docket Entry 65.)  On December 3, 2012, plaintiffs Eric Bohm, John Brett, Arthur Finkel, Theodore Pearlman, Vincent Pezzuti, and Stanley Somer filed a motion for partial summary judgment.  (Docket Entry 80.)  These motions are currently pending before the Court.

<u>DISCUSSION</u>

The Court will first address Plaintiffs' motion for class certification and then turn to the motion for partial summary judgment.

I.   <u>Motion for Class Certification</u>

Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3) of a class "consisting of themselves and all other similarly situated customers who contracted with Cablevision prior to October 16, 2010, to receive cable television

10

service on or after October 16, 2010."  (Mot. for Class Cert.,
Docket Entry 65, at 2.)  "Excluded from the Class are Cablevision's
officers, directors, legal representatives, heirs, successors, and
assigns; and any judicial officer assigned to this case and his or
her immediate family."  (Mot. for Class Cert. at 2.)

   Cablevision opposes the motion for class certification,
arguing: (1) that Plaintiffs have failed to establish commonality
and typicality under Federal Rules of Civil Procedure 23(a)(2) and
(a)(3), respectively; (2) that individual issues of law and fact
predominate over common issues of law and fact; (3) that the class
would include uninjured members who lack standing; and (4) that
certification would violate Cablevision's due process rights and
the Rules Enabling Act.  (Cablevision's Opp. Br. at 9-25.)  As
discussed below, the Court rejects each of these arguments.
Because the requirements of Rule 23 have been met, the motion for
class certification is GRANTED.

  A. Federal Rule of Civil Procedure 23

   A plaintiff seeking class certification under Federal
Rule of Civil Procedure 23 must establish by a preponderance of
the evidence (1) that the class meets the four prerequisites set
forth in Rule 23(a); and (2) that the action fits into one of the
categories of class actions enumerated in Rule 23(b).  FED. R. CIV.
P. 23; see also Teamsters Local 445 Freight Div. Pension Fund v.
Bombardier Inc., 546 F.3d 196, 201-02 (2d Cir. 2008).  The Court,

in determining whether these requirements have been satisfied, may be required to assess the merits of the underlying claims, so long as they are related to one of the Rule 23 requirements.  See Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.), 471 F.3d 24, 41 (2d Cir. 2006); Valley Drug Co. v. Geneva Pharms. Inc., 350 F.3d 1181, 1188 n.15 (11th Cir. 2003) ("Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982))).

Further, although "a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met," In re Initial Pub. Offerings, 471 F.3d at 41; see also Teamsters, 546 F.3d at 204 ("A court [must] receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." (internal quotation marks and citation omitted)), the requirements should be "given liberal rather than restrictive construction," Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997).

1.   Rule 23(a) Prerequisites

Rule 23(a) lists four prerequisites to class certification:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). "Additionally, while it is not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." Colozzi v. St. Joseph's Hosp. Health Ctr., 275 F.R.D. 75, 83 (N.D.N.Y. 2011) (citing In re Initial Pub. Offerings, 471 F.3d at 30).

The Court will address each prerequisite below. However, Cablevision offers no opposition with respect to the elements of numerosity and adequacy of class representation. Cablevision's opposition focuses solely on the commonality and typicality elements. (See Cablevision's Opp. Br. at 10-12.)

a.   Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." FED. R.

CIV. P. 23(a)(1).  Plaintiffs clearly establish numerosity here, as the putative class consists of approximately three million Cablevision subscribers.  See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members . . . .").  Accordingly, the Court concludes that the numerosity prerequisite is met.

       b.   Commonality

Rule 23(a)(2) requires that there are "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2). "Commonality is satisfied where a single issue of law or fact is common to the class."  In re IndyMac Mortgage-Backed Sec. Litig., 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (emphasis added) (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556, 180 L. Ed. 2d 374 (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (internal quotation marks omitted)).  However, as the Supreme Court recently made clear in Wal-Mart Stores, Inc. v. Dukes, superficial common questions will not satisfy the commonality requirement.  Rather, a party seeking class certification "must be prepared to prove that there are in fact sufficiently . . . common questions of law or fact."  131 S. Ct. at 2551 (emphasis in the original).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Id. (quoting Falcon, 457 U.S. at 157).  In other words, the class "claims must depend upon a common

contention . . . of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Plaintiffs contend that commonality is present because the putative class members' breach of contract claims are linked by a standard form contract, namely, the Terms of Service, and Cablevision's uniform cable packages. (Pls.' Br. for Class Cert., Docket Entry 66, at 7.) The Court agrees. Plaintiffs allege that Cablevision breached Paragraph 4 of the Terms of Service when it failed to provide pro rata credits for the two-week interruption of the Fox Channels. Paragraph 4 explicitly states that Cablevision will provide a "pro rata credit" or provide alternative programing in the event of a "program or service interruption" longer than twenty-four hours. Thus, the contract claim hinges on whether the two-week interruption was a "program or service interruption" within the meaning of Paragraph 4. This question is the core of this lawsuit and applies equally to every putative class member because each class member (1) was bound by the same Terms of Service; (2) subscribed to one of Cablevision's uniform service packages that included some or all of the Fox Channels; and (3) experienced the same service interruption. Accordingly, the breach of contract claim depends upon a common contention that is not only capable of classwide resolution but also is the core

