**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**In re Cablevision Consumer Litigation**

\----------------------------------------------------------

This Document Relates to:
All Actions

Master File No.
10-cv-4992 (JS) (AKT)

ECF CASE


**CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO STRIKE AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO
STRIKE PLAINTIFFS' BELATED DAMAGES CONTENTIONS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ................................................................................................3

I.  PROCEDURAL HISTORY AND FACT DISCOVERY. ...............................3
    A.  Plaintiffs' remaining claim. ...........................................................3
    B.  The Parties' initial disclosures and discovery. ..................................3
    C.  Over a year after the close of fact discovery, Plaintiffs disclose a damages theory that seeks a massive windfall recovery. ........................4
    D.  Cablevision supplements its initial disclosures in response to Plaintiffs' "windfall" theory of damages. ..........................................5

II.  THE EXPERT REPORT OF ELIZABETH LOSINSKI. ..............................7

ARGUMENT ...................................................................................................9

I.  THE EXPERT REPORT OF ELIZABETH LOSINSKI IS PROPER AND HER TESTIMONY IS ADMISSIBLE UNDER *DAUBERT* .........................9
    A.  Ms. Losinski's decades of experience in the cable industry amply qualify her as an expert. ...............................................................10
    B.  Ms. Losinski's experience provides a reliable basis for her opinions. ...12
    C.  Ms. Losinski's opinions are relevant to the contract interpretation issues at the heart of this case. ....................................................14
    D.  Plaintiffs' remaining arguments go to weight, not admissibility, and are wrong in any event. ...........................................................18

II.  CABLEVISION SHOULD NOT BE PRECLUDED FROM RELYING ON ITS JULY 18 FACT DISCLOSURES AND DISCOVERY. .......................21
    A.  Cablevision properly supplemented its disclosures in light of Plaintiffs' belatedly-disclosed damages theory. ..............................21
    B.  Preclusion would be inappropriate in any event ..............................23
    C.  Plaintiffs' arguments for preclusion apply with greater force to their own belated windfall damages claim. ..........................................25

CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
566 F. Supp. 2d 305 (S.D.N.Y. 2008) ................................................................... 25

*Alamia v. Nationwide Mut. Fire Ins. Co.*,
495 F. Supp. 2d 362 (S.D.N.Y. 2007) ................................................................... 16

*Am. Home Assur. Co. v. Merck & Co., Inc.*,
462 F. Supp. 2d 435 (S.D.N.Y. 2006) ................................................................... 18

*Argonaut Ins. Co. v. Samsung Heavy Indus. Co., Ltd.*,
929 F. Supp. 2d 159 (N.D.N.Y. 2013) ................................................................... 10

*Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp.*,
2005 WL 977850 (S.D.N.Y. Apr. 28, 2005) .......................................................... 25

*Bank of China, N.Y. Branch v. NBM LLC*,
359 F.3d 171 (2d Cir. 2004) .................................................................................. 11

*BanxCorp v. Costco Wholesale Corp.*,
978 F. Supp. 2d 280 (S.D.N.Y. 2013) ................................................................... 24

*Broder v. Cablevision Sys. Corp.*,
329 F. Supp. 2d 551 (S.D.N.Y. 2004) ................................................................... 16

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005) ................................................................... 1, 14, 15, 16

*Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*,
2003 WL 1878246 (S.D.N.Y. Apr. 11, 2003) ....................................................... 17

*Chitayat v. Vanderbilt Assocs.*,
2007 WL 2890248 (E.D.N.Y. Sept. 27, 2007) ...................................................... 18

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .......................................................................................... 9, 18

*Design Strategy v. Davis*,
469 F.3d 284 (2d Cir. 2006) .................................................................................. 25

*Diesel Props S.r.l. v. Greystone Business Credit II LLC*,
631 F.3d 42 (2d Cir. 2011) .................................................................................... 22

*Donnelly v. Ford Motor Co.*,
80 F. Supp. 2d 45 (E.D.N.Y. 1999) ....................................................................... 13

*Emig v. Electrolux Home Prods. Inc.*,
2008 WL 4200988 (S.D.N.Y. Sept. 11, 2008) ...................................................... 14

*Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*,
    284 F. Supp. 987 (S.D.N.Y. 1968)..........................................................................16

*Fabozzi v. Lexington Ins. Co.*,
    601 F.3d 88 (2d Cir. 2010)....................................................................................16

*FCCD Ltd. v. State Street Bank and Trust Co.*,
    2011 WL 519228 (S.D.N.Y. Feb. 15, 2011).....................................................15, 16

*Figueroa v. Boston Scientific Corp.*,
    254 F. Supp. 2d 361 (S.D.N.Y. 2003)...................................................................13

*Guild v. Gen. Motors Corp.*,
    53 F. Supp. 2d 363 (W.D.N.Y. 1999)....................................................................18

*In re Longtop Fin. Techs. Ltd. Secs. Litig.*,
    —F. Supp. 2d—, 2014 WL 2998524 (S.D.N.Y. July 3, 2014)..............................10

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)...................................................................10

*In re Zyprexa Prods. Liab. Litig.*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) .............................................................11, 12

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002)....................................................................................15

*JA Apparel Corp. v. Abboud*,
    568 F.3d 390 (2d Cir. 2009)..................................................................................16

*Keenan v. Mine Safety Appliances Co.*,
    2006 WL 2546551 (E.D.N.Y. Aug. 31, 2006).......................................................10

*Kodak Graphic Commc'ns Canada Co. v. E.I. Dupont de Nemours & Co.*,
    2013 WL 5739041 (W.D.N.Y. 2013) ....................................................................25

*L-3 Commc'ns Corp. v. OSI Sys., Inc.*,
    2006 WL 988143 (S.D.N.Y. Apr. 13, 2006)..........................................................24

*Lab Crafters, Inc. v. Flow Safe, Inc.*,
    2007 WL 7034303 (E.D.N.Y. Oct. 26, 2007).........................................................22

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)............................................................................15, 16

*Lawrence v. Cohn*,
    197 F. Supp. 2d 16 (S.D.N.Y. 2002).....................................................................16

*Linde v. Arab Bank, PLC*,
    922 F. Supp. 2d 316 (E.D.N.Y. 2013) ..................................................................14

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
    2012 WL 2568972 (S.D.N.Y. July 3, 2012)..........................................................24

*McCullock v. H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995) ................................................................. 12

*Morgenstern v. County of Nassau*,
   2008 WL 4449335 (E.D.N.Y. Sept. 29, 2008) ................................... 24

*NIC Holding Corp. v. Lukoil Pan Ames., LLC*,
   2007 WL 1467424 (S.D.N.Y. May 16, 2007) ..................................... 24

*Olin Corp. v. Am. Home Assurance Co.*,
   704 F.3d 89 (2d Cir. 2012) ................................................................. 16

*Outley v. City of N.Y.*,
   837 F.2d 587 ........................................................................................ 24

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006) ............................................................... 25

*Peck v. Hudson City School Dist., Hudson, N.Y.*,
   100 F. Supp. 2d 118 (N.D.N.Y. 2000) ............................................... 11

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC.*,
   716 F. Supp. 2d 220 (S.D.N.Y.) .................................................. 10, 13

*Pereira v. Cogan*,
   281 B.R. 194 (S.D.N.Y. 2002) ........................................................... 10

*Peters v. Molloy Coll. of Rockville Ctr.*,
   2010 WL 3170528 (E.D.N.Y. Aug. 10, 2010) .............................. 23, 24

*Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*,
   988 F. Supp. 2d 395 (S.D.N.Y. 2013) ......................................... 13, 15

*Revson v. Cinque & Cinque, P.C.*,
   221 F.3d 59 (2d Cir. 2000) ................................................................. 15

*Rojo v. Deutsche Bank*,
   2009 WL 3790191 (S.D.N.Y. 2009) ................................................... 24

*S.E.C. v. U.S. Envtl., Inc.*,
   2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) ................................... 10

*SR Int'l Bus. Co., Ltd. v. World Trade Ctr. Props., LLC*,
   467 F.3d 107 (2d Cir. 2006) ...................................................... 10, 13, 17

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
   272 F.R.D. 350 (W.D.N.Y. 2011) ....................................................... 22

*U.S. v. Jacques Dessange, Inc.*,
   2000 WL 294849 (S.D.N.Y. Mar. 21, 2000) ...................................... 17

*Valentin v. N.Y.C.*,
   1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997) ................................... 12

*Yafa Jewelry Inc. v. All Those Underwriters Subscribing to Policy of Ins. Numbered 96FA0026180A,*
    42 F. Supp. 2d 307 (S.D.N.Y. 1999) ............................................................................ 15

*Yakin v. Tyler Hill Corp.,*
    566 F.3d 72 (2d Cir. 2009) ........................................................................................ 16

## Rules

Fed. R. Civ. P. 26 ........................................................................................................... 11

Fed. R. Civ. P. 26(a) ........................................................................................................ 6

Fed. R. Civ. P. 26(a)(1) .................................................................................................... 5

Fed. R. Civ. P. 26(a)(2)(B) ................................................................................... 6, 9, 11, 23

Fed. R. Civ. P. 26(e) ...................................................................................................... 22

Fed. R. Evid. 702 ................................................................................................... passim

Fed. R. Evid. 703 ........................................................................................................ 6, 9

## PRELIMINARY STATEMENT

Plaintiffs' motion to strike the expert report of Elizabeth Losinski and Cablevision's supplemental disclosure of fact discovery should be denied in its entirety.

