# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, New York 10022

| | | |
|---|---|---|
| Andrew M. Genser<br>To Call Writer Directly:<br>(212) 446-4809<br>andrew.genser@kirkland.com | (212) 446-4800<br><br>www.kirkland.com | Facsimile:<br>(212) 446-4900 |

May 9, 2016

**Via ECF Filing**

Hon. A. Kathleen Tomlinson, U.S. Magistrate Judge
United States District Court
100 Federal Plaza
Central Islip, NY 11722

      Re:    *In re Cablevision Consumer Litig.* (No. 10-CV-4992 (JS)(AKT))

Dear Judge Tomlinson:

      Cablevision Systems Corporation and CSC Holdings, LLC (together, "Cablevision") hereby submits its response to Plaintiffs' May 5, 2016 Letter Motion, Dkt. 192 ("Motion" or "Mot.") as well as the Court's Order, Dkt. 193, dated May 6, 2016. Almost two years ago, on July 18, 2014, Cablevision disclosed the report of its damages expert, Jonathan Orszag, along with certain spreadsheets containing data from Cablevision about its revenues, programming costs and other matters that he considered (the "Orszag Spreadsheets"). Plaintiffs previously filed and lost a motion to strike those and other documents in August 2014. (Dkts. 125, 127, 178.) Over a year and a half later, they have now filed a motion to compel production of native versions of these same documents. Plaintiffs' motion should be denied because Cablevision has already produced all of the materials that Mr. Orszag considered in preparing his report, including native versions of the Orszag Spreadsheets as required by the parties' stipulation concerning electronic discovery (the "ESI Stipulation"), which is all that Plaintiffs are entitled to receive. Plaintiffs mischaracterize the history of the parties' discussions by ignoring the fact that the nature of their requests has changed dramatically from their original request for the spreadsheets in native Excel format (which Cablevision provided) to a request for information that Mr. Orszag never received or considered; and by repeatedly claiming that Cablevision agreed to provide such information, when Cablevision ***never*** agreed to do so. Cablevision has fully complied with its obligations under the expert discovery rules, and Plaintiffs' motion should be denied.

      By way of background, the parties' ESI Stipulation provides that dynamic files such as spreadsheets shall be produced in original native format with all accompanying metadata. (Ex. 1 at 1.) That stipulation simply specifies the format of document productions—it does not expand or alter the scope of expert discovery. (*See id.*) The expert discovery rules require that the disclosing party provide "the facts or data considered by the [expert]" in forming his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). They do not require disclosure of material that the expert did ***not***

## KIRKLAND & ELLIS LLP

May 9, 2016
Page 2

consider.[1]  As shown below, Cablevision long ago provided all the material that Mr. Orszag considered.  This is a fight over materials Mr. Orszag did *not* consider and to which Plaintiffs are not entitled, especially at this late date.

On July 18, 2014, Cablevision produced the expert report of Mr. Orszag, including the Orszag Spreadsheets.  In accordance with the ESI Stipulation, Cablevision also provided a CD that contained a native Excel version of Mr. Orszag's electronic work papers, including the Orszag Spreadsheets, titled "Document Calculations.xlsx." (Mot. Ex. 2 at 1.)  Cablevision also produced .pdf versions of those tabs with Bates numbers.  (*See id.*)  On August 19, 2014, Plaintiffs moved to preclude Cablevision from relying on, among other things, documents supporting Mr. Orszag's damages opinions that it produced on July 18, 2014.  (*See* Dkts. 125, 127.)  On December 8, 2015, the Court denied that request, finding preclusion inappropriate because "disclosure was made prior to [Orszag's] expert deposition."  (Dkt. 178 at 35.)  At Mr. Orszag's October 2, 2014 deposition, Plaintiffs made full use of their opportunity to question Mr. Orszag regarding the Orszag Spreadsheets.[2]

It was not until January 8, 2016—*one full year and a half* after Cablevision produced the Orszag Spreadsheets—that Plaintiffs first asked Cablevision to produce native versions of those files (even though they had already been provided), and to respond in two weeks,[3] which Cablevision did.  (Mot. Ex. 2.)  In that January 22 response, Cablevision advised that it had already produced native versions of the documents requested,[4] and summarized in a table how certain tabs in Mr. Orszag's Excel worksheet file correlated with the Bates-numbered .pdf file.  (*Id.* at 1-2.)  More than one week later, on February 2, 2016, Plaintiffs wrote another letter, for the first time requesting "the complete spreadsheet file from which the pdf documents produced by Mr. Orszag were created."  (Mot. Ex. 3 at 2.)  In the spirit of cooperation, and notwithstanding that expert discovery had long since closed, Cablevision worked to identify the six specific native Excel files that were used to create the consolidated .pdf worksheet for Mr. Orszag's report, which it produced on March 16, 2016.  The data in those files is the same data that is in the Excel version of the Orszag Spreadsheets that were produced with his report.

