## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Cablevision Consumer Litigation** <br><br>-------------------------------------------------------<br><br>This Document Relates to:<br>All Actions | Master File No.<br>10-cv-4992 (JS) (AKT)<br><br>ECF CASE |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "Agreement") is made and entered into by and among Sean Ahearn, John Azzarello, Eric Bohm, John Brett, Angelo Brucchieri, William G. Canfield, Ralph Dudley, Arthur Finkel, Salvatore A. Gandolfo, Tina Green, Andrew Koplik, David Menoni, Theodore Pearlman, Vincent Pezzuti, Dorothy Rabsey, Martin Jay Siegel, Stanley J. Somer and Marc Tell, individually and as the representatives of the Settlement Class described in Paragraph 1 below (collectively, "Plaintiffs"); Ralph M. Stone of Stone Bonner & Rocco LLP, Todd J. Krouner of the Law Office of Todd J. Krouner, P.C., and Carol S. Shahmoon of CSS Legal Group PLLC (collectively, "Settlement Class Counsel"); and Cablevision Systems Corporation and CSC Holdings, LLC (collectively, "Cablevision"). Plaintiffs, Cablevision Systems Corporation, and CSC Holdings, LLC are referred to collectively herein as the "Parties," and each individually as a "Party." The "Effective Date" of this Agreement shall be the date on which this Agreement has been duly executed by each of the Parties shown on the signature lines at the end of this Agreement.

WHEREAS, on October 29, 2010, certain of the named Plaintiffs filed a putative class action in the United States District Court for the Eastern District of New York (the "Court") captioned *Pearlman, et al. v. Cablevision Systems Corporation*, Case No. 2:10-cv-4992-JS-AKT (the "Action"), alleging that Cablevision Systems Corporation failed to provide its subscribers with certain programming ("Fox Channels") as a result of a contractual dispute between Cablevision Systems Corporation and the News Corp. in October 2010, and alleging that Cablevision Systems Corporation was required to but failed to provide its subscribers with a credit in connection with its alleged failure to provide the Fox Channels (the "Fox Blackout");

WHEREAS, on February 1, 2011, the Action was consolidated with several other cases filed against Cablevision arising out of the Fox Blackout;

WHEREAS, on February 22, 2011, Plaintiffs filed a consolidated amended class action complaint in the Action, bringing seven causes of action: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) unjust enrichment; (iv) consumer fraud (New York subclass); (v) consumer fraud (New Jersey subclass); (vi) consumer fraud (Connecticut subclass); and (vii) permanent injunctive relief, and in their request for relief sought, among other things, monetary damages, punitive damages, costs, attorneys' fees, and remedies available under the New York, New Jersey, and Connecticut consumer fraud statutes;

WHEREAS, on March 18, 2011, Cablevision filed a motion to dismiss all of plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6), and on March 28, 2012, the Court granted in part and denied in part Cablevision's motion to dismiss, dismissing counts (ii) through (vi) of the consolidated amended class action complaint, denying Plaintiffs' request for a permanent injunction that would compel Cablevision to enter into a dispute resolution mechanism to resolve disagreements with its content providers, and denying Cablevision's motion to dismiss as to count (i), the breach of contract claim; following which Plaintiffs filed a second consolidated amended complaint on April 16, 2012 and asserted a breach of contract claim against Cablevision;

WHEREAS, on October 10, 2012, Plaintiffs filed a motion for class certification, and on December 3, 2012, Plaintiffs also filed a motion for partial summary judgment, seeking a determination that: (i) Cablevision's alleged failure to provide a pro rata credit in connection with loss of the Fox Channels between October 16, 2010 and October 30, 2010 constituted a breach of

1

contract; and (ii) Cablevision is obligated to provide a uniform *pro rata* credit to all customers who subscribed to a particular cable package;

WHEREAS, on March 31, 2014, the Court denied without prejudice Plaintiffs' motion for partial summary judgment with leave to renew after class members have been provided with notice and an opportunity to opt out, and also issued an order granting Plaintiffs' motion for class certification, certifying a Class under Federal Rule of Civil Procedure 23(b)(3), which pursuant to this Agreement is the Settlement Class as described in Paragraph 2 below;

WHEREAS, on May 30, 2014, Plaintiffs made a motion for approval of the form of class notice, which was granted on June 4, 2014, and on August 20, 2014 Plaintiffs made a motion for approval of distribution and publication of class notice, which was granted on October 7, 2014; Plaintiffs sought to amend the class notice by letter filed on November 3, 2014, which was approved by the Court on November 12, 2014;

