## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

```
---------------------------------------    Master File No.
In Re Cablevision Consumer Litigation      10-cv-4992(JS)(AKT)

---------------------------------------

This Documents Relates:                    ECF
All Actions                                Electronically Filed

---------------------------------------
```

## FIRST MEMORANDUM OF LAW ON BEHALF OF
## OBJECTORS BRIAN T. FOLEY, EDWARD W. WYNNE AND
## ARNOLD H. BELGRAIER

**Table Of Contents**

I. Preliminary Statement

II. Factual And Procedural Background

    A. Failure To Provide Pro-Rata Credit

    B. Damages Sought Are Measurable

III. This Non-Cash Settlement Should Not Be Approved

IV. The Proposed Settlement

    A. Benefits To Class Members

    B. Benefits To Class Representatives

    C. Benefits To Class Counsel

V. Objectors Request Limited Discovery

VI. Analyzing A Non-Cash Settlement

    A. Non-Cash Settlements Require Heightened Scrutiny

    B. Non-Cash Settlements May Be Appropriate

    C. Reasons For Allowing Non-Cash Settlements

    D. Redemption Rates Should Be Considered

    E. The Court Should Appoint Experts

    F. Redemption Tracking Should Be Considered

    G. Redemptions Should Equal Value Of Benefits

    H. Time Of Redemption Should Be Considered

    I. The Released Claims Provision Is Too Broad

VII. The Problem With Attorneys Fees

    A. Attorneys Fees Should Be Based On Claims Made Only

VIII. Conclusion

<u>Table Of Authorities</u>

**Cases**

Chavez v. Netflix, Inc., 162 Cal. App. 4th 43
(Cal. App. 2008)

Dollar v. General Motors Corp., No. 92-1089
(Tex. 71st Jud. Dist. Harrison Co. (11/3/1993),
rev'd sub nom. 881 S.W. 2d 422 (Tex. App. 1994),
aff'd on other grounds & remanded 916 S.W. 2d 949
(Tex. 1996)

Dunk v. Ford Motor Company, 48 Cal. App. 4th 1794 (1996)

Feldman v. Quick Quality Restaurants, Inc.,
New York Law Journal, July 22, 1983, p. 12
(N.Y. Sup.)

Gordon v. Boden, 586 N.E. 2d 461 (Ill. App. 1991)

Hypertouch, Inc. v. Perry Johnson, Inc., 2000 WL 449639 (Cal. App.
2009)

In re Auction Houses Antitrust Litigation, 2001 WL
170792 (S.D.N.Y. 2001)

In re Cablevision Consumer Litigation, No.
10-CV-4992(JS)(AKT)(E.D.N.Y.)(March 31, 2014)

In re Domestic Air Transportation Antitrust
Litigation, 144 F.R.D. 421 (N.D. Ga. 1992)

In re Massachusetts Smokeless Tobacco Litigation,
2008 WL 1923063 (Mass. Super. 2008)

In Re Montgomery County Real Estate Antitrust
Litigation, 1979-2 CCH  Trade Cas. 62,860
(D. Md. 1979)

In re Motorsports Merchandise Antitrust Litigation,

112 F. Supp. 2d 1329 (N.D. Ga. 2000)

In re Nestle Juice Products Litigation, No. 975610
(Cal. Super. Ct. San Francisco County. (8/18/1997)

In re Sony Corp. SXRD Rear Projection Television
Marketing, Sales Practices And Product Liability
Litigation, 2010 WL 3422722 (S.D.N.Y. 2010)

Kahn v. Bell Atlantic NYNEX Mobile, New York Law
Journal (6/4/1998), p. 20 (N.Y. Sup.)

