# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **In re Cablevision Consumer Litigation** | Master File No. |
| | 10-cv-4992 (JS) (AKT) |
| ------------------------------------------------------- | |
| This Document Relates to:<br>All Actions | ECF CASE |
| | Electronically Filed |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE PAYMENTS TO CLASS REPRESENTATIVES

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**……………………………………………………………………1

**ARGUMENT**………………………………………………………………………1

**POINT I**

**PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES
SHOULD BE APPROVED** ……………………………………………………..1

    **A. The Proposed Settlement Is Fairly Valued At $28.4 Million, Which Is
    B. An Excellent Result** ………………………………………………………...2

    **C. Class Counsel Fees Are Reasonable Under The Percentage Of Recovery
    Approach** …………………………………………………………………….5

    **D. Class Counsel Fees Are Reasonable Under The Lodestar Approach**………………..7

        1. The total lodestar, hours and rates reflected in the time detail are fair, appropriate,
        and consistent with the advanced stage of the case …………………………...……..7

        2. The lodestar multiplier further favors approval of attorneys' fees…………………....9

    **E. The <u>Goldberger</u> Factors Support Approval Of Requested Attorneys' Fees** ……….10

        1. Class Counsel expended extensive time and resources on behalf of Plaintiffs and
        the class ……………………………………………………………………….11

        2. The magnitude and complexity of the litigation supports Plaintiffs'
        Counsel's fee request…………………………………………………………..12

            a. The magnitude and complexity of this litigation is reflected in its lengthy
            and exhaustive procedural history …………………….…...…………………13

            b. The magnitude and complexity of this litigation is reflected in the
            unresolved questions of liability and damages ………………...…………….15

        3. The risks of litigation factor favors approval of the requested
        attorneys' fees ………………………………………………………………….16

            a. Class Counsel undertook considerable risk in taking the case on a
            contingent fee basis …………………………………….…..………………16

            b. Risks of establishing liability were substantial ………………………………18

      c.   Risks of establishing the appropriate remedy were substantial …………….....19

    4.   Class Counsel provided high quality representation ……………………….........20

    5.   The requested fees are reasonable in relation to the settlement …………………21

    6.   Public policy considerations support the award of the requested fees …………….22

**POINT II**

**PLAINTIFFS' APPLICATION FOR LITIGATION EXPENSES SHOULD BE APPROVED**………………………………………………………………………….23

**POINT III**

**SERVICE PAYMENTS TO EACH OF CLASS REPRESENTATIVES SHOULD BE APPROVED**………………………………………………………………………….24

**CONCLUSION** ………………………………………………………………...26

# **TABLE OF AUTHORITIES**

## **Cases**

Anixter v. Home-Stake Prod. Co., 77 F.3d 1215 (10th Cir. 1996)

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany,
522 F.3d 182 (2d Cir. 2007)……………………………………………………………………8

Beckman v. KeyBank, N.A., 293 F.R.D. 467 (S.D.N.Y. 2013) ………………………...…………12

Bell Atlantic Corp. v. Bolger, 2 F.3d 1304 (3d Cir. 1993) ………………………………………1

Bentley v. Legent Corp., 849 F. Supp. 429 (E.D. Va. 1994) ……………………………………18

City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)………………………………7, 11

City of Providence v. Aeropostale, Inc., 2014 WL 1883494 (S.D.N.Y. 2014) …………………19

Davis v. J.P. Morgan Chase & Co., 827 F.Supp.2d 172 (W.D.N.Y. 2011) …………………6, 22

deMunecas v. Bold Food, LLC, 2010 WL 3322580 (S.D.N.Y. 2010) ………………………… 23

Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326 (1980) …………………...2,23

Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y. 1968) …………………………………..………2

Dupler v. Costco Wholesale Corp., 705 F.Supp.2d 231 (E.D.N.Y. 2010) …………………….…5

Gilliam v. Addicts Rehab. Ctr. Fund, 2008 WL 782596 (S.D.N.Y. 2008) ……………………..22

Goldberger v. Integrated Research, Inc., 209 F.3d 43 (2d Cir. 2000) …………..…….. 2, 7, 11, 13

Eltman v. Grandma Lee's, Inc., 1986 WL 53400 (E.D.N.Y. 1986) ……………………………23

Hall v. Cole, 412 U.S. 1 (1973) …………………………………………………………..1

Hensley v. Eckerhart, 461 U.S. 424 (1983) …………………………………………………20

Hicks v. Stanley, 2005 WL 2757792 (S.D.N.Y. 2005) …………………………………………..6

In re Am. Bank Note Holographics, Inc. Sec. Litig,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)……………………………………………………...…17

In re Apple Computer Sec. Litig., 1991 WL 238298 (N.D. Cal. 1991) …………………………18

In re Cont'l Illinois Sec. Litig., 962 F.2d 566 (7th Cir. 1992) …………………………………9

In re EVCI Career Colleges Holding Corp. Sec. Litig., 2007 WL 2230177 (S.D.N.Y. 2007)…..24

In re Flag Telecom Holdings Ltd. Sec. Litig., 2010 WL 4537550 (S.D.N.Y. 2010) …………...19

In re Gilat Satellite Networks, Ltd., 2007 WL 2743675 (E.D.N.Y. 2007) ………..…………..…22

In re Global Crossing Sec, 225 F.R.D. 436 (S.D.N.Y. 2004) ………………………………..…20

In re Indep. Energy Holdings PLC Sec. Litig., 2003 WL 22244676 (S.D.N.Y. 2003) ………...22

In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ……………..……10

In re JDS Uniphase Corp. Sec. Litig., 2007 WL 4788556 (N.D. Cal. 2007) ……………………18

In re Marsh ERISA Litig., 265 F.R.D. 128 (S.D.N.Y. 2010) ……………………………...………10

In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ……………………1

In re Motorsports Merch. Antitrust Litig., 112 F. Supp. 2d 1329 (N.D. Ga. 2000)………...……18

In re Nassau County Strip Search Cases, 12 F.Supp.3d 485 (E.D.N.Y. 2014)……………………9

In re Payment Card Interchange Fee Litig., 991 F.Supp.2d 437 (E.D.N.Y. 2014)………………..6

In re Prudential Sec. Inc. Ltd. P'ship Litig., 912 F. Supp. 97 (S.D.N.Y. 1996)…………...…13, 17

