# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Cablevision Consumer Litigation** | Master File No.<br>10-cv-4992 (JS) (AKT) |
| ------------------------------------------------------ | ECF CASE<br>Electronically Filed |
| This Document Relates to:<br>All Actions | |

**MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS TO CLASS ACTION
SETTLEMENT AND IN FURTHER SUPPORT OF
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES AND EXPENSES**

## **TABLE OF CONTENTS**

I.      SUMMARY OF OBJECTIONS AND CLASS REACTION ........................................... 1

II.     ARGUMENT ..................................................................................................... 6

     A.   The Settlement is Fair, Adequate, and Reasonable and the Objectors Present No
          Valid Basis To Preclude Final Approval................................................................ 6

          1.   The Settlement Is Not A Coupon Settlement...................................................... 8

          2.   Redemption Rate is Irrelevant ........................................................................ 9

          3.   Retail Prices Are the Best Measures of Value .................................................. 11

          4.   The Release is Appropriate ............................................................................ 13

     B.   Class Counsel Fees, Expenses and Plaintiffs' Service Awards Are
          Reasonable ............................................................................................... 14

III.    CONCLUSION.................................................................................................. 15

## **TABLE OF AUTHORITIES**

### **Cases**

*Amchem Prods, Inc. v. Windsor,*
  521 U.S. 591 (1997)............................................................................. 6

*Cornell Univ. v. Dickerson,*
  418 N.Y.S.2d 977 (Supr. Ct., 1979)....................................... 13

*Dupler v. Costco Wholesale Corp.,*
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ......................................... 8, 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
  528 U.S. 167 (2000)........................................................................ 14

*Glasser v. Volkswagen of Am., Inc.,*
  645 F.3d 1084 (9th Cir. 2011) .................................................... 14

*In re Cuisinart Food Processor Antitrust Litig.,*
  1983 WL 153 (D. Conn. Oct. 24, 1983) .................................. 12

*In re Domestic Air Transp. Antitrust Litig.,*
  144 F.R.D. 421 (N.D. Ga. 1992)................................................. 4

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................... 13

*In re Mexico Money Transfer Litig.,*
  164 F. Supp. 2d 1002 (N.D. Ill. 2000), aff'd, 267 F.3d 743 (7th Cir. 2001) ......................... 13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
  163 F.R.D. 200 (S.D.N.Y. 1995)................................................ 7

*In re Visa Check/Mastermoney Antitrust Litig.,*
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................... 7

*In re Western Union Money Transfer Litig.,*
  2004 WL 3709932 (E.D.N.Y. 2005) ....................................... 13

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.,*
  2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) ....................... 9

*Kullar v. Foot Locker Retail, Inc.,*
  168 Cal. App. 4th 116, 85 Cal. Rptr. 3d 20 (Cal. App. 2008) ................................. 4

*Kurtz v. Kimberly-Clark Corp.,*
    321 F.R.D. 482 (E.D.N.Y. 2017) .................................................................... 6

*Myers v. Medquist, Inc.,*
    2009 WL 900787 (D.N.J. Mar. 31, 2009) ....................................................... 12

*Schneider v. Citicorp Mortgage, Inc.,*
    324 F. Supp. 2d 372 (E.D.N.Y. 2004) ............................................................ 12

*United States v. Twenty MILJAM-350 IED Jammers,*
    669 F.3d 78 (2d Cir. 2011) ............................................................................. 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ........................................................................ 6, 9

**Federal Statutes**

28 U.S.C. § 1712 ...................................................................................................... 8

**Other Authorities**

Geoffrey P. Miller & Lori S. Singer, *Non-Pecuniary Class Action Settlements,*
    60  Law & Contemp. Probs. 97 (1997) .............................................................. 13

Plaintiffs respectfully submit this memorandum of law in response to the four objections received in response to notice of the settlement of this class action, and in further support of their motions (the "Motions for Approval") for final approval of the class action settlement (the "Settlement") with Defendants Cablevision Systems Corporation and CSC Holdings LLC, (collectively "Cablevision" or the "Defendants") and for approval of attorneys' fees and expenses and service payments to class representatives.  The Settlement affords significant value to the Class, which will be delivered to class members automatically.  While there were a handful of objections to the Setttlement, out of the large class of approximately three million subscribers, those objections, which vaguely oppose non-cash Settlements and class action attorneys' fees, do not provide a legitimate reason deny the Motions for Approval.

