**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
THEODORE PEARLMAN, MARC TELL, JULIA
GALLO, DOROTHY RABSEY, and JOHN
AZZARELLA, individually and on behalf
of all others similarly situated,

                        Plaintiffs,                            **MEMORANDUM**
                                                                           **AND ORDER**
          -against -

                                                                           CV 10-4992 (JS) (AKT)

CABLEVISION SYSTEMS CORPORATION,

                        Defendant.
-------------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       At the conclusion of the Fairness Hearing in this action, the Court granted final approval as to the substantive provisions of the Settlement Agreement but reserved decision on the Plaintiffs' Motion for Attorney's Fees and Reimbursement of Expenses [DE 252]. *See* Transcript of Fairness Hearing,[1] DE 276 at 91. For the following reasons, the Court GRANTS Plaintiffs' Motion to the extent set forth in this Decision and Order.

**I.    PRELIMINARY NOTE**

       During the latter portion of the Fairness Hearing, the Court stated it was deferring a decision on the instant motion but also stated the following:

> However, I am going to give class counsel and the Dickerson objectors an opportunity right now to put anything else on the record regarding the fee application and the expense application, keeping in mind that I have already read the papers that everyone has submitted to date. So to the extent there's anything else you want to add in this regard, I'm going to give you that opportunity now, and I'll start with class counsel.

---

[1] All references to the record of the Fairness Hearing are hereafter cited as "Tr. at ___."

Tr. at 76. As of the date of the Fairness Hearing, the Court had received -- in addition to Plaintiffs' motion papers and supporting documentation – Objectors Belgraier, Foley and Wynne's Memorandum in Opposition to the Motion for Attorney Fees and Reimbursement of Expenses [DE 252]; Objectors Simon and Christine Bezer's Objection to Motion for Settlement Final Approval [DE 257]; Plaintiffs' Reply to Response to Motion for Attorney Fees and Reimbursement of Expenses [DE 259]; Third Memorandum Of Law On Behalf Of Objectors Brian T. Foley, Edward W. Wynne and Arnold H. Belgraier in Opposition to Motion for Attorney Fees and Reimbursement of Expenses [DE 261]; Plaintiffs' Letter Motion to Strike DE 261 [DE 262]; Objectors Belgraier, Foley and Wynne's Response to Letter Motion to Strike [DE 263]; Objectors Simon and Christine Bezer's Emergency Motion For Leave To File Brief In Opposition To The Settlement, Or In The Alternative, To Permit Objectors To Read Their Brief Into The Record At The Final Fairness Hearing, And To Stay The Proceedings [DE 265]; Plaintiffs' Memorandum in Opposition to Emergency Motion [DE 266]; Affidavit/Declaration of Plaintiffs' Counsel in Opposition to Emergency Motion [DE 267]; and Objectors Simon and Christine Bezer's Reply in Support of Emergency Motion [DE 268].

Class counsel, Ralph Stone, Esq., was the first to address the Court with respect to the attorney's fees and expenses. Tr. at 76. The Court then inquired if Cablevision wished to be heard, at which time Cablevision's counsel, Andrew Genser, Esq., stated that he had nothing to add on behalf of his client. Tr. at 77. Turning to the Objectors, Thomas Dickerson, Esq., on behalf of Brian T. Foley, Edward W. Wynne and Arnold H. Belgraier, stated that his clients were not objecting to the calculations and paperwork which went along with the fee application. Rather, Attorney Dickerson stated: "[o]ur point is simply that if this is a coupon settlement, then

28 U.S.C. § 1712 applies regarding how fees are determined. But Your Honor has ruled that that does not apply, so other than that, we have no objection, and thank you." Tr. at 78.

As to Objectors Simon and Christine Bezer, their counsel, Donovan Bezer, Esq., did not address the attorney's fee application nor the request for reimbursement of expenses in any of his pre-Fairness Hearing submissions. Rather, Attorney Bezer focused on describing his difficulties in applying for admission as an attorney to the Eastern District of New York. With respect to relief, he moved to be permitted to come to the Fairness Hearing and to read his legal brief into the record. The Court permitted him to appear, even though he was not yet set up for ECF usage. Further, although not required to do so, the Court gave Attorney Bezer the opportunity to speak with respect to his clients' objections. The Court did not permit Mr. Bezer to read his brief into the record. Instead, the Court asked him multiple times to summarize his legal arguments, which Attorney Bezer was either unwilling or unable to do in the circumstances. Instead, Mr. Bezer continued to assert that the Court should let him read his brief into the record – a brief which was not submitted in advance of the hearing. Tr. at 27-40.