15

of this lawsuit. Wal-Mart, 131 S. Ct. at 2551. Indeed, numerous courts have held that claims arising out of form contracts are particularly appropriate for class certification. Seekamp v. It's Huge, Inc., No. 09-CV-0018, 2012 WL 860364, at *11 (N.D.N.Y. Mar. 13, 2012) ("[T]he [contract] is a standard form contract, the interpretation of which will not require individualized inquiries as to each contract signed by each proposed class member."); Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 46 (E.D.N.Y. 2008) ("All members of the Proposed Class are bound by the same membership agreement and Privileges and Conditions of Membership. . . . the alleged breach of standard-form contracts are particularly appropriate for class action."); Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." (internal citation omitted)).

Nonetheless, relying on the Supreme Court's recent opinion in Wal-Mart, Cablevision argues that commonality is not met because all three million putative class members have not suffered the same injury. Specifically, Cablevision contends, "no subscriber could watch more than a small fraction of the programming made available in Cablevision's bundled packages (some of which include well over 300 channels)." (Cablevision's Opp. Br. at 12.) Thus, "the extent to which the availability of the

16

Fox Channels motivated putative class members to subscribe to Cablevision's services, and the extent to which the unavailability of those channels injured them," Cablevision contends, "will vary substantially from person to person." (Cablevision's Opp. Br. at 12.) Cablevision also contends that each breach of contract claim will depend on whether the subscriber expected to receive the Fox Channels. (Cablevision's Opp. Br. at 12.)

This argument is easily dismissed. Contrary to Cablevision's contention, Plaintiffs' breach of contract claim does not turn on each subscriber's motivation for purchasing a particular service package or even whether he or she watched any of the Fox Channels at all. Rather, as already noted, Plaintiffs claim that the Terms of Service obligated Cablevision to provide a uniform pro rata credit for the disruption of the Fox Channels because the Fox Channels were part of each subscriber's cable package at the time of the disruption. At this stage, it is not the Court's task to determine whether Plaintiffs are correct. Rather, the Court must only assess whether the claim presents common issues of fact and law sufficient for class certification. While there certainly is evidence that subscribers valued the Fox Channels differently, the Terms of Service can have only one meaning, and it does not depend on each subscriber's individual expectations or viewing preferences. See, e.g., In re Checking Account Overdraft Litig., 286 F.R.D. 645, 657 (S.D. Fla. 2012)

17

("Contrary to [defendant's] contention that this [breach of contract] claim requires consideration of the expectations, understandings, or preferences of each individual class member, . . . the claim is amenable to common proof based on its uniform contract and the standardized contractual provisions in the Deposit Agreement."); see also Spagnola v. Chubb Corp., 264 F.R.D. 76, 94 (S.D.N.Y. 2010) (rejecting argument that breach of contract claim lacked commonality even though the plaintiffs viewed the meaning of the contract differently because "the contract can only have had one actual meaning").  The Court's conclusion is supported by the fact that Cablevision treated its subscribers equally across service areas, charging each subscriber the same price for a package of channels.

        Cablevision's commonality argument rests on a misapplication of the Supreme Court's commonality ruling in Wal-Mart.  In Wal-Mart, the Supreme Court decertified a class of 1.5 million current and former female employees of Wal-Mart in an action alleging that "the discretion exercised by their local supervisors over pay and promotion violate[d] Title VII by discriminating against women."  131 S. Ct. at 2547.  The Supreme Court found that the plaintiffs failed to establish commonality because they only generally alleged that the class suffered Title VII injuries without identifying a "'specific employment practice'--much less one that tie[d] all their 1.5 million claims

18

together." Id. at 2555-56.   Because the alleged Title VII
violations arose from individual managers' exercise of discretion,
the plaintiffs were "unable to show that all the employees' Title
VII claims [would] in fact depend on the answers to common
questions." Id. at 2554.   This case is distinguishable from Wal-
Mart because, as discussed above, individual inquiries probing
each subscriber's viewing habits or motivations for purchasing a
particular cable package are both irrelevant and unnecessary.

        Also distinguishable is Laumann v. National Hockey
League, 907 F. Supp. 2d 465 (S.D.N.Y. 2012), which Cablevision
relies on for the proposition that "[p]ermitting any plaintiff who
simply purchased cable . . . programming to sue would create a
class of plaintiffs for whom 'it is merely coincidental that they
purchased [the programming in question] at all.'"   (Cablevision's
Opp. Br. at 12 (alteration in the original) (quoting Laumann, 907
F. Supp. 2d at 484)).   This isolated quote is deceiving.   In
Laumann, the court dismissed, for lack of standing, the claims of
two plaintiffs in a putative antitrust class action alleging that
they were overcharged for cable services due to the absence of
out-of-market competition from baseball clubs' regional sports
networks.   Id. at 484 ("These plaintiffs' only claims are based on
some unidentified increased price of their overall cable package
allegedly stemming from the absence of competition from out-of-
market baseball clubs and their [regional sports networks].").