***First***, there is no basis under Fed. R. Evid. 702 to preclude Ms. Losinski from testifying as an expert.  Far from irrelevant, as Plaintiffs claim, Ms. Losinski's opinions on cable industry custom and terms of art are directly relevant to the Court's threshold analysis of whether or not the disputed Terms of Service are ambiguous in light of this industry evidence—*i.e.*, whether those terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and is ***cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business***."[1]  And while Plaintiffs complain about Ms. Losinski's purportedly untimely disclosure as a ***fact*** witness, it is indisputable that Cablevision timely disclosed Ms. Losinski's ***expert*** opinions in accordance with this Court's schedule.  (Dkt. 115.)  Finally, Plaintiffs' various challenges to Ms. Losinski's expertise, qualifications, and methodology are premature, premised on a mischaracterization of her opinions and the issues here, and in any event go to the weight—not the admissibility—of her testimony.

***Second***, having failed to establish that Ms. Losinski's expert opinions are inadmissible, Plaintiffs fare no better in seeking to exclude Cablevision's supplemental fact disclosures.  Those disclosures were a necessary response to Plaintiffs' inexcusably late disclosure of their damages theory, which claimed—more than four years into the case and over one year after the close of fact discovery—a massive economic windfall bearing no relation to the loss they purportedly suffered.  Indeed, at a discovery conference on May 5, 2014 (which was more than a year ***after***

---

[1]  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 197 (2d Cir. 2005) (addressing breach of contract claims involving Cablevision Terms of Service) (emphasis added).

fact discovery had closed), Cablevision raised the fact that Plaintiffs had not disclosed a damages theory and noted that Cablevision might need to supplement discovery depending on the theory that would be disclosed.[2]  Magistrate Judge Tomlinson then instructed the parties that they "have an ongoing obligation under Rule 26(a) to supplement their Initial Disclosures as the case progresses."[3]  On May 22, 2014, Plaintiffs finally disclosed their belated damages theory.  That disclosure created not only a right but also an obligation for Cablevision to supplement its own disclosures to reflect new material that became relevant in light of that damages theory.  Cablevision exercised that right and fulfilled that obligation by supplementing its Rule 26(a) disclosures on July 18, the same date the parties exchanged expert reports.  Having improperly delayed their damages disclosure until long after close of fact discovery, Plaintiffs should not be allowed to prevent Cablevision from responding to the delayed disclosure.  And, Plaintiffs' claims of "prejudice" from Cablevision's supplemental disclosures ring hollow.  Notably, Plaintiffs do not object to certain of the disclosures—those they deem helpful to their position.[4] In any event, the upcoming expert depositions will give Plaintiffs a full opportunity to explore the limited supplemental disclosure.

Finally, if the Court were to adopt Plaintiffs' logic, it would apply with all the more force to Plaintiffs' own tardy damages theory—which they failed to disclose for *years*, even though, as the magistrate judge noted, "damages categories and calculations were specifically called for in [the Initial] Disclosures."[5]  In the alternative, Cablevision thus cross-moves to strike Plaintiffs' belated damages disclosure, and to preclude evidence thereof.

---

[2]   Dkt. 111, May 5, 2014 Civil Conference Minute Order, at 1.

[3]   *Id.*

[4]   *See infra* n.20.

[5]   Dkt. 111, May 5, 2014 Civil Conference Minute Order, at 1.

## BACKGROUND

### I.  PROCEDURAL HISTORY AND FACT DISCOVERY.

#### A.  Plaintiffs' remaining claim.

In the sole claim that survived Cablevision's motion to dismiss,[6] Plaintiffs allege that Cablevision breached a contractual promise, supposedly contained in Paragraph 4 of Cablevision's Terms of Service, to pay subscribers a "pro rata credit," because certain channels containing Fox programming (the "Fox Channels") were unavailable for a two-week period, during which Fox and Cablevision were unable to agree on terms for Cablevision to carry the Fox Channels (the "Fox Programming Blackout").  Cablevision contends that Paragraph 4 simply does not apply to the Fox Programming Blackout.[7]

#### B.  The Parties' initial disclosures and discovery.

Under the Scheduling Order (*see* Order on Dkt. 115), the deadline to serve expert reports was July 18, 2014.  It is undisputed that Cablevision complied with this deadline, serving the reports of two experts—Elizabeth Losinski and Jonathan Orszag—on that day.

By contrast, Plaintiffs' discovery has been dilatory—and explains Cablevision's supplemental production at issue.  Plaintiffs provided their initial disclosures pursuant to Rule 26(a) on March 28, 2011.  They failed to provide the computations of each category of claimed damages required by Rule 26(a)(1)(C), stating only:  "Plaintiffs are currently in the process of preparing a computation of damages and will, upon completion, provide a damage estimate to Defendants."[8]  Cablevision timely provided its initial disclosures on April 14, 2011, and identified three company witnesses (and the Plaintiffs) as persons with discoverable information.[9]

---

6   *See* Dkt. 52, Mar. 28, 2012 Memorandum and Order, at 23 ("Plaintiffs' breach of contract claim survives and the rest of their claims are dismissed.").

7   *See, e.g.,* Dkt. Nos. 80-81, 92-93, 100 (Briefing on Pls.' Mot. for Partial Summary Judgment)

8   *See* Genser Decl., Ex. 1, Pls.' Initial Rule 26(a) Disclosures, dated March 28, 2011, at 6.

9   Genser Decl., Ex. 2, Cablevision Initial Rule 26(a) Disclosures, dated April 14, 2011, at 2.

3

Over the next two years, Cablevision produced over 350,000 pages of documents in response to Plaintiffs' discovery requests.  (*See* Br. at 4.)[10]  Plaintiffs also deposed five of Cablevision's employees (only one of whom was listed in Cablevision's initial disclosures). (*Id.*)  Plaintiffs questioned these witnesses on a variety of topics, including:  the contract dispute between Cablevision and News Corp.;[11]  Cablevision's Terms of Service;[12]  Cablevision's interactions with cable regulatory authorities;[13]  various types of disruptions to cable TV service;[14]  and various types of changes to the mix of networks offered by Cablevision and the relief given to subscribers in different cases involving such disruptions and changes.[15]  Plaintiffs also questioned deponents on types of notices provided to subscribers, including the televised notices that informed subscribers of the unavailability of the Fox Channels and their right to cancel service at any time, free of charge.[16]

## C.   Over a year after the close of fact discovery, Plaintiffs disclose a damages theory that seeks a massive windfall recovery.

In light of Plaintiffs' failure to include a damages computation in their initial disclosures, Cablevision requested Plaintiffs' damages theory in interrogatories, and Plaintiffs again failed to supply it.[17]  Fact discovery closed on February 15, 2013.  (Dkt. 88.)  By that point, Plaintiffs still neither supplemented their Rule 26(a) statement nor supplemented their interrogatory responses to disclose the methodology and computation of alleged damages.  On March 31, 2014, the Court

---

[10]  "Br." refers to Plaintiffs' Memorandum of Law in support of their Motion to Strike.  (Dkt. 126.)

[11]  Genser Decl., Ex. 3 (Rutledge Dep.) at 24:17-33:18; 134:21-135:21; Ex. 4 (Montemagno Dep.) at 77:10-80:17.

[12]  *Id.*, Ex. 3 (Rutledge Dep.) at 51:8-53:14; 54:22-58:15; 147:20-148:13; Ex. 4 (Montemagno Dep.) at 117:19-131:19.

[13]  *See, e.g.*, *id.*, Ex. 5 (Schroeder Dep.) at 9:19-11:15; 26:17-29:17.

[14]  *Id.*, Ex. 3 (Rutledge Dep.) at 51:8-52:12; 56:25-57:18; 108:19-109:1.

[15]  *Id.*, Ex. 6 (Feldman Dep.) at 117:22-118:9; Ex. 3 (Rutledge Dep.) at 52:13-24; Ex. 4 (Montemagno Dep.) at 143:14-149:5.