Several weeks later, on April 5, 2016, at Plaintiffs' request, the parties had a call to further discuss the spreadsheets.  At that point, for the first time, it began to become apparent to Cablevision that, in addition to seeking native Excels of Mr. Orszag's reliance materials,

---

[1] *See, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 574 (S.D.N.Y. 2013) ("the test is whether the expert 'considered' the materials"); *Thieriot v. Jaspan Schlesinger Hoffman LLP*, 2011 WL 4543308, at *4-5 (E.D.N.Y. Sept. 29, 2011) (denying motion to compel production of documents where "the testifying expert never read, reviewed or considered the subject documents in forming his opinion.").

[2] *See* Ex. 2 at 247:10-13; 248:19-25.  They also questioned Mr. Orszag about the process by which he obtained the data from Cablevision.  *See id.* at 151:14-152:3; 254:18-22; 256:11-18;152:4-156:7; 165:11-167:12.

[3] Mot. Ex. 1 at 1 ("[r]egarding the documents that were produced contemporaneously with the expert report of Mr. Orszag, as to which plaintiffs filed a motion to strike as untimely produced, we ask that you produce full native spreadsheets and supporting tabs[.]").)

[4] As Cablevision explained in that letter, one of the documents Plaintiffs requested was a PDF file with handwritten signatures, which was not a spreadsheet that could be produced in Excel format.  (Mot. Ex. 2 at 2.)

## KIRKLAND & ELLIS LLP

May 9, 2016
Page 3

Plaintiffs were demanding documents ***beyond*** what Mr. Orszag had considered for his analysis. To be clear, at no time did Cablevision ***ever*** agree to produce such materials. On the day Plaintiffs filed their letter motion, Cablevision sent Plaintiffs the response it had been preparing. (Ex. 3.) As Plaintiffs had every opportunity to explore at Mr. Orszag's deposition, and as we explained in that letter, when Mr. Orszag was preparing his report, his support staff requested that Cablevision provide company data that Mr. Orszag would need for his analyses. Mr. Orszag's staff in turn determined which categories of data Mr. Orszag needed for his analysis, and provided those to him in the form of the Orszag Spreadsheets.[5] Thus, as Mr. Orszag confirmed at his deposition, Cablevision has already provided Plaintiffs with all the materials that he considered. (Ex. 2 at 19:19-20:4.)[6] Under well-settled law, Plaintiffs' untimely motion to compel production of additional materials that supposedly reside in Cablevision's files, which Mr. Orszag did not review or consider, must be denied.[7]

Finally, regarding Your Honor's request (Dkt. 193) for an explanation as to the source of the delay here, that is solely attributable to Plaintiffs making requests long after the close of discovery and exacerbating matters by changing and shifting those requests every time Cablevision responded. This was all done on Plaintiffs' timetable. This is not a case where Cablevision promised to produce materials but failed to deliver—Cablevision produced everything it promised and everything required by the expert discovery rules. Nor is it a case where Cablevision failed to meet and confer with Plaintiffs: as shown above, the four months that elapsed since Plaintiffs first requested the native versions of the spreadsheets resulted from Plaintiffs making seriatim, ever-expanding requests, and the time Cablevision needed to prepare its responses. This also follows Plaintiffs' year and a half delay in first asking for native versions of the spreadsheets (which, as noted, Cablevision had already provided).

                                                    Respectfully submitted,
                                                    */s Andrew M. Genser*

cc: All Counsel of Record (via ECF)

---

[5] Plaintiffs repeated insinuation that Cablevision may have manipulated the data in the Orszag Spreadsheets is utterly baseless.

[6] Cablevision takes particular exception to Plaintiffs' assertion that the spreadsheets they received were "newly created for purposes of attempting to satisfy plaintiffs' demands." (Mot. at 2.) That is false. Plaintiffs contend that the spreadsheets they received show "they were modified on March 16, 2016, the same day that were produced to us" (Mot. Ex. 6 at 2)—but as Cablevision already told Plaintiffs on April 5, due to a technical issue related to how Cablevision transferred the files to Plaintiffs, the metadata does not reflect the original date that the files were created, but reflects the date that counsel emailed them to Plaintiffs. Cablevision also explained that we would find an alternate way to send the files that would not disturb the original metadata showing the date the file was created, which, as we already told Plaintiffs, was in 2014.

[7] *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (limiting expert discovery to materials considered by the expert in forming his opinions); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. at 574; *Thieriot*, 2011 WL 4543308, at *4-5.