WHEREAS Plaintiff informed the Court on March 2, 2015 that the time for class members to opt-out of the class action had expired;

WHEREAS, Plaintiffs moved for partial summary judgment on March 31, 2016, and Cablevision moved for summary judgment on June 13, 2016; at that point, the Parties had completed expert discovery, and each side made certain motions to strike, which were granted in part and denied in part by the Court on November 30, 2015 and December 28, 2015;

WHEREAS on September 15, 2016, the parties filed a Joint Pre-Trial Order with the Court;

WHEREAS, on September 19, 2016, the Parties jointly advised the Court that they agreed to attempt to resolve the Action through private mediation, and on September 20, 2016, the Court denied without prejudice Plaintiffs' motion for partial summary judgment and Cablevision's motion for summary judgment;

WHEREAS, the Parties participated in several in person mediation sessions and telephonic discussions with the Honorable Richard Holwell (Ret.) in November 2016 through March 2017; and

WHEREAS, as a result of that mediation process and following extensive arms'-length negotiations, Plaintiffs and Cablevision desire that the Action be resolved as set forth in this Agreement (the "<u>Settlement</u>"), and each Party, having received the full advice and benefit of counsel, believes the terms set forth in this Agreement to be fair and reasonable;

WHEREAS, Cablevision denies Plaintiffs' allegations, has not conceded or admitted any liability, and has asserted affirmative defenses to Plaintiffs' claims;

WHEREAS, Cablevision, despite its belief that it has meritorious defenses to the claims alleged, nevertheless has agreed to enter into this Agreement to avoid the risks, uncertainties, and expenses of further litigation;

WHEREAS, Plaintiffs, despite their belief that they have meritorious claims, have concluded that a settlement with Cablevision according to the terms and conditions set forth below is in the best interest of Plaintiffs and the Settlement Class;

NOW, THEREFORE, in exchange for the mutual promises contained in this Agreement and other good and valuable consideration, and to effectuate full and final settlement of the Action, the Parties agree as follows:

## CERTIFIED SETTLEMENT CLASS AND SETTLEMENT SUB-CLASSES

1. <u>Litigation Class</u>. In its March 31, 2014 Memorandum and Order, the Court certified the following class Litigation Class under Federal Rule of Civil Procedure 23(b)(3):

> All individuals who contracted with Cablevision prior to October 16, 2010, to receive cable television service on or after October 16, 2010. Excluded from the Class are Cablevision's officers, directors, legal representatives, heirs, successors, and assigns; and any judicial officer assigned to this case and his or her immediate family.

2. <u>Settlement Class.</u> The Parties agree the Settlement Class shall constitute the Litigation Class as set forth in Paragraph 1 but excluding class members who have opted out of the litigation as of March 2, 2015, and also excluding any class members who opt out of this settlement in accordance with Paragraph 8 herein, for purposes of this Settlement and its implementation (hereinafter, the "Settlement Class").

3. <u>Settlement Sub-Classes.</u> The Parties agree that Settlement Class members shall be divided into three sub-classes, which, together, constitute the entire Settlement Class, as follows:

   (a) "<u>Group A</u>" shall consist of Settlement Class members who, as of 30 days after the date of the Final Approval Order, are current video subscribers of Cablevision with access to Video on Demand.

   (b) "<u>Group B</u>" shall consist of Settlement Class members who, as of 30 days after the date of the Final Approval Order, are current subscribers of Cablevision who do not subscribe to video services that provide access to Video on Demand.

   (c) "<u>Group C</u>" shall consist of Settlement Class members who, as of 30 days after the date of the Final Approval Order, are former subscribers of Cablevision.

## CLASS NOTICE AND OPT-OUT PROCEDURES

4. <u>Class Notice Procedure.</u> Pursuant to Federal Rule of Civil Procedure 23(e), the Parties, being represented by experienced class action counsel, agree that a reasonable manner to provide notice to all Class Members who would be bound by this proposed Settlement shall consist of: (a) notice in the form of Exhibit A (the "<u>Settlement Notice</u>") via inserts to be included in Cablevision's monthly bills to its current subscribers who routinely receive bills via regular mail; (b) notice transmitted via email attaching the Settlement Notice as a PDF to Cablevision's current subscribers who routinely receive bills electronically; and (c) publication of an advertisement

3

giving notice of the Settlement, in the form of Exhibit B (the "Published Notice"), published one time in each of the following newspapers in order to notify Class Members who are former Cablevision customers: New York Times, Newsday, Star-Ledger, Home News, New Haven Register, Stamford Advocate, and Gannett Journal News. Publication of the Published Notice and the mailing and email transmittal of the Settlement Notice shall take place within sixty (60) days after the date of the Preliminary Approval Order (as defined in Paragraph 14 below). The latest of the date of publication of the Published Notice or of the mailing or email transmittal of the Settlement Notice shall be considered the "Final Notice Date."