Klein v. Robert's American Gourmet Food, Inc.,
29 A.D. 3d 61 (2d Dept. 2006)

Larson v. Sprint Corp., 2010 WL 234924 (D.N.J.
2010)

Matter of Mexico Money Transfer Litigation,
267 F. 3d 743 (7th Cir. 2001)

Milkman v. American Travelers Life Insurance Co.,
2002 WL 778272 (Pa. Com. Pl. 2002)

Moody v. Sears Roebuck and Co., 2008 WL 3021405
(N.C. Super. 2008)

National Association of Consumer Advocates,
Standards and Guideline for Litigating and Settling
Consumer Class Actions, 176 F.R.D. 375, 383-84 (1997)

Radosti v. Envision EMI, LLC, 717 F. 2d 37 (D.C. Cir.
2010)

Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241
(E.D. Pa. 2011)

Rivera-Pallte v. First Colony Life Insurance Co.,
173 P. 3d 765 (N.M. App. 2007)

Schwartz v. Dallas Cowboys Football Club, Ltd.,
157 F. Supp. 2d 561 (E.D. Pa. 2001)

Shaw v. Toshiba American Information Systems, Inc.,
91 G. Supp. 2d 942 (E.D. Texas 2000)

Sobel v. Hertz Corp., 2011 WL 2559565 (D. Nev. 2011)

Strong v. BellSouth, 173 F.R.D. 167, 172-173
(W.D. La. 1997), aff'd 137 F. 3d 844 (5th Cir. 1998)

West v. CarFax, Inc., 2009 WL 5064143 (Ohio App.
2009)

Wilson v. DirectBuy, Inc., 2011 WL 2050537
(D. Conn. 2011)


**Treatises**

Dickerson, Class Actions: The Law of 50 States,
Law Journal Press (2018), Section 9.03[1][c]


**Articles**

'Coupon Clutter Lowers Redemption', 14 Marketing Communications
42-43 (March 1989)

Dickerson, Designing a Coupon Settlement to
Maximize Its Value, New York Law Journal
(6/30/2017)

Gofton, 'Seeking Redemption', Marketing, at 25-26
(3/12/1992)

Weinstein 'The Love/Hate Dynamic: Coupons By Manufactures', 71
Progressive Grocer 117 (May 1992)

## SUMMARY OF OBJECTOR'S POSITIONS

In order to properly evaluate the Proposed Settlement and the Attorneys Fees and Costs Application the Objectors have submitted a Document Request. In the interim the Objectors' positions, inter alia, may be summarized as follows:

1. The Proposed Non-Cash Settlement Should Be Rejected And A Credit [plus interest from 2010] Posted To Each Class Members' Monthly Bill.

2. If A Non-Cash Settlement Is Considered Then Redemption Rates And Redemption Tracking Must Be Considered In Evaluating The Value Of The Settlement And Determining Attorneys Fees.

3. The Redemption Period Of 60 Days Is Too Short And Should Be Two Years.

4. Issuance Of Non-Cash Benefits Should Continue Until The Full Settlement Value Is Reached.

5. The Released Claims provision at para. 16(b) of the Settlement Agreement is too broad and should be limited to breach of contract claims and "remedies, including pro rata credits, because certain

broadcast stations and networks owned by Fox Cable Network Services were not distributed to customers during the period of October 16, 2010 to October 30, 2010".

6. Attorneys Fees Should Based Only On Claims Made Not On A Prediction Of The Value Of The Proposed Benefits And/Or A Predicted Redemption Rate Of The Benefits Offered But On The Actual Redemption Rate.

I. **Preliminary Statement**

This Memorandum of Law is submitted on behalf of Class Members and Objectors Brian T. Foley, Edward W. Wynne and Arnold H. Belgraier [the Objectors] in support of their request for limited discovery and to set forth an initial evaluation of the proposed class action settlement ["Proposed Settlement"} as set forth in the Class Action Notice ["Class Action Notice"] received in the mail by Objectors along with a Cablevision monthly bill on or about March 20, 2018 and as set forth in greater detail in the Class Action Settlement Agreement dated June 27, 2017 ["Settlement Agreement"], the Notice Of Unopposed Motion For Preliminary Approval Of Settlement And Approval Of Notice Plan dated July 6, 2017 ["Settlement Motion"], the Declaration Of Ralph M. Stone In Support Of Plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action Settlement And Approval Of Notice Plan dated July 6, 2017 ["Stone Declaration"], the Memorandum

of Law In Support of Plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action Settlement And Approval Of Notice Plan dated July 6, 2017 ["Settlement Memorandum"], the letter to Hon. A. Kathleen Tomlinson, U.S.M.J. from Ralph M. Stone dated March 6, 2018 ["Stone Letter"] and the Preliminary Approval Order of Hon. A. Kathleen Tomlinson, U.S.M.J. dated January 8, 2018 ["Preliminary Approval Order"].