In re Sumitomo Copper Litig., 74 F.Supp.2d 393 (S.D.N.Y. 1999)……………………………..23

In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ………………………………9

In re Twinlab Corp. Securities Litigation, 187 F. Supp. 2d 80 (E.D.N.Y. 2013) ……...………2, 7

In re Veeco Instruments Inc. Sec. Litig., 2007 WL 4115808 (S.D.N.Y. 2007) …………………10

In re Warner Commc'ns. Sec. Litig., 618 F. Supp. 735 (S.D.N.Y. 1985) ………………………21

Kirchoff v. Flynn, 786 F.2d 320 (7th Cir. 1986) ……………………………………………20

Landy v. Amsterdam, 815 F.2d 925 (3d Cir. 1987) ………………………………………..……18

Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.,
487 F.2d 161 (3d Cir. 1973)……………………………………………………………………9

Maher v. Zapata Corp., 714 F.2d 436 (5th Cir. 1983)……………..………………………..1

Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358 (S.D.N.Y. 2002)………10, 20, 22

Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423 (S.D.N.Y. 2007)……………...……22

McDaniel v. Cty. Of Schenectady, 595 F.3d 411 (2d Cir. 2010)…………………….……….....5

McMahon v. Olivier Cheng Catering and Events, LLC, 2010 WL 2399328 (S.D.N.Y. 2010)…12

Meredith Corp. v. SESAC, LLC, 87 F.Supp.3d 650 (S.D.N.Y. 2015) …………………………24

Millea v. Metro–North R. Co., 658 F.3d 154 (2d Cir. 2011) ……………………………………..8

Mills v. Elec. Auto-Lite Co., 296 U.S. 375 (1970)……………………………………………..1

Missouri v. Jenkins by Agyei, 491 U.S. 274 (1989)……………………………………………9

Mohney v. Shelly's Prime Steak, 2009 WL 5851465 (S.D.N.Y. 2009) …………………………6

New York State Ass'n for Retarded Children, Inc. v. Carey,
711 F.2d 1136 (2d Cir. 1983)……………………………………………………………...9

In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129 (2d Cir. 2008) …………………………10

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) ………………………………………23

Prandini v. Nat'l Tea Co., 557 F.2d 1015 (3d Cir. 1977) ………………………………………20

Reiter v. MTA New York City Transit Auth., 457 F.3d 224 (2d Cir. 2006) …………………….9

Robbins v. Koger Props., Inc., 116 F.3d 1441 (11th Cir. 1997)…………………………………18

Roberts v. Texaco, Inc., 979 F. Supp. 185 (S.D.N.Y. 1997) …………………………………25

Stefaniak v. HSBC Bank USA, 2008 WL 7630102 (W.D.N.Y. 2008) …………………………..6

Skelton v. General Motors Corp., 860 F.2d 250 (7th Cir. 1988) ………………………………9

Spicer v. Pier Sixty LLC, 2012 WL 4364503 (S.D.N.Y. 2012) ………...……………………22

Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F.Supp.2d 254 (S.D.N.Y. 2003)……6

Taft v. Ackermans, 2007 WL 414493 (S.D.N.Y. 2007)…………………………………………20

Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd., 2004 WL 1087261 (S.D.N.Y. 2004)………..……18

Toure v. Amerigroup Corp., 2012 WL 3240461 (E.D.N.Y. 2012)………………………………6

Wal–Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96 (2d Cir. 2005)…………………………….5

Warren v. Xerox Corp., 2008 WL 4371367 (E.D.N.Y. 2008)…………………………................6

Westerfield v. Wash. Mut. Bank, 2009 WL 5841129 (E.D.N.Y. 2009)……………………6, 22

Willix v. Healthfirst, Inc., 2011 WL 754862 (E.D.N.Y. 2011) …………………………….…6

# INTRODUCTION

In the interest of brevity, the factual and procedural background is incorporated by reference from the accompanying Memorandum Of Law In Support Of Plaintiffs' Motion For Final Approval Of Class Action Settlement ("Settlement Memorandum"), pp. 1-11. The defined terms used herein are the same as defined in the Settlement Memorandum.

# ARGUMENT

## POINT I
## PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES SHOULD BE APPROVED

Plaintiffs' Counsel requests an award of attorneys' fees in the amount of $4.75 million. This amount is reasonable in light of the substantial benefit achieved for the Class and the effort, provided entirely on a contingent basis, required to achieve it.

An award of attorneys' fees is appropriate where plaintiff's successful litigation confers a substantial benefit on members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them. Hall v. Cole, 412 U.S. 1, 5 (1973).  Even where the relief accorded is non-monetary, a cash award of attorneys' fees is appropriate. In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1033 (N.D. Ill. 2000). See also Mills v. Elec. Auto-Lite Co., 296 U.S. 375, 393-394 (1970) (attorneys' fee award may be made where plaintiffs have conferred "a substantial benefit on the members of an ascertainable class"); Bell Atlantic Corp. v. Bolger, 2 F.3d 1304 (3d Cir. 1993) (granting attorneys' fees in exchange for nonpecuniary relief); Maher v. Zapata Corp., 714 F.2d 436, 466 (5th Cir. 1983) (same).

Awards of attorneys' fees serve the dual purpose of encouraging representatives to seek redress for damages caused to an entire class of persons as well as discouraging future

misconduct of a similar nature. <u>Dolgow v. Anderson</u>, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968).

As the Supreme Court has observed:

> [T]he financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the "private attorney general" for the vindication of legal rights; obviously this development has been facilitated by Rule 23.... Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they employ the class-action device.

<u>Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper</u>, 445 U.S. 326, 338-39 (1980).

District courts apply two complementary approaches in awarding reasonable attorneys' fees in common fund cases: the percentage of the fund approach and the lodestar approach.