 For the reasons set forth in plaintiffs' opening brief, as supplemented herein, plaintiffs' Motions for Approval should be granted.

## I.      SUMMARY OF OBJECTIONS AND CLASS REACTION

The reaction of the Class to the Settlement, to the extent expressed, was positive.  Although there was no requirement for participating Class members to respond to the Settlement notice, plaintiffs' counsel received a number of responses from individuals seeking to affirm their interest in obtaining the Settlement benefits.  There were some people who elected not to participate in or be bound by the Settlement.   A total of 262 Class members opted out of the case before the Settlement, and there were 23 opt-outs in response to the Settlement notice.  *See* Declaration of Ralph Stone filed herewith ("Stone Decl."), Ex. 1.  Of the 3 million Class members, objections were received from five sources – (1) Cathleen Woods-King, Esq., on behalf of her husband, Charles King; (2) Linda Cerreta; (3) Darlene Drummer; (4) Law Office of Donovan Bezer, on behalf of Simon Bezer and Christine Bezer; and (5)  Hon. Thomas A. Dickerson (Ret.), on behalf

1

of purported Class members Brian T. Foley, Edward W. Wynne, and Arnold H. Belgraier. *See* Stone Decl. Exs. 1 (Woods-King), 2 (Cerreta) and 3 (Drummer); ECF 245-248, 254-55 (Dickerson); ECF 257 (Bezer).  A summary of their objections follows:

<u>Woods-King Objection</u>:   Woods-King is dissatisfied with consumer class actions generally, which she asserts are wasteful due to the small value of individual claims, which is often a prerequisite to certifying a class.  Woods-King "gets several of these class action notices a year and they all relate to such small matters … Such actions waste not only my time as a putative class member but that of the court system."  She believes that the Settlement did not result from difficult negotiations, a view contradicted by the record, the parties who vigorously litigated the case for over seven years, and Judge Holwell, the mediator.

<u>Cerreta Objection</u>: Cerreta believes the Settlement should be for cash or a credit.  Cerreta does not plan to appear at the settlement hearing.

<u>Drummer Objection</u>:  Drummer expresses a variety of complaints about her Cablevision service and pricing, but does not appear to take issue with the Settlement.  We note, however, that the release of claims in this Settlement will not impair Drummer's ability to pursue whatever recourse might be available if any of the issues in her letter give rise to a legal claim.

<u>Bezer Objection</u>:  The Bezer Objection does not state a basis, but seeks more time and information (without specifying what information), and a stay of proceedings, "including [of] the final fairness hearing, until such time as Objectors can have their counsel of choice admitted to this Court to submit a more detailed Objection."  Reflecting a lack of urgency, their counsel's notice of appearance is dated April 13, 2018, but was not mailed until April 17, 2018, and the objection itself (or request for time) is dated April 19.  [ECF 256].  No authority or rationale is

provided for the request, no hint is given of any particular objections, and these objectors do not say whether they will appear at the final fairness hearing.

Dickerson Objection:  The Dickerson Objection, submitted by former Judge Dickerson, encompasses six docket entries – two notices of Dickerson's intention to appear at and participate in the fairness hearing, *ECF 245, 246*; two discovery requests, ECF 248 (First Request for Discovery), 255 (Second Request for Discovery; and two memoranda of law, ECF 247 (First Memorandum of Law), ECF 255 (Second Memorandum of Law).