After a more pressing inquiry by the Court, Attorney Bezer responded "yes" when the Court asked if he believed this is a coupon case.[2] Tr. at 37. Once Attorney Bezer finished his remarks, the Court asked if there was anything else Mr. Bezer wanted to say, to which he responded "[n]o Your Honor, thank you." Tr. at 40. At no time during the colloquy with the Court did Attorney Bezer address the attorney's fee application. Moreover, just before concluding the Fairness Hearing, the Court stated: "[t]he court hereby grants final approval as to the substantive provisions of the settlement agreement, but reserves decision on the attorney's fee and expenses applications. Is there anything further from the plaintiffs here?" Tr. at 91. The

---

[2] The Court subsequently held that the settlement reached in this case is not a coupon settlement, for the reasons stated in the record at the Fairness Hearing. *See* Tr. at 51-71.

3

Court made the same inquiry of counsel for the Defendants and the Objectors, all of whom responded that they had nothing further. Tr. at 91-92. The Court finds noteworthy that Attorney Bezer added "Your Honor, Donovan Bezer for objectors. I just want to again thank Your Honor for the court's time." Tr. at 91. The Fairness Hearing was then closed. In the end, the Objectors were provided a full and fair opportunity to be heard regarding their objections, notwithstanding the fact that the Court was under no obligation to provide such an opportunity at the Fairness Hearing.

A little more than two weeks after the Fairness Hearing was concluded and the record closed, Attorney Bezer filed a "Notice Of Emergency Motion To Permit Submission Of A Brief In Opposition To Plaintiff's Counsel's Fee Application." DE 271. Attorney Bezer did so without any request to the Court to make such submission nor any authorization from the Court to do so, despite the fact that the deadline for such submissions had long passed, notice had been sent to class members, the Fairness Hearing had been conducted and Attorney Bezer was given the opportunity to be heard on this issue at the hearing, and the record was closed at the end of the Fairness Hearing when the Court granted final approval of the settlement. The Bezer motion is untimely and is therefore DENIED. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (finding untimely class members' motion to intervene where motion was filed more than a year after the complaint was filed, after notice had been sent to class members, and three days prior to the Fairness Hearing, especially where such action would potentially derail the settlement and prejudice the existing parties); *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 258 (E.D.N.Y. 2009) (holding that class member's motion to intervene more than two and a half months after notice to potential class members had been sent and nearly three months after the Preliminary Approval Order had been issued was untimely and would be prejudicial to the

existing parties, while further noting that objector was not prejudiced because she had the opportunity to opt out of the litigant and pursue her own claim against the defendants); *Sykes v. Harris,* 09 Civ. 8486, 2016 WL 3030156, at *20 (S.D.N.Y. May 24, 2016) (waiving late filed objection as untimely); *In re Credit Default Swaps Antitrust Litig.*, 13md2476, 2016 WL 2731524, at *11 (S.D.N.Y. Apr. 26, 2016) (finding untimely objectors' additional submissions containing entirely new objections in the days immediately preceding the Fairness Hearing and rejecting those objections on that basis alone).

## II. THE MOTION FOR ATTORNEY'S FEES AND EXPENSES

### A. Applicable Standard of Review

Class counsel seeks an award of attorney's fees in the amount of $4.75 million, an amount to be paid, if awarded by the Court, by or on behalf of Cablevision in addition to the settlement consideration to the Class. *See* Joint Declaration of Todd J. Krouner, Carol S. Shahmoon and Ralph M. Stone in Support of Final Approval of Settlement for an Award of Attorneys' Fees and Expenses and for an Award of Service Awards to the Plaintiffs ("Joint Decl.") [DE 251] ¶ 50. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts in this Circuit may utilize two methods in assessing the reasonableness of a requested fee: the lodestar method or the percentage method. *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources,Inc.,* 209 F.3d 43, 50 (2d Cir. 2000). "Under the lodestar method, the court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 242 (E.D.N.Y. 2010). "Courts in their discretion may increase the lodestar

5

by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005). Under the percentage method, courts set the fee at a percentage of the common fund established under the settlement agreement. *See id*.