The court found that the "unidentified increased price of [the plaintiffs'] overall cable package" was a speculative injury that was too remote from the defendants' collusive conduct. Id. at 484–85. Laumann is clearly inapplicable here because Plaintiffs' claim, unlike the claim in Laumann, is for a uniform pro rata credit based on the terms of a standard from contract.

Cablevision also argues that the contract claim depends on two additional individualized determinations that prevent classwide resolution; namely, (1) whether the voluntary payment doctrine precludes certain class members' claims and (2) whether each class member complied with his or her "contractual obligation to give 'prompt notification' [of the Fox Channels interruption] to Cablevision." (Cablevision's Opp. Br. at 12.) However, as previously noted, "it is not necessary that all of the factual and legal issues in a putative class action be common to the class as a whole." Vazquez v. Lamont Fruit Farm, Inc., No. 06-CV-582S, 2011 WL 4572066, at *6 (W.D.N.Y. Sept. 30, 2011). And, as addressed later in the Court's discussion regarding the predominance requirement of Rule 23(b)(3), the Court finds that at this stage, these issues actually present common questions among the class.[1]

---

[1] Although Cablevision contends that these "individualized questions" defeat commonality, Cablevision devotes one sentence of its opposition to this argument and mainly directs its argument in this regard to the predominance requirement under

In sum, the Court finds that Plaintiffs have established commonality because each class member (1) was bound by the same Terms of Service; (2) subscribed to one of Cablevision's service packages that included some or all of the Fox Channels; and (3) experienced the same service interruption.  The issue of whether the Fox Channel interruption was a "program or service interruption" under Paragraph 4 of the Terms of Service is common to all putative class members.

c.   Typicality

Rule 23(a)(3) requires Plaintiffs' claims be typical of the class.  FED. R. CIV. P. 23(a)(3).  The typicality requirement "'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  Marisol A., 126 F.3d at 376 (quoting In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 290 (2d Cir. 1992)).  "Typicality does not . . . require that the representatives' claims be identical to those of the class members," Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 200 (S.D.N.Y. 1992), and so is "not defeated by minor variations in the fact patterns of individual class member's claims." Abdul-Malik v. Coombe, No. 96-CV-1021, 1996 WL 706914, at *3 (S.D.N.Y. Dec. 6, 1996) (internal citation omitted).  "[S]o long as the

_____

Rule 23(b)(3).  Accordingly, the Court also will direct its analysis in this regard to the predominance requirement.

21

disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiff's claim as to that of other members in the proposed class," typicality is present.  In re Omnicom Grp., Inc. Sec. Litig., No. 02-CV-4483, 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007) (internal quotation marks and citation omitted).  However, "'where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation,'" certification is improper because the representative cannot act in the best interest of the class.  Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990)).  "A primary underlying concern is the 'danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'"  Dupler, 249 F.R.D. at 38 (quoting Gary Plastic, 903 F.2d at 180).

Here, for substantially the same reasons stated in the commonality discussion, the Court finds that Plaintiffs have satisfied the typicality requirement.[2]  Each class member's claim arises from the same service disruption and each class member's legal argument is the same, as they depend on the interpretation of a standard form contract.  Moreover, Cablevision's voluntary

---

[2] "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  Marisol A., 126 F.3d at 376.

payment defense does not appear to be atypical in this case as
Cablevision suggests that the defense might apply to other members
of the class.  But even if the defense was unique to the named
Plaintiffs, the Court does not find that the defense would
"threaten to become the focus of the litigation" such that the
named Plaintiffs could not act in the best interest of the absent
class members.  See Dupler, 249 F.R.D. at 39.  In sum, the Court
finds that the claims are "so inter-related that the interest of
the class members will be fairly and adequately protected in their
absence." Dupler, 249 F.R.D. at 40 (internal quotation marks and
citation omitted).  Accordingly, Plaintiffs have met the
typicality requirement.

d.   Adequacy of Class Representation

The adequacy requirement under Rule 23(a)(4) "is
twofold:  the proposed class representative must have an interest
in vigorously pursuing the claims of the class, and must have no
interests antagonistic to the interests of other class members."
Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).  In
addition, "Rule 23(a)(4) requires that plaintiffs demonstrate that
'class counsel is qualified, experienced, and generally able to
conduct the litigation.'"  Marisol A., 126 F.3d at 278 (quoting In
re Drexel, 960 F.2d at 291).