[16]  *Id.*, Ex. 3 (Rutledge Dep.) at 118:1-11.

[17]  *See, e.g.*, Genser Decl., Ex. 12 (Pl. Ahearn's Answers to Cablevision's First Set of Interrogatories), Interrogatory 22.

4

issued an opinion certifying a class and denying Plaintiffs' premature motion for partial summary judgment. (Dkt. 108.)

At the May 5, 2014 discovery conference, Cablevision pointed out that Plaintiffs had still not disclosed a damages theory, and made clear that supplemental discovery might be necessary depending on the theory that would be disclosed. (Dkt. 111, May 5, 2014 Civil Conference Minute Order, at 1.) On May 22, 2014—four years after filing their complaint, over three years after they served initial disclosures, and more than one year after the close of fact discovery—Plaintiffs finally disclosed to Cablevision their damages computation. (*See* Genser Decl. Ex. 8, Pls.' Amendment to Rule 26 Initial Disclosure.) That disclosure revealed that Plaintiffs seek the ***entire subscriber fee*** attributable to each day of the two-week Fox Programming Blackout, despite the fact that the Fox Channels accounted for only six out of the scores of other channels—including all of the other major broadcast networks, all of the major cable networks (such as ESPN, TNT TBS, USA, MTV, Nickelodeon, Comedy Central and FX), all of the premium networks (such as HBO and Showtime), and all regional sports networks (such as MSG and YES)—that Cablevision undisputedly provided to Plaintiffs during the Fox Programming Blackout. And for the first time, Plaintiffs disclosed that their computation of this damages theory amounts to a staggering $86.7 million. (*Id.*) Notably, Plaintiffs have offered no explanation of why this damages theory took them over four years to produce.

**D.    Cablevision supplements its initial disclosures in response to Plaintiffs' "windfall" theory of damages.**

On July 18, 2014, consistent with its statements at the May 5 status conference and the continuing obligation to supplement its initial disclosures, Cablevision supplemented its Rule 26(a)(1) disclosures, made a limited supplemental production of 138 documents (all concerning the computation of alleged damages), and supplemented a prior interrogatory response (also

relating to the computation of alleged damages).[18]   On the same date, Cablevision timely served Plaintiffs with the reports of its two experts, Elizabeth Losinski and Jonathan Orszag.

In its supplemental Rule 26(a) disclosures, Cablevision identified five potential fact witnesses in addition to those listed in its initial disclosures.   Plaintiffs had already deposed four of these witnesses.   The fifth was Elizabeth Losinski, whom Cablevision also separately disclosed as an expert witness, and who will be deposed in September 2014.   Cablevision disclosed Ms. Losinski as a potential fact witness on the following subjects, all of which had previously been the subject of discovery:   the contract dispute between Cablevision and Fox; the Terms of Service used by Cablevision; Cablevision's interactions with cable regulatory authorities; various types of disruptions to cable TV service; various types of changes to the mix of networks offered by Cablevision; and the relief given to subscribers in different cases involving such disruptions and changes.[19]   Ms. Losinski's potential fact testimony will be part of Cablevision's response to Plaintiffs' belatedly disclosed windfall damages claim.

Cablevision also made a limited production consisting of 138 pages of documents.   All of those documents are relied on by Cablevision's damages expert, Jonathan Orszag, whose report addresses the proper calculation of the alleged damages.   Significantly, only 17 pages of this production come from Cablevision's files.   The vast majority of the production came from a third-party industry consulting company and were produced to Plaintiffs merely as a courtesy.  These materials were Mr. Orszag's reliance documents and were appropriately and timely disclosed along with his expert report.   *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) & (iii) (requiring disclosure of "the facts or data considered" by the expert and "any exhibits that will be used to summarize or support" the expert's opinions); *see also* Fed. R. Evid. 703.   They do not constitute

---

[18]   *See* Genser Decl., Ex. 7 (Letter from J. Serino to Plaintiffs' Counsel, dated July 18, 2014).

[19]   *See* Genser Decl., Ex. 11 (Cablevision's First Supp. Rule 26(a) Disclosure, dated July 18, 2014), at 2.

late fact discovery.[20]  Regardless, they were necessitated by and directly responsive to Plaintiffs'

belated damages theory.  The exhibits to Ms. Losinski's expert report, which Plaintiffs' also

challenge as supposed belated fact discovery, are described *infra.*

## II.   THE EXPERT REPORT OF ELIZABETH LOSINSKI.

Cablevision also timely disclosed Ms.  Losinski—a long-time Cablevision employee with

extensive industry experience—as an expert witness on July 18, 2014.  Ms. Losinski has a B.A.

in Economics and Government, a J.D. from Gonzaga University Law School, and a Masters of

Business from the Yale School of Management.  (Dkt. 127-2, Ex. 1 ("Losinski Report").)  She

has worked in the cable television industry for twenty-seven years, including as Cablevision's

Director of Regulatory Affairs (1987-1998) and Vice President of Cable Policy and Political

Ethics (1998-2014).  (*Id.* at 4.)  In those roles, Ms. Losinski managed government relations, and

worked extensively with federal, state, and local regulatory agencies and fellow industry

participants on issues directly relevant to this lawsuit, including service outages, programming

blackouts, as well as customer notifications and rebates.  She has been a speaker and/or panelist

at various industry events, and has testified before and given speeches and presentations to a

variety of regulatory bodies on issues affecting the cable industry.  (*Id.* at 5-7.)

At Cablevision, Ms. Losinski has been personally involved with dealing with disputes

with programmers (including those that resulted in the unavailability of certain programming, as

occurred in this case), as well as situations in which technical problems have resulted in

disruptions to Cablevision's cable system.  (*Id.* at 5-6.)  As a result, Ms. Losinski has specialized

---

[20]  *See* Genser Decl., Ex. 9 (materials considered by Mr. Orszag).  Cablevision also amended a prior interrogatory response to provide corrected data regarding subscriber fees during October 2010.  This had the effect of increasing Cablevision's reported revenues for the month in question and, at least potentially, increasing Plaintiffs' damages claim.  Tellingly, Plaintiffs did not object to this portion of Cablevision's supplemental production.  (*See* Br. at 1 n.1 (claiming that although this amendment "impacts the aggregate damage in the case . . . the amendment does not unduly prejudice plaintiffs under the present circumstances.").)

knowledge of the industry customs and practices, regulations, terms of service, and terms of art that relate to those two different types of scenarios.  (*Id.* at 6.)

The Court has stated that Plaintiffs' "contract claim hinges on whether the two-week interruption was a 'program or service interruption' within the meaning of Paragraph 4"— indeed, this "is the core of the lawsuit."[21]  Ms. Losinski's report addresses this key issue.  For example, she describes a fundamental distinction recognized in the cable industry between editorial-type changes that cable operators make to the mix of networks they offer to subscribers, on the one hand, and disruptions of service caused by technical problems or extraordinary *force majeure*-type events that affect the operation of the cable system, on the other.  (Losinski Report at 19-20.)  She then explains why, as understood in the cable industry, programming blackouts like the Fox Programming Blackout here would not be considered a disruption of service.  (*See id.* at 19-20, 28.)   Similarly, Ms. Losinski also describes other terms of art (in addition to "disruption of service") which are found in Paragraph 4 of the Terms of Service, and explains that they also refer to the concept of a "disruption of service" and that none of them would be used to describe the Fox Programming Blackout.  (*Id.* at 28.)  Thus, Ms. Losinski provides the foundation for an argument that the Fox Programming Blackout was not a breach of Paragraph 4.[22]

Finally, Ms. Losinski's report addresses how the regulatory structure, as well as her involvement in dealing with past instances of service disruptions and programming blackouts, supports her opinions regarding industry custom, practice, and terminology.  (*Id.* at 4-6.)

---

[21]  Dkt. 108, Mar. 31, 2014 Mem. and Order on Class Certification, at 15.

[22]  Ms. Losinski also opines that Paragraph 17 contains various terms of art that embrace the concept of a programming blackout, such as occurred with the Fox Channels in this case.  (*See* Losinski Report at 19-20, 28.)

**ARGUMENT**

I.   **THE EXPERT REPORT OF ELIZABETH LOSINSKI IS PROPER AND HER TESTIMONY IS ADMISSIBLE UNDER *DAUBERT*.**

Plaintiffs, of course, have no timeliness challenge to Ms. Losinski's expert report, because her expert opinions are undisputedly timely under this Court's schedule. Their timeliness challenge to the disclosure of Ms. Losinski as a ***fact*** witness (addressed separately below) has no bearing whatsoever on the admissibility of her testimony as an ***expert***.  Under Fed. R. Evid. 703, an expert may testify based on "facts or data in the case that the expert has been made aware of or personally observed" and the facts or data may not even need to be admissible. Fed. R. Evid. 703.  The expert's opinion will be admissible as long as the bases are disclosed in the expert report itself (*see id.*; *see also* Fed. R. Civ. P. 26(a)(2)(B)), as they were here.