5. <u>Unauthorized Notice.</u> Neither Settlement Class Counsel, nor any person acting on behalf of Settlement Class Counsel, shall provide or publish any form of notice except as provided for herein without the prior written approval of Cablevision (which approval shall not be unreasonably withheld) other than any information provided to any Court in furtherance of this Settlement Agreement.

6. <u>Response to Queries.</u> Notwithstanding Paragraph 5 above, Settlement Class Counsel, or their designees, may respond to all inquiries from members of the Settlement Class, and, as counsel to the Settlement Class, provide advice to such members of the Settlement Class on any issue in this Action.

7. <u>Public Statements.</u> Plaintiff, Settlement Class Counsel, and Cablevision hereby agree not to initiate, nor respond to, any communications with the media or press, on the Internet, or in any public forum, orally or in writing, that relate to this Settlement or the Action, other than by statements that are fully consistent with the Settlement Notice. No press release or similar communication shall be issued. This does not preclude Settlement Class Counsel from communicating with Settlement Class Members as set forth in Paragraph 6 above. For the avoidance of doubt, this Paragraph does not preclude Settlement Class Counsel or Cablevision's counsel from providing information to the Court in furtherance of the implementation of this Settlement and Agreement.

8. <u>Opt-Out Procedure.</u> All potential members of the Settlement Class shall have forty-five (45) days after the Final Notice Date to submit requests for exclusion from the Settlement Class. The requests for exclusion must be prepared and submitted in the manner set forth in the Settlement Notice or Published Notice, as appropriate. Plaintiffs agree that they shall not elect or seek to opt out or exclude themselves from the Settlement Class.

**SETTLEMENT CONSIDERATION FOR SETTLEMENT CLASS MEMBERS**

9. <u>Class Benefit.</u> The settlement amount will be a series of in-kind benefits provided to Class Members (the "Class Benefit"), as follows:

   a. <u>Group A Class Members</u>: Each Group A Class Member shall receive the right to watch two standard or high definition library catalog movies for free (a retail value of $2.95 or $3.95 per movie, depending on the Class Member's movie selection) (each a "Qualifying Movie"). This right may be exercised for 60 days (the "60-Day Period"), with the 60-Day Period starting 30 days after the Court has issued a final approval of this Settlement (the "Final Approval Order") substantially in the

4

form of Exhibit D hereto. When a Group A Class Member watches a Qualifying Movie during the 60-Day Period, the Class Member's next Cablevision bill will reflect a charge for the movie and an equal and offsetting credit for the movie. Cablevision will notify Group A Class Members of their right to view the two movies through appropriate messaging in the regular bills of such Class members, beginning one month prior to the beginning of the 60-Day Period and for each of the two months of the 60-Day Period. The messaging will explain that the Group A Class Member will receive a charge and offsetting credit on his or her next monthly bill for each of the two eligible movies purchased during the 60-Day Period.

      b.      <u>Group B Class Members</u>: Each Group B Class Member shall receive one month of Cablevision's Service Protection, which as more fully described in the Cablevision/Optimum website covers subscribers from unexpected service fees, such as for a home visit related to wiring, jacks or connectors, at no charge (a retail value of $6.99), starting on the first day of the month following 30 days after the Final Approval Order. Cablevision will notify Group B Class Members of this benefit through appropriate messaging in the regular bills of such Class members prior to the beginning of the month of free Service Protection. Each Group B Class Member who already receives Service Protection shall receive a one-time credit for one month of Service Protection. Service Protection shall terminate for all Group B Class Members when the free month of Service Protection has been provided, unless the Group B Class Member was already a subscriber to Service Protection, or the Group B Class Member affirmatively elects to continue receiving Service Protection, in which case regular charges will apply.

      c.      <u>Group C Class Members:</u> Each Group C Class Member shall receive two Wi-Fi day passes at no charge (the "<u>Wi-Fi Day Pass</u>") (a retail value of $4.99 per Wi-Fi Day Pass), which may be used within a 120-day period starting 30 days after the Final Approval Order. Cablevision will provide the technical means for accessing the WiFi Day Passes (through activation codes, web-links, or similar means) directly to Group C Class Members via email, to the extent Cablevision has last-known email contact information for them. Cablevision will also provide a single round of publication notice of the Wi-Fi Day Pass Class Benefit in each of the following newspapers: New York Times, Newsday, Star-Ledger, Home News, New Haven Register, Stamford Advocate, and Gannett Journal News during the month prior to issuance of the WiFi Day Passes, and Cablevision will provide access through a website for Group C Class Members to claim their access to the Wi-Fi Day Pass by verifying their eligibility. The Wi-Fi Day Pass Class Benefit shall be freely transferable.