## II. Factual And Procedural Background

As noted in In re Cablevision Consumer Litigation, No. 10-CV-4992(JS)(AKT)(EDNY March 31, 2014) "Cablevision provides, among other things, cable television services. During the time period at issue, Cablevision had approximately three million cable television subscribers in New York, New Jersey, Connecticut and Pennsylvania...Plaintiffs, who are residents of New York, New Jersey and Connecticut, were Cablevision customers".

### A. Failure To Provide Pro-Rata Credit

"Plaintiffs commenced this action on behalf of themselves and a putative class of the three million Cablevision customers, seeking contractual damages for Cablevision's failure to provide certain programing and networks owned by Fox Cable Network Services ('Fox')

during a two-week period from October 16, 2010 to October 30, 2010...Cablevision did not provide a credit to any of the subscribers for the two-week period that they were without the Fox Channels, nor did Cablevision provide alternative programming to replace the Fox Channels...As already noted, ***Plaintiffs claim that the Terms of Service obligated Cablevision to provide a uniform pro rata credit of monthly subscriber fees for the distribution of the Fox Channels because the Fox Channels were part of each subscriber's cable package at the time of the disruption***"[emphasis added].

### B. Damages Sought Are Measurable

"Cablevision finally argues that class certification is inappropriate because damages cannot be measured on a classwide basis (contending) that the proper measure of damages for the contract claim is expectation damages...The Court disagrees. Cablevision again misconstrues Plaintiff's theories of liability and damages. ***Here, Plaintiffs claim that Cablevision breached Paragraph 4 of the Terms of Service when it failed to offer its subscribers a uniform 'pro rata credit' of their monthly subscription fees for the two weeks in October 2010 when the Fox Channels were unavailable. The measure of damages for this alleged breach is straightforward: Cablevision subscribers would be entitled to a uniform 'pro rata' refund of that***

*portion of their monthly subscriber fees attributable to the absence of the Fox Channels...Here, if Plaintiffs establish their theory of liability, each putative class member will be entitled to a 'pro rata' credit of his or her monthly subscription fee. Calculating these damages would require a uniform mathematical calculation for each particular service package. The Court finds that this measure of damages is directly linked to Plaintiffs' theory of liability and is capable of measurement on a classwide basis"*

[emphasis added].

## III. The Non-Cash Settlement Should Not Be Approved

Stated, simply, the Objectors and the Class should receive, whether by a jury verdict or a settlement, what plaintiffs and Class Counsel sued for and what Cablevision is contractually obligated to provide all three million class members, i.e., a **"'pro rata' credit on his or her monthly statement"** [*which must include appropriate interest from October 2010]. Cablevision should be required to honor its contractual agreement and disgorge the monies it has withheld from the Class since 2010.*

## IV. The Proposed Settlement

**A. Benefits For The Class**

As set forth in the Class Action Notice "the Settlement will provide you with one of the following benefits depending upon your subscriber status: (1) if you are a current Cablevision video subscriber with access to Video on Demand, the right to watch two library catalog movies for free (which can be done within a 60-day period, starting 30 days after the Court has approved the settlement); (2) if you are a current Cablevision video subscriber with no access to Video on Demand, one free month of Cablevision's Service Protection, which will provide coverage to subscribers from unexpected service fees such as fees related to home visits related to wiring, jacks or connectors (which protection shall start on the first day of the month following 30 days after the Court has approved the settlement; (3) if you are a former subscriber of Cablevision, two Wi-Fi day passes for free (which can be used within a 120-day period, starting 30 days after the Court has approved the settlement and which are also freely transferable). Cablevision will also take certain steps to advise class members of their right to these benefits. Cablevision will provide these benefits to class members without the need for class members to submit a claim or pay any consideration or make any purchases of any kind from Cablevision"