<u>Goldberger v. Integrated Research, Inc.</u>, 209 F.3d 43, 50 (2d Cir. 2000) (holding that both the lodestar and the percentage of the fund methods are permitted). Under the percentage of the fund method, the district court awards a percentage of the fund created by the attorneys' efforts as their reasonable attorneys' fee. <u>Id.</u> Under the lodestar approach, courts multiply the hours that the attorneys expended by the attorneys' normal hourly rate to create a lodestar figure. <u>Id.</u> The court often adjusts this lodestar figure upward through the use of a multiplier to account for the contingent nature of the case, the quality of work performed, the success achieved, the time value of money, and other factors. <u>See</u> <u>In Re Twinlab Corp. Securities Litigation</u>, 187 F. Supp. 2d 80, 84-85 (E.D.N.Y. 2013) ("Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors such as the risk of the litigation and the performance of the attorneys and the result accomplished."). Here, the requested fee is reasonable whether viewed from a percentage of the recovery or lodestar analysis.

2

**A.      The Proposed Settlement Is Fairly Valued At $28.4 Million, Which Is An Excellent Result**

The consideration to be received by Class members in connection with the Settlement depends on the status of the Class member as of the time when the Settlement consideration is to be distributed to the Class member.  To ensure that all Class members receive a meaningful benefit, the Class has been divided into three Subclasses for purposes of distributing the Settlement consideration.  The Settlement Subclasses benefit to be given to the Class member will depend on whether the Class member, as of 60 days after final approval of the Settlement, is (1) a current Cablevision video -subscriber with access to Cablevision's Video on Demand ("Group A"); (2) is a current subscriber who does not subscribe to video services that provide access to Video on Demand ("Group B"); (3) or a former video subscriber who now receives Internet service from Cablevision ("Group C").  Each member of the Settlement Class will fall into one of the Settlement Subclasses.  In the process of negotiating the settlement in 2017, Plaintiffs were advised by Cablevision that these three groups had the following approximate number of Class members in them:

| | |
|---|---|
| Group A | 1,400,000 |
| Group B | 60,000 |
| Group C | 1,700,000 |

The Settlement does not involve vouchers, coupons, or any other claiming device; instead the benefits will be provided automatically to all Class members.  The Settlement Agreement requires Cablevision to undertake a messaging campaign tailored to each Subclass to ensure that members of each Subclass are aware of the settlement benefits made available to them.  Group A Class Members will be notified by Cablevision of their right to view the two movies through appropriate messaging in the regular bills of such Class members, beginning at least one month

prior to the beginning of the 60-day period during which the free movies are available. The messaging will explain that the Group A Class Member will receive a charge and offsetting credit on his or her next monthly bill for each of the two eligible movies selected by the Class member. Settlement at ¶ 9(a).

Similarly, Cablevision will notify Group B Class Members of the Service Protection benefit through messaging in regular bills prior to the beginning of the month of free Service Protection.  Each Group B Class Member who already receives Service Protection shall receive a one-time credit for one month of Service Protection. When the month of free service is complete, the services being delivered to those who were not already subscribers to it shall terminate, subject to the ability of that subscriber to elect affirmatively to continue it (subject to Cablevision's usual charges).  Settlement at ¶ 9(b).

Cablevision will provide the technical means for accessing the WiFi Day Passes (through activation codes, web-links, or similar means) via email to the Group C Class Member's last-known email contact information.  In addition, Cablevision is required to provide publication notice of the Wi-Fi Day Pass benefit in the New York Times, Newsday, Star-Ledger, Home News, New Haven Register, Stamford Advocate, and Gannett Journal News during the one month prior to issuance of the Wi-Fi Day Passes.  Also, access to the Wi-Fi Day Passes will be available through Cablevision's website for Group Class C Members upon verifying their eligibility.  Settlement at ¶ 9(c).

One Class member who emailed Class Counsel to indicate he wants to participate in the Settlement also indicated that he would have preferred cash in lieu of the WiFi passes.  However, the applicable Terms of Service upon which the claims were based does not require Cablevision to provide cash for an interruption, but only "alternative programming" or a "credit."

The retail value of the relief being afforded to the Class members in Group A is $11,060,000.  The retail value of the relief being afforded to the Class members in Group B is $419,400. The retail value of the relief being afforded to the Class members in Group C is $16,966,000. Therefore, the aggregate Settlement consideration is reasonably valued at approximately $28.5 million.  This figure also does not include the nearly eight years' worth of plaintiffs' counsel's attorneys' fees being paid by Cablevision for the benefit of the Class, and likewise does not include the substantial additional expense that Cablevision has incurred giving notice to the Class of this Settlement, all of which, fairly, should be included in the calculation of the value created for the Class by the Settlement.

**B.      Class Counsel Fees Are Reasonable Under The Percentage Of Recovery Approach**

The percentage of the recovery method is the "trend in this Circuit." See McDaniel v. Cty. Of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010); Wal–Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005). Class Counsel seeks an award of attorneys' fees of $4.75 million, which is equivalent to 14% of the total settlement amount.[1] See Accompanying Joint Declaration of Todd J. Krouner, Carols S. Shahmoon and Ralph M. Stone in support of final approval of settlement for an award of attorneys' fees and expenses and for an award of service awards to the Plaintiffs ("Joint Decl."), ¶ 50. Given Class Counsel's expenditure of considerable time and effort on behalf of the Class, on a purely contingent basis, and the undeniably

---

[1] As more fully discussed in Point I. A., supra, the settlement is reasonably valued at $28.5 million. Additionally, Cablevision agreed to pay Settlement Class Counsel's attorneys' fees of not more than $4,750,000.00. Joint Decl. ¶ 50. This award is entirely separate from the settlement consideration and does not reduce the settlement benefit in any way. Id. at 50. The fact that the attorneys' fees were negotiated separately and that such award does not reduce recovery for the class weighs in favor of approval of attorneys' fees award. See, e.g., Dupler v. Costco Wholesale Corp., 705 F.Supp.2d 231, 244 (E.D.N.Y. 2010) ("The Court also notes that however large the requested fee, it is not drawn from a common fund but rather is to be paid directly by defendant."). Consequently, the total recovery in this case equals $33,286,270, and the proposed $4,750,000 attorneys' fee award represents 14% of the total recovery.

impressive result achieved here, attorneys' fees are fair and reasonable. See also Holwell letter (attorneys' fee of $4.75 million plus expenses is appropriate here).