Dickerson Objectors' First Request for Discovery, a purported effort "to properly evaluate the Proposed Class Settlement and Class Counsel's Fees and Costs Application," sought from Class Counsel the following:  "deposition transcripts and marked exhibits" of three experts; an overbroad and vague request for all documents regarding the monetary value of the Fox Cable channels and whether and to what extent that a monetary value could be assigned to the undelivered services in the form of a pro rata credit; and, again with overbreadth, all documents relating to Class Counsel's fee and expense application.  Class Counsel responded to this request, which they believed to be improper, by directing Judge Dickerson to the public docket, which contained at ECF 183 detailed information about the expert reports, and the corresponding *Daubert* motions (which contained the transcripts of the expert depositions, with small amounts of confidential information redacted at defendants' request), which were granted in part and denied in part on December 8, 2015 [ECF 178] and on December 28, 2015 [ECF 179], as well as the comprehensive filing by Class Counsel in support of its fee and expense application [ECF 250, 251].  Despite having access to the competing expert reports, lightly redacted deposition transcripts, *Daubert* motions and associated rulings, and other material contained at ECF 183, as well as the competing Motions for Summary Judgment, Judge Dickerson persisted in seeking confidential deposition

exhibits, a request that Class Counsel could not accommodate as long as Mr. Dickerson had not obtained the permission of Cablevision.

Judge Dickerson then served the Second Discovery Requests – seeking information about the "actual monetary cost to the defendant Cablevision" for providing the movie, Wi-Fi and service protection benefits; and the "actual monetary value of each of the benefits." These requests, too, were overly broad, and as discussed below, are ultimately unhelpful and irrelevant.

In truth, none of the discovery requests appears directed to any legitimate issue for the Court's consideration, and it is far from clear that the requests are anything more than a fishing expedition. For example, the requests for counsel's time records is irrelevant to the one issue raised on fees, the question of whether it should be based on what the objector calls redemptions. Nor are the two cases cited by the objector for discovery on point. In *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 132-33, 85 Cal. Rptr. 3d 20, 33-34 (Cal. App. 2008), the court in fact did <u>not</u> allow or endorse discovery but suggested that upon remand the trial court might consider allowing specific and limited discovery if the settling counsel did not provide sufficient information to the court. *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424-25 (N.D. Ga. 1992), recognized that objectors have no "absolute right to discovery" (at 424 (citations omitted)), but did allow discovery in its discretion, not of the value of the settlement but instead as a test of the claimed value of the underlying claims. Here, the objector has had significant access to the expert reports and testimony to know the range of values of the claims.[1]

The Memoranda of Law echo the topics covered in the discovery requests. The underlying premises are that non-cash benefits should not be valued at their actual retail prices and should not

---

[1] We note additionally that any interest in the actual cost to Cablevision of the benefits being provided is somewhat misplaced. Claims for punitive or exemplary damages were dismissed years ago. On the other hand, seeking discovery on such subjects would significantly delay this matter for no good reason, involve potentially sensitive and proprietary pricing information, and would likely impose substantial additional costs on the parties.

be treated as fully delivered unless and until each and every subscriber uses them and that attorneys who settle cases for non-cash benefits should not be be awarded a fee based on the usual common benefit standards or lodestar basis.