"The trend in this Circuit is toward the percentage method, which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Id*. at 121 (citing *In re Lloyd's Am. Trust Fund Litig*., No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)) (internal citation omitted). "In order to arrive at the proper percentage, 'the court considers the effort expended and risks undertaken by plaintiffs' counsel and the results of those efforts, including the value of the benefits obtained for the class.'" *Kindle v. Dejana*, No. CV 14-6784, 2018 WL 1790797, at *5 (E.D.N.Y. Apr. 12, 2018) (quoting *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 188 (W.D.N.Y. 2005)). Courts often use the lodestar figure as a "cross-check" to ensure the reasonableness of the percentage based fee. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014); *Wal-Mart Stores, Inc.,* 396 F. 3d at 123.

Regardless of whether the lodestar method or the percentage method is utilized, a court's analysis is to be guided by the following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (quoting In re *Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (internal quotation marks

omitted); *Dupler*, 705 F. Supp. 2d at 243 (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)).

"In a case where the attorneys' fees are to be paid directly by defendant and, thus, 'money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.'" *Dupler*, 705 F. Supp. 2d at 243 (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y.2006)); *Blessing v. Sirius XM Radio Inc.*, No. 09 CV 10035, 2011 WL 3739024, at *4 (S.D.N.Y. Aug. 24, 2011), *aff'd*, 507 Fed. App'x 1 (2d Cir. 2012).

**B.      Discussion**

    **1.      *Percentage Method***

At the outset, the Court notes that the percentage-of-the-fund method is utilized even in cases where, as here, the settlement agreement calls for the award of in-kind benefits. *See e.g.*, *Dupler*, 705 F. Supp. 2d at 243; *Blessing*, 2011 WL 3739024, at *2. Under *Goldberger*, the Court must consider the requested fee in relation to the settlement. In this regard, "it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445; *Springer v. Code Rebel Corp.*, No. 16-CV-3492, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 587-88 (S.D.N.Y. 2008)) ("Applying the percentage method, 33.3% is within the range of fee awards typically awarded."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) ("25 percent may be the benchmark for cases involving settlements in the range of one to fifty million dollars.").

Here, Class Counsel seeks a fee award of considerably less than what is typically awarded -- $4.75 million, which is equivalent to 14% of the total settlement amount of $28.5 million. As noted above in *Dupler*, the court approved a fee request reflecting 14% of the $38.8 million value of the additional membership terms awarded to class members. 705 F. Supp. 2d at 243. Also relevant to the Court's analysis is the fact that the fee award in this case was not negotiated until all of the other terms of the settlement had been agreed upon. *See* Joint Decl. ¶ 50. Mediator Richard Holwell, a well respected retired federal judge and now private mediator, presided over the settlement negotiations in this case and has represented to this Court that it was not until after all material terms of the agreement had been agreed upon that the parties began negotiating class counsels' fees. *See* April 5, 2018 Letter of Richard J. Holwell to Hon. A. Kathleen Tomlinson ("Holwell Letter"), annexed to the Joint Decl. as Ex. 1 [DE 251-1] at 4; *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) ("[T]he fee was negotiated only after agreement had been reached on the substantive terms of the Settlement benefitting the class. This tends to eliminate any danger of the amount of attorneys' fees affecting the amount of the class recovery."); *Dupler*, 705 F. Supp. 2d at 244. In light of the foregoing information, the Court finds that the "requested fee in relation to settlement factor" weighs heavily in favor of approving class counsel's fee application.