The Court finds the proposed class representatives'
interests to be aligned with the putative class, as their claims

23

arise from the same disruption of cable service and seek the repayment of a uniform, pro rata credit pursuant to the terms of a standard form contract.  Moreover, this Court previously reviewed the qualifications of proposed class counsel and appointed Stone Bonner & Rocco LLP, the Law Office of Todd J. Krouner, and Chitwood Harley Harnes, LLC (collectively, the "Stone-Krouner-Chitwood Group") as interim co-lead counsel pending class certification. Pearlman, 2011 WL 477815, at *2.  In sum, the Court finds no grounds exist to find that the proposed class representatives or that the Stone-Krouner-Chitwood Group cannot adequately represent the class.  Cablevision does not contest the adequacy of the proposed class representatives or class counsel.  Accordingly, Plaintiffs have met the adequacy requirement under Rule 23(a)(4).

> 2.    Certification under Rule 23(b)(3)

In addition to satisfying the Rule 23(a) prerequisites, a party seeking class certification must also establish that the putative class fits into one of the categories enumerated in Rule 23(b).  Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action may be maintained if "the court finds [1] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  As discussed below, the Court finds that common

questions of law or fact predominate over any individual questions
and that a class action is superior to other methods of
adjudicating Plaintiffs' claim.

    a.   Predominance

       "The predominance requirement is met if the plaintiff
can establish that the issues in the class action that are subject
to generalized proof, and thus applicable to the class as a whole,
. . . predominate over those issues that are subject only to
individualized proof." Cordes & Co. Fin. Servs., Inc. v. A.G.
Edwards & Sons, Inc., 502 F.3d 91, 107-08 (2d Cir. 2007) (internal
quotation marks and citations omitted). "The predominance inquiry
'tests whether proposed classes are sufficiently cohesive to
warrant adjudication by representation.'" Iglesias-Mendoza v. La
Belle Farm, Inc., 239 F.R.D. 363, 372 (S.D.N.Y. 2007) (quoting
Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)).
"[W]hen determining whether common issues predominate, courts
focus on the liability issue . . . and if the liability issue is
common to the class, common questions predominate over individual
ones." Id. (quoting Bolanos v. Norwegian Cruise Lines Ltd., 212
F.R.D. 144, 157-58 (S.D.N.Y. 2002)).

       Cablevision argues that the following individual issues
of law and/or fact predominate the common questions:
(1) Plaintiffs' theories of contractual liability; (2) whether the
"voluntary payment" doctrine precludes certain putative class

members' claims; (3) whether each member of the putative class fulfilled his or her obligation to provide "prompt notication" of the Fox Channel interruption to Cablevision; and (4) individualized damage assessments. (Cablevision's Opp. Br. at 13-23.)  The Court will address each issue in turn.

(i)   <u>Plaintiffs' Theory of Liability</u>

Cablevision first argues that Plaintiffs' breach of contract claim "is predicated on the assertion that Cablevision had a contractual obligation to deliver the Fox Channels to every class member."   (Cablevision's Opp. Br. at 14.)   Whether Cablevision was obligated to carry the Fox Channels, Cablevision contends, raises individualized questions that depend on the particular circumstances of each subscriber, including whether each subscriber had a subjective expectation of receiving the Fox Channels and whether each subscriber paid in advance for the two-week period during which the Fox Channels were unavailable. (Cablevision's Opp. Br. at 14-15.)   The Court disagrees because Cablevision's argument rests on a mischaracterization of Plaintiffs' theory of liability, as well as the issues the Court will need to address to adjudicate the contract claims.

As already noted, Plaintiffs claim that the Terms of Service obligated Cablevision to provide a <u>uniform</u> pro rata credit of monthly subscriber fees for the disruption of the Fox Channels because the Fox Channels were part of each subscriber's cable

26

package at the time of the disruption.  This theory of liability
has nothing to do with subjective expectations or whether each
subscriber paid his or her bill in advance.  In arguing that
Plaintiffs' claim depends on individualized assessments as to
whether Cablevision was obligated to carry the Fox Channels,
Cablevision appears to rehash the argument it previously made that
Paragraph 17 relieved it of any obligation to provide any
particular programming.  However, even this issue of law is one
that is common to the entire class because each class member was
bound by the same standard form contract.  Accordingly, the Court
finds that Plaintiffs' theory of liability does not present this
Court with individual questions of law or fact that predominate
common questions.

(ii)   The Voluntary Payment Doctrine

Cablevision next contends that the "voluntary payment"
doctrine bars recovery for any class member who, after learning
that the Fox Channels were no longer available, still paid his or
her bill. (Cablevision's Opp. Br. at 15-16.)  As discussed below,
the Court disagrees with Cablevision because, whether the
voluntary payment doctrine applies to any member of the putative
class actually is a common issue among the class members, not an
individualized issue.