Plaintiffs nonetheless seek to preclude Ms. Losinski's testimony under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).  As shown below, this motion is premature as plaintiffs have yet to receive her rebuttal report or to take her deposition.[23] Plaintiffs' attacks are also groundless:  her decades of experience in the cable industry amply qualify her as an expert on industry standards, terminology, and practice (*see infra* Sec. I.A.), and provide her with more than an adequate basis to offer opinions on these and other related issues under Rule 702 and *Daubert*.   (*See infra* Sec. I.B.)   Plaintiffs' assertions that Ms. Losinski's opinions are irrelevant are similarly misguided, because expert evidence on industry customs and practices and terms of art is directly relevant to the threshold determination of whether contract language has a plain and unambiguous meaning, and if so, what that meaning is—and, if an ambiguity is found, in clarifying that ambiguity.  (*See infra* Sec. I.C.)

---

[23]   Cablevision expressly reserves the right to move to preclude the testimony of Plaintiffs' proffered expert witnesses at the appropriate time on various grounds, including that their proposed testimony does not constitute proper expert opinion testimony under *Daubert* and Fed. R. Evid. 702.

Finally, Plaintiffs' challenges to the substance of Ms. Losinski's opinions go to the weight, not admissibility of her testimony—and they are unfounded in any event.  (*See infra* Sec. I.D.)

### A.   Ms. Losinski's decades of experience in the cable industry amply qualify her as an expert.

Despite Plaintiffs' effort to ignore it, Ms. Losinski's report amply demonstrates that she is well qualified as an expert.  Courts in the Second Circuit "have 'liberally construed expert qualification requirements'" under Fed. R. Evid. 702.  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC.*, 716 F. Supp. 2d 220, 223 (S.D.N.Y.) (citation omitted).[24]  Ms. Losinski's expertise and experience far exceeds the "minimal" qualifications "necessary to testify as an expert."  *Keenan v. Mine Safety Appliances Co.*, 2006 WL 2546551, at *2 (E.D.N.Y. Aug. 31, 2006).  "Witnesses can qualify as experts under Rule 702 on the basis of practical experience alone," *Argonaut Ins. Co. v. Samsung Heavy Indus. Co., Ltd.*, 929 F. Supp. 2d 159, 172 (N.D.N.Y. 2013), and Ms. Losinski has extensive practical experience, as Plaintiffs acknowledge.  (Br. at 5.)  She has worked in the cable industry for 27 years, including work on cable policy, political affairs, and regulatory affairs.  (*See supra*).  With decades of work in the industry, she has specialized knowledge of a variety of relevant issues.  (*See* Background Sec. II.)  This is more than enough to qualify her as an expert on industry standards and related topics.[25]

Indeed, Plaintiffs' chief issue with Ms. Losinski's qualifications seems to stem from the fact that she was a long-term Cablevision employee, rather than a professional witness like their

---

[24]   *See also, e.g., In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004) (acknowledging the Second Circuit's "liberal view of the qualification requirements of Rule 702"); *In re Longtop Fin. Techs. Ltd. Secs. Litig.*, —F. Supp. 2d—, 2014 WL 2998524, at *6 (S.D.N.Y. July 3, 2014) ("The standard for expertise in the Second Circuit is permissive").

[25]   *See, e.g., SR Int'l Bus. Co., Ltd. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 132 (2d Cir. 2006) (affirming admission of industry expert who "had over 30 years of experience in the insurance industry" and "was familiar with practices in the industry"); *Pereira v. Cogan*, 281 B.R. 194, 200 (S.D.N.Y. 2002) (allowing testimony because the expert's "thirty years of experience in the corporate governance field provides a reliable foundation for his opinions on good corporate practices."); *S.E.C. v. U.S. Envtl., Inc.*, 2002 WL 31323832, at *3 (S.D.N.Y. Oct. 16, 2002) (admitting industry expert with "thirty years of experience" in the securities industry and who had "knowledge of the standard practices" in the industry).

expert, Mr. Larry Gerbrandt.  (*See* Br. at 2 (claiming that Ms. Losinski's only specialized knowledge is "about how Cablevision runs its own business[.]").).)  But Rule 26(a) is clear that a party's employee can give expert testimony—indeed, it **lowers** the disclosure requirements for employees by allowing them to provide expert opinions without submitting a written report.  *See, e.g.*, *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 182 n.13 (2d Cir. 2004) (opposing party was "not entitled to an expert report under Rule 26(a)(2)(B)" where the party's expert-employee was "not specially retained to provide expert testimony, and his duties as an employee of [the party] [did] not regularly include giving expert testimony[.]").[26]  Ms. Losinski would qualify for this employee-expert exception under Rule 26(a); if anything, Cablevision has exceeded its disclosure obligations by providing a full expert report where none was required.

Plaintiffs' complaints that Ms. Losinski did not work on certain specific tasks—such as, for instance, "drafting Cablevision's Terms of Service" or being involved with "channel lineup changes" (*see* Br. at 7)—ignore her actual work experience, which includes assisting with review of Cablevision's Terms of Service and her work in situations involving "network changes" affecting Cablevision's programming offerings.[27]  And Plaintiffs' quibbling over the particulars of Ms. Losinski's experience provides no basis to exclude her in any event.  Plaintiffs do not—and cannot—dispute that Ms. Losinski has nearly thirty years of experience in the cable industry that relates to regulatory and other issues.  (*See* Br. at 27).[28]  Even if any of these challenges had

---

[26]  *See also* Fed. R. Civ. P. 26, advisory comm. notes to 2010 amendments ("Frequent examples" of witnesses who are not required to provide a report and "may both testify as a fact witness and also provide expert testimony" include "employees of a party who do not regularly provide expert testimony."); *Peck v. Hudson City Sch. Dist.*, 100 F. Supp. 2d 118, 121 (N.D.N.Y. 2000) (Rule 26(a) "only requires a written report for a witness retained or specially employed to provide expert testimony in the case, or whose duties as a party's employee regularly involve the giving of expert testimony.").

[27]  *See* Losinski Report at 6, 24.

[28]  "If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question"—which Ms. Losinski no doubt has—"the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent."  *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (citation omitted).

merit (and they do not), exclusion would not be the proper remedy still because "[d]isputes as to the strength of [the expert's] credentials . . . go to the weight, not the admissibility, of [her] testimony." *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995).[29]

Finally, Plaintiffs' challenge to Ms. Losinski's qualifications is premature. Ms. Losinski has not provided a rebuttal report, and Plaintiffs have yet to take her deposition. In fact, they seek a stay of that deposition (Br. at 3 n.2), a meritless and dilatory request that Cablevision opposes and that demonstrates that Plaintiffs have no real interest in developing a record about the extent of her expertise, or in basing a motion on a full record of it. Plaintiffs simply ignore the extensive experience Ms. Losinski describes in her expert report and *curriculum vitae* and instead indulge in needless speculation about her experience based on the role and knowledge of her superior, Lee Schroeder, as described in Ms. Schroeder's deposition.[30]

**B.     Ms. Losinski's experience provides a reliable basis for her opinions.**

Plaintiffs' attacks on Ms. Losinski's purported lack of methodology (*see, e.g.*, Br. at 12) are without merit. For one thing, this argument is premature because Plaintiffs have not deposed Ms. Losinski to question her about the basis for her opinions, nor have they received her rebuttal report. And more fundamentally, Plaintiffs' criticisms fail to recognize that Ms. Losinski is relying predominantly on her years of experience in the cable industry (which alone provides a reliable basis for her industry custom opinions),[31] and ignore the fact that this is a breach of contract case—not a case that requires analysis under a complex scientific methodology.

---

[29]   *See also, e.g.*, *In re Zyprexa*, 489 F. Supp. 2d at 282 ("Assertions that the witness lacks particular educational or other experiential background go to the weight, not the admissibility, of the testimony.") (citing *McCullock*, 61 F.3d at 1044); *Valentin v. N.Y.C.*, 1997 WL 33323099, at *15 (E.D.N.Y. Sept. 9, 1997) ("any challenges to an expert's skill, knowledge, or credibility go to the weight, not the admissibility of the testimony.").

[30]   *See* Br. at 5 (purporting to find it "puzzling" that Ms. Losinski was designated as an expert because her supervisor, Ms. Lee Schroeder, "had little knowledge about the subjects on which Ms. Losinski purports to offer expert opinions."); *see also id.* at 5-7.