    10.    <u>Class Benefits Provided Automatically to Class Members.</u> The Class Benefits will be provided to Class Members, as set forth in Paragraph 9, without the need for a Class Member to submit a claim under the Settlement, or to pay any consideration to or make any purchases of any kind from Cablevision to obtain the Class Benefit.

5

11. <u>Reasonable Costs of Administering Class Benefit.</u>  In addition to the Class Benefit, Cablevision shall pay the reasonable costs of administering the Class Benefit set forth in Paragraph 9, as well as the reasonable costs related to class notice, as set forth in Paragraph 4.

## SETTLEMENT CLASS COUNSEL ATTORNEYS' FEES AND COSTS

12. <u>Fee Award Application.</u>  Settlement Class Counsel will petition the Court for attorneys' fees and the reimbursement of costs associated with the prosecution of the Action. Settlement Class Counsel agree not to seek from the Court an award of plaintiffs' attorneys' fees in excess of $4,750,000.00 and an award of plaintiffs' costs in excess of $264,479.64.  Cablevision shall not object to an award of fees and costs up to those foregoing amounts.  Plaintiffs shall also seek a service award of $1,500 for each named plaintiff in the Action, which amount shall be paid by Settlement Class Counsel solely out of the total amount of attorneys fees that is awarded in connection with the foregoing attorneys' fee application.  Plaintiffs expressly agree that in the event of an award of fees or costs in any amount greater than the amounts specified in this paragraph, respectively, they will not oppose a motion or appeal by Cablevision challenging any such award to the extent it exceeds those amounts.  The Parties and their respective counsel expressly agree that the terms of this Agreement are not conditioned upon any minimum attorneys' fees award.

13. <u>Payment of Fee Award.</u>  No later than the latest of:  (i) forty-five (45) days after the date of the entry of a "Final Approval Order" substantially in the form of Exhibit D hereto (as described further in para. 14.b. *infra*); (ii) forty-five (45) days after the resolution of any motion enumerated in Federal Rule of Appellate Procedure 4(a)(4)(A); or (iii) thirty (30) days after the full and final resolution of any appeal of the Final Approval Order, Cablevision will, provided the Final Approval Order has not been reversed or modified in any material respect as a result of any motion or appeal, pay the amount of fees and costs awarded by the Court to the law firm of Stone Bonner & Rocco LLP, as the designee of Settlement Class Counsel, which shall be solely responsible for distributing the fees and costs awarded by the Court among Settlement Class Counsel, as they agree among themselves.  Settlement Class Counsel shall have the sole authority to allocate the Court-awarded attorneys' fees amongst themselves and any other counsel who have appeared for any plaintiffs in this Action, in a manner which they, in good faith, believe reflects the contributions of such counsel to the prosecution and settlement of the Action. Cablevision and the other Released Parties shall have no responsibility for any payment of attorneys' fees and expenses to Settlement Class Counsel, or any other plaintiffs' counsel, over and above the amounts set forth in this Stipulation. Except for Cablevision's payment of Settlement Class Counsel's attorneys' fees and costs as referred to in Paragraph 12, Cablevision and Releasees (as defined in Paragraph 16) shall not be responsible to Plaintiffs, Settlement Class Counsel, or any member of the Settlement Class for any attorneys' fees, costs, or expenses associated with this Action.

## FINAL APPROVAL, DISMISSAL OF CLAIMS, AND RELEASES

14. <u>Action of Parties with Respect to Obtaining Preliminary and Final Approval for Settlement.</u> The Parties will take all necessary steps to obtain approval of this Settlement, including:

   a. Promptly after execution of this Agreement, Plaintiffs, through Settlement Class Counsel, will file a request that the Court enter an order in the form of Exhibit C preliminarily approving this Settlement (the "<u>Preliminary Approval Order</u>") and providing that the Published Notice be published and the Settlement Notice be mailed and transmitted via email in accordance with Paragraph 4 above.

   b. The Parties will jointly request that the Court set a schedule for final briefing, objections, replies to objections, and hearing on approval of the Settlement and Settlement Class Counsel's request for an award of attorneys' fees and costs, with a hearing date no fewer than fifteen (15) days after the final date for service of written objections to the proposed settlement set forth in the Settlement Notice. The Parties will jointly request that the Final Approval Order in the form of Exhibit D be entered at the final settlement approval hearing.

   c. Cablevision will provide written notice to the appropriate federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715, with such notice to be completed no more than ten (10) days after the filing of the motion for preliminary approval of the proposed settlement.