**B. Benefits For Class Representatives**

As set forth in the Settlement Agreement at para. 12 [and not revealed in the Class Action Notice] "Plaintiffs shall also seek a service award of $1,500 for each named plaintiff in the Action, which amount shall be paid by Settlement Class Counsel solely out of the total amount of attorneys fees that is awarded in connection with the foregoing attorneys' fee application".

### C. Benefits For Class Counsel

As set forth in the Class Action Notice "The Court will also decide how much Cablevision will pay the plaintiffs' attorney. Cablevision has agreed not to object to an application by the plaintiffs' attorneys for up to $4.75 million in fees and up to $264,479.64 in expenses".

## V. Objectors Request Limited Discovery

In order to properly evaluate the Proposed Settlement the Objectors need discovery [See e.g., In re Domestic Air Transportation Antitrust Litigation, 144 F.R.D. 421 (N.D. Ga. 1992)(objectors to proposed settlement granted limited discovery)] and have submitted a First Request For Discovery seeking the production of the following documents:

1. The deposition transcripts and all marked exhibits of the three (3) experts identified in the Stone Declaration at para. 15 ["Further, the parties engaged several experts in this action and Plaintiffs and Cablevision deposed each other's experts for a total of three expert depositions"].

2. All documents created by and/or obtained by Class Counsel which refer or relate to determining the monetary value of the Fox Cable channels which Cablevision did not deliver during the period October 16, 2010 to October 30, 2010 and whether and to what extent that a monetary value may be assigned to those undelivered services and transformed into "a uniform pro rata credit of monthly subscriber fees for the disruption of the Fox Channels because the Fox Channels were part of each subscriber's cable package at the time of the disruption".

3. All documents relating to the Fees and Costs Application of Class Counsel.

**VI. Analyzing A Non-Cash Settlement**

**A. Non-Cash Settlements Require Heightened Evaluation**

Non-cash settlements require heightened evaluation [See e.g., In re Massachusetts Smokeless Tobacco Litigation, 2008 WL 1923063

(Mass. Super. 2008)("Various federal courts and legal commentators have recognized that coupon settlements pose special issues that require courts to use greater care in evaluating such settlements")]; Moody v. Sears Roebuck and Co., 2008 WL 3021405 (N.C. Super. 2008)("this Court concludes that it also is entitled to receive a copy of the final accounting of the distribution to the class...The lack of transparency concerning class action distribution rates is troubling...On what basis are judges approving settlements and awarding fees without knowing the most likely results of their orders?"); Milkman v. American Travelers Life Insurance Co., 2002 WL 778272 (Pa. Com. Pl. 2002)("However, a number of criticisms have been leveled against class action settlements that require class members to make additional purchases from a defendant to take advantage of the settlement ...In response the National Association of Consumer Advocates has proposed the following guidelines when addressing certificate settlements...A few basic positions are clear...(2) Certificates should have some form of guaranteed cash value...(3) Certificate settlements should never be proposed to the court unless it is apparent that the defendant is providing greater true value (i.e., not just the face value of the certificates or their potential value) to class members than would be available from an all cash settlement...(4) A settlement involving certificates should require a minimum level of redemption by the class members within a reasonable period of time...(5) Class counsel and defendants should submit to