Courts in this Circuit have routinely granted attorneys' fee requests for a much higher percentage of the recovery basis in cases with settlements similar in value or substantially larger than this one.  In re Payment Card Interchange Fee Litig., 991 F.Supp.2d 437, 446 (E.D.N.Y. 2014) (surveying cases and concluding "it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million"); Westerfield v. Wash. Mut. Bank, 2009 WL 5841129, at *4–5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit); Mohney v. Shelly's Prime Steak, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund); Stefaniak v. HSBC Bank USA, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million settlement); Davis v. J.P. Morgan Chase & Co., 827 F.Supp.2d 172, 184–86 (W.D.N.Y. 2011) (awarding one-third of a $42 million settlement); Willix v. Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. 2011) (Class counsel's request for 33 1/3% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit" (citations omitted)); Toure v. Amerigroup Corp., 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (same); Warren v. Xerox Corp., 2008 WL 4371367 (E.D.N.Y. Sept 19, 2008) ("Class counsels' request for $3,080,000 in fees and $914,827 in expenses (totaling approximately $4,000,000), constitutes approximately 33.33% of the total settlement, and is comparable to sums allowed in similar cases); Hicks v. Stanley, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (finding that 30% is a reasonable percentage in the Second Circuit); Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F.Supp.2d 254, 262 (S.D.N.Y. 2003) (finding 33% attorneys' fees to be reasonable, and collecting cases finding the same). An award

of 14% of the total settlement amount is therefore more than reasonable pursuant to precedent in this Circuit, and the request for attorneys' fees should be approved.

**C.      Class Counsel Fees Are Reasonable Under The Lodestar Approach**

This Court may consider whether the requested fee determined under the percentage of recovery approach is consistent with an award that would result under the lodestar/multiplier approach. Twinlab, 187 F. Supp. 2d at 85, citing Goldberger, 209 F.3d at 50 (granting fee on a percentage of recovery basis after testing propriety using lodestar analysis). The lodestar-multiplier method involves calculating the number of hours spent multiplied by counsel's respective hourly rates, *i.e*., the "lodestar," and adjusting the lodestar for contingency, risk and other factors by applying a "multiplier" to the lodestar. City of Detroit v. Grinnell Corp., 495 F.2d 448, 470-471 (2d Cir. 1974).

**1.      The total lodestar, hours and rates reflected in the time detail are fair, appropriate, and consistent with the advanced stage of the case**

Class Counsel expended more than 6,000 hours for an aggregate lodestar of $3.977 million in prosecuting of this action. See Joint Decl., ¶ 56. Class Counsel produced the Settlement through extended efforts on behalf of the Class over nearly eight years. Joint Decl., ¶ 52.

The Joint Decl., details the background of this Action, the stages of the litigation, and the process culminating in its Settlement. Id.  Through the course of the litigation, Class Counsel succeeded in presenting a viable contract claim, which survived a hard-fought motion to dismiss. Id. ¶ 13. Thereafter, Plaintiffs' Counsel pursued discovery aggressively, seeking all possible relevant documents, took and defended key depositions, succeeded in obtaining class certification, undertook expert discovery (the production of two expert opening and rebuttal reports), drafted a motion to strike, filed and defended Daubert motions with respect to experts,

submitted two motions for summary judgment and opposed defendant's motion for summary judgment, drafted and submitted a joint pre-trial order, and ultimately, after analyzing the potential risks and potential recovery of continuing the litigation, prepared for and participated in the mediation and negotiations that resulted in a favorable settlement for the Class. Id. at ¶ 52.

Plaintiffs' Counsel have tried throughout this litigation to pursue Plaintiffs' interests in as efficient a manner as possible. Id. at ¶ 53. Work was distributed to ensure that only one lawyer or firm would have primarily responsibility for any given brief or filing, while also allowing for a circulation of drafts to solicit the views of the other lead counsel. Id. In most instances, briefing was the responsibility of one primary drafting lawyer and one or two other lawyers providing research and other support. Id. Document review, likewise, was shared with several law firms, with firm deadlines, to allow for the expeditious review of more than 350,000 pages of documents. Id. Most of the depositions (with a small number of critical exceptions) were covered by a first and second chair and no more. Id. To review the large array of documents Plaintiffs have obtained, and to organize them for depositions and other pretrial proceedings, lead counsel assembled a small team of lawyers from their firms and co-counsel, thereby enabling Plaintiffs to review those documents in an effective, cost-efficient manner. Id. There was extensive use of associates to review documents and perform other tasks that can be staffed by less experienced attorneys. Id.

The lodestar is a product of a reasonable hourly rate multiplied by a reasonable number of hours extended on the case. See Millea v. Metro–North R. Co., 658 F.3d 154, 166 (2d Cir. 2011). The starting point is determining the reasonable hourly rate "that a reasonable, paying client would be willing to pay." See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2007). Generally, those rates are the hourly rates

in "the district in which the court sits" for "similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006). See also In re Nassau County Strip Search Cases, 12 F.Supp.3d 485, 497 (E.D.N.Y. 2014) ("An attorney's hourly rate is considered reasonable when it is in line with those rates prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation."); Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 ("Lindy I") (3d Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate."); In re Cont'l Illinois Sec. Litig., 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order.").

The rates used to calculate the lodestar are the normal hourly rates charged by counsel and do not contain any special fees or surcharges for in-court appearances, general litigation, contingent litigation or other special types of work.

The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 283-84 (1989); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1153 (2d Cir. 1983) (use of current rates where, as here, services were provided within at least 3 years before the fee application was filed); Skelton v. General Motors Corp., 860 F.2d 250, 255 n. 5 (7th Cir. 1988) ("The courts in this circuit generally use current rates").

**2.     The lodestar multiplier further favors approval of attorneys' fees**

In class actions, it is common for lodestar figures to be adjusted upward by a multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by

9

counsel. In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008). "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts." Id. See also Maley v. Del Global Technologies Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier is appropriate); In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 134 (2d Cir. 2008) (holding that a $34 million fee, representing a 2.04 multiplier was "toward the lower end of reasonable fee awards").

Here, the declarations submitted by Plaintiffs' Counsel demonstrate the following: (a) Plaintiffs' Counsel have spent more than 6,000 hours litigating this matter; and (b) the total lodestar of Plaintiffs' Counsel at their current hourly rates for performing those services is $3.977 million. Joint Decl., ¶ 56. Thus, to the extent the percentage fee requested by Plaintiffs' Counsel is put to a lodestar "cross-check," it would amount to a mere 1.2 lodestar multiplier. To the extent the percentage fee requested by Plaintiffs' Counsel is put to a lodestar "cross-check," it would amount to a small enhancement of their lodestar.