 The Memoranda submitted in support of the Dickerson objection thus reflect that the author disfavors non-cash benefits as well as a misconception that the Settlement benefits here require "redemption";  the Memoranda do not provide meaningful analysis of the Settlement.  The Second Memorandum of Law presents ten suggestions, which are scattershot, repetitive and contradictory: (1) that the Settlement should be rejected and a "credit [plus interest from 2010] posted to each Class Member's monthly bill"; (2) that in a non-cash settlement, "redemption rates" should  be used to evaluate attorneys' fees; (3) that the "redemption period" should be extended to two years; (4) that "issuance and acceptance of non-cash benefits should continue until full settlement value is reached"; (5) that the release should be limited only to contract claims arising out of the interruption of the Fox Channels; (6) that attorneys' fees should be based on "claims made" not a "prediction of the value" but on "the actual redemption rate"; (7) that the "'retail price' is subject to manipulation" and thus, the value of the benefits is the "Cablevision's marginal cost" : (8) the settlement should have a cash alternative at a discount; (9) the Court should examine Cablevision's cost, then reduce that amount based on counting the benefits "utilized" by the class and then take a percentage of Cablevision's costs to deliver what was "utilized"; (10) that an alternative to suggestion #9 is to take the fees requested by Class Counsel and distribute two-thirds of that to the Class, with the remainder being allocated to attorneys' fees.

## II.     ARGUMENT

### A.     The Settlement is Fair, Adequate, and Reasonable and the Objectors Present No Valid Basis To Preclude Final Approval

Plaintiffs' motion and supporting papers show that the Settlement is substantial and worthy of final approval as "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citations omitted).  The Objectors do not offer anything to undermine that conclusion.  The Objections presented by Woods-King, Drummer and Bezer do not offer any substantive argument about the Settlement specifically and do not address any of the factors relevant to final approval of a settlement or to an award of attorneys' fees and expenses.  While Drummer voices a concern about Cablevision's service generally and Woods-King expresses distates for the class action device as well as the value of prosecuting small individual claims, neither of them identifies any unfairness to the Class in settling the present case in the manner proposed here.

Without the class action device that Woods-King disfavors, and without a reasonable incentive for lawyers to bring to bear serious advocacy to match the largest and most powerful firms, there would be no way to hold companies like Cablevision accountable for assaults on the consumer.  *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 552 (E.D.N.Y. 2017) ("the policy at the very core of the class ction mechanism" is redress of matters too small to be brought individually, *citing Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

The Ceretta objection expresses a preference for cash, which as explained below, was not a suitable medium for settlement due to certain terms in the contract and the fact that mutual agreement on a reasonable amount of cash simply was not achievable.  Cerreta rightly points out that time is passing quickly, and Class Counsel thought it important to obtain and distribute relief

6

to the Class without further delay.[2]  Importantly, Cerreta's objection does not support rejecting the Settlement or the fee application under applicable standards; nor does it offer any evidence that a cash settlement would have delivered more value.  Here the non-cash benefits being provided are much more substantial than what could have been obtained by pursuing cash, especially net of distribution expenses.  Moreover, the benefits are fully deliverable without the need for claim forms, easily usable by Class members and targeted to each of the three types of Class member, and bearing the same type of value as the interrupted programming and services and accounting for Cablevision's right under the contract to deliver in its sole discretion "alternative programming" as a remedy.

The Dickerson Objection slings shots in many directions with the only coherent theme being the disinclination towards non-cash settlements and Class Counsel fees.  It provides no analysis of the legal issues and risks presented in this complex class action against a regulated cable company.  Nor does it consider the significant hurdles Class Counsel faced in bringing litigation to address the type of programming issue that is now common among cable service providers and for which such providers have so far completely escaped liability and regulatory consequences.  Nor does the objection address the very limited nature of the contractual right upon which the claim of the Class is based – the provision of alternative programming or credit (at Cablevision's option) when Cablevision fails to make available a small part of a programming service – or attempt to analyze how the Settlement fails to squarely address the breach of that right.  Instead, the Dickerson objection presents an unsupported assertion that this was "a very simple case and could have been resolved at trial two years ago," an assertion that shows just how skillful

---

[2] "It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citations omitted)*; In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003) (judicial policy strongly favors settlement of class action lawsuits).

and effective Class Counsel was at presenting the case so strongly and consistently that it seemed

to the Dickerson objectors to be simple and a sure victory.  It was that skillful advocacy that put

the case in a hard bargaining negotiating position to achieve a substantial settlement, which avoids

further delay and the risk that the Class would end up with little or no remedy at all in the end.