The Court finds that the remaining *Goldberger* factors also weigh in favor of approval. This action has been vigorously litigated for eight years. Class counsel defended Cablevision's motion to dismiss, obtained certification of the Class, completed fact and expert discovery, briefed summary judgment motions, and submitted a pre-trial order. In doing so, class counsel represent that they expended approximately 6,000 hours litigating this case. *See* Plaintiffs'

Memorandum of Law in Support of Motion for Approval of Attorneys' Fees, Litigation Expenses, and Service Payments to Class Representatives ("Pls.' Mem.") [DE 253] at 11; Joint Decl. ¶ 56. This case involved complicated issues as to liability and damages, which required the parties to undergo expert discovery that entailed the submission of expert reports and rebuttal reports, expert depositions and *Daubert* motions. Moreover, class counsel undertook considerable risk in pursuing the case on a contingency basis. Even if the plaintiffs could establish liability at trial, there remained the risk that the jury would adopt the approach of Cablevision's damages expert which would have resulted in de minimis recovery—78-90 cents per subscriber. Joint Decl. ¶¶ 44-45. Even had a jury adopted the damages calculations of Plaintiffs, Cablevision would likely have appealed and been given another opportunity to advance its expert's damages theories. The Court has also determined that the history of this case adequately establishes that class counsel provided high quality representation and counsel for Cablevision vigorously defended this case. Lastly, with regard to the public policy factor, class counsel represents that the disruption in programming affected 3 million subscribers to Cablevision who will, without the instant settlement, be left with no real remedy.

    2. *Lodestar Method*

In accordance with the standard set forth above, the Court will use class counsels' lodestar to cross-check the reasonableness of the percentage fee. The lodestar is based on the number of hours expended on the case multiplied by counsels' hourly rate. "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388–89 (S.D.N.Y. 2013) (quoting *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009)).

That being said, in order for the lodestar method to serve as an adequate cross-check, it must not simply be "accepted at face value." *Id*. For this reason, counsel was requested to submit contemporaneous billing records for the Court's review.

Having conducted that review, the Court finds that the fees requested are also reasonable under the lodestar method. According to the undisputed billing records, Class Counsel have collectively expended more than 6,000 hours on this litigation over the course of eight years. Joint Decl. ¶ 56. The hourly rates Class Counsel generally charge are at the very high end of the range (and in some cases are above the range) of what courts in the Eastern District of New York typically award in complex cases. Yet, courts have approved, in class actions where the defendants have agreed to pay the specific attorneys' fees, a lodestar based on billable rates of between $405 and $790 for partners and $270 to $500 for associates. *See Steinberg v. Nationwide Mut. Ins. Co.,* 612 F.Supp.2d 219, 224 (E.D.N.Y. 2009); *Ersler v. Toshiba America, Inc.*, No. CV 07-2304, 2009 WL 454354, at *7 (E.D.N.Y. Feb. 24, 2009); *Ebbert v. Nassau County*, CV 05-5445, 2011 WL 6826121, at *16 (E.D.N.Y. Dec. 22, 2011). As in the instant action, the attorneys' fees in *Steinberg* and *Ersler* were not drawn from the settlement fund, but rather were separate and apart from the settlement payments to class members and were consented to by the defendants in those cases.

Although this feature, namely, separation of fee award from class benefits, means that the award does not directly erode the benefits offered to class members, in that same vein, the benefit of a decrease in the award by the Court will inure to the benefit of Cablevision. The Court also notes that the Settlement Agreement includes what is called a "clear sailing" provision," in which Cablevision has agreed not to contest counsel's fee application. To the extent there is any inference that this provision suggests some type of improper collusion

between Plaintiffs and Cablevision, such assertion, without more, does not provide grounds for disallowing or reducing the attorney's fees. *See Blessing*, 507 Fed. App'x at 4 ("To the extent objectors argue that the clear-sailing and reversionary provisions suggest improper collusion between class counsel and Sirius XM, we note that such provisions, without more, do not provide grounds for vacating the fee.") (citing *Malchman v. Davis,* 761 F.2d 893, 905 & n. 5 (2d Cir.1985)); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Nor does the so-called 'clear sailing agreement' by Defendants not to oppose Class Counsel's Fee Application bar approval of the Settlement, where, as here, the Court has strictly scrutinized both the process and substance of the Settlement.").