The voluntary payment doctrine "bars recovery of
payments voluntarily made with full knowledge of the facts, and in

27

absence of fraud or mistake of material fact or law." <u>Dillon v.</u>
<u>U-A Columbia Cablevision of Westchester, Inc.</u>, 100 N.Y.2d 525,
526, 790 N.E.2d 1155, 1156 760 N.Y.S.2d 726, 727 (2003).[3]
Cablevision argues that this doctrine raises individualized
questions that defeat predominance because "[t]he resolution of
the waiver issue will vary from subscriber to subscriber, and will
require analyses of when each subscriber paid his bill . . . ,
whether the subscriber was aware that the Fox Channels were not
available, and whether the subscriber raised any complaint or
protest prior to paying the bill." (Cablevision's Opp. Br. at
16.) The Court disagrees for two reasons.

First, it is important to note that the Second Circuit
has held that "[a]lthough a court must examine the relevant facts
and both the claims and defenses in determining whether a putative
class meets the requirements of Rule 23(b)(3), the fact that a
defense may arise and may affect different class members
differently does not compel a finding that individual issues
predominate over common ones." <u>In re Visa Check/MasterMoney</u>
<u>Antitrust Litig.</u>, 280 F.3d 124, 138 (2d Cir. 2001), <u>superseded by</u>
<u>statute on other grounds as stated in</u> <u>Attenborough v. Constr. &</u>

---

[3] The purpose of the rule is to require a party who "intends to
resort to litigation in order to resist paying an unjust demand"
to "take its position at the time of the demand, and litigate the
issue before, rather than after, payment is made." <u>Gimbel Bros.,</u>
<u>Inc. v. Brook Shopping Ctrs., Inc.</u>, 118 A.D.2d 532, 535-36, 499
N.Y.S.2d 435, 439 (2d Dep't 1986) (internal citations omitted).

Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006)
(internal quotation marks omitted); accord Waste Mgmt. Holdings,
Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000).  Rather, "[a]s
long as a sufficient constellation of common issues binds class
members together, variations in the sources and application of [a
defense] will not automatically foreclose class certification
under Rule 23(b)(3)."   In re Visa Check/MasterMoney Antitrust
Litig., 280 F.3d at 138 (citation omitted); accord Williams v.
Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975) (stating that the
existence of a defense "does not compel a finding that individual
issues predominate over common ones" when there is a "sufficient
nucleus of common questions").

        Second, as noted above, whether the voluntary payment
doctrine applies to any member of the putative class actually is
a common issue among the class members, not an individualized
issue, because Plaintiffs argue that Cablevision's defense does
not apply to any of the class members at all.  Specifically,
although not eloquently stated, Plaintiffs argue that Cablevision
contracted around the voluntary payment doctrine because Paragraph
4 of the Terms of Service explicitly states that Cablevision will
provide a "pro rata credit" for an interruption longer than twenty-
four hours. (See Pls.' Summ. J. Reply Br., Docket Entry 100, at
8-9.)  At least one Court in this Circuit has suggested that the
voluntary payment defense does not apply where the parties

"expressly contract[] around [it]." Mazzei v. Money Store, 288
F.R.D. 45, 69 (S.D.N.Y. 2012) (citing Best Buy Stores, L.P. v.
Developers Diversified Realty Corp., No. 05-CV-2310, 2010 WL
4628548, at *2 (D. Minn. Nov. 4, 2010) (finding that voluntary
payment doctrine did not apply where contracts included provisions
"to pay or credit any amount that exceeds the actual amount due"
(emphasis added)).  Although the Court declines to resolve the
issue at this time, if Plaintiffs are correct that the voluntary
payment defense does not apply here, resolution of the issue will
apply to every member of the class, as the Terms of Service is a
form contract that binds all putative class members.  Thus, the
voluntary payment defense does not defeat predominance.  See
Mazzei, 288 F.R.D. at 69 (finding that voluntary payment defense
did not defeat predominance where "form loan agreement provide[d]
that the defendants must refund any unpermitted fees . . . .")[4];
see also Dupler, 249 F.R.D. at 45 ("It is not the law that any
time a voluntary payment doctrine issue is raised that
certification must be denied."); Miller v. Optimum Choice, Inc.,

---

[4] Cablevision attempts to distinguish the refund provision in
Mazzei, which stated that the defendants "must refund" any
overpayment, from the "pro rata credit" provision in the Terms of
Service because "any credit [under the Terms of Service] . . . is
premised on the subscriber's giving 'prompt notice' of an
interruption." (Cablevision's Opp. Br. at 16 n.8.)  However, as
discussed in the next section, the Court also finds that whether
the notification provision in the Terms of Service even applies
here also is a common issue among the class yet to be resolved.

No. 03-CV-3653, 2006 WL 2130640, at *7 (D. Md. July 28, 2006)
("Because the affirmative defenses are common across the putative
class members, the defenses would not operate to destroy the
predominance of common questions across the class, but would
instead provide an additional link of commonality between the class
members.").