[31]   As detailed more specifically below, in addition to her experience, Ms. Losinski also relies on relevant regulations and other relevant materials where appropriate.  *See infra.*

While Plaintiffs would take Ms. Losinski to task for purportedly lacking a formal methodology, Rule 702 accepts that "[s]ome types of expert testimony will not rely on anything like a scientific method[.]"  Fed. R. Evid. 702, adv. comm. notes, 2000 amendments.[32]  Thus, "[n]othing in [the amended Rule 702] is intended to suggest that *experience alone* . . . may not provide a sufficient foundation for expert testimony." *Id.*[33]  Ms. Losinski has such experience. *See supra*.  In fact, reliance on experience is especially appropriate when the expert is testifying about industry standards, terminology, and practices—because there is of course no formal training in industry customs, nor is there some "industry expert" degree.  Personal experience alone provides a basis for expert testimony on industry customs,[34] and Ms. Losinski's long cable industry tenure provides a solid and appropriate foundation for her opinions.

In arguing that Ms. Losinski's opinions lack a formal methodology, Plaintiffs ignore the fact that this case will turn on interpretation of certain disputed contract terms—and is not a case that calls for application of a complex or scientific methodology.[35]  Ms. Losinski is an expert on industry usages, and her opinions will be relevant both in helping this Court interpret the contract as a matter of law (and, if it comes to that, in assisting the jury's interpretation of any

---

[32] *See also, e.g., Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404 (S.D.N.Y. 2013) (quoting this language in rejecting argument that the expert's report should be stricken because it purportedly "contain[ed] no specialized knowledge based upon any reliable methodology regarding any matter, including purported custom and practice").

[33] Court after court has thus recognized that Rule 702 "reliability requirements do not preclude an expert from testifying on the basis of experience alone[.]" *Figueroa v. Boston Scientific Corp.*, 254 F. Supp. 2d 361, 365 (S.D.N.Y. 2003). In such a case, all that is necessary is for the expert to "explain how [her] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to facts." *Pension Comm.*, 691 F. Supp. 2d at 473 (citation omitted).

[34] *See SR Int'l Bus. Co., Ltd.*, 467 F.3d at 132-33 (finding expert had sufficient basis to testify about industry practices where he had "30 years of experience in the insurance industry" and "was familiar with practices in the industry"); *Pension Comm.*, 691 F. Supp. 2d at 474 ("[expert's] experience as a hedge fund administrator provides a sufficient basis for him to testify about the customs and practices of hedge fund administrators.").

[35] Plaintiffs' reliance on *Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45 (E.D.N.Y. 1999) (Br. at 12) is misplaced. There, an engineer-expert opined that "all accidental fires originating on the driver's side of Ford vehicles [were] the result of ignition switch failures"—but provided no explanation of his "reasoning or methodology" for this "broad conclusion." *Id.* at 49-50.  Ms. Losinski, in contrast, opines on industry custom and terms (opinions that require no complex methodology), and supports those opinions with her decades of experience.

13

ambiguities).   (*See infra* Sec. I.C.)   Moreover, Ms. Losinski offers more than her extensive industry experience as a basis for her opinions on the meanings of various industry terms of art. Her opinions are expressly rooted in the applicable regulatory scheme and in specific examples of how that regulatory scheme was applied in other circumstances similar to this case.   *See supra*.   Finally, as with Plaintiffs' objections to Ms. Losinski's qualifications, their attacks on methodology go to the weight—not the admissibility—of her testimony.[36]

### C.   Ms. Losinski's opinions are relevant to the contract interpretation issues at the heart of this case.

Plaintiffs' argument that because this is a "contract dispute," Ms. Losinski's opinions on industry custom and terms of art are irrelevant,[37] ignores the operative law.   In fact, expert testimony like Ms. Losinski's is proper and relevant in a breach of contract case, both in: (1) determining whether Cablevision's Terms of Service have a plain, unambiguous meaning when viewed in light of the cable industry custom and usage (and if so, what that meaning is); and (2) in the event the Court finds an ambiguity, in helping the Court or jury interpret the meaning of those terms as informed by industry custom and usage as a finder of fact.

In making the threshold determination of whether or not the disputed language is ambiguous, the question for this Court will be whether the terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and is ***cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business***."   *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 197 (2d Cir. 2005); *see also, e.g., Revson v. Cinque &*

---

[36]   *See, e.g., Emig v. Electrolux Home Prods. Inc.*, 2008 WL 4200988, at *9 (S.D.N.Y. Sept. 11, 2008) ("alleged failures in [the expert's] methodology go to the weight of his expert testimony, not its admissibility in the first instance."); *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 329 (E.D.N.Y. 2013) ("Insofar as plaintiffs complain that [the expert's] methodology is insufficiently reliable . . . , their arguments go to the weight to be given his testimony, not to its admissibility.").

[37]   *See, e.g.*, Br. at 2 (attacking "Ms. Losinski's theories" as "irrelevant"); *id.* at 11, 14, 16, 18 (same).

*Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000) (same). Thus, "[e]vidence as to such custom and usage *is to be considered by the court* where necessary to understand the context in which the parties have used terms that are specialized."[38]   Custom and usage evidence pertaining to specialized terms may be introduced through experts like Ms. Losinski—in fact it is common to do so[39]—and if this evidence establishes that a term is unambiguous, the dispute can be resolved on summary judgment.[40]

Plaintiffs' assertion that industry custom and practice evidence is irrelevant in a case involving consumers (Br. at 12, 14) is also wrong. As the Second Circuit explained in another Cablevision subscriber class action (which likewise involved claims for breach of contract based on Cablevision's Terms of Service), the same standard that applies in contract disputes between commercial parties applies here—namely, whether the contract is ambiguous "when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and is *cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business*." *Broder*, 418 F.3d at 197 (citation, internal quotation marks, and ellipsis omitted) (emphasis added); *accord Broder v. Cablevision*

---

[38]   *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (internal quotation marks omitted) (emphasis added); *see also, e.g., Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 87 n.4 (2d Cir. 2002) (noting that "the District Court erred in declining to consider the custom and usage evidence that was offered by the parties as part of its assessment of whether an ambiguity existed.").

[39]   *See, e.g., FCCD Ltd. v. State Street Bank and Trust Co.*, 2011 WL 519228, at *5 (S.D.N.Y. Feb. 15, 2011) (experts were permitted to provide "custom and usage" evidence to be "considered by the court 'to show what the parties' specialized language [was] fairly presumed to have meant.'") (citation omitted); *id.* ("The [expert] declarations are properly considered in making the threshold ambiguity determination with respect to the disputed language in the [agreement].""); *Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 403 (S.D.N.Y. 2013) ("[i]t is *of course common* for testimony regarding the 'customs and practices' in a particular industry to be the subject of expert testimony.") (emphasis added) (collecting cases).

[40]   *See FCCD Ltd.*, 2011 WL 519228, at *8 (finding that plaintiff "has shown that the [disputed] terms . . . are unambiguous when . . . informed by an understanding of the custom and usage," and granting summary judgment accordingly); *Yafa Jewelry Inc. v. All Those Underwriters Subscribing to Policy of Ins. Numbered 96FA0026180A*, 42 F. Supp. 2d 307, 311 (S.D.N.Y. 1999) (granting summary judgment for plaintiff where, among other things, "defendants' interpretation [of the disputed terms] conflict[ed] with the 'customs, practices, usages and terminology as generally understood' in the wholesale jewelry and insurance business.") (citation omitted).

*Sys. Corp.*, 329 F. Supp. 2d 551, 556 (S.D.N.Y. 2004).  Custom and usage evidence is relevant to the ambiguity inquiry whether the contract is a consumer agreement or not.[41]

Plaintiffs set up a straw-man argument by asserting that "a contract drafter cannot create an 'ambiguity,' based on 'extrinsic evidence'[.]"  (*See* Br. at 12.)  That is not what Cablevision seeks to do here.  Ms. Losinski's expert testimony as to custom and usage is properly considered at all stages of interpreting the meaning of the contract terms at issue in this case.  The main purpose of Ms. Losinski's testimony is to ensure that the Court's threshold analysis of whether the contract has an unambiguous meaning (and, if so, what that meaning is) is informed by an understanding of the custom and usage of the cable industry.[42]   In this context, it is not considered extrinsic evidence at all (which may be considered only after the Court finds an ambiguous contract).  That said, expert testimony like Ms. Losinski's is also relevant to the Court's interpretation of an ambiguous contract term as a matter of law.[43]  And in the event the

---

[41]   *See also Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 89, 90 (2d Cir. 2010) (noting, in a breach of contract case over a customer's "homeowners insurance policy," that an ambiguity exists "where the terms of an insurance contract" could suggest more than one meaning based on, among other things, industry "customs, practices, usages and terminology"); *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 74, 75 (2d Cir. 2009) (quoting same "customs and practices" language in dispute over forum selection clause in a summer camp application); *Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 364, 367 (S.D.N.Y. 2007) (quoting same language where customers claimed that insurer breached the contract by denying their claim for damages to their residence).