15. <u>Dismissal of the Action.</u> Upon entry of the Final Approval Order, Plaintiffs shall take all steps necessary to dismiss the Action with prejudice, including all claims asserted, or that could have been asserted, in the Action.

16. <u>Releases</u>.

   (a) Definitions:

   (i) "<u>Releasees</u>" shall mean Cablevision and its present or former agents, affiliates, parents, subsidiaries (including the directors and officers of such affiliates, parents, and subsidiaries), general partners, limited partners, partnerships, and their respective officers, directors, managing directors, employees, agents, insurers, attorneys, advisors, accountants, auditors, trustees, financial advisors, lenders, investment bankers, associates, representatives, heirs, executors, personal representatives, estates, administrators, successors, and assigns.

   (ii) "<u>Released Claims</u>" means any and all claims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets, or liabilities, including but not limited to claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, unjust enrichment, money had and received, bad faith, breach of statutory duties, actual or constructive fraud, misrepresentations, fraudulent inducement, statutory consumer fraud or protection violations, breach of fiduciary duty, unfair or deceptive business or trade practices

7

or acts, restitution, rescission, conversion, compensatory, statutory, or punitive damages, mental or emotional distress, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties, and any other claims, whether known or unknown, alleged or not alleged in the Action, suspected or unsuspected, contingent or matured, under federal, state, or local law, which Plaintiffs or any Settlement Class member had, now has, or may in the future have with respect to any conduct, act, representation, omission, fact, matter, transaction or oral or written statement or occurrence prior to the date of the entry of the Final Approval Order involving, based on, relating to, arising out of, or in any way connected with, directly or indirectly, the factual allegations in the consolidated amended class action complaint filed in this Action on February 22, 2011, including without limitation the non-carriage of the six Fox Channels for two weeks in October 2010, at any time from the beginning of such non-carriage in October 2010 through the date of the Final Approval Order.

(iii) "Released Claims Against Plaintiffs" means any and all claims, counterclaims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets, or liabilities, including but not limited to claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, unjust enrichment, money had and received, bad faith, breach of statutory duties, actual or constructive fraud, misrepresentations, fraudulent inducement, statutory consumer fraud or protection violations, breach of fiduciary duty, unfair or deceptive business or trade practices or acts, restitution, rescission, conversion, compensatory, statutory, or punitive damages, mental or emotional distress, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties, and any other claims, whether known or unknown, alleged or not alleged in the Action, suspected or unsuspected, contingent or matured, under federal, state, or local law, which Cablevision had, now has, or may in the future have with respect to any conduct, act, representation, omission, fact, matter, transaction or oral or written statement or occurrence prior to the date of entry of the Final Approval Order, involving, based on relating to, arising out of, or in any way connected with, directly or indirectly, the factual allegations in the consolidated amended class action complaint filed in this Action on February 22, 2011, including without limitation, the non-carriage of the six Fox Channels for two weeks in October 2010, at any time from the beginning of such non-carriage in October 2010 through the date of the Final Approval Order, except for claims relating to the enforcement of this Stipulation and the Settlement.

(b) *General Release By Plaintiffs*. Each Plaintiff expressly agrees that, upon entry of the Final Approval Order, he or she shall release the Releasees of and from all Released Claims and shall not now or hereafter initiate, maintain, or assert against the Releasees any Released Claims, that have been, could have been, may be, or could be alleged or asserted now or in the future by Plaintiff, either directly or as the representative of other persons or entities, against the Releasees or any of them in the Action or in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body on the basis of, connected with, arising out of or related to the Released Claims.

8

(c) *General Release by the Settlement Class Members*. Other than those individuals who elect to opt out pursuant to Paragraph 8, the Settlement Class members shall release by operation of law, upon entry of the Final Approval Order, the Releasees of and from all Released Claims and shall not now or hereafter initiate, maintain, or assert against the Releasees any Released Claims, that have been, could have been, may be, or could be alleged or asserted now or in the future by the Settlement Class members, either directly or as the representative of other persons or entities, against the Releasees or any of them in any court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body on the basis of, connected with, arising out of, or related to, the Released Claims.