the court and all counsel of record detailed information about redemption rates and coupon transfer during the entire life of the coupon...National Association of Consumer Advocates, Standards and Guideline for Litigating and Settling Consumer Class Actions, 176 F.R.D. 375, 383-84 (1997)")] by the Court for adequacy since such settlements are generally worth less to consumers than cash and may benefit the defendant [See e.g., Wilson v. DirectBuy, Inc., 2011 WL 2050537 (D. Conn. 2011) (settlement disapproved)] and class attorney's more than they benefit class members [See e.g., Strong v. BellSouth, 173 F.R.D. 167, 172-173 (W.D. La. 1997), aff'd 137 F. 3d 844 (5th Cir. 1998) (settlement approved; fee application denied; "In this case...When it comes to approval of attorneys fees...the Court is the gatekeeper. Counsel would ask this court to believe that the benefits to the class in the case exceeded $64 million...Now that the settlement claim forms have been returned by the class members, it is clear that the $64 million is a phantom...A request for $6 million in attorney's fees where counsel has provided no more than $2 million in benefits to the class is astonishing"); Kahn v. Bell Atlantic NYNEX Mobile, New York Law Journal (6/4/1998), p. 20 (N.Y. Sup.)(rejected settlement agreement provides "free air time" to some class members and $225,000 in legal fees and costs..."it appears that the Settlement Agreement benefits the attorneys far more than the plaintiffs and Class Members")].

**B. Non-Cash Settlements May Be Appropriate**

There are occasions [see Dickerson, Class Actions: The Law of 50 States, Law Journal Press (2018), Section 9.03[1][c]; Dickerson, Designing a Coupon Settlement to Maximize Its Value, New York Law Journal (6/30/2017)] when it may be appropriate for the Courts to approve a non-cash settlement which provides for the distribution of product [See e.g., Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561 (E.D. Pa. 2001)(rejected settlement provided for 'an additional weekly satellite television package which allows consumers to purchase all NFL regular season Sunday afternoon games for any one Sunday"); Chavez v. Netflix, Inc., 162 Cal. App. 4th 43 (Cal. App. 2008) ("Netflix agreed to settle the class action by providing one month of free DVD rental services or upgrades"; settlement approved)], or coupons, certificates, vouchers [See e.g., Klein v. Robert's American Gourmet Food, Inc., 29 A.D. 3d 61 (2d Dept. 2006)("The settlement...required Robert to issue and redeem a total of $3.5 million in discount coupons or the purchase of Robert's snack food products"; reversed & remanded)], extension of warranties [See e.g., In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices And Product Liability Litigation, 2010 WL 3422722 (S.D.N.Y. 2010)(settlement approved)], waiver of activation fee [See e.g., Larson v. Sprint Corp., 2010 WL 234924 (D.N.J. 2010)(settlement approved)], script or gift cards [See e.g., Reibstein v. Rite Aid

Corp., 761 F. Supp. 2d 241 (E.D. Pa. 2011)(settlement approved), that either provide discounts, or can be exchanged for specific goods and services, usually those manufactured or provided by the defendant [See e.g., Radosti v. Envision EMI, LLC, 717 F. 2d 37 (D.C. Cir. 2010)(educational tour programs; settlement approved)]".

## C. Reasons For Allowing Non-Cash Settlements

The reasons for allowing such non-cash settlements include recovery of de minimus damages which would make the cost of distribution of each individual's cash award higher than that individual's claim [See e.g., Gordon v. Boden, 586 N.E. 2d 461 (Ill. App. 1991)(adulterated orange juice; certification granted; fluid recovery approved)] and/or the inability to identify class members [See e.g., Feldman v. Quick Quality Restaurants, Inc., New York Law Journal, July 22, 1983, p. 12 (N.Y. Sup.)(settlement of fast food overcharging class action provided for distribution of $.50 coupons to next best class of customers who purchased a fast food products)]. Another reason that may be acceptable to a court is the defendant's inability to afford to pay a cash recovery to the class. In this instance, as a threshold issue, the court should require that the defendant affirmatively establish its financial inability to pay cash. Without such a showing, a non-cash settlement on the grounds of 'poverty' should not be approved [See e.g., Klein v. Robert's

American Gourmet Food, Inc., 28 A.D. 3d 62 (2d Dept. 2006)("Also relevant to the reasonableness analysis is the cost of the settlement to the defendants. In this regard, we note that there is scant evidence in the record regarding Robert's financial condition, profit margins or the anticipated impact of the distribution on Robert's future performance"); In Re Montgomery County Real Estate Antitrust Litigation, 1979-2 C.H. Trade Cas. 62,860 (D. Md. 1979)(defendants affirmatively demonstrated their inability to pay cash)].