**D.    The Goldberger Factors Support Approval Of Requested Attorneys' Fees**

Under the Second Circuit holdings Grinnell, supra, 495 F.2d at 471, and Goldberger, 209 F.3d at 47, a "just and adequate" attorneys' fee award can not necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees. Grinnell, supra, 495 F.2d at 471. Instead, the lodestar calculation is a "starting point for analysis." Id. After the lodestar amount is determined, "less objective factors, can be introduced into the calculus." Id. The Second Circuit has articulated six factors to consider in determining the reasonableness of fee applications:

(1) the time and labor expended by counsel;
(2) the magnitude and complexities of the litigation;
(3) the risks of litigation;
(4) the quality of representation;
(5) the requested fee in relation to the settlement; and
(6) public policy considerations.

10

Goldberger, 209 F.3d at 50 (quotations omitted). Here, all of the Goldberger factors weigh in favor of granting approval of Settlement Class Counsel's fee application.

**1.     Class Counsel expended extensive time and resources on behalf of Plaintiffs and the class**

As described above, substantial effort was required to achieve this settlement and the substantial benefits it provides to the Class. Class Counsel conducted thorough investigations of Plaintiffs' claims, successfully defended the contract claim against the defendant's motion to dismiss, obtained certification of the Class, completed factual and expert discovery, filed and briefed Daubert and summary judgment motions, and completed the pre-trial order.  Class Counsels' development of the case allowed them to negotiate from a position of strength in the mediation process, which resulted ultimately in the Settlement, which also required considerable effort to document.

In performing these tasks, Class Counsel expended approximately 6,000 hours of attorney, paralegal, and staff member time -- an aggregate lodestar of $3,977 million. Joint Decl., ¶ 56. These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.

Moreover, the requested fee is not based solely on time and effort already expended, but also is meant to compensate Class Counsel for time that will be spent administering the settlement in the future. In Class Counsels' experience, based on the number of Class Members, Class Counsel expects to respond to inquiries regarding the settlement, requiring an ongoing commitment. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing…"); McMahon v.

11

Olivier Cheng Catering and Events, LLC, 2010 WL 2399328, at *8 (S.D.N.Y. Mar. 3, 2010)

("The fact that Class Counsel's fee award will not only compensate them for time and effort

already expended, but for time that they will be required to spend administering the settlement

going forward also supports their fee request" of 33% of the fund) (citations omitted). Also, in

the unlikely event that any issues arise related to the automatic distribution of settlement

benefits, Class Counsel must be prepared to do whatever is necessary to ensure that those issues

are resolved expeditiously, with or without the intervention of the Court.

Moreover, the substantial time that Plaintiffs' Counsel devoted to this Action – more than

6,000 hours in total – precluded Plaintiffs' lead counsel from pursuing other potentially

profitable opportunities. Joint Decl., ¶ 58. During periods of extensive activity in this Action,

lawyers employed by Plaintiffs' lead counsel devoted much or all of their time exclusively to the

prosecution of this Action, time that could have been devoted to regular hourly fee-paying work.

Id.

Consequently, the time and labor expended by counsel factor favors approval of the

settlement.

### 2. The magnitude and complexity of the litigation supports Plaintiffs' Counsels' fee request

The size of the case and difficulty of the issues is a significant factor to be considered in

making a fee award. Goldberger, 209 F.3d at 50; In re Prudential Sec. Inc. Ltd. P'ship Litig., 912

F. Supp. 97, 100 (S.D.N.Y. 1996). This case presented complex questions of law and fact that

Class Counsel had to navigate to analyze and prove the claims and to prepare the case for trial

and in a strong posture to obtain a favorable Settlement. Joint Decl., ¶ 52. Many uncertainties

existed with respect to Plaintiffs' ability to establish their claims against Cablevision. Id. To

pursue this case, Plaintiffs have had to undertake a large-scale discovery program followed by

extensive post-discovery motion practice. Id. Those efforts required numerous depositions, the review and analysis of hundreds of thousands of pages of discovery, and the assistance of a number of experts concerning damages and issues involving communications industry and regulation. Id. As a result, the substantial magnitude and complexity of this litigation supports the award of attorneys' fees requested by Class Counsel.

**a.      The magnitude and complexity of this litigation is reflected in its lengthy and exhaustive procedural history**

On October 21, 2010, Plaintiffs commenced this consolidated class action against Cablevision captioned *Pearlman, et al. v. Cablevision Systems Corporation*, Case No. 2:10-cv-4992-JS-AKT. Joint Decl., ¶ 11. On February 1, 2011, the *Pearlman* action was consolidated with several other cases filed against Cablevision arising from the Fox Blackout. Id. at 12. Thereafter, Plaintiffs filed a consolidated amended class action complaint asserting seven causes of action.  Cablevision filed a motion to dismiss and supporting memorandum on March 18, 2011, which plaintiffs opposed. Id. at ¶ 12. On March 28, 2012, this Court denied in part and granted in part Cablevision's motion to dismiss. The Court allowed Plaintiffs' claim for breach of contract to proceed. Id. at ¶ 13.

On April 16, 2012, Plaintiffs filed a Second Consolidated Amended Complaint consistent with the March 28, 2012 decision of this Court. Id. at ¶ 14. After conducting some discovery and in accordance with Judge Seybert's Individual Rules, Plaintiffs filed a letter request on July 10, 2012, requesting a briefing schedule to file a motion for partial summary judgment, which the Court set at a hearing on October 19, 2012.

On October 10, 2012, Plaintiffs filed a motion for class certification, and on December 3, 2012, Plaintiffs also filed a motion for partial summary judgment, seeking a determination that: (i) Cablevision's alleged failure to provide a pro rata credit in connection with loss of the Fox

Channels between October 16, 2010 and October 30, 2010 constituted a breach of contract; and (ii) Cablevision is obligated to provide a uniform *pro rata* credit to all customers who subscribed to a particular cable package. Id. at ¶ 15.

On March 31, 2014, the Court denied Plaintiffs' motion for partial summary judgment without prejudice with leave to renew after class members have been provided with notice and an opportunity to opt out, and also issued an order granting Plaintiffs' motion for class certification. Id. at ¶ 16.