The Objection also relies on false notions about the terms of the Settlement, how that

compares to the potential remedy under the contract, and how the Settlement should be valued

overall.  The ten-tiered argument boils down three larger arguments – (A) that "redemption" should

be a relevant measurement of the success achieved in this case (Items 1-4, 6, 8-10); (B) that retail

prices have somehow been "manipulated" and are not a reliable measure of value (Items 7, 9); and

(C) that the release of claims in the Settlement is not appropriate (Item 5).  These arguments are

meritless.

### 1.   The Settlement Is Not A Coupon Settlement

In order to set up the redemption argument, the Dickerson Objection equates this

Settlement with a "coupon settlement," something all must agree this is not.  Only certain coupon

settlements – not settlements involving delivery of other goods, services or benefits – entail a

requirement that courts await redemption data.  28 U.S.C. § 1712.  Courts have rejected the

equation that the Dickerson Objection suggests.  For example, *Dupler v. Costco Wholesale Corp.*,

705 F. Supp. 2d 231 (E.D.N.Y. 2010), addressed renewal practices for defendant's warehouse

stores, which are only open to members.  There, pursuant to the settlement, the defendant provided

free membership, with class members automatically receiving either additional months on existing

memberships or temporary membership (for those who were no longer members). 705 F. Supp. 2d

at 237. The court in *Dupler* did not treat the settlement as if it were a coupon settlement; it simply

looked at the "direct economic benefit of additional membership terms," which was calculated by

multiplying the number of class members in each of the various categories by the value of the free membership. *Id*. at 241. The court then evaluated the fee request in relation to the estimated value of $38.8 million, *id*. at 243-44, and used a lodestar cross-check, *id*. at 244-45, as if it were a common fund case.  The court accepted the plaintiffs' calculations that multiplied the number of months received by one-twelfth of the annual fee for each membership type. 705 F. Supp. 2d at 241 n.7.  Similarly, *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004), *aff'd*, 396 F.3d 922 (8th Cir. 2005), approved a settlement providing free minutes of cell phone service to current subscribers; free service with activation fee waived or calling cards for long distance calls for former subscribers; and rebates to former subscribers who paid early termination fees when terminating contracts due to the federal cost recovery fee at issue in the litigation.  Citing the feature of coupons that makes them subject to heightened scrutiny, the court stated: "This is not a 'coupon' settlement. Class members will not be required to purchase any additional services or items to receive a benefit". 2004 WL 3671053, at *4.  In a separate opinion issued the same day, the *Wireless* court granted attorneys' fees and did not delay ruling on the fee motion to see how many subscribers took the benefits of the settlement. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559, Docket 247 at 2-5 (W.D. Mo. Apr. 20, 2004).

### 2.  Redemption Rate is Irrelevant

The assertion that an important metric of the Settlement is "redemption rate" reflects a misunderstanding of what this Settlement accomplishes.  The Settlement does not require redemption, or claim forms, or vouchers, or any effort on the part of the Class member in order to obtain the benefit being provided.  Indeed, the Settlement is no more a voucher settlement than Cablevision's provision of programming is a voucher service.  As with the Fox Channels and the

9

other programming that is the subject of the contract that Class members had with Cablevision, in which customers paid for the availability of programming whether they viewed it or not, the benefits will be made available and usable without any need to "redeem" them. The movies will be available for immediate viewing on the cable systems on a day and time chosen by the subscriber; the service protection plan will simply go into effect permitting subscribers to call for technical services any time when it is in effect; the Wi-Fi passes will be delivered and can be used on any device to take advantage of Wi-Fi hot spots. That the movie downloads are available for two months rather than two years does not make them less valuable as a remedy in this case; the Fox Channels Interruption involved a handful of channels (the most popular of which was available for free over the air) for the much shorter period of two weeks. The usability period is sufficiently long to permit all subscribers to view the movies of their choice, without extending it so far as to undermine the finality of settlement sought by defendants.