It is also important to point out that the "clear sailing" provision in this case appears to have been initiated by the mediator, not the parties. The Court has considered and finds significant Mediator Holwell's discussion of how, during the mediation process, the parties arrived at the final negotiated fee award which Plaintiffs are seeking here. Mediator Holwell is a former federal judge of the Southern District of New York and currently senior partner of Holwell Schuster & Goldberg LLP with many years of experience in this type of class action commercial case. In his letter to the Court, Mediator Holwell stated the following:

> After the parties reached an agreement on all material terms of the $28.4 million settlement, including the extensive notice provisions, the parties began negotiations over whether and to what extent Cablevision would be willing to pay, if ordered by the Court, as plaintiffs' counsel's attorneys' fees and expenses. The parties met at one mediation session to negotiate over this issue. Defendants' counsel requested and plaintiffs' counsel produced their lodestar billing detail to be considered with respect to the fee and expense negotiations. When the parties could not reach agreement, I requested briefing on the issue and after considering the arguments and the lodestar billing details, I made a mediator's proposal, with a detailed articulation of my rationale, indicating that a reasonable resolution of the issue would be for Cablevision to agree not to oppose a motion for fees no greater than $4.7 million plus expenses.

> The parties agreed to my proposal, which was memorialized in the Settlement Agreement, and in that agreement the parties further decided on the specific expense amount of $264,479.64.

Joint Decl., Ex. 1 (Holwell Letter) at 3.

In examining the lodestar, the Court has also reviewed the time records and biographies of counsel. *See* Joint Decl., Ex. 4 (Declaration of Co-Lead Counsel Carol S. Shahmoon, Esq. Regarding Fees and Expenses of CSS Legal Group, P, LLC, Shahmoon & Ellisen LLP, and Chitwood Harly Harnes LLP); *id*., Ex. 5 (Declaration of Co-Lead Counsel Todd J. Krouner, Esq. Regarding Fees and Expenses of the Law Office of Todd J. Krouner, P.C.); *id*., Ex. 6 (Declaration of Co-Lead Counsel Ralph M. Stone, Esq. Regarding Fees and Expenses of Stone Bonner & Rocco LLP); *id*., Ex. 7 (Declaration of Justin M. Klein, Esq. Regarding Fees and Expenses of Marks & Klein, LLP); *id.*, Ex. 8 (Declaration of Michael C. Rakower, Esq. Regarding Fees and Expenses of Rakower Law PLLC); *id.*, Ex. 9 (Declaration of Ronen Sarraf, Esq. Regarding Fees and Expenses of Sarraf Gentile LLP); *id*., Ex. 10 (Declaration of Richard J. Schager, Jr. Regarding Fees and Expenses of Stamell & Schager, LLP); *id*., Ex. 11 (Declaration of Lee S. Shalov, Esq. Regarding Fees and Expenses); *id*., Ex. 12 (Placeholder for Ballon Stoll Declaration[3]). A chart provided by Plaintiffs provides a breakdown of the lodestar by law firm:

---

[3] Although no declaration was submitted by Ballon Stoll, the Court notes that the chart of the individual firm lodestar figures includes the lodestar for Ballon Stoll. Ballon Stoll expended the lowest number of billing hours of all the firms representing the Plaintiffs and its lodestar is less than 1% of the total lodestar figure which the Court has cross-checked. The Court is satisfied with its examination and cross-check, even without a declaration from Ballon Stoll which clearly played a minor role in the overall litigation.

Summary of Lodestar and Expenses by Firm

| Law Firm | Total Lodestar | Total Hours | Blended Rate | Time Period | Expenses |
|---|---|---|---|---|---|
| CSS Legal Group PLLC | $1,229,166.25 | 1776.30 | 691.98 | 10/27/10 - 4/5/18 | $73,894.61 |
| Stone Bonner & Rocco LLP | $795,957.50 | 1377.30 | 577.91 | 10/27/10 - 3/31/18 | $111,611.72 |
| Law Office of Todd J. Krouner | $1,155,841.00 | 2052.50 | 563.14 | 10/28/10 - 3/31/18 | $74,301.00 |
|  | $3,180,964.75 |  |  |  | $259,807.33 |
| Sarraf Gentile | $299,955.00 | 612.95 | 489.36 | 10/27/10 - 12/31/16 | $1,587.65 |
| Stamell & Schager LLP | $258,983.00 | 338.40 | 765.32 | 10/20/10 - 3/31/18 | $10,499.41 |
| Marks & Klein | $109,485.50 | 319.20 | 343.00 | 10/20/10 - 3/31/18 | $1,105.01 |
| Lee Shalov | $14,250.00 | 19.00 | 750.00 | 3/20/11 - 12/28/15 | $0.00 |
| Rakower Law PLLC | $77,442.00 | 156.00 | 496.42 | 10/18/10 - 1/17/17 | $1,886.75 |
| Ballon Stoll Bader & Nadler, P.C. | $36,913.50 | 79.50 | 464.32 | 11/30/10 - 1/27/16 | $1,006.04 |
|  | $797,029.00 |  |  |  | $16,084.86 |
|  | $3,977,993.75 |  |  |  | $275,892.19 |