(iii) <u>Notification Provision</u>

Cablevision next contends that Paragraph 4 of the Terms
of Service required subscribers to provide "prompt notification"
of the Fox Channel interruption in order to receive a pro rata
credit or alternative programming for the interruption.
(Cablevision's Opp. Br. at 16.) Cablevision argues that this
notice provision raises individualized questions that defeat
predominance, as Plaintiffs "will have to establish which of the
3 million subscribers contacted Cablevision regarding the Fox
Withdrawal, when they made that contact, and whether in doing so
the subscriber indicated a desire for a credit or alternative
programming." (Cablevision's Opp. Br. at 16.) As discussed below,
the Court disagrees because, like the voluntary payment doctrine,
whether the notification provision applies is a common issue among
the putative class members.

It is well established New York contract law "that
ordinarily one seeking to escape the obligation to perform under
a contract must demonstrate a material breach or prejudice . . . ."

31

_Unigard Sec. Ins. Co. v. N. River Ins. Co._, 79 N.Y.2d 576, 581, 594 N.E.2d 571, 573, 584 N.Y.S.2d 290, 292 (1992) (internal citations omitted).  However, "[a] condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." _Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co._, 86 N.Y.2d 685, 690, 660 N.E.2d 415, 418, 636 N.Y.S.2d 734, 737 (1995) (internal citations and quotation marks omitted). "[A] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." _Unigard_, 79 N.Y.2d at 581, 594 N.E.2d at 573, 584 N.Y.S.2d at 292; _see also Oppenheimer_, 86 N.Y.2d at 691, 660 N.E.2d at 48, 636 N.Y.S.2d at 737 ("[C]ourts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition."); _accord Ginett v. Computer Task Group, Inc._, 962 F.2d 1085, 1099-1100 (2d Cir. 1992) ("Conditions are not favored under New York law, and in the absence of unambiguous language, a condition will not be read into the agreement.").

Here, it is undisputed that Cablevision was aware that it and Fox might not reach a new retransmission agreement and that Cablevision would consequently lose its right to broadcast the Fox Channels.  Indeed, Cablevision warned its subscribers in advance of the interruption and then notified them of the interruption

32

after it began.  Thus, a subscriber's failure to provide notice would not be a material breach and Cablevision's failure to provide a credit would be excused only if the notification clause is a condition precedent.

Plaintiffs first argue that the notification clause is not a condition precedent because of the absence of typical features that have led courts to find notification clauses to be condition precedents, such as a requirement that the aggrieved party "demand" payment or provide notice to afford the breaching party an opportunity to cure.  (See Pls.' Reply Br. for Class Cert., Docket Entry 101, at 9; Pls.' Summ J. Reply Br. at 7.) Plaintiffs also argue that any failure to provide notice should be excused because Cablevision already knew about the interruption and actually notified subscribers of the interruption itself. (Pls.' Reply Br. for Class Cert. at 9; Pls.' Summ J. Reply Br. at 7.)  In addition, Plaintiffs aptly note that Cablevision previously admitted in a prior submission to this Court that Cablevision included the notification provision in the Terms of Service because "Cablevision cannot know which subscribers, if any, have been affected by a failure or interruption unless a subscriber informs Cablevision," making clear that the notice provision was not a condition precedent, but rather a mere notification mechanism. (Cablevision's Draft 56.1 Stmt., Docket Entry 59-7, ¶ 20.)  These counterarguments, while they may be unsuccessful, apply equally to

33

every member of the putative class.  Thus, the Court finds, that
at this stage, the notification clause actually creates common
questions of law and fact and does not defeat predominance.[5]

> (iv)   Damages

Cablevision finally argues that class certification is
inappropriate because damages cannot be measured on a classwide
basis.  (Cablevision's Opp. Br. at 17-23.)  Cablevision contends
that the proper measure of damages for the contract claim is
expectation damages, which "measure the expectation of the injured
party himself . . . ."  (Cablevision's Opp. Br. at 18 (emphasis in
the original).)  Because each subscriber valued the Fox Channels
differently, Cablevision contends, the calculation of damages for
losing those channels would vary from subscriber to subscriber
based on individual preferences and viewing habits, making it
impossible to calculate damages on a classwide basis.
(Cablevision's Opp. Br. at 19-20.)  The Court disagrees.

Cablevision again misconstrues Plaintiffs' theories of
liability and damages.  Here, Plaintiffs claim that Cablevision
breached Paragraph 4 of the Terms of Service when it failed to
offer its subscribers a uniform "pro rata credit" of their monthly
subscription fees for the two weeks in October 2010 when the Fox

---

[5] Having found that the notification provision itself presents
common questions, the Court need not address Plaintiff's
argument that the filing of this lawsuit provided Cablevision
with notice for Plaintiffs and all putative class members.