[42]   *See, e.g., FCCD Ltd.*, 2011 WL 519228, at *5 (in a breach of contract case involving a loan agreement, experts supplied "custom and usage" evidence that the court "considered in making the threshold ambiguity determination with respect to the disputed language," and then granted summary judgment after finding that the terms were "unambiguous when read in the context of the entire contract, *informed by an understanding of the custom and usage* of intercreditor agreements[.]") (emphasis added); *see also Broder*, 418 F.3d at 197; *Law Debenture Trust Co. of New York*, 595 F.3d at 466.; *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012); *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396-97 (2d Cir. 2009); *Yakin*, 566 F.3d at 75. Indeed, the principle that courts will look to industry evidence as part of the ambiguity inquiry is so well-settled that this language appears in cases decided decades ago.  *See, e.g., Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F. Supp. 987, 994 (S.D.N.Y. 1968).

[43]   *See, e.g., Lawrence v. Cohn*, 197 F. Supp. 2d 16, 20, 26 (S.D.N.Y. 2002) (noting that "Second Circuit case law makes it plain that summary judgment may also be appropriate even where the contract is ambiguous" and after looking to various extrinsic evidence, including expert opinions "as to the proper interpretation of the terms in question according to the custom and usage," adopting one party's urged interpretation of the contract as a matter of law), *aff'd*, 325 F.3d 141, 150-51 (2d Cir. 2003).

Court determines that the contract is ambiguous and that this presents a triable issue of fact, her testimony would be relevant to assist the trier of fact in determining its meaning.[44]

Plaintiffs' other argument (made at various points, *see* Br. at 11, 12) that Ms. Losinski's report is irrelevant because it does not address the relevant terms used in the Terms of Service, is demonstrably false (and misleading) as a factual matter. As described above, and as Plaintiffs well know from reading her report, Ms. Losinski specifically opines on the industry meaning of various terms of art that are used in Paragraph 4 (and others that are used in Paragraph 17) of the Terms of Service. (*See supra.*) Plaintiffs cannot preclude her opinions by misstating them.

Finally, Plaintiffs' argument that Ms. Losinski's opinions regarding the applicable regulatory scheme constitute improper "legal opinion" and are otherwise irrelevant (Br. at 15) is simply wrong.[45] Ms. Losinski conscientiously avoids offering opinions on ultimate legal issues. As Plaintiffs recognize, she does not offer a legal opinion on whether Cablevision's notices in fact complied with law or regulation. (*See id.*) Rather, she describes Cablevision's past practice of providing notice and opportunity to cancel in cases of programming blackouts, and notes that no regulator or court has ever required Cablevision to provide credits in those cases. (Losinski Report at 25.) She then opines that Cablevision's notices in this case were consistent with its past practice. (*Id.* at 29.) This is proper testimony concerning customs and practice in the industry, and ties to the terms of art on which Ms. Losinski opines.[46]

---

[44] *See, e.g., SR Int'l Bus. Ins. Co., Ltd.*, 467 F.3d at 135-36 & n.9 ( "the district court did not err in permitting the jury to consider evidence of an industry custom regarding the undefined term 'occurrence'").

[45] Plaintiffs do not argue, nor could they, that Ms. Losinski offers an improper legal opinion on the meaning of the contract. She does not.

[46] It is well-established that an expert may explain "sophisticated aspects" of a complex regulatory system in order to "shed light on activities not within the common knowledge of the average juror." *U.S. v. Jacques Dessange, Inc.*, 2000 WL 294849, at *2 (S.D.N.Y. Mar. 21, 2000) (internal quotes omitted); *see also Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*, 2003 WL 1878246, at *4 (S.D.N.Y. Apr. 11, 2003); *Am. Home Assur. Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 451 (S.D.N.Y. 2006).

### D. Plaintiffs' remaining arguments go to weight, not admissibility, and are wrong in any event.

Plaintiffs also take a "shotgun" approach and pepper their motion with various merits arguments challenging Ms. Losinski's individually-numbered opinions as illogical or substantively wrong.   To be clear, these are mere disagreements with Ms. Losinski's conclusions, and may be fodder for cross-examination—but are not a basis for exclusion.[47] Moreover, Plaintiffs mischaracterize her report and the nature of the contract issues remaining in the case, and then attack the caricature they have created as inadequate under *Daubert*.  Although we cannot respond to every one of Plaintiffs' shotgun style arguments in the space available— nor is it necessary, since none go to admissibility—we address the principal points below.

Plaintiffs argue that Ms. Losinski's first numbered opinion is inadmissible because it is illogical.[48]  (Br. at 11.)  Again, this is no basis to exclude because "differences of opinion . . . go to the weight to be given the expert testimony, not its admissibility."  *Guild v. GM Corp.*, 53 F. Supp. 2d 363, 369 (W.D.N.Y. 1999).  And Plaintiffs' criticisms are wrong in any event.

Plaintiffs dispute Ms. Losinski's opinions on the meaning of certain industry terms of art, claiming that a "programming blackout" cannot be a "network change" because Cablevision did not change its channel line-up, and asserting that a permanent change is inconsistent with the meaning of "blackout"—which they contend can refer only to something temporary.  (*See* Br. at 13.)  But Ms. Losinski has not opined that "network change" refers only to a "lineup change"

---

[47]   *See, e.g., Chitayat v. Vanderbilt Assocs.*, 2007 WL 2890248, at *5 (E.D.N.Y. Sept. 27, 2007) ("Challenges to [the expert's] assumptions or conclusions go to the weight of the evidence, not the admissibility.").

[48]   In her first numbered opinion, Ms. Losinski opines that "network change" is an industry terms of art that refer to changes to the mix of networks available to subscribers based on editorial decisions of cable operators and programmers, and that a "programming blackout" is a type of "network change" that occurs when, as here, there is a contract dispute between a cable operator and a programmer.  Ms. Losinski then opines that Paragraph 17 of the Term of Service contains other terms of art that refer to the concepts of "network change" and "programming blackout," whereas Paragraph 4 does not.  (Losinski Report at 21.)

18

that permanently "delet[ed]" the Fox Channels, as Plaintiffs suggest—rather, she opines that programming blackouts are typically understood as one kind of "network change."[49]

Plaintiffs' contention that this opinion contradicts the testimony of Cablevision witnesses (Br. at 13 & n.22) is also wrong, and does not undermine its admissibility.  Plaintiffs can explore this perceived inconsistency by deposing Ms. Losinski and, if it comes to that, by cross-examining her at trial.  In any event, this opinion does not turn on whether the Fox Channels were "deleted" or the Fox Programming Blackout was a "channel lineup change," as Plaintiffs seem to assume.  Indeed, the phrase "channel lineup change" does not even appear in the Terms of Service.  (*See id.*)  Moreover, there is no basis (and Plaintiffs offer none) to contend that "change" must necessarily mean a "permanent change," as they argue.[50]

Plaintiffs fare no better in their challenges to the second and third numbered opinions, which provide additional context for the regulatory scheme and industry customs at issue here.[51] Plaintiffs assert that the "only relevant question under contract Paragraph 17 is whether Cablevision changed its lineup 'in accordance with applicable law" (Br. at 15), and complain that Ms. Losinski's report cannot be relevant, because it does not assert that Cablevision's notices complied with applicable law.[52]  But this is wrong.  This Court has noted that Plaintiffs'

---

[49]   Change can of course be "temporary," and there are infinite examples of "temporary" changes in the world—day still "changes" to night even though that change is temporary, and night will "change" to day again, every time.

[50]   Rather, Ms. Losinski opines that several terms that appear in Paragraph 17, but not in Paragraph 4, are terms of art that refer to concepts of a "network change" and "programming blackout." (Losinski Report at 19.)

[51]   In her second numbered opinion, Ms. Losinski opines that, generally, in the event of a programming blackout, applicable regulations require cable operators only to provide notice and an opportunity to terminate service (as opposed to the kind of across-the-board credits that Plaintiffs seek here.) (Losinski Report at 28.)  In her third numbered opinion, Ms. Losinski opines that, in connection with the programming blackout of the Fox Channels in this case, Cablevision provided notice and an opportunity to terminate, which was consistent with its longstanding practice as informed by the regulatory framework.  (*Id.* at 29.)