(d) *General Release by Cablevision*. Cablevision, on behalf of itself and any and all of its predecessors, successors, principals, officers, directors, owners, assigns, agents, and attorneys, in their capacity as such, shall release and shall release by operation of law, upon entry of the Final Approval Order, Plaintiffs, their respective attorneys in the Action, and the members of the Settlement Class other than those who elect to opt out pursuant to Paragraph 8, of and from all Released Claims Against Plaintiffs, and shall not now or hereafter initiate, maintain, or assert against Plaintiffs or the members of the Settlement Class any Released Claims Against Plaintiffs, that have been, could have been, may be, or could be alleged or asserted now or in the future by Cablevision or the Releasees or any of them in any court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body on the basis of, connected with, arising out of, or related to, the Released Claims Against Plaintiffs.

(e) *Enforcement of Agreement*. Nothing in this Paragraph 16 shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed herein.

(f) *Release and Waiver of Unknown Claims*. Plaintiffs, the Settlement Class, Cablevision and the Releasees expressly acknowledge that they are familiar with principles of law such as Section 1542 of the Civil Code of the State of California, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

To the extent that, notwithstanding the choice of law provisions in the Agreement, California or other law may be applicable, Plaintiffs, the Settlement Class, Cablevision and the Releasees hereby expressly agree that the provisions, rights and benefits of Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein are hereby knowingly and voluntarily waived and relinquished to the fullest extent permitted by law solely in connection with unknown claims constituting Released Claims and Released Claims Against Plaintiffs, and Plaintiffs, the Settlement Class, Cablevision and the Releasees hereby agree and acknowledge that

this is an essential term of this Agreement. In connection with this Agreement, Plaintiffs, the Settlement Class, Cablevision and the Releasees acknowledge that they are aware that they may hereafter discover claims presently unknown or not suspected or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of the parties in executing this Agreement to fully, finally, and forever settle and release all Released Claims and Released Claims Against Plaintiffs which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action).

## **WITHDRAWAL FROM SETTLEMENT**

17.     <u>Withdrawal Due to Court Action.</u>  Within fifteen (15) days after the occurrence of any of the following events, and upon written notice to counsel for each Party, either Party shall have the right to withdraw from the Settlement:

   a. if the Court fails to approve the Agreement or if on appeal any order of the Court approving the Settlement is reversed or modified; or

   b. if the Court requires alteration of any of the material terms of the Agreement as a condition of Preliminary or Final Approval; or

   c. if the Preliminary Approval Order or the Final Approval Order is not entered by the Court, or is reversed or modified on appeal, or otherwise fails for any reason.

18.     <u>Withdrawal Due to Opt-Outs.</u>  If more than 5% of members of the Settlement Class timely submit a valid request for exclusion from the Settlement Class as set forth in Paragraph 8, or if any state, federal, or local governmental authority seeks to opt out of the Settlement on behalf of its residents, then Cablevision may, at its option, withdraw from this Agreement.

19.     <u>Effect of Withdrawal on Claims and Defenses.</u>  In the event that either Party withdraws from this Agreement pursuant to Paragraph 17 or 18, the Parties agree that they may assert any and all available defenses and claims in the Action and that no Party shall argue, that as a result of the Settlement, any other Party is barred from asserting those defenses or claims due to waiver, estoppel, or similar arguments as a result of the passage of time due to settlement negotiations or actions taken pursuant to this Agreement. In the event that Cablevision withdraws from this Agreement pursuant to Paragraph 17 or 18, all provisions, promises and undertakings by it in the Agreement shall thereby be rendered null and void and without any legal obligation or effect.

## **MISCELLANEOUS**

20.     <u>Responsibility for Certain Administrative Tasks.</u>  Settlement Class Counsel shall be responsible for administrative tasks related to any objections to, or exclusions from this Agreement, including: (i) providing to Cablevision copies of any and all objections, notices of intention to appear, and requests for exclusion from the Settlement Class; (ii) preparing a list of all persons who timely request exclusion from the Settlement Class (the "<u>Opt Out List</u>"); and (iii) preparing a list of all persons who submit objections to the Settlement.

10

21. <u>No Further Relief.</u>  Other than the relief granted in the Final Approval Order, the Parties shall take nothing on their claims, and all claims shall be deemed dismissed with prejudice, and except as provided in ¶¶ 12 and 13 herein, each Party shall bear its own costs.