**D. Redemption Rates Must Be Considered**

The most attractive feature for defendants of a non-cash benefits settlement is that, for a variety of reasons, not all of the proposed benefits will be accepted and utilized by the class. In coupon and certificate settlements not all of the settlement coupons or certificates will be redeemed by class members. For example, at one point it was reported that the average national redemption rate for food and beverage coupons, was consistently between 2% and 6% [See e.g., Weinstein 'The Love/Hate Dynamic: Coupons By Manufactures', 71 Progressive Grocer 117 (May 1992); Gofton, 'Seeking Redemption', Marketing, at 25-26 (3/12/1992) (annual survey finding 5.56% redemption rate); 'Coupon Clutter Lowers Redemption', 14 Marketing Communications 42-43 (March 1989)(3.6% redemption rate)].

**E. The Court Should Appoint Experts**

In evaluating the merit of a proposed non-cash benefits settlement the Court should consider the estimated redemption rate [See e.g., Sobel v. Hertz Corp., 2011 WL 2559565 (D. Nev. 2011)(settlement disapproved; "the court has been presented with no evidence whatsoever as to what those redemption rates might actually be"); Rivera-Pallte v. First Colony Life Insurance Co., 173 P. 3d 765 (N.M. App. 2007)("the district court should have considered the possibility that the actual recovery might have been much less...nothing in the record suggests what the actual claims rate might be"); West v. CarFax, Inc., 2009 WL 5064143 (Ohio App. 2009)("We agree that some survey of the claims made and projected redemption rate of the vouchers would help determine if this settlement has value"); Dollar v. General Motors Corp., No. 92-1089 (Tex. 71st Jud. Dist. Harrison Co. (11/3/1993)($1,000 coupon settlement approved), rev'd sub nom. 881 S.W. 2d 422 (Tex. App. 1994(settlement disapproved because the coupon redemption rate would be 10% to 46%), aff'd on other grounds & remanded 916 S.W. 2d 949 (Tex. 1996)]. The Court should require the proponents of a non-cash benefit settlement to prove its value both before and after issuance of benefits. At the very least, the court should appoint experts to advise on the actual value of non-cash benefits including the projected and actual redemption rate [See e.g., In re Auction Houses Antitrust Litigation, 2001 WL 170792

(S.D.N.Y. 2001)($512 million settlement in either cash or 'discount certificates usable to reduce seller's commissions and certain other consignment related charges at auctions'; court appointed experts assessed value of certificates)].

## F. Redemption Tracking Must Be Considered

The Court should require plaintiffs to make a report on how many class members actually accept and utilize the benefits offered by defendant Cablevision [See Klein v. Robert's American Gourmet Food, Inc., 28 A.D. 3d 63 (2d Dept. 2005)(non-cash settlement proposal included promise to keep issuing food product coupons until $3.5 worth were redeemed with coupon tracking every six months); Moody v. Sears Roebuck and Co., 2008 WL 3021495 (N.C. Super. 2008)]. This is, particularly, important in evaluating the application for attorneys fees and costs by Class counsel.

## G. Redemptions Should Equal Benefits Value

Once it is determined what the actual value of the proposed non cash benefits is, the defendant should be required to keep open the redemption period and keep issuing and providing benefits until the total value of the redemptions equal the projected benefits value [See Klein v. Robert's American Gourmet Food, Inc., 28 A.D. 3d 63 (2d Dept.