On May 30, 2014, Plaintiffs made a motion for approval of the form of class notice, which was granted on June 4, 2014, and on August 20, 2014, Plaintiffs made a motion for approval of distribution and publication of class notice, which was granted on October 7, 2014. Id. at ¶ 17. Plaintiffs sought to amend the class notice by letter filed on November 3, 2014, which was approved by the Court on November 12, 2014. Id. Plaintiffs thereafter informed the Court on March 2, 2015 that the time for class members to opt-out of the class action had expired on February 27, 2015. Id. Plaintiffs moved for partial summary judgment on March 31, 2016, and Cablevision cross-moved for summary judgment on June 13, 2016. Id. at ¶ 19.

On January 26, 2016, the Court issued a Scheduling Order setting the briefing schedule for Plaintiffs to re-file the motion for summary judgment. Id. at ¶ 19. In accordance with that Scheduling Order, Plaintiffs filed that motion along with an updated memorandum of law in support; Plaintiffs' Local Rule 56.1 Statement of Material Facts ("Pl. SOF") and exhibits thereto. Plaintiffs filed a motion for partial summary judgment on March 31, 2016 and Defendants filed a competing motion for summary judgment on May 6, 2016, and the parties completed extensive briefing on the summary judgment issues on July 12, 2016. Id.

On September 15, 2016, the parties filed a comprehensive Joint Pre-Trial Order with the Court. Id. at ¶ 20.

On September 19, 2016, the Parties jointly advised the Court that they had agreed to attempt to resolve the Action through private mediation, and on September 20, 2016, the Court denied without prejudice each of Plaintiffs' motion for partial summary judgment and Cablevision's motion for summary judgment. Id. at ¶ 21.

### b. The magnitude and complexity of this litigation is reflected in the unresolved questions of liability and damages

The key issue in this case was whether and to what extent plaintiffs and Class members were entitled to relief under Cablevision's Terms of Service when the Fox Channels were not delivered for two weeks in October 2010. Joint Decl., ¶ 35. Cablevision contended that because the event at issue was a "programming change," and thus Cablevision had not breached its contract to subscribers. Id. While Plaintiffs argued that there had been a "program or service interruption" for which Cablevision was required to provide "alternative programming" or a "pro rata credit." Id. at ¶ 38. Furthermore, Plaintiffs argued that even if there were a "programming change," it was not made "in accordance with applicable law," as required by the contract. Id. These dispositive contract issues controlled the outcome of the litigation, and raised potential questions involving cable industry customs, standards and regulations. Id. While both sides had raised the contract question from the inception of the case, including in summary judgment motions, the Court had not resolved the question as a matter of law, and it was possible that the Court would not do so until the conclusion of trial.

Moreover, the measure of recovery under the contract was both unresolved after eight years of litigation and factually complex.  The parties enlisted highly-experienced economic experts to help with the analysis, and the experts' opinions diverged widely.  Defendants'

expert concluded that each subscriber's damages was no more than 78-90 cents for the two-week period; Plaintiffs' expert opined that damages would be that portion of the monthly bill for which the complete programming services promised by Cablevision were not provided (*e.g.*, $8.29 for the "Broadcast Basic" tier for which subscribers paid $14.27 per month, and upwards based on tier price charged to a subscriber for the period). Id. at ¶ 41-42. Defendants' response to this approach is that it would create an inappropriate windfall, because a credit for the full tier price does not account for the value of the vast majority of channels within subscriber packages that were delivered during the period (*e.g.*, 35 out of 37 channels – the non-Fox Channels -- in Broadcast Basic were not interrupted).  Id. at ¶ 41. As Plaintiffs' Counsel addressed these complex and substantial issues capably, vigorously and diligently (in motions before the Court and in negotiating a substantial settlement), it an upward adjustment to lodestar is warranted.

**3.      The risks of litigation factor favors approval of the requested attorneys' fees**

The Second Circuit has identified "the risk of success as 'perhaps the foremost' factor to be considered in determining" a reasonable fee award. Goldberger, 209 F.3d at 54 (citation omitted).

**a.      Class Counsel undertook considerable risk in taking the case on a contingent fee basis**

Class counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave it uncompensated for its significant investment of time and expenses. Joint Decl., ¶ 59. Courts within the Second Circuit have consistently recognized that this risk is an important factor favoring an award of attorneys' fees. See, e.g., In re Am. Bank Note Holographics, Inc. Sec. Litig, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this

16

[contingent fee] risk into account in determining the appropriate fee to award") (citation omitted); Prudential, supra, 985 F. Supp. at 417 ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.") (citation omitted).

Unlike counsel for defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Class Counsel has not been compensated for any time or expenses since this case began in 2010, and would have received no compensation or expense reimbursement had this case not achieved a recovery for the Class. Joint Decl., ¶ 59. From the outset, Class Counsel understood that it was embarking on a complex, expensive, and lengthy endeavor with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Class Counsel was obligated to ensure that sufficient attorney and professional resources were dedicated to the prosecution of the litigation and that funds were available to compensate staff and to pay for the costs entailed, including costs of taking and defending depositions and of paying high-level experts. Id. Indeed, there have been many class actions in which Plaintiffs' Counsel took on the risk of pursuing claims on a contingent basis, expended thousands of hours and hundreds of thousands of dollars in expenses and time and received nothing for their efforts.[2] Accordingly, the contingency risk in this case strongly supports the requested attorneys' fee.

---

[2] See, e.g., Robbins v. Koger Props., Inc., 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); Bentley v. Legent Corp., 849 F. Supp. 429 (E.D. Va. 1994), aff'd, Herman v. Legent Corp., 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); Landy v. Amsterdam, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation.); Anixter v. Home-Stake Prod. Co., 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); In re Apple Computer Sec. Litig., 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); In re JDS Uniphase Corp. Sec. Litig., 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial).

**b.    Risks of establishing liability were substantial**

It is well settled that class actions are notoriously complex and difficult to litigate. See,

e.g., Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd., 2004 WL 1087261, at *3 (S.D.N.Y. May 14,

2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks

than other forms of litigation"). "The legal and factual issues involved are always numerous and

uncertain in outcome." In re Motorsports Merch. Antitrust Litig., 112 F. Supp. 2d 1329, 1337

(N.D. Ga. 2000).