Moreover, merely because any individual Class member chooses not *to use* the programs or services does not mean that programs and services were not delivered or made available. That potential for non-use arises in all cases, even with cash settlements. If a class member fails to deposit the check delivered to him or her, that does not somehow mean that check was not delivered. Importantly, the Settlement benefits are programs and services sold in Cablevision's ordinary business and are of the same type that were interrupted. The subject matter of the litigation was the *unavailability* of programs and services, and the remedy thus corresponds to the harm by making "alternative programming" *available*, which is precisely what might have been required had plaintiffs prevailed at trial. Subscribers were not required to watch the Fox Channels to be part of the class in this action for breach of contract for non-delivery of those channels; the issue was unavailability and the claims asserted a loss of value from not having the programming

10

available.  Thus, a "redemption rate," is not relevant to value the Settlement, which effectively and automatically delivers value without the need for redemption.[3]

### 3.   Retail Prices Are the Best Measures of Value

The Dickerson Objection struggles valuing the Settlement benefits, rejecting without a good reason the obvious value represented by the publicly advertised and actual retail prices that Cablevision charges to its customers for these benefits.[4]  At the same time, the objection argues that for the six interrupted channels Class Counsel could have easily obtained a pro rata credit of the full package prices, without any reduction for the hundreds of channels that were actually delivered to the subscribers in those packages.   But this objector cannot have it both ways.  If retail value is the appropriate measure of damages when a non-cash benefit is interrupted, then retail value should be the appropriate measure of the non-cash benefits that are delivered as a remedy.

That the Objection directs the Court to look at Cablevision's "cost" rather than retail price reflects an insufficient grasp of the fundamental claim in the case, and apparently a failure to examine closely the *Daubert* motions on the public docket.  Defendants took the position that Cablevision's "cost" should be a proxy for value to consumers; that position yielded a minimal

---

[3] It is far from clear that Cablevision is equipped to track redemption, as the Dickerson objection also requests, and it surely would come at a cost which, if determined to be substantial or material, may render the Settlement void.

[4] The Settlement Agreement states the actual retail prices of each benefit, and they are also listed on Cablevision's website, as follows:

 https://www.optimum.net/pages/service/protection-plan.html

http://optimum.custhelp.com/app/answers/detail/a_id/3704/~/optimum-wifi-for-guests

http://optimum.custhelp.com/app/answers/detail/a_id/1886

http://optimum.custhelp.com/app/answers/detail/a_id/2827/kw/movies

damage calculation arising from the Fox Channels Interruption.[5] Critical to obtaining classwide damages on plaintiffs' breach of contract claims is the notion that the price paid by subscribers is the proper way to value a program or service. Throughout the litigation, Defendants sought to minimize the value of having the Fox channels be available in case a subscriber chose to watch them. The Dickerson Objection accepts Cablevision's proposition that there is a connection between Cablevision's own unique and complex cost structure and lost "value" from the interruption in programming. Cablevision's economic expert performed that analysis and damages are de minimus. Instead, Class Counsel focused on a more reliable measure of value -- what subscribers pay to make the program or service available. To be sure, Class Counsel also sought to ensure that different types of Class members – current subscribers with access to video on demand services; current subscribers without access to video on demand services; and former subscribers – would be delivered a significant and easily usable benefit.

Nor is a preference for cash or a cash option a basis for rejecting final approval of the Settlement.[6] Settlement negotiations involve an exchange of promises and seek to achieve a balanced result accounting for the risks and delays inherent in continuing to prosecute the litigation. Dickerson was not involved in the years of litigation over the very issues of how to view the value of a programming interruption, nor was he present at the mediation to understand

---

[5] Cablevision's cost analysis was premised on the assumption that they were liable at all for anything, something Cablevision disputes to this day.