Join Decl., Ex. 3. Class Counsel represents that the lodestar here is $3.977 million. Since Plaintiffs are requesting a fee award of $4.75 million, they are also seeking a modest multiplier — approximately .84, rounded up to the nearest tenth. The Court finds this multiplier to be reasonable. In doing so, it notes that other courts have awarded significantly higher multipliers. *See e.g., Dupler*, 705 F. Supp. 2d at 245 (approving a multiplier of 3.3); *Wal-Mart Stores,* 396 F.3d at 123 (affirming 3.5 multiplier); *In re Telik*, 576 F.Supp.2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *Springer v. Code Rebel Corp.*, No. 16-CV-3492, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) ("When the lodestar method applied, the lodestar multiplier is approximately 2.02, which is also within the range of multipliers that have been applied in other cases."). Moreover, as set forth above, the fee award here is completely separate from the benefits awarded to the class.

The Court takes into account as well the sworn statements of counsel:

> Plaintiffs' Counsel have tried throughout this litigation to pursue Plaintiffs' interests in as efficient a manner as possible. Work was distributed by us in a way that ensured that only one lawyer or firm would have primarily responsibility for any given brief or filing, while also allowing for a circulation of drafts to solicit the views of the other lead counsel. In most instances, briefing was the responsibility of one primary drafting lawyer and one or two other

> lawyers providing research and other support. Document review, likewise, was shared with several law firms, with firm deadlines, to allow for the expeditious review of more than 350,000 pages of documents. Most of the depositions (with a small number of critical exceptions) were covered by a first and second chair and no more. To review the large array of documents produced by defendants, and to organize them for depositions and other pretrial proceedings, lead counsel assembled a small team of lawyers from their firms and co-counsel, thereby enabling document review to be effective and cost-efficient. There was extensive use of Associates to review documents and perform other tasks that can be staffed by less experienced attorneys.

Joint Decl. ¶ 53. Based upon this Court's close supervision of this matter, as well as the Court's review of the billing records, the Court is satisfied that the work done here was necessary and proper, particularly in light of the vigorous defense proffered, as evident in the continuous stream of motion practice. For all of these reasons, Class Counsels' request for final approval of the negotiated attorneys' fees in the amount of $4.75 million is reasonable.[4] The motion for approval of attorneys' fees in the sum of $4.75 million is therefore GRANTED.

C. **Expenses**

Just as attorneys may recover reasonable attorneys' fees in a certified class action, they may also recover "nontaxable costs." Fed. R. Civ. P. 23(h). Costs may include items such as "photocopying, travel, telephone costs, witness fees, long distance faxes, transcript requests necessary for post-trial motions and costs of necessary depositions." *Fernandez v. N. Shore Orthopedic Surgery & Sports Med., P.*C., No. CIV. A. CV 96-4489, 2000 WL 130637, at *7 (E.D.N.Y. Feb. 4, 2000) (citing *Kuzma v. Internal Revenue Serv.,* 821 F.2d 930, 933–34 (2d Cir.1987); *Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity and Vacation Funds*

---

[4] The Court also draws attention to the statement made by Attorney Dickerson, counsel for Objectors Belgraier, Foley and Wynne, during the Fairness Hearing: "As I mentioned in the closing, I've known Mr. Stone and the other members of his team for many years and have the highest regard for them, so as far as my clients are concerned, we are not objecting to the calculations and all the paperwork that goes along with the fee application." Tr. at 78.

*v. High Performance Floors, Inc.*, 15-CV-2253, 2018 WL 334439, at *8 (E.D.N.Y. Jan. 8, 2018); *Volpe v. Nassau County*, No. 12-CV-2416, 2016 WL 6238525, at *10 (E.D.N.Y. Sept. 24, 2016). Class Counsel points out that "[t]he amount requested and expenses has been negotiated and Cablevision has agreed to pay this amount without objection." Joint Decl. ¶ 63. Mediator Holwell confirmed this fact, noting that the parties "further decided on the specific expense amount of $264,479.64." Joint Decl., Ex. 1.