Channels were unavailable.  The measure of damages for this alleged breach is straightforward:  Cablevision subscribers would be entitled to a uniform "pro rata" refund of that portion of their monthly subscriber fees attributable to the absence of the Fox Channels.  There is nothing in the Terms of Service that indicates to the Court that a "pro rata" credit would be calculated based on individual subscriber preferences or usage.  In fact, the use of the word "pro rata," and that Cablevision charged the same price for each service package, supports a conclusion that Paragraph 4 provides for a uniform credit, not one dependent on subjective value or viewing habit.

     While the actual amount of the credit might vary from class member to class member due to the fact that subscribers purchased different service plans with different prices and number of channels or that some subscribers received promotional discounts, "the Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement." Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (citing In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 123 n.8 (2d Cir. 2013)).  Rather, "so long as a plaintiff's proposed measure of damages is directly linked with [the] theory of . . . liability and is capable of measurement on a classwide basis, compliance with" the Supreme Court's recent decision in Comcast v. Behrend, --- U.S. ----, 133 S. Ct. 1426,

35

185 L. Ed. 2d 515 (2013) is met.  <u>Schear</u>, 2014 WL 123305, at *8
(citing <u>In re U.S. Foodservice</u>, 729 F.3d at 123 n.8).  In <u>Comcast</u>,
the Supreme Court held "that courts should examine the proposed
damages methodology at the certification stage to ensure that it
is consistent with the classwide theory of liability and capable
of measurement on a classwide basis."  <u>In re Foodservice Inc.</u>
<u>Pricing Litig.</u>, 729 F.3d at 123 n.8.  Here, if Plaintiffs establish
their theory of liability, each putative class member will be
entitled to a "pro rata" credit of his or her monthly subscription
fee.  Calculating these damages would require a uniform
mathematical calculation for each particular service package.  The
Court finds that this measure of damages is directly linked to
Plaintiffs' theory of liability and is capable of measurement on
a classwide basis.  Accordingly, common issues of law and fact
predominate and Rule 23(b)(3) is met here.

            b.  <u>Superiority of Class Adjudication</u>

        Rule 23(b)(3) also requires the Court to determine "that
a class action is superior to other available methods for fairly
and efficiently adjudicating the controversy."  FED. R. CIV. P.
23(b)(3).  In making this determination, Courts should consider:

            (A)  the class members' interests in
                 individually controlling the prosecution
                 or defense of separate actions;

            (B)  the extent and nature of any litigation
                 concerning the controversy already begun
                 by or against class members;

> (C)  the desirability or undesirability of
>      concentrating the litigation of the
>      claims in the particular forum; and
>
> (D)  the likely difficulties in managing a
>      class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Applying these considerations here, the Court finds that a class action is the best means of adjudicating this controversy. The putative class consists of subscribers whose individual claims are likely too small to justify bringing individual lawsuits. Thus, "[f]ew individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail[,] particularly when many of the putative plaintiffs have suffered economic loss of de minimis value." Dupler, 249 F.R.D. at 47 (alteration and emphasis in the original) (internal quotation marks and citations omitted); accord Seekamp, 2012 WL 860364, at *12 ("The individual claims of each class member are likely too small to warrant bringing individual lawsuits."). In addition, a class action will save extensive litigation costs for all parties and enable the class members to litigate their claims in a more efficient manner. Finally, the Court does not find that this class poses difficulty in managing a class action. In re Vivendi Universal, S.A. Sec. Litig, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ("The determination of

37

whether a particular action is manageable is 'peculiarly' within the discretion of the district court." (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d at 141)). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the case.

   B.   Standing

      Cablevision next challenges class certification on the ground that the class includes members who lack Article III standing. (Cablevision's Opp. Br. at 23.)  The Court disagrees.

      Under Article III of the United States Constitution, federal courts are confined "to adjudicating actual 'cases' and 'controversies.'"  Allen v. Wright, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984); see also U.S. CONST., art. III, § 2. "This limitation is effectuated through the requirement of standing."  Cooper v. U.S. Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471-72, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)); see also United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990).  "The filing of suit as a class action does not relax this jurisdictional requirement."  Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006) (citing Allen, 468 U.S. at 750).

      There are three requirements to establish Article III standing:  "(1) the plaintiff must have suffered an injury-in-

38

fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." Cooper, 577 F.3d at 489 (internal quotation marks and citation omitted); see also Allen, 468 U.S. at 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

Cablevision argues that the class includes members who have not suffered an "injury-in-fact" from the disruption of the Fox Channels because the class includes "those who had no interest in any of the Fox Channels and subscribed to Cablevision's bundled packages only for unrelated programming." (Cablevision's Opp. Br. at 23.) This argument is another variation of Cablevision's contention that each breach of contract claim depends on each subscriber's individual expectations or viewing preferences, an argument that this Court has already rejected based on the fact that the Terms of Service is a standard form contract. Accordingly, the Court finds that the proposed class does not contain members who have not suffered an injury-in-fact.

C.   <u>Due Process and the Rules Enabling Act</u>

Finally, Cablevision argues that class certification violates due process and the Rules Enabling Act[6] because "[c]ertification of a class here would permit a finding of liability against Cablevision without its being able to present critical . . . individualized defenses . . . ." (Cablevision's Opp. Br. at 24.)  However, as already noted herein, Cablevision has not presented any individualized questions that preclude class certification or prevent Cablevision from presenting its defenses. Accordingly, class certification would not violate Cablevision's due process rights or the Rules Enabling Act.

D.   <u>Scope of the Class</u>

For the reasons set forth above, Plaintiffs' motion for class certification is GRANTED.  The Court certifies the following class under Federal Rule of Civil Procedure 23(b)(3):

> All individuals who contracted with Cablevision prior to October 16, 2010, to receive cable television service on or after October 16, 2010.  Excluded from the Class are Cablevision's officers, directors, legal representatives, heirs, successors, and assigns; and any judicial officer assigned to this case and his or her immediate family.

Further, the Court approves the Stone-Krouner-Chitwood Group as designated class counsel.

---

[6] The Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right . . . ." <u>Wal-Mart</u>, 131 S. Ct. at 2546 (quoting 28 U.S.C. § 2072(b)).

II.  Motion for Partial Summary Judgment

            Six of the named plaintiffs (the "Moving Plaintiffs")
have moved for partial summary judgment for a declaration that
(1) that Cablevision breached Paragraph 4 of the Terms of Service
and (2) that Cablevision's Terms of Service required Cablevision
to provide a uniform pro rata credit to all customers who
subscribed to the same cable package.  (Docket Entry 80.)  However,
"[a] Court's decision on the merits . . . should not ordinarily
occur before or simultaneous with a decision on class
certification."  Cuzco v. Orion Builders, Inc., 262 F.R.D. 325,
335 (S.D.N.Y. 2009) (citing Philip Morris Inc. v. Nat'l Asbestos
Workers Med. Fund, 214 F.3d 132, 135 (2d Cir. 2000) (per curiam));
accord Seekamp, 2012 WL 860364, at *13; Vazquez, 2011 WL 4572066,
at *11; Bertrand v. Maram, 495 F.3d 452, 455 (7th Cir. 2007)
("Class-action status must be granted (or denied) early . . . to
clarify who will be bound by the decision."); Schwarzschild v.
Tse, 69 F.3d 293, 296 (9th Cir. 1995) (Rule 23 "clearly
contemplates that the notice requirement will be met before the
parties are aware of the district court's judgment on the merits."
(emphasis in the original)).  As the Court in Mendez v. The Radec
Corp., 260 F.R.D. 38 (W.D.N.Y. 2009) explained, when a plaintiff
in a class action moves for summary judgment,

            there could be some unfair prejudice to the
            defendant if a class is certified, and notices
            sent to putative class members, after a

41

> judgment on the merits has been entered in
> favor of the class. At least in theory, some
> of the class members might have opted out, had
> they received notice of the action prior to
> the judgment on the merits, but would be less
> likely to do so if they know that the court
> has already ruled in favor of the class on
> some issues.

260 F.R.D. at 48. Therefore, in the interest of fairness, Plaintiffs' motion for partial summary judgment is DENIED WITHOUT PREJUDICE. The Court grants Plaintiffs leave to re-file the motion after the class has received notice consistent with Rule 23 and has been provided with an opportunity to opt out of the suit. See Vazquez, 2011 WL 4562066, at *11 ("Once the group to be bound by the judgment has been defined, this Court properly may entertain appropriate dispositive motions and/or a proposed settlement.").[7]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is GRANTED consistent with this Memorandum and Order. The Court certifies the following class under Federal Rule of Civil Procedure 23(b)(3):

> All individuals who contracted with
> Cablevision prior to October 16, 2010, to
> receive cable television service on or after
> October 16, 2010. Excluded from the Class are
> Cablevision's officers, directors, legal
> representatives, heirs, successors, and

---

[7] Accordingly, the Moving Plaintiffs' pending motion to file their reply in further support of the motion for partial summary judgment under seal (Docket Entry 99) is also DENIED WITHOUT PREJUDICE and with leave to renew.

assigns; and any judicial officer assigned to
this case and his or her immediate family.

It is ORDERED that Plaintiffs submit a proposed class
notice to Cablevision for comment within thirty (30) days of this
Memorandum and Order.  The parties shall confer and submit to the
Court a mutually agreed-upon notice within in thirty (30) days
thereafter.

It is further ORDERED that the Court approves the Stone-
Krouner-Chitwood Group as designated class counsel.

The Moving Plaintiffs' motion for partial summary
judgment is DENIED WITHOUT PREJUDICE and with leave to re-file
after the class has received notice consistent with Rule 23 and
has been provided with an opportunity to opt out of the suit.  In
addition, their motion to file their reply in further support of
the motion for partial summary judgment under seal is also DENIED
WITHOUT PREJUDICE and with leave to renew.


                              SO ORDERED


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Date: March   31  , 2014
      Central Islip, New York

43