[52]   Plaintiffs' claim that Ms. Losinski cannot address this issue because "Cablevision has never asserted in any of its court filings or discovery responses that it made a change in accordance with applicable law" (Br. at 15) hardly merits a response.  Cablevision had no obligation to make such an assertion, and, in any event, Cablevision's court filings have repeatedly rejected Plaintiffs' narrow interpretation of Paragraph 17, and have

"contract claim hinges on whether the two-week interruption was a 'program or service interruption' within the meaning of Paragraph 4."[53]  Ms. Losinski's testimony is directly relevant to that question, as shown above.  And, there is no basis for Plaintiffs' implication that failure by Cablevision to fully comply with regulatory notice requirements regarding the Fox Programming Blackout would trigger an obligation to pay a credit to subscribers under Paragraph 4.  In any event, Plaintiffs' argument is an argument on the merits (and a facially meritless one at that), and does nothing to challenge the relevance or admissibility of Ms. Losinski's testimony.

Plaintiffs' claims that Ms. Losinski ignores regulations that relate to channel deletion, that Cablevision "did not comply with all the requirements relevant to deleting the Fox Channels," and that Cablevision's past practice concerning notice is irrelevant (Br. 15-16), are likewise disagreements with the substance of Ms. Losinski's opinions, and have no bearing on their admissibility.[54]  This critique is based on the flawed premise that to be relevant, Ms. Losinski's opinions must establish that Cablevision "changed the lineup in accordance with applicable law" under Paragraph 17.  As explained above, this is wrong.

Finally, the hodgepodge of Plaintiffs' complaints about Ms. Losinski's fourth and fifth numbered opinions—which provide plainly relevant expert testimony on the meaning of "disruption of service" and related terms of art in the cable industry, as those terms relate to Paragraph 4 and the facts here[55]—is especially unavailing.  The claim that these opinions leave

---

consistently argued that the Fox Programming Blackout falls within this provision and not Paragraph 4.  *See, e.g.*, Dkt. 92, Defs.' Mem. of Law in Opp. to Pls.' Mot. for Partial Summary Judgment at 12 ("Thus, if anything, the Court could fairly conclude that TOS unambiguously provide that the Fox Withdrawal was not an 'interruption' but rather a channel change under Paragraph 17 for which Cablevision has no liability.").

[53]  Dkt. 108, Mar. 31, 2014 Mem. and Order on Class Certification, at 15.

[54]  While the admissibility analysis does not require responding to each of Plaintiffs' misstatements, it bears pointing out that Plaintiffs do not cite a single regulation to support their bald assertion that Ms. Losinski has misstated the regulations or that Cablevision did not satisfy them.

[55]  In her fourth and fifth numbered opinions, Ms. Losinski opines on the meaning of the term "disruption of service" and related terms of art in the industry, and notes that they do not refer to programming blackouts such

unanswered questions about credits in cases of service disruptions, alternate programming in lieu of credits, and other issues (Br. at 19) illustrates that these criticisms go to weight, not admissibility, as Plaintiffs can put these questions to Ms. Losinski at her deposition.

The Court need not get bogged down in analyzing Plaintiffs' quibbles with the substance of Ms. Losinski's report or their mischaracterization of her opinions.  Each of these are merits attacks that say nothing about admissibility—and, as detailed above (*see supra* Sec. I.A-I.C), Ms. Losinski's opinions amply satisfy the admissibility standards of Rule 702.  Plaintiffs' attacks are fodder for cross-examination, and provide no basis for exclusion here.[56]

## II.   CABLEVISION SHOULD NOT BE PRECLUDED FROM RELYING ON ITS JULY 18 FACT DISCLOSURES AND DISCOVERY.

### A.    Cablevision properly supplemented its disclosures in light of Plaintiffs' belatedly-disclosed damages theory.

As Magistrate Judge Tomlinson recognized, parties have an affirmative obligation to supplement their discovery disclosures under Rule 26 (even after the close of fact discovery). (Dkt. 111.)   This is especially true when the other party—here, Plaintiffs—makes a new disclosure that injects new contentions into the litigation.  Cablevision made its supplemental

---

as occurred with the Fox Channels in this case.  She then notes that "disruption of service" and other related terms of art appear in Paragraph 4.  (Losinski Report at 21.)

[56]   Moreover, though doing so is not necessary to establish the admissibility of Ms. Losinski's testimony, these supposed "questions" are easily answered.  Loss of service for which a subscriber "pays a separate price" refers to loss of all channels in a tier or package for which the subscriber pays a separate price.  (Losinski Report at 25-26.)  Ms. Losinski also explains that while under the applicable regulations a subscriber must lose all channels to qualify for a credit for a disruption of service, Cablevision has adopted a practice of providing credits for such disruptions when at least half the channels in a tier or package have been lost.  (*Id.* at 26.) Finally, the fact that under Paragraph 4 Cablevision can provide alternative programming in lieu of credits for disruptions of service is not inconsistent with Ms. Losinski's opinion that "program or service interruption" is a term of art referring to technical problems or extraordinary *force majeure*-type events.  (*See* Br. at 19.) Ms. Losinski explains that such problems and events can affect only some channels of a subscriber's service. (Losinski Report at 6.)  The discretion to provide alternate programming in Paragraph 4 is thus perfectly consistent with a situation where technical problems interrupt the program transmissions for certain networks, but where Cablevision can provide program transmissions for alternate networks.  Finally, Plaintiffs' argument that the logical conclusion of Ms. Losinski's report—purportedly "that Cablevision is liable for credits for a blameless 'force majeure' event, but cannot be liable when it *knowingly* interrupts the programming because of 'business decision' to increase its profits" (Br. at 20)—mischaracterizes Ms. Losinski's opinions.   More importantly, though, it is an argument about how the contract should be interpreted—not whether Ms. Losinski's opinions are admissible.

disclosures in response to Plaintiffs' belated damages theory, and to comport with the "ongoing obligation under Rule 26(a) to supplement . . . Initial Disclosures as the case progresses." (*See* Dkt. 111 at 1); *see also* Fed. R. Civ. P. 26(e) ("[a] party who has made a disclosure under Rule 26(a) . . . must supplement . . . its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete").[57]

Damages here are a key issue on which Plaintiffs bear the burden of proof. *E.g.*, *Diesel Props S.r.l. v. Greystone Business Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). But until Plaintiffs disclosed their damages theory, Cablevision was unable to determine how it would respond. Once Plaintiffs finally disclosed their damages contentions on May 22, 2014, Cablevision was able to develop its defense—which, in addition to Mr. Orszag's expert report, required some new documents and disclosing Ms. Losinski as a fact witness. And after developing that defense, Cablevision—in accordance with its Rule 26 obligations and Magistrate Judge Tomlinson's instructions—made these supplemental disclosures on July 18, 2014.[58]

None of this is a surprise to Plaintiffs. In fact, Cablevision advised Plaintiffs at the May 5, 2014 conference that supplemental fact discovery might be required to respond to Plaintiffs' damages—and, apparently recognizing that this proposition was correct, Plaintiffs did not object. (*See supra*.) Each disclosure to which Plaintiffs now object goes directly to responding to their belated damages theory: the subject matters for which Ms. Losinski has been disclosed as a fact witness all relate to responding to Plaintiffs' damages theory, and the 138 pages of new discovery are some of the reliance materials of Cablevision's damages expert Mr. Orszag.[59]

---

[57] *See also Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011) (the duty to supplement continues even after the discovery period has closed.)

[58] *See supra; cf. Lab Crafters, Inc. v. Flow Safe, Inc.*, 2007 WL 7034303, *6-7 (E.D.N.Y. Oct. 26, 2007) (disclosure was necessary in order to meet a new theory advanced by the opposing party's expert).

[59] All but 17 pages of these documents are not even Cablevision documents, and Cablevision had no prior duty to produce them. *See* Genser Decl., Ex. 9, at 1-2 (list of materials considered by damages expert Mr. Orszag)

Plaintiffs also object to some of the exhibits attached to Ms. Losinski's report,[60] and in so doing, once again confuse fact with expert discovery.  There are no ***fact*** discovery timeliness issues here, because Cablevision timely disclosed these documents as "facts or data considered by [Ms. Losinski] in forming" her ***expert*** opinions and as "exhibits that will be used to summarize or support them." (*See* Fed. R. Civ. P. 26(a)(2)(B)(ii) & (iii), respectively.)[61]

### B.    Preclusion would be inappropriate in any event

Even if any of the above disclosures were not required (and substantially justified) by Cablevision's continuing Rule 26 disclosure obligations, preclusion would still be inappropriate.

***First,*** Plaintiffs have suffered no prejudice—which provides a separate reason to deny their motion to preclude.  *See Peters v. Molloy Coll. of Rockville Ctr.*, 2010 WL 3170528, at *5 (E.D.N.Y. Aug. 10, 2010) (preclusion is not appropriate when "the party entitled to the disclosure is not prejudiced" by the failure to disclose). Plaintiffs will have the opportunity to depose Ms. Losinski under the current schedule for expert discovery, and they can explore her factual knowledge at that time.   This "easily obviate[s]" any potential prejudice from

---

(citing newly-produced documents CSC354414-17 and CSC354424-540, reports created by a third party industry consulting company called SNL Kagan).   The 17 pages from Cablevision's files also support Mr. Orszag's opinions (*see* Fed. R. Civ. P. 26(a)(2)(B)(ii)), and likewise respond to Plaintiffs' damages claim.

[60]  Ms. Losinski attached twelve exhibits to her expert report, totalling 57 pages.  Some were previously produced in the case, others were not.  Those that were not previously produced are:  (1) a copy of Cablevision's General Terms and Conditions of Service (which, according to Ms. Losinski, each subscriber received when Cablevision was installed); (2) several examples of on-screen notices shown to subscribers following the Fox withdrawal (about which Plaintiffs have already taken deposition testimony (*see supra* at 4 & n. 15); (3) a Cablevision schedule for showing subscriber notices regarding the Fox withdrawal on cable television; and (4) lists of network changes made at Cablevision in 2009 and 2010, respectively.  (*See* Dkt. 127-2, Exs. C, F, G, H, I, K, L.)  The fact that such network changes are made has also been the subject of extensive discovery.  (*See, e.g.,* Genser Decl., Ex. 6 (Feldman Dep. at 117:22-118:9); Ex. 13 (Cablevision 2010 New Video Content and Enhancements).)

[61]  Moreover, until Plaintiffs disclosed their damages theory, Cablevision could not fully formulate how it would respond.  Ms. Losinski's expert report and exhibits are part of that response, and go, among, other things, to the custom and practice in the industry concerning subscriber remedies, and will be directly relevant to Plaintiffs' belated windfall damages theory.

Cablevision's disclosure of her as a fact witness.[62]  Plaintiffs' contention that they will need to reopen document discovery in order adequately to depose her is likewise unsupported. Cablevision's production of 350,000 pages of documents and other discovery provides ample basis for Plaintiffs to explore Ms. Losinski's factual knowledge at deposition.  And Plaintiffs can question her about the exhibits to her report (which they contend constitute belated fact discovery) in the deposition.[63]  Plaintiffs have likewise suffered no prejudice from Cablevision's 138 page supplemental production (only 17 of which are from Cablevision's files) on which Cablevision's damages expert Mr. Orszag relies.   Plaintiffs can question him about those documents in his deposition, and have no possible claim of prejudice in that regard.

*Second,* even if there were some prejudice (and there is not), preclusion is a harsh and rarely-applied remedy,[64] and would be especially inappropriate here because the challenged

---

62  *NIC Holding Corp. v. Lukoil Pan Ames., LLC*, 2007 WL 1467424, at *5 (S.D.N.Y. May 16, 2007); *see also Rojo v. Deutsche Bank*, 2009 WL 3790191, at *5 (S.D.N.Y. 2009) (plaintiff could depose challenged witnesses "to cure any possible prejudice"); *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 324  (S.D.N.Y. 2013) (depositions "would be a more appropriate possible remedy than sanctions or preclusion"); *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 2006 WL 988143, at *4 (S.D.N.Y. Apr. 13, 2006) (failure to disclose was "'harmless' so long as [opposing party] is provided an opportunity to depose these witnesses."); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *14 (S.D.N.Y. July 3, 2012) ("This and other courts have adopted the taking of depositions as an appropriate mechanism to address late-disclosed witnesses.").  While Plaintiffs argue they will need to reopen document discovery in order to depose Ms. Losinski (*see* Br. at 24), this claim is meritless:  Plaintiffs have Ms. Losinski's 29-page expert report and 12 accompanying exhibits on which to depose her, not to mention the thousands of documents that have been previously produced in this case.

63  While Plaintiffs feign shock at disclosure of Ms. Losinski as a fact witness, they were long aware of her identity—since Ms. Losinski's superior Lee Schroeder named her as one of her direct reports in a deposition a year and a half ago, *see* Genser Decl. Ex. 5 (Schroeder Dep. at 7:21-8:3), and, as Plaintiffs concede, Ms. Losinksi's name appears on several documents in Cablevision's production.  (Br. at 24.)  Indeed, one of these documents is a letter that makes clear that Ms. Losinski had knowledge of the dispute with Fox as well as Cablevision's responses to regulators and subscribers.  *See* Genser Decl. Ex. 10.  A purported late disclosure of a witness is harmless in circumstances like these, where the other party was "sufficiently aware of the existence and relevance of the persons in question so that [the party] is not being subject to trial by ambush." *Morgenstern v. County of Nassau*, 2008 WL 4449335, at *1 (E.D.N.Y. Sept. 29, 2008) (cited in Br. at 21). Moreover, Plaintiffs have already explored many of (if not all) the topics for which Ms. Losinski was disclosed during the depositions of other Cablevision witnesses (*see supra* at 4 & nn. 11-15).

64  *See, e.g., Outley v. City of N.Y.*, 837 F.2d 587, 591 (preclusion is an "extreme sanction"); *Peters v. Molloy Coll. of Rockville Ctr.*, 2010 WL 3170528, at *5 (E.D.N.Y. Aug. 10, 2010) ("preclusion is a harsh remedy that should be imposed only in rare situations") (citation omitted).

evidence is highly relevant in responding to and rebutting Plaintiffs' $86.7 million windfall damages theory—which itself did not surface until well after the close of fact discovery.[65]

### C. Plaintiffs' arguments for preclusion apply with greater force to their own belated windfall damages claim.

Plaintiffs cannot have it both ways:  they attack Cablevision for disclosing information after the discovery cut-off, but do not explain why their own damages theory—due *years* ago as part of Plaintiffs' initial disclosures—should be held to a different standard.   In attacking Cablevision, Plaintiffs undermine themselves:  if Cablevision's supplemental disclosures are indeed untimely, this argument applies with all the more force to Plaintiffs' damages disclosures. Indeed, the real prejudice would be to permit Plaintiffs to thumb their nose at the Court's schedule, allow them to delay for years before finally articulating a damages theory (a basic and key issue to be litigated here), and to then punish Cablevision by striking documents that Cablevision's experts need to be able to respond to Plaintiffs' tardy damages claims.  If the Court were to preclude Cablevision's evidence as untimely, basic fairness dictates that Plaintiffs' damages theory should also be precluded as such—and indeed, courts readily exclude untimely damages claims like these.[66]   Accordingly, Cablevision seeks that relief in the alternative.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Strike in its entirety; alternatively, if the Court grants Plaintiffs' Motion, it should likewise exclude Plaintiffs' untimely damages theory.

---

[65]   *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (recognizing that importance of the challenged evidence is a relevant factor weighing against preclusion).

[66]   *See, e.g.*, *Design Strategy v. Davis*, 469 F.3d 284, 296  (2d Cir. 2006) (affirming exclusion of late damages disclosures); *Kodak Graphic Commc'ns Canada Co. v. E.I. Dupont de Nemours & Co.*, 2013 WL 5739041, at *6 (W.D.N.Y. 2013) (precluding late disclosures of an additional $6.3 million in damages); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (theory of damages precluded because plaintiff failed to make mandatory initial disclosure); *Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp.*, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005) ("The Court will not allow plaintiff Austrian Airlines to assert this new, additional damage theory at the eleventh hour.").

Dated:   August 25, 2014

                 _/s/  Andrew M. Genser_              

Joseph Serino, Jr., P.C.
Andrew M. Genser
Jonathan F. Putnam
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
joseph.serino@kirkland.com
agenser@kirkland.com
jputnam@kirkland.com

*Attorneys for Defendants Cablevision Systems
Corporation and CSC Holdings, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2014, I served a true and correct copy of the foregoing

on counsel of record listed below via ECF:

Carol S. Shahmoon
SHAHMOON & ELLISEN LLP
370 Lexington Avenue, 24th Floor
New York, NY 10017
cshahmoon@sandelaw.com

Todd J. Krouner
LAW OFFICE OF TODD J. KROUNER
93 North Greeley Avenue
Chappaqua, NY 10514
tkrouner@krounerlaw.com

Ralph M. Stone
STONE BONNER & ROCCO LLP
260 Madison Avenue, 17th Floor
New York, NY 10016
rstone@lawssb.com

_/s/ Andrew M. Genser_
Andrew M. Genser