22. <u>No Admission of Liability.</u>  Nothing contained in this Agreement shall be deemed or construed as an admission of any liability, or of any violation of any applicable law, rule, statute, regulation, order, understanding, agreement, or contract of any kind, whether alleged in the Action or otherwise.  Except in connection with the enforcement of this Agreement or to support a defense of res judicata, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense, neither this Agreement, nor any of its terms or exhibits, nor any of the negotiations or proceedings connected with it, nor any of the actions taken hereunder shall be offered as evidence or received in evidence in any pending or future action or proceeding of any type whatsoever to establish any liability or admission by any Party, or any element or matter contrary to a Party's interests.

23. <u>Consideration.</u>  The Parties acknowledge and agree that each is foregoing certain rights and assuming certain duties and obligations, which, but for this Agreement, would not have been foregone or assumed.  Accordingly, the Parties agree that this Agreement is fully and adequately supported by consideration and is fair and reasonable in all of its terms.

24. <u>Covenant Not to Sue.</u>  The Parties agree that neither Party shall in any manner challenge the validity, legality, adequacy, or enforceability of this Agreement.  The Parties agree not to sue or in any way assist or encourage any other person or entity in suing any Party named herein (including their officers, directors, managers, owners, shareholders, partners, members, employees, representatives, attorneys, agents, successors, affiliates, assigns, spouse, significant other, heirs or beneficiaries) with respect to any Released Claims.  This Agreement may be pleaded by a Party as a full and complete defense to any action, suit, claim, or other proceeding that may be threatened, instituted, prosecuted, or attempted in breach of the covenants contained herein.  Notwithstanding the foregoing, nothing contained in this Paragraph shall restrict any Party from enforcing the terms of this Agreement.

25. <u>Destruction of Confidential Material.</u>  Except to the extent that copies of such material reside on archival backup media, within one hundred and eighty (180) days of the date of payment of the attorneys' fees and costs awarded to Settlement Class Counsel, each Party, and any agent, consultant, vendor, or expert of such Party, shall destroy all copies of all materials provided by any other Party to this litigation or any third party that was designated "Confidential" or "Highly Confidential" pursuant to the Stipulated Confidentiality Agreement and Protective Order, entered by the Court on May 2, 2011 (the "<u>Protective Order</u>") (including, but not limited to, documents, interrogatory responses, deposition transcripts, pleadings, motion papers, and exhibits and any copies, abstracts, compilations, or summaries thereof) ("<u>Confidential Material</u>").  Each Party shall certify, within fourteen days of destruction, the destruction of such Confidential Material in writing to the other Party.  In the event that a Party is under a legal obligation to preserve Confidential Material, such Confidential Material shall be destroyed within thirty (30) days of that legal obligation ceasing to exist, and the Party under such a legal obligation shall certify within fifteen (15) days thereof the destruction of such Confidential Material in writing to the other Party.  Notwithstanding the foregoing, counsel to the Parties are entitled to retain archival copies of all pleadings, motion papers, transcripts, legal memoranda, correspondence, and attorney work

product, even if such materials contain Confidential Material.  For the avoidance of doubt, this Paragraph shall supersede the provisions of Paragraph 11 of the Protective Order, which Paragraph 11 shall have no further force or effect.

26. <u>Binding Agreement.</u>  Each Party understands that this Agreement is a legally binding agreement that may affect such Party's rights.  Each Party represents to the other Party that such Party: (i) has received legal advice from counsel of its choice regarding the meaning and legal significance of this Agreement and is satisfied with its legal counsel and the advice received from it; (ii) has the full authority and legal power to execute and enter into this Agreement; (iii) owns and has not assigned or transferred to any other person or entity any or all of such Party's rights and claims as are being released, altered, or otherwise affected by this Agreement; and (iv) has not relied upon any representation or statement that is not contained in this Agreement.

27. <u>Entire Agreement.</u>  This Agreement constitutes the entire agreement of the Parties regarding the subject matter of this Agreement.  All prior understandings, oral representations, or agreements made between the Parties relating to the subject matter herein are superseded by this Agreement and shall have no force or effect and shall not be admissible in any proceeding between the Parties, including any proceeding to enforce the terms of this Agreement.  There are no other agreements, express or implied, between the Parties regarding the subject matter of this Agreement.  This Agreement may only be modified by a writing signed by all Parties.

28. <u>Execution in Counterparts.</u>  This Agreement may be executed in any number of counterparts delivered via facsimile, electronically, or by any other means of transmission, each of which shall be deemed to be an original as against any Party whose signature appears thereon, and all of which shall together constitute one and the same instrument.

29. <u>Jurisdiction and Venue.</u>  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and the Parties hereto submit to the exclusive jurisdiction of the Court to resolve any and all disputes arising out of or relating to this Agreement. Each Party agrees that it will not commence any action, litigation, arbitration or proceeding in any way arising from or relating to this Agreement, the Action, or the Parties' relationship in any court or any other dispute resolution forum other than the Court.

30. <u>Notices.</u>  All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given: (i) when delivered personally to the recipient; (ii) one business day after being sent to the recipient by reputable overnight courier service (charges prepaid); or (iii) five business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Plaintiffs or to Plaintiffs' Counsel:

Todd J. Krouner
Law Office of Todd J. Krouner, P.C.
93 Greely Ave.
Chappaqua, NY 10514

If to Cablevision, then to both:

| Andrew M. Genser | General Counsel |
| Kirkland & Ellis LLP | Altice USA |
| 601 Lexington Avenue | 1111 Stewart Ave |
| New York, NY 10022 | Bethpage, NY 11714 |

Any Party hereto may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Party hereto notice in the manner herein set forth. A courtesy copy of any such notice shall also be given by email to the last known email address of Mr. Krouner or Mr. Genser, as appropriate.

      31. <u>Governing Law.</u> The Parties agree that all issues and questions concerning the construction, validity, enforcement, and interpretation of this Agreement, as well as any disputes (including but not limited to contract, tort, fraud, equity, or statutory claims) in any way arising from or related to this Agreement, the Action, or the Parties' relationship shall be governed by and construed in accordance with New York law, without giving effect to any choice of law or conflict of law rules of provisions that would cause the application of any law other than New York law.

      32. <u>No Waiver.</u> No waiver of any term or provision of this Agreement, or of any breach or default hereof or hereunder, shall be valid or effective unless in writing and signed by all Parties. No waiver of any term or provision of this Agreement, or of any breach or default hereof or hereunder, shall be construed as a waiver of the same or any other term or provision or of any previous or subsequent breach thereof.

      33. <u>Construction.</u> This Agreement shall be construed without regard to the identity of the person who drafted its various provisions; each and every provision of this Agreement shall be construed as though all Parties participated equally in the drafting of the same, and any rule of construction that a document is to be construed against the drafter shall not be applicable to this Agreement.

      34. <u>Amendment.</u> This Agreement may be modified or amended only by a writing signed by all Parties (or their successors-in-interest).

      35. <u>Severability.</u> This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes, including in the

Action, and as more fully described herein. If any provision of this Agreement shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner that would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

       36.     Authority to Execute Agreement. All Parties executing this Agreement warrant and represent that they have the right, legal capacity, power, and authority to enter into this Agreement and to perform their obligations hereunder, without the further consent, approval, or authorization of any person, board, entity, tribunal, or other regulatory or governmental authority.

       37.     Headings. The headings of the Paragraphs of this Agreement are for reference only and do not control the interpretation of any term or condition of this Agreement.

       38.     Implementation of Settlement. The Parties hereby agree that time is of the essence and to use their good faith reasonable efforts in carrying out all of the terms of this Agreement. Each of the Parties hereby agrees and authorizes its respective counsel to execute any additional documents and take any similar procedural actions which reasonably may be required in order to consummate this Agreement or otherwise to fulfill the intent of the Parties hereunder.

IN WITNESS WHEREOF, the Parties have read and understand the terms of this Agreement, agree to be bound by all of its provisions, and have executed this Agreement on the dates shown by their signatures below.

Dated:  June  27 , 2017

THE PLAINTIFFS BY SETTLEMENT CLASS COUNSEL

By: */s/ Todd J. Krouner*
Todd J. Krouner
Law Office of Todd J. Krouner, P.C.
93 Greeley Ave.
Chappaqua, NY 10514

By: */s/ Ralph M. Stone*
Ralph M. Stone
Stone Bonner & Rocco LLP
145 West 45th Street, Suite 701
New York, NY 10036

By: _____
Carol S. Shahmoon
CSS Legal Group PLLC
One Great Neck Road, Suite 7
Great Neck, NY 11021

16

**THE PLAINTIFFS BY SETTLEMENT CLASS COUNSEL**

By: _____
Todd J. Krouner
Law Office of Todd J. Krouner, P.C.
93 Greeley Ave.
Chappaqua, NY 10514

By: _____
Ralph M. Stone
Stone Bonner & Rocco LLP
145 West 45th Street, Suite 701
New York, NY 10036

By: _/s/ Carol S. Shahmoon_____
Carol S. Shahmoon
CSS Legal Group PLLC
One Great Neck Road, Suite 7
Great Neck, NY 11021

16

**CABLEVISION SYSTEMS CORPORATION and
CSC HOLDINGS, LLC**

By: _____

Dexter Goei, Chief Executive Officer

17