2005)(non-cash settlement proposal included promise to keep issuing food product coupons until $3.5 worth were redeemed with coupon tracking every six months); Feldman v. Quick Quality Restaurants, Inc., New York Law Journal, July 22, 1983, p. 12 (N.Y. Sup.) (settlement of fast food overcharging class action provided for distribution of $.50 coupons to next best class of customers who purchased a fast food product; defendant required to keep issuing coupons until value of redemptions equaled the monetary value of the settlement); In re Motorsports Merchandise Antitrust Litigation, 112 F. Supp. 2d 1329 (N.D. Ga. 2000)(merchandise discount coupons; "Defendants' settlement obligation are not discharged until 93.7% of the coupons are redeemed"].

**H. Time Of Redemption**

The proposed settlement herein imposes an extremely short redemption period of 60 days. The time of redemption is an important factor in measuring the actual value of coupons or certificates and should be, at least, two to three years [See e.g., In re Auction Houses Antitrust Litigation, 2001 WL 170792 (S.D.N.Y. 2001)(certificates redeemable within five years and may be converted into cash within four years); Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561 (E.D. Pa. 2001) (coupons expire within three months of issuance; settlement rejected); Shaw v. Toshiba American Information

Systems, Inc., 91 G. Supp. 2d 942 (E.D. Texas 2000)(one year redemption period); Matter of Mexico Money Transfer Litigation, 267 F. 3d 743 (7th Cir. 2001)("coupons...can be used throughout a 35-month period"); Radosti v. Envision EMI, LLC, 717 F. Supp. 2d 37 (D.C.D.C. 2010) (seven years to redeem); Hypertouch, Inc. v. Perry Johnson, Inc., 2000 WL 449639 (Cal. App. 2009)(voucher valid for two years); In re South Dakota Microsoft Antitrust Litigation 707 N.W. 2d 85 (S.D. Sup. 2005)(vouchers redeemable for four years)].

I. The "Released Claims" provision at para. 16(a)(ii) of the Settlement Agreement is too broad ["means any and all claims... but not limited to claims for breach of contract...and any other claims, whether known or unknown, alleged or not alleged in the Action, suspected or unsuspected...which Plaintiffs or any Settlement Class member had, now has, or may in the future have with respect to any conduct...prior to the date of the Final Approval Order". The Released Claims should only be those based on breach of contract and "remedies, including pro rata credits, because certain broadcast stations and networks owned by Fox Cable Network Services were not distributed to customers during the period of October 16, 2010 to October 30, 2010".

**VII. The Problem of Attorneys Fees**

Non-cash benefits settlements must be carefully reviewed by the courts, not the least reason being that there is the problem of determining recoverable attorneys fees. Certainly, fee awards should not be based on a percentage of an estimated settlement value which itself is based upon an estimated redemption rate [See e.g., Dunk v. Ford Motor Company, 48 Cal. App. 4th 1794 (1996)(fee application of $985,000 based upon a percentage of an estimated value of redeemed coupons of $26 million rejected; percentage method of awarding fees should only be used when common value is certain or an easily calculable sum of money)].

**A. Attorneys Fees Should Be Based On Claims Made**

Attorneys fees in such cases should be based upon a percentage of actual claims made [See e.g., In re Compact Disc Minimum Advertised Price Antitrust Litigation, 2003 WL 22862013 (D. Me. 2003) modifying 216 F.R.D. 197 (D. Me. 2003)("I can effectively gauge appropriate attorney fees only if I know the total value of the settlement. But although I am satisfied that the coupon settlement had value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value. Therefore, I have determined to delay award of attorney's fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is"].

## VIII. Conclusion

After receiving and analyzing requested discovery and after reviewing the parties' further submissions in support of the proposed settlements the Objectors herein will submit additional Memoranda.

Dated: March 30, 2018

Respectfully Submitted,

Law Office Of Thomas A. Dickerson

By:_____/s/_____
Thomas A. Dickerson
(judgetad@aol.com)
81 Main Street
Suite 306
White Plains, NY 10601
Cell: 914 704 0408

**ALL RESPONSES MUST BE IN PDF FORMAT AND SENT TO judgetad@aol.com**

mail to: rspolzino@sbjlaw.com