This litigation is no exception. It involves numerous complex and novel issues of fact and

law, and Defendants asserted numerous factual and legal defenses to any potential liability. The

primary liability risk related to the question whether the Terms of Service applicable to

Cablevision subscribers required Cablevision to provide a "pro rata" credit under Paragraph 4, as

Plaintiffs contend, or whether the outage or blackout was or involved a programming change

within Cablevision's discretion under Paragraph 17 of the contract and thus requiring no relief at

all. Joint Decl., ¶ 35. Cablevision argued that Paragraph 4 was limited to interruptions arising

from technical and mechanical outages, which thus would not cover the Fox Blackout in October

2010. Id. Cablevision also pointed to industry custom, regulation and practice as a basis for

understanding the contract. Id. at ¶ 37. Plaintiffs disagreed that Paragraph 4 was so limited, and

further argued that Cablevision had not properly made a programming change "in accordance

with applicable law," pursuant to the terms of Paragraph 17 and based on the facts of the case.

Id. at ¶ 38. These issues were briefed before the Court as early as the motion to dismiss and were

the subject of fully briefed, but not decided summary judgment motions.  Had Cablevision

prevailed on these questions, plaintiffs and the Class would be unable to prove liability and

would have no basis for recovery under the contract. Id. at ¶ 39.

18

Consequently, the risk of establishing liability was substantial, favoring an upward adjustment to lodestar.

### c.      Risks of establishing the appropriate remedy were substantial

Even if Plaintiffs were able to defeat dispositive motions and to overcome the risks in proving liability, they would still face the risks of proving the magnitude of the appropriate remedy or damages. See City of Providence v. Aeropostale, Inc., 2014 WL 1883494, *8 (S.D.N.Y. May 9, 2014) (noting that even "if Lead Plaintiff successfully established liability, it also faced substantial risk in proving damages"); In re Flag Telecom Holdings Ltd. Sec. Litig., 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010) (burden in proving the extent of the class's damages weighed in favor of approving fee request).

Even if Plaintiffs could have succeeded in proving liability, considerable risk remained with proving damages at trial. See Point I. D. 2(a), supra. While Plaintiffs' expert Mr. Buchholz approached the damages issue by looking at tier prices, resulting in per subscriber damages ranging from $8.29 -$33.95 (with the potential for $39.98 and $49.98 for iO Gold and iO Silver subscribers), Defendants' expert, Mr. Orszag, asserted that Mr. Buchholz's approach creates a windfall to Class members. Joint Decl., ¶ 41-42. Mr. Orszag purported to account for the value of the vast number of channels that were in fact delivered to Class members through calculations resulting in per subscriber damages of 78 – 90 cents. Id. at ¶ 42. Thus, plaintiffs faced a significant risk that if a jury adopted Mr. Orszag's methods, damages would be insignificant, especially as compared to the $8.29 value achieved by Settlement. Id. Moreover, Defendants' argument that Fox 5, the most popular of the undelivered channels, continued to be available to subscribers "over the air" with an antenna, might have been a basis for a jury to conclude that there were no damages resulting from the incident. Id. at ¶ 43.

Moreover, even had the jury sided with plaintiffs' view that plaintiffs suffered substantial damages, Cablevision would have presented arguments in post-trial briefing and on appeal arguing that any such award would be an unfair windfall completely out of proportion with any breach. Id. at ¶ 44-45. Thus, even if plaintiffs succeeded in convincing the jury that that per subscriber damages were in excess of $8.29 -$33.95 (and up to $49.98 for iO Gold/Silver subscribers) as opposed to 78 - 90 cents proffered by Cablevision's expert, that amount could have been reduced to a far smaller number if Cablevision's arguments were persuasive. Id.

**4.      Class Counsel provided high quality representation**

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained." Taft v. Ackermans, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) citing In re Global Crossing Sec, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). "The quality of work performed in a case that settles before trial is best measured by the benefit obtained." Maley, 186 F. Supp. 2d at 373. See also Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); Kirchoff v. Flynn, 786 F.2d 320, 325 (7th Cir. 1986); Prandini v. Nat'l Tea Co., 557 F.2d 1015, 1019-20 (3d Cir. 1977) ("the 'quality' factor requires the court to adjust a fee on the basis of results of the work performed"); In re Warner Commc'ns. Sec. Litig., 618 F. Supp. 735, 748-49 (S.D.N.Y. 1985).

Here, the quality of the work performed by Plaintiffs' Counsel is reflected in the fact that they were able to obtain favorable rulings from the Court on the motion to dismiss, the class certification motion, and on one of the Daubert motions.  In addition, the critical analysis of the defendant's documents and key deposition testimony, as well as the summary judgment motion filed by Plaintiffs' Counsel put Plaintiffs in a strong position to negotiate the favorable result for the Class in the face of substantial risks that the Class would receive no recovery whatsoever.

The Settlement produced a benefit, the retail value of which is many times greater than the damages estimated by Cablevision's expert, 78 to 90 cents per subscriber, and is at least the equivalent of the Plaintiff's expert's estimate of the full value of damages in the basic cable package tier ($8.29). Thus, the Settlement itself is compelling evidence that Plaintiffs' Counsel are entitled to a substantial fee for their efforts on behalf of the Class.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Plaintiffs' Counsel. See, e.g., In re Warner Commc'ns., 618 F. Supp. at 749. Cablevision was represented by prominent teams of lawyers from Kirkland & Ellis and Willkie Farr & Gallagher, leading defense firms. Thus, the fact that Plaintiffs' Counsel achieved this settlement for the class in the face of formidable legal opposition further evidences the quality of their work.

Accordingly, Plaintiffs' Counsel provided high quality representation, which supports the requested fee.

**5.      The requested fees are reasonable in relation to the settlement**

As set forth more fully in Point I. B., supra, courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." See, e.g., In re Gilat Satellite Networks, Ltd., 2007 WL 2743675, at *16, n. 41 (E.D.N.Y. 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." Id. citing In re Indep. Energy Holdings PLC Sec. Litig., 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) (internal quotation marks omitted).

Class Counsel's 14% request is substantially lower than the percentage normally awarded in this Circuit. Gilliam v. Addicts Rehab. Ctr. Fund, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (a fee request of 33% is "consistent with the norms of class litigation in this circuit.");

Spicer v. Pier Sixty LLC, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (awarding 33% fee in $8.5 million settlement; lodestar multiplier of 3.36 approved); Westerfield, supra, 2009 WL 5841129 (awarding 30% of $38 million settlement); Maley, supra, 186 F.Supp.2d at 372 (awarding 33⅓% of the settlement, or $3,832,950); Davis, 827 F.Supp.2d at 178 (awarding 33% fee in $42 million settlement; lodestar multiplier of 5.3 approved).

Class Counsels' fee should be calculated as a percentage of the full amount of money that the settlement made available to the class. This is the best measure of what Class Counsel accomplished. The Second Circuit is clear that an "allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437 (S.D.N.Y. 2007). Consequently, the requested fees are reasonable in relation to the settlement and should be approved.

**6.      Public policy considerations support the award of the requested fees**

Public policy considerations weigh in favor of granting Class Counsels' requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." In re Sumitomo Copper Litig., 74 F.Supp.2d 393, 399 (S.D.N.Y. 1999). Courts have recognized that fee awards in class actions serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. Deposit Guar., 445 U.S. at 338-39. Class actions are also an invaluable safeguard of public rights. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985). If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" Id.; deMunecas v. Bold Food, LLC, 2010 WL 3322580, *8 (S.D.N.Y. 2010). Additionally, private lawsuits serve to further the

objective of the laws to protect consumers against deceptive practices. Eltman v. Grandma Lee's, Inc., 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). As a practical matter, such lawsuits can be maintained only if competent counsel can be obtained to prosecute them. Id. Competent counsel can be obtained if courts award reasonable and adequate compensation for their services where successful results are achieved.

The Fox Blackout was a problem that affected more than three million Cablevision consumers in the Metropolitan New York region.  State and federal regulators urged Cablevision and News Corp. to find a solution, but the regulators themselves were toothless and refused to take any action in the interests of Cablevision's subscribers.  While some subscribers simply cancelled their subscriptions, that number was inconsequential, and the balance of consumers were left with no real remedy.  In the face of regulatory inaction, this class action represented the only real vehicle to pursue recourse for the Class.

For these reasons, public policy considerations also support the fee requested by Plaintiffs' Counsel.

## POINT II
## PLAINTIFFS' APPLICATION FOR LITIGATION EXPENSES SHOULD BE APPROVED

It is well established that counsel who obtain a common settlement fund for a class are entitled to the reimbursement of expenses that they advance to a class." Meredith Corp. v. SESAC, LLC, 87 F.Supp.3d 650, 671 (S.D.N.Y. 2015); In re EVCI Career Colleges Holding Corp. Sec. Litig., 2007 WL 2230177, at *18 (S.D.N.Y. July 27, 2007) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course.") (internal citation omitted).

To date, Class Counsel has incurred $264,479.64 in out-of-pocket expenses directly related to claims against Cablevision. Joint Decl. ¶ 63. As with the fee, the amount requested in expenses has been negotiated and Cablevision has agreed to pay this amount without objection. See June 2017, Final Settlement Agreement, at 6. These costs include, among other things, filing fees, court reporter costs, messenger costs, postage, copies, legal research, mediator expenses, and travel for mediations, depositions and court conferences. Id. These costs were all reasonably incurred to benefit the Classes, and should be reimbursed to Class Counsel. See SESAC, 87 F.Supp.3d at 671 (awarding costs of $4,225,012).

Plaintiffs therefore request that the Court authorize the reimbursement of the $264,470.64 in expenses incurred by Plaintiffs' Counsel to date.

## POINT III
## SERVICE PAYMENTS TO EACH OF CLASS REPRESENTATIVES SHOULD BE APPROVED

Plaintiffs Sean Ahearn, John Azzarello, Eric Bohm, John Brett, William G. Canfield, Ralph Dudley, Arthur Finkel, Salvatore A. Gandolfo, Tina Green, Andrew Koplik, Theodore Pearlman, Vincent Pezzuti, Dorothy Rabsey, Martin Jay Siegel, Stanley J. Somer and Marc Tell ("Named Plaintiffs") initiated this lawsuit, monitored its progress, produced documents requested by defendants and Class Counsel, and approved the settlement. Consequently, incentive awards of $1,500 to each Named Plaintiff should be approved.  Pursuant to Section 12 of the Settlement Agreement, Cablevision agreed that service awards of $1,500 could be allocated from the monies paid by Cablevision towards fees and expenses awarded by this Court.

In Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997), Judge Brieant articulated the prevailing rule in the Second Circuit and throughout the federal judiciary on awarding incentive payments to class members in a class action:

> In this Circuit, the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award....

Incentive awards to class representatives such as the $1,500 requested here, are regularly approved by courts to acknowledge the time and effort required to perform as a named plaintiff in a complex class action. See In re Presidential Life Sec., 857 F. Supp. 331 (S.D.N.Y. 1994). Without the effort of these individuals in keeping up with the developments in the litigation, producing documents in discovery, sitting for depositions, none of the other benefits to the class as a whole could have been achieved.

In addition, the notices disseminated to the class identified that awards of this nature amounting to no more than $27,000 would be sought. We respectfully submit that the requested awards are entirely appropriate in this case and should also be granted.

## CONCLUSION

For the reasons provided in this memorandum and the documents filed herewith, the Court should grant the application for attorneys' fees and expenses and award the requested service fees to the Class Representatives.

Dated: April 9, 2018                                  Respectfully submitted,

LAW OFFICE OF TODD J. KROUNER, P.C.          STONE BONNER & ROCCO LLP

By   /s/  Todd J. Krouner                     By   /s/  Ralph M. Stone
   Todd J. Krouner                               Ralph M. Stone
   (tkrouner@krounerlaw.com)                      (rstone@lawssb.com)
   93 Greeley Avenue                              1700 Broadway, 41st Floor
   Chappaqua, NY 10514                            New York, NY 10019
   (914) 238-5800                                 (212) 239-4340


[signatures continue on next page]

25

CSS LEGAL GROUP PLLC

By   /s/  Carol S. Shahmoon
 Carol S. Shahmoon
 (cshahmoon@csslegalgroup.com)
 One Great Neck Road, Suite 7
 Great Neck, NY 11021
 (646) 517-4399

*Co-Lead Counsel for Plaintiffs*