[6] "[T]he fact that some objectors would have preferred cash cannot be determinative of the issue whether the settlement before the court is reasonable." *In re Cuisinart Food Processor Antitrust Litig.*, No. MDL 447, 1983 WL 153, at *7 (D. Conn. Oct. 24, 1983) (Cabranes, D.J.). Plaintiffs were not given the option of a realistic cash settlement. Had Class Counsel insisted on a cash recovery for all Class members, no settlement at all would have been possible. *See Myers v. Medquist, Inc.*, No. 05-cv-4608, 2009 WL 900787, at *12 (D.N.J. Mar. 31, 2009) ("[T]he Court notes that ... Plaintiffs were unable to prevail upon [the defendant] to consent to a settlement that provided for direct payments to class members, and that no settlement could have been reached if Plaintiffs insisted upon such terms."); *Schneider v. Citicorp Mortgage, Inc.*, 324 F. Supp. 2d 372, 377-78 (E.D.N.Y. 2004) (approving voucher settlement where defendants rejected demand for cash settlement and alternative was likely no relief at all). Recognizing the risks of proceeding to trial, Class Counsel viewed the settlement that was achievable as far preferable to running the risk of zero recovery. Faced with these options, it is difficult to dispute that the settlement was the preferable option.

the delicate process of deliberation, negotiation, and ultimately resolution to achieve a mutually agreeable solution.[7]   The noncash benefit Settlement achieved here was the result of that process, and it is substantial.[8]

The average value achieved of over $8 per subscriber is more than eight times the amount of damages that would result from the Dickerson Objectors' favored valuation method which relies on Cablevision's own cost.  Moreover, there is certainly a cost to providing each of the programs and services provided in the Settlement, including among other things, license fees for movie downloads, the costs of maintaining internet infrastructure, the costs of sending technicians to respond to individual requests for technology service. But the subscriber remedy in the contract does not correspond to these costs, but rather purchase price.[9]

### 4.  The Release is Appropriate

The Dickerson Objection asserts that the release is too broad.  It argues that only contract claims should be released and not any claims arising out of or relating to the same facts that could have been brought in the litigation.  That is incorrect.  A release that permits the same issue to be

---

[7] The fact that the interests of the class must be put before the interests of any one class member is a lesson Judge Dickerson himself learned as a young lawyer whose class claim questioning the "value" of a Cornell education was rejected on that basis.  *Cornell Univ. v. Dickerson*, 418 N.Y.S.2d 977, 981 (Supr. Ct., 1979) (rejecting class claim brought for personal purposes, "this is not a seriously brought class action, but simply a former student trying to evade payment of a loan.")

[8] Non-cash settlements can benefit a class precisely because the defendant is typically "willing to provide substantially more value in a [non-cash] settlement than it ever would have agreed to pay in a cash settlement." *Western Union*, 2004 WL 3709932, at *12.  *See also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1018-19 (N.D. Ill. 2000), aff'd, 267 F.3d 743 (7th Cir. 2001) (same); Geoffrey P. Miller & Lori S. Singer, *Non-Pecuniary Class Action Settlements*, 60 Law & Contemp. Probs. 97, 112 (1997) ("The efficiencies of nonpecuniary settlements arise because of benefits such settlements can offer either to the plaintiff, the defendant, or both -- benefits that can be shared between the parties, making everyone better off.").

[9] The cash settlement that some objectors would have preferred -- which was never available -- would not have been a greater benefit to class members. Given the substantial administrative and postage costs of sending checks to class members and the fact that there are 3 million class members, even a large cash settlement would have resulted in each class member receiving very small checks.  When check amounts are this small, many class members do not even bother to cash their checks.  In *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004), then-District Judge Lynch agreed that "settlements that distribute checks for less than $10 require disproportionately more follow-up, have a disproportionately high number of uncashed checks, require more checks to be reissued, and often involve second or third distributions of settlement funds."

re-litigated under a different case theory is illusory and does not comport with usual standards pursuant to which a released party seeks finality regarding the acts about which plaintiff complains. Moreover, in this case, Class Counsel originally brought a number of other claims besides the contract claim, all of which were dismissed early in the case.  *See* Order on Motion to Dismiss [ECF 52], at pp. 12 - 23  (dismissing claims for good faith and fair dealing, unjust enrichment, for violation of consumer protection statutes, and injunction).  A subsequent release of such dismissed claims is appropriate, and the staute of limitations has long passed on those claims in any event. The language of the release itself is expressly limited to matters "connected to the factual allegations in the consolidated amended complaint filed in this Action on February 22, 2011…." Settlement Agreement [ECF 228] at ¶ 16(a)(ii).  This is an entirely appropriate limitation that avoids any sort of overreach in the release.  Accordingly, the suggestion that a narrower release should be crafted is meritless.

**B.     Class Counsel Fees, Expenses and Plaintiffs' Service Awards Are Reasonable**

The Dickerson Objection appears to seek to persuade the Court to reject paying the attorneys' fees and expenses requested.  A reduction in fees will not benefit either the objectors or the Class.[10]  The objection seeks to denigrate what has been accomplished in this case; but this has been a tough battle with Cablevision.  This aspect of the Dickerson Objection should also be rejected.  The fee and expense application was not negotiated by the parties until after a Settlement was reached; nor was the Settlement conditioned on a fee award; nor would the fee award reduce

---

[10] To have standing to contest a fee award, objectors must demonstrate that their purported grievance "will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000); accord *United States v. Twenty MILJAM-350 IED Jammers*, 669 F.3d 78, 91 (2d Cir. 2011). Here, if the fee award is reduced, under the Settlement Agreement the reduction reverts to Cablevision, not to the Class.  Since "modifying the fee award would not 'actually benefit the objecting class member,' the class member lacks standing because his challenge to the fee award cannot result in redressing any injury."  *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) (citation omitted).  A class member might have standing to complain about a fee award if he or she could demonstrate collusion between the defendant and plaintiff's counsel to reduce the settlement consideration in exchange for a larger fee. *Glasser*, 645 F.3d at 1089.  Obviously, nobody is suggesting this here.

the value to Class members.  Moreover, the fee application arose following the negotiation and agreement on the terms of the Settlement itself, and, when that failed, a mediators' proposal.  The fee award request by Class Counsel constitutes a lodestar multiplier that is small and a relatively low percentage of the Settlement.  Cablevision's cost structure for running its business has nothing to do with plaintiffs' counsel's efforts in this litigation.  Plaintiffs' fee thus should not depend on Cablevision's costs or on the habits and decisions of Class members.

## III.    CONCLUSION

For the foregoing reasons, the proposed Settlement is fair, reasonable and adequate and should be approved by the Court, and plaintiffs' motion for approval of attorneys' fees and reimbursement of expenses and service payments to class representatives, should be granted.

Dated:  May 4, 2018

Respectfully submitted,

STONE BONNER & ROCCO LLP

By:   /s/  Ralph M. Stone
   Ralph M. Stone
   (rstone@lawssb.com)
1700 Broadway, 41ˢᵗ Floor
New York, NY 10019
Tel: (212) 239-4340
Fax: (212) 239-4310

CSS LEGAL GROUP PLLC

By:   /s/  Carol S. Shahmoon
   Carol S. Shahmoon
   (cshahmoon@csslegalgroup.com)
One Great Neck Road, Suite 7
Great Neck, NY 11021
Tel: (646) 517-4399
Fax: (646) 880-9359

*Co-Lead Counsel for Plaintiffs*

LAW OFFICE OF TODD J. KROUNER, P.C.

By:   /s/  Todd J. Krouner
   Todd J. Krouner
   (tkrouner@krounerlaw.com)
 93 Greeley Avenue
 Chappaqua, NY 10514
 Tel: (914) 238-5800
 Fax: (914) 238-5820