The Attorney Declarations discussed above (DE 251, Exs. 4-12) provide the details of the unreimbursed expenses incurred by the attorneys/firms representing the Plaintiffs in this action. The declarations and records show that those expenses were incurred on behalf of the Class and that they are reflected on the books and records maintained by those firms. As set forth in those declaration the "majority of those expenses is comprised of: (a) expert and other professional fees (largely paid out of the Litigation Fund established by Lead Counsel and to which each Lead Counsel contributed); (b) class notice expenses; and (c) transcript and court-reporting costs (largely paid out of the Litigation Fund)." *Id*. ¶ 66. Attorneys seeking reasonable out-of-pocket expenses which are normally charged fee-paying clients are expected to include, as part of their request, "an affidavit that the costs claimed are allowable by law, are correctly stated, and were necessarily incurred." *Kizer v. Abercrombie & Fitch Co.*, CV 12-5387, 2017 WL 9512408, at *4 (E.D.N.Y. July 24, 2017) (citing *Volpe*, 2016 WL 623-8525, at *10); *Kindle*, 308 F. Supp. 3d at 705. "Since district courts are not required to engage in the tedious nit-picking of requested fees in common fund cases, *Goldberger,* 209 F.3d at 51, scrutiny of requested expenses, which ordinarily comprise a fraction of fees, is even less necessary." *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852, 2005 WL 3093399, at *19 (E.D.N.Y. Sept. 30, 2005). The Court finds that the

Plaintiffs have satisfied their obligation here and their request for reimbursement of expenses in the amount of $264,479.64 is GRANTED.

### D. Service Awards

Section 12 of the Settlement Agreement provides that class representatives shall be awarded a payment of $1,500 each. Cablevision has agreed to pay the service awards to the class representatives, namely, Plaintiffs Sean Ahearn, John Azzarello, Eric Bohm, John Brett, William G. Canfield, Ralph Dudley, Arthur Finkel, Salvatore A. Gandolfo, Tina Green, Andrew Koplik, Theodore Pearlman, Vincent Pezzuti, Dorothy Rabsey, Martin Jay Siegel, Stanley J. Somer and Marc Tell. These awards are to be allocated from the fees and expenses awarded by the Court.

Service awards are common in class-action cases. They are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiff." *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (awarding $15,000 service awards each to five named plaintiffs and $10,000 service awards each to ten other named plaintiffs); *Dupler,* 705 F.Supp.2d at 245–46 (finding enhancement awards of $25,000 to one plaintiff and $5,000 to a second plaintiff reasonably based on the participation of the two individuals in the action to date); *Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards of $30,000, $15,000 and $7,500 to various plaintiffs to be reasonable); *Clark v. Ecolab Inc., Nos.* 07 Civ. 8623, 04 Civ. 4488, 06 Div. 5672, 2010 WL 1948198, at *9 (S.D.N.Y. (awarding $10,000 service awards each to seven class representatives). These awards, along with the rest of the Settlement, were negotiated under Mediator Holwell's supervision, which carries a presumption that the amounts are reasonable and the result of arm's-

length negotiations. Further, the lead plaintiffs have participated in discovery for nearly *eight* years and a number of them were deposed. Joint Decl. ¶ 68. Moreover, the awards will be paid out of the attorneys' fee award. *Id*. The awards therefore, will not erode the benefits awarded to class members. For these reasons, the Court finds reasonable the $1,500 service award for each named plaintiff and GRANTS the motion for approval of these service awards. *See Marroquin Alas v. Champlain Valley Specialty of New York, Inc.*, No. 515CV00441, 2016 WL 3406111, at *5 (N.D.N.Y. June 17, 2016).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Approval of Attorney's Fees, Reimbursement of Litigation Expenses and Service Payment to Class Representatives is GRANTED, as follows: (1) Plaintiffs are awarded attorneys' fees in the sum of $4.75 million; (2) Plaintiffs are awarded their expenses in the amount of $264,479.64; and (3) the service awards of $1,500 to each class representative are approved.

**SO ORDERED.**

Dated: Central Islip, New York